UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X

In re:                                                          Chapter 11

FRALEG GROUP, INC.,                              Case No.: 22-41410-jmm

                              Debtor.
--------------------------------------------------------X

## AFFIDAVIT OF ANDY ALEGE
## PURSUANT TO E.D.N.Y. LBR 1007-4

STATE OF NEW YORK        )
                         )        ss:
COUNTY OF KINGS          )

Andy Alege, being duly sworn, hereby deposes and says:

1.        I am the President of Fraleg Group, Inc., the debtor and debtor-in-possession in this Chapter 11 case (the "Debtor"). In that capacity, I am familiar with the Debtor's day-to-day operations, business, and financial affairs.

2.        This affidavit is made pursuant to E.D.N.Y. LBR 1007-4 of the E.D.N.Y. Local Bankruptcy Rules to assist the Court and other parties-in-interest in understanding the circumstances that compelled the commencement of this Chapter 11 case and in support of the Debtor's petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

3.        Except as otherwise indicated, all facts set forth in this affidavit are based upon my personal knowledge, my discussions with Andre Juman and Ronald Fraser, the Debtor's vice presidents, my review of relevant documents, or my opinion based upon experience, knowledge, and information concerning the Debtor's operations, financial affairs and past history as well as discussions with the Debtor's current counsel. If called upon to testify, I would testify competently to the facts set forth in this affidavit. I am authorized to submit this affidavit on

1

behalf of the Debtor. Section I of this affidavit provides an overview of the Debtor's business. Section II describes the circumstances giving rise to the Debtor's commencement of this Chapter 11 case. Section III describes certain information required by LBR 1007-4 of the E.D.N.Y. Local Bankruptcy Rules.

## I.

### The Debtor's Business

4.    The Debtor is a New York Corporation with its corporate office located at 931 Lincoln Place, Brooklyn, New York 11213. That is the designated address for service of process with the New York Secretary of State.  The Debtor is also registered in New Jersey as a Foreign Profit Corporation with an address for service of process care of VCorp services at 820 Bear Tavern Road, West Trenton, New Jersey11213 along with the corporate address. The Debtor is a real estate investment company formed in or around 2017 and its business involves the purchase, ownership, management, rental and/or sale of real estate for profit.

5.    The Debtor is the fee owner of two real property development projects located in New Jersey. The Debtor's real properties are disclosed in the Debtor's Schedule "A/B".

6.    The Debtor's largest asset is the real property commonly known as and located at 112 North Walnut Street, East Orange, New Jersey 07017 (the "Property"). The Property is improved by a 29-unit residential building, which is currently vacant.

7.    The Debtor is also the fee owner of the vacant unimproved land commonly known as and located at 116 North Walnut Street, East Orange, New Jersey 07017 (the "Vacant Lot"). The Vacant Lot is adjacent to the Property and solely used for parking. At this time, the Debtor does not own or manage any other real estate.

8.      The Debtor previously filed a voluntary petition for relief on September 14, 2021, seeking to reorganize its business under Chapter 11, subchapter V, of the Bankruptcy Code, identified as Bankruptcy Case Number 21-42322-jmm (the "Initial Bankruptcy Case"). On November 9, 2021, a motion for relief from stay was filed by CAF Borrower GS LLC, (the "Lender") seeking to lift the automatic stay as to the Property [Dkt. No. 26] (the "Motion for Relief from Stay"). This Court held a hearing on March 20, 2022 and subsequently entered an order granting the Motion for Relief from Stay [Dkt. No. 42].

9.      The Lender also filed a proof of claim in the Initial Bankruptcy Case [Claim No. 4] (the "Proof of Claim"). Attached to the Proof of Claim was a payoff letter dated September 14, 2021 (the "2021 Payoff Letter") stating a total payoff value of $4,689,794.46. A true and accurate copy of 2021 Payoff Letter is annexed hereto as **Exhibit "A"**.

10.     As will be set forth below in detail, there are multiple deficiencies in the Lender's Proof of Claim and both the Motion for Relief from Stay and the Proof of Claim, as well as other documents, were materially false and inflated. Moreover, the Lender and its counsel either knew or should have known that those amounts were inflated.

11.     On May 16, 2022, the Debtor, by and through its then-counsel, filed a motion to voluntarily dismiss the Initial Bankruptcy Case [Dkt. No. 53]. The basis for that motion was that the Debtor had obtained a commitment to pay off the Lender and could only close if the case was dismissed. The commitment for the refinance was an exhibit to the motion to dismiss.

12.     On June 3, 2022, this Court entered an Order, *inter alia*, (i) discharging the Subchapter V Trustee from any further duties because the Debtor, as a single asset real estate entity, did not qualify for Subchapter V relief; and (ii) dismissing the Initial Bankruptcy Case [Dkt. No. 59].

13.     The closing was scheduled for June 15, 2022. The Lender had rescheduled the sale of the Property for June 21, 2022.  On June 7, 2022, the Lender provided a payoff letter (the "June 7th Payoff") that was materially different from the 2021 Payoff Letter. The June 7th Payoff demanded $5,206,960.77 as a payoff value, which was approximately $500,000.00 more than the amount of the refinance. A true and accurate copy of the June 7th Payoff letter is annexed as **Exhibit "B"**.  The Debtor's principals desperately attempted to resolve the discrepancies in the June 7th Payoff and sought an adjournment of the sale. The Lender refused and the Debtor had no choice but to return to this Court to obtain a determination of the amount owed to the Lender and to stay that sale pending that determination.

14      Upon being retained, our counsel advised us of multiple defects in the amount sought and in the foreclosure itself. At the outset, I am advised that the Proof of Claim filed in the prior case and the June 7th Payoff did not comport with the final judgment of foreclosure dated April 26, 2021 (the "Judgment") which was entered in the Foreclosure Action (defined below). As will be set forth below, the simple mathematical computation under the Judgment results in a total amount due of approximately $4,703,347.65.  Had that amount been in the June 7th Payoff, the loan would have closed and this case would not have been filed.

## II.

## Events Leading to the Chapter 11 Case

**A.      The History of the Property and Litigation Concerning the Property**

15.     On or around April 5, 2019, the Debtor purchased the Property for the sum of $4,250,000.00.

16.     To purchase the Property and the Vacant Lot, on January 23, 2019, the Debtor and Corevest American Finance Lender LLC (the "Original Lender") entered into a

$8,000,000.00 commercial mortgage loan and executed a loan agreement dated January 23, 2019 (the "Loan Agreement"). The Debtor also executed and delivered to the Original Lender a certain promissory note dated January 23, 2019, in the original principal amount of $8,000,000 (the "Note").

17.    The Debtor secured its obligations under the Loan Agreement by executing and delivering to the Original Lender a certain Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated as of April 5, 2019 (the "Mortgage").  It is critical to note that the choice of law for all of these documents was New York, even though the Property was located in New Jersey.

18.    The Note, the Loan Agreement, the Mortgage and all other documents executed in connection with or further securing the amounts owed under the Note (collectively, the "Loan Documents") were later assigned to the Lender.

19.    Following the closing on the Property, the Debtor began renovations, in an effort to fix, sell or rent the individual condominium units for profit.

20.    Under the Loan documents the Debtor was required to expend $1 million dollars on the construction before the first draw down of the construction loan of $1.4 million dollars was to be released from a reserve account (although the loan documents did not actually require the account to be set up) (the "Construction Reserve").

21.    The Debtor expended in excess of $1.2 million in site work, demolition and construction and then applied for the draw down. The Lender asserted that only about $940,000.00 of the outlay qualified under the loan (which does not set forth those requirements) and refused to fund.  When the Debtor could not proceed, the Lender asserts it called a default. The Debtor asserts it never received any default notice, which is required under the Loan

Documents and is a requirement pursuant to New York law as a predicate to accelerating the note and charging default interest..  The amended complaint to the Foreclosure Action (defined below) does not even assert that a notice of default was served on the Debtor.

22.     In 2020, the Lender commenced an action in the Superior Court of New Jersey, Chancery Division, Essex County, captioned *CAF Borrowers GS, LLC, Plaintiff vs. Fraleg Group Inc. A New York Corporation; et. als,* Case Number F001632-20 (the "<u>Foreclosure Action</u>") seeking to, among other things, foreclose on the Mortgage and recover the Property.

23.     Pursuant to the affidavit of service, the Foreclosure Action was served only on the Debtor's agent for service of process in New Jersey (VCorp Services, LLC) in July of 2020. Upon information and belief, that company was not operational due to the Covid 19 pandemic. I never received any notice of the foreclosure until right before the sale.  The true and accurate copy of the affidavit of service is annexed as **Exhibit "C"**.  The affidavit of service evidences that no service was made upon the Debtor at its actual business address and no service was made upon its New York agent for service of process.  I am advised that New York law, which applies to the Loan Documents, requires service on both the secretary of state and the known address of the defendant to confer jurisdiction over the defendant.

24.     I am further advised that some very unusual events took place in the Foreclosure Action.  When the Lender moved for a default judgment, the Court initially denied it (the "<u>Denied Foreclosure Order</u>").  A true and accurate copy of the Denied Foreclosure Order is annexed as **Exhibit "D"**.  The Court in the Denied Foreclosure Order raised multiple defects as to the payoff values, all of which are the law in the State of New York. More specifically, the Court raised the fact that the Lender was seeking interest and default interest on the $1.4 million dollars it held in the Construction Reserve, when it never had an obligation to reserve and which

it never advanced. That decision also disallowed the "Exit Late Fee" of $227,500.00 and noted that it was also based upon a percentage of funds that were never advanced.

25.     The next day a letter was filed by the Lender's counsel (the same firm that represented the Lender in the Initial Bankruptcy Case) that did not address any of those issues. Then, *without anything else appearing on the Docket*, the court issued a decision that stated that it had been advised it was in error in its last decision and granted the Lender's default judgment motion.  A true and accurate copy of that decision is annexed here to as **Exhibit "E"**.

26.     Assuming *arguendo*, that the default judgment was properly served and that there was a valid judgment pursuant to New York law and it cannot be challenged, the Lender's alleged claim raised in the June 7th Payoff does not even begin to comport with the Judgment.  A copy of the Judgment is annexed as **Exhibit "F"**. The Judgment allowed Lender's attorney's fees in the amount of $7,500.00. The Lender claimed $93,013.70 in the June 7th Payoff letter and $35,989.75 in its Proof of Claim for attorney's fees..

27.     The Judgment awarded a total due in the sum of $4,140,055.22 as of January 31, 2021. The Judgment further allowed only contract rate interest on the principal balance of $4,550,000.00 from January 31, 2021 through April 26, 2021.   That amount computed as follows:

$4,550,000.00 (*principal balance*) x 8.5% (*contract rate interest*) = $386,750.00

$386,750.00 / 365 (*days in a year*) = $1,059.59 (*daily interest value*)

$1,059.59 x 85 days (*days between 1/31/21 and 4/26/21*) = $90,065.06 (*value of interest Lender is entitled to between 1/31/21 and the date of the Judgment 4/26/21*)

$90,065.06 + $4,140,055.22 (*Judgment value as of 1/31/21*) = $4,230,120.28.

The $4,230,120.28 represents the principal and interest owed to Lender as of the Date of the Judgment, April 26, 2021. The Judgment then called for the costs and lawful counsel fees to be added, which were assessed as $8,600.00 for a total of $4,238,720.28. This sum was then to be charged with lawful interest. Lawful interest on a New Jersey judgment is 3.50%[1]. An up-to-date interest calculation is computed as follows:

$4,238,720.28 (*principal, interest & counsel fees as of 4/26/21*) x 23.5% = $148,355.20

$148,355.20// 365 (*days in a year*) = $406.45 (*daily interest value*)

$406.45 x 415 days (*days between April 26, 2021 to June 15, 2022*) = $168,677.84

$168,677.84+ 4,238,720.28 (*principal, interest & counsel fees 4/26/21*) = $4,407,398.12.

Thus, the Lender was only entitled to $4,347,155.63 as of June 15, 222. In other words, the Lender sought **$799,526.65** more than it was entitled to in the June 7th Payoff ($5,206,960.77) and knew that the Debtor's refinance would not be able to close with that inflated payoff value. The Debtor reserves all rights against the Lender and its counsel for these actions.

**B.** **The Debtor is Seeking Funding to Complete the Renovation**

28.    In anticipation of a Chapter 11 plan of reorganization, the Debtor continues to discuss its options, including seeking damages against the Lender for filing fraudulent claims and pleadings and demanding more than it was owed, as well as the possibility of a third party purchasing the Lender's interest in the Note and Mortgage and modifying the loan, or obtaining a new loan to pay off the existing loan. If successful, the Foreclosure Action would be dismissed, the Debtor will resume construction, and upon completion, sell the individual units or the Property.

**III.**

---

[1] For the calendar year 2021, the post-judgment interest rate was 3.5% . For 2022 the rate is currently set at 2.25%. See N.J. R.4:42-11

## Information Required by E.D.N.Y. LBR 1007-4

29.     In accordance with E.D.N.Y. LBR 1007-4(a)(i), and to the best of my knowledge, information, and belief, the Debtor is not a small business debtor within the meaning of Bankruptcy Code § 101(51D).

30.     In accordance with E.D.N.Y. LBR 1007-4(a)(ii), and to the best of my knowledge, information, and belief, the Debtor is a single asset real estate debtor within the meaning of Bankruptcy Code § 101(51B).

31.     In accordance with E.D.N.Y. LBR 1007-4, a list of the names and addresses of the creditors holding secured claims and the 20 largest unsecured claims against the Debtor have been filed with the Debtor's bankruptcy petition[2].

32.     A summary of the Debtor's Assets and Liabilities are included with the Debtor's petition. *See* Official Form 206Sum "Summary of Assets and Liabilities for Non-Individuals."

33.     As of the drafting of this affidavit, the Debtor does not have any operating income or expenses and expects not to have any operating income or expenses for the 30-day period following the bankruptcy petition date.

34.     The Debtor does not make any admissions and reserves all of its rights and remedies.

35.     The foregoing is true and current to the best of my knowledge, information and belief.

_s/Andy Alege___
Andy Alege

Sworn to before me this
__23rd day of June, 2022

_s/Richard Roach_____

---

[2] Official Form 204 filed with the Debtor's petition provides a list of the Debtor's creditors holding the 20 largest unsecured claims.

Notary Public, State of New York
Registration No: 01R06000257____
Qualified in Kings County
Commission Expires _March 4, 2026____