UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
—————————————————————————

In re:

Fraleg Group, Inc.,                                    Case No. 22-41410-jmm

            Debtor.                                Chapter 11


—————————————————————————

### NOTICE OF MOTION FOR RELIEF FROM THE AUTOMATIC STAY AND *IN REM* RELIEF

PLEASE TAKE NOTICE that CAF Borrower GS, LLC ("**Lender**"), has filed its *Motion for Relief from the Automatic Stay and* In Rem *Relief* (the "**Motion**").

PLEASE TAKE FURTHER NOTICE that a telephonic/virtual hearing will be held on **AUGUST 17, 2022**, at **10:45 a.m. ET** before the Honorable Jil Mazer-Marino of the United States Bankruptcy Court for the Eastern District of New York (the "**Bankruptcy Court**").  All hearing participants must register with <u>eCourt Appearances</u> in advance of hearing, and a telephone number and video link will be e-mailed to the participant.

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Motion must be made in writing, be filed electronically by registered users of the Bankruptcy Court's electronic case filing system, and be served, so as to be received no later than **AUGUST 10, 2022**, upon counsel for Lender.

Dated: July 14, 2022

Respectfully submitted,

POLSINELLI PC

By: */s/ David D. Ferguson*

      MORGAN C. FIANDER
      600 Third Avenue, 42nd Floor
      New York, New York 10016
      (212) 684-0199
      mfiander@polsinelli.com

      DAVID D. FERGUSON
      900 West 48th Place, Suite 900
      Kansas City, Missouri 64112
      (816) 360-4311
      dferguson@polsinelli.com

*Attorneys for Lender CAF Borrower GS, LLC*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

_____

In re:

Fraleg Group, Inc.,                                    Case No. 22-41410-jmm

              Debtor.                                    Chapter 11


_____

## <u>MOTION FOR RELIEF FROM THE AUTOMATIC STAY AND *IN REM* RELIEF</u>

      CAF Borrower GS LLC ("**Lender**"), for its Motion to for Relief Automatic Stay and *In Rem* Relief, states as follows.

    **I.**    **PRELIMINARY STATEMENT.**

      1.    Fraleg Group Inc. (the "**Debtor**") owes Lender more than $5 million under a loan (the "**Loan**") obtained by the Debtor on January 23, 2019. The Loan is secured by the Debtor's primary asset, an unoccupied apartment building located in East Orange, New Jersey. The Debtor defaulted on the Loan payments less than a year after the Loan was made and has not made any payments to Lender in over two years. The Debtor asserts that the building is worth approximately $3.64 million, and accordingly the Debtor has no equity in the building.

      2.    Reorganization is infeasible in this case, as it was in the Debtor's original bankruptcy case, Case No. 21-42322 (the "**First Bankruptcy**"), because the building, which has not been occupied for more than 30 years, requires extensive renovations before it can be occupied. Renovation work at the building stopped over a year ago. The renovations are only 60% complete according to the Debtor, and the additional required renovation work will cost, by the Debtor's estimate, $1.9 million. The debtor has no funds to pay for the $1.9 million of additional renovation work.

3.      After the Loan went into default, the Lender obtained a judgment in the action to foreclose its mortgage, but the Debtor repeatedly delayed the sale. A sale was scheduled for September 14, 2021, but the Debtor filed the First Bankruptcy that very day, and Lender was notified of the bankruptcy filing just as the foreclosure sale was starting.

4.      The Debtor had no equity in the building and no money to fund the required renovations to the Building or to make payments under a bankruptcy plan. Moreover, the First Bankruptcy presented a classic bad faith filing. The Debtor filed First Bankruptcy on the eve for foreclosure without any reasonable prospect of reorganizing. The Debtor had and has no employees and only a very few creditors. The Debtor had and has no contracts.  The Lender's claim had already been fixed by the judgment of the state court. This case involves a two-party dispute and a repeat filer-debtor who seeks to modify a secured loan where the Debtor has no income or ability to present a confirmable plan. Further, in the First Bankruptcy, the Debtor concealed its ownership of a vacant lot adjacent to the building, failing to list the property in its schedules and then falsely claiming under oath at the § 341 meeting that the lot was owned by the Debtor's president rather than by the Debtor.

5.      Based on the above, Lender filed a Motion for Relief from the Automatic Stay and an Amended Motion for Relief from the Automatic Stay (together, the "**Stay Relief Motion**") [First Bankruptcy Docket No. 39] in the previous case. The Debtor did not oppose the Stay Relief Motion and, in fact, at a hearing held on March 30, 2022, *consented* to the relief requested therein.

6.      The Debtor represented to the Court at the hearing on the Stay Relief Motion, and in its own Motion to Dismiss, that the Debtor had "secured financing from Fortress Holdings from which the Debtor will satisfy [Lender.]" [First Bankruptcy Docket No. 53, ¶ 11.] The Debtor further represented that it was "in the final stages of clearing title exceptions, one of which is the

dismissal of this case and Debtor expects to close as soon as the case is dismissed." [First Bankruptcy Docket No. 53, ¶ 12.] Based on this representation, Lender did not object to the dismissal of the matter and the Court relied on same in granting the Motion to Dismiss.

7.      Lender provided payoff statements and attempted to communicate with the Debtor and its counsel about the financing and presumed payoff. Simultaneously, Lender scheduled a sheriff's sale of the Property, which was set for June 21, 2022. Debtor went radio silent in its communications.

8.      Then, on June 17, 2022, shortly before the scheduled foreclosure sale, Debtor, through new counsel, filed a new Petition for Relief Under Chapter 11 of the United States Bankruptcy Code, initiating this second bankruptcy case (the "**Second Bankruptcy**"). This case is a patently bad faith filing and exposes Debtor's blatant intentional misrepresentations to Lender and its fraud on this Court in its many statements and affirmations that it had secured financing to pay the amounts owed to Lender, and that dismissal was the last obstacle to closing that deal.

9.      Lender submits this Motion for stay relief so Lender may reschedule the Sheriff's sale of the Property and finally obtain the relief it is entitled to that Debtor has continued to thwart.

## II.    JURISDICTION; STATUTORY BASES FOR RELIEF.

10.     This Court has jurisdiction to hear and determine this Motion pursuant to 28 U.S.C. Section 157(a), (b)(1) and (b)(2)(A), (G) and (O).  This Motion is filed pursuant to Code § 362(d) and Rule 4001(a)(1) of the Federal Rules of Bankruptcy Procedure (the "**Rules**").

## III.   ABBREVIATED FACTUAL BACKGROUND AND RELEVANT PROCEDURAL.

### *The Loan to the Debtor.*

11.     Given the extensive development of the factual background of this matter through the First Bankruptcy, prior motion practice, hearings, and other, Lender provides an abbreviated

84318644.1

factual and procedural history in this Motion.

12.     On January 23, 2019, Corevest American Finance Lender LLC ("**Original Lender**") and the Debtor entered into a $8,000,000.00 commercial mortgage loan transaction, evidenced by a Loan Agreement dated as of January 23, 2019 (the "**Loan Agreement**"). To evidence its repayment obligations under the Loan, Debtor executed and delivered to Original Lender a certain promissory note dated January 23, 2019, in the original principal amount of $8,000,000.00 (the "**Note**").  Under the terms of the Loan Agreement, on each Monthly Payment Date (as defined in the Loan Agreement), the Debtor was to pay a monthly payment of interest equal to the Monthly Debt Service Payment (as defined in the Loan Agreement).  All principal, interest and other fees due under the Note and the Loan Documents (defined below) were to become due and payable on July 23, 2020 (the "**Maturity Date**").

13.     The Debtor secured its obligations under the Loan by executing and delivering to Original Lender a certain Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated as of April 5, 2019 (the "**Mortgage**"), pursuant to which Debtor mortgaged to Original Lender certain real property known as 112 N. Walnut St., East Orange, NJ 07017, and also known as Lot 15 in Block 360 on the Tax Map of East Orange (the "**Building**").  The Mortgage was duly recorded with the Essex County Register's Office on April 12, 2019 as Instrument No. 2019034120.

14.     The Note, the Loan Agreement, the Mortgage and all other documents executed in connection with or further securing the amounts owed under the Note (collectively, the "**Loan Documents**") were later assigned to Lender.

### The Debtor's defaults on the Loan.

15.     On November 11, 2019, the Debtor defaulted under the Loan Documents by failing

to pay the amounts owed under the Note. The last payment the Debtor made to Lender was in October of 2019. As a result of the Debtor's default, Lender elected to accelerate the amounts due and owing under the Note. Debtor failed to cure the existing defaults and remains in default of the terms of the Note, the Mortgage and other Loan Documents.

### *Status of the Debtor's business.*

16.     The Debtor has no other business than the renovation of the Building and has no assets other than the Building. First Bankruptcy, Transcript of testimony of Ronald Fraser, CFO of Debtor, at § 341 meeting held October 15, 2021 (the **"Fraser Transcript"**) 21:19-22, attached hereto as **Exhibit A**, 10:24-25; 11:1-6. The Debtor has no work and no employees. *Id.*, 27:10-12. The Debtor also has no independent contractors engaged. The Debtor has no current operations.

17.     The Building is currently vacant and only 60% of the renovation work has been completed. *Id.*, 22:16-18; 45:9-14. Renovation work at the Building stopped more than a year prior to October 15, 2021. *Id.*, 49:11-18. There is no certificate of occupancy for the Building because the renovations to the Building have not been completed. *Id.*, 22:12-15. No part of the Building can be rented in its current condition. *Id.*, 47:12-14.

18.     It would take the Debtor approximately 6-8 months to complete the construction on the Building, once the Debtor acquired the remaining parts required for the construction. *Id.*, 28:12-17. The Debtor estimates it will cost approximately $1.9 million to finish renovating the Building. *Id.*, 47:15-22.

19.     The Debtor currently has no money to complete the renovation of the Building. *Id.*, 46:13-14. Further, the Debtor does not expect to earn any money in the next 6-8 months. *Id.*, 28:18-21.

### *The debt due under the Loan Documents.*

20.     As of June 17, 2022, the outstanding balance due and owing on the Note was approximately $4.7 million.

21.     The Property was scheduled for a foreclosure sale on September 14, 2021, and Lender was provided notice of the Debtor's bankruptcy filing just as the foreclosure sale was starting.

22.     On September 14, 2021, Debtor filed its first Chapter 11 Petition for Relief under the commencing the First Bankruptcy. [First Bankruptcy Docket No. 1.]

23.     On November 29, 2021, Lender filed its first Stay Relief Motion. [First Bankruptcy Docket No. 26.]

24.     On January 12, 2022, Debtor filed an Affirmation in Opposition to the first Stay Relief Motion. [First Bankruptcy Docket No. 25.]

25.     The parties appeared on January 19, 2022 and the Court ordered a discovery period related to the first Stay Relief Motion. A proposed stipulation as to same was thereafter filed and so-ordered.

26.     On February 22, 2022, Lender filed the amended Stay Relief Motion. [Firs Bankruptcy Docket No. 39.] Debtor did not file any opposition.

27.     On March 30, 2022, the Court held a hearing on the Stay Relief Motion. At the hearing, the Debtor did not make any objection or contest to the relief sought in the Stay Relief Motion. Debtor represented that it was securing financing to pay off Lender and it consented to stay relief being granted. Specifically, Debtor's counsel stated that Debtor "has told [him] that [Debtor] has secured financing to repay the debt - - to repay the lender in full. And we should be able to close this very shortly." (Transcript of Hearing on Stay Relief Motion, 6:2 – 6:5.) Debtor's

6

counsel further represented that "because of securing financing, we will be getting ready very - - very shortly to file a motion to dismiss this matter." (*Id.* 6:13 – 6:15.) Debtor's counsel further stated "I have no objection to lifting the stay." (*Id.* 8:22 – 8:23.)

28.    The Court granted the Stay Relief Motion. [First Bankruptcy Docket No. 42.]

29.    On May 16, 2022, Debtor filed its Motion to Dismiss the First Bankruptcy. [First Bankruptcy Docket No. 53.] In the Motion to Dismiss, Debtor acknowledges that it did not oppose the Stay Relief Motion. [First Bankruptcy Docket No. 53, ¶ 10.] Debtor also represented that it had "secured financing from Fortress Holdings from which the Debtor will satisfy [Lender]." [First Bankruptcy Docket No. 53, ¶ 11.] Debtor sought dismissal of the case to clear title and close the refinancing deal. [First Bankruptcy Docket No. 53, ¶ 12.]

30.    On June 3, 2022, the Court granted the Motion to Dismiss and dismissed the First Bankruptcy. [First Bankruptcy Docket No. 59.]

31.    On June 17, 2022, Debtor filed the current case. [Docket No. 1.]

32.    Debtor's new counsel provided notice of the current case on June 17, 2022. Lender's counsel responded, inquiring whether new counsel was aware of the instant action that had just been dismissed, that Debtor had consented to stay relief, and that Debtor had represented it had secured financing to pay Lender. Debtor's new counsel never answered those questions. Lender's counsel followed up on June 21, 2022, again noting these facts and asking if they would be voluntarily dismissing the current case. Debtor's new counsel declined, and Lender was thus forced to again seek relief from stay.

## IV.    THE FACTS OF THE DEBTOR'S CASE OVERWHELMINGLY SUPPORT LENDER'S REQUEST FOR RELIEF FROM THE AUTOMATIC STAY.

33.    Section 362(d)(2) of the United States Bankruptcy Code (the "**Code**") provides that "[o]n request of a party in interest . . . the court shall grant relief from stay . . . with respect to

7

a stay of an act against property under subsection (a) of this section, if – (A) the debtor does not have equity in such property; and (B) such property is not necessary to an effective reorganization." Once it is demonstrated that a debtor has no equity in the subject property, relief from the stay must be granted unless the debtor proves that such property is necessary for an effective reorganization. *United Sav. Ass'n of Tex v. Timbers of Inwood Forest Assoc.*, 484 U.S. 365, 375‑76 (1998). The Supreme Court in *Timbers* explained as follows:

> Once the movant under § 362(d)(2) establishes that he is an undersecured creditor, it is the burden of the debtor to establish that the collateral at issue is 'necessary to an effective reorganization.' See § 362(g). What this requires is not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization that is in prospect. This means, as many lower courts, including the en banc court in this case, have properly said, that there must be 'a reasonable possibility of a successful reorganization within a reasonable time.'"

*Id.*

34.     The test [under *Timbers*] is one of feasibility. The debtor need not show that the plan is confirmable, but that the things which are to be done after confirmation can be done as a practical matter. A motion for relief from the stay should not be turned into a confirmation hearing; the debtor need only show that where there is lack of equity, the proposed plan has a realistic chance of being confirmed and is not patently unconfirmable." *In re Kolnberger*, 603 B.R. 253, 269 (Bankr. E.D.N.Y. 2019) (internal citations and quotations omitted) (emphasis in original). "The debtor need not show that the plan is confirmable, but that the things which are to be done after confirmation can be done as a practical matter. A motion for relief from the stay should not be turned into a confirmation hearing; the debtor need only show that where there is lack of equity, the proposed plan has a realistic chance of being confirmed and is not patently unconfirmable." *In re 160 Bleecker St. Assocs.*, 156 B.R. 405, 410–11 (S.D.N.Y. 1993) (internal citations and quotations omitted). *See also In re Kent Terminal Corp.*, 166 B.R. 555, 562 (Bankr. S.D.N.Y. 1994) ("an effective

reorganization cannot be based solely on speculation") (*citing In re Saypol*, 31 B.R. 796, 803 (Bankr. S.D.N.Y. 1983)); *In re New Era Co.*, 125 B.R. 725, 730 (S.D.N.Y. 1991) ("mere dreams' of reorganization cannot sustain the automatic stay"); *In re Diplomat Elecs. Corp.*, 82 B.R. 688, 693 (Bankr. S.D.N.Y. 1988).

35.     Lender is entitled to relief from the automatic stay under Code § 362(d)(2) because the Debtor does not have equity in the Building and because the Building is not necessary to an effective reorganization. In the First Bankruptcy the Debtor took the position in its Schedules that the Property is worth $3.65 million. The Lender believes that the Building is worth less than $3.65 million, but even using the Debtor's estimated value of $3.65 million, the Debtor lacks any equity in the Building because the amount owed by the Debtor on the Loan exceeds $4.2 million.

36.     Further, the Building is not necessary for an effective reorganization because the Debtor has no reasonable prospect of a successful reorganization. The Debtor has no revenue, and no prospect for obtaining revenue unless it renovates the Building. The Debtor lacks any funding to complete the renovations. Further, the Debtor's representative admitted at the § 341 meeting in the First Bankruptcy that the Debtor does not have any viable prospects to obtain financing to renovate the Building, and admitted that any such financing would require Lender to agree to a discounted payoff of the Loan.

37.     The Building's As-Is Value, according to the Bowery appraisal dated October 22, 2021, is $2.8 million, and the Debtor has no equity in the Building in light of Lender's claim of more than $4.2 million. The remaining renovations will cost, according to the Debtor, approximately $1.9 million. The renovation work stopped more than a year prior ago, and the Debtor did not obtain funding to complete the renovation work in the months leading up to its bankruptcy filing. The Debtor has identified no viable source to fund the renovations post-

bankruptcy, and obtaining financing for the $1.9 million of renovations is patently infeasible because the Debtor lacks any equity in the Building.

### *Lender is entitled to relief from the automatic stay under Code § 362(d)(1) because the Debtor filed its case in bad faith and without any possibility of presenting a confirmable bankruptcy plan*

38.    Lender is also entitled to relief from the automatic stay under Code § 362(d)(1), which provides that "[o]n request of a party in interest . . . the court shall grant relief from stay . . . for cause, including the lack of adequate protection of an interest in property of such party in interest." Further, Code § 362(d)(1) provides that, on request of a party in interest, the automatic stay may be annulled or terminated "for cause, including lack of adequate protection of an interest in property of such party in interest."

39.    "Cause, for either dismissal [under 11 U.S.C. § 1112(b)] or relief from the stay [under 11 U.S.C. § 362(d)(1)], may be found based on unenumerated factors, including 'bad faith,' or failure to deal with creditors fairly even where 'bad faith' is not found.'" *In re AMC Realty Corp.,* 270 B.R. 132, 140 (Bankr. S.D.N.Y. 2001) (citations omitted). Under Code § 1112(b)(4), the term "cause" includes "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation" and "failure to maintain appropriate insurance that poses a risk to the estate or to the public." "Cause" is not defined, and the bankruptcy courts have flexibility to determine what constitutes cause for dismissal. *Clear Blue Water, LLC v. Oyster Bay Management Co.*, LLC, 476 B.R. 60, 67 (E.D.N.Y. 2012) (citation omitted). The list of factors in Code § 1112 is "illustrative, not exhaustive." *Id.* at 66. (citation omitted)

40.    The same finding of bad faith to dismiss a Chapter 11 case may justify relief from the automatic stay. *In re AAGS Holdings* LLC, 608 B.R. 373, 382 (Bankr. S.D.N.Y. 2019); *see also, In re AMC Realty Corp.*, 270 B.R. at 140 ("Cause, for either dismissal or relief from the stay,

may be found based on unenumerated factors, including bad faith ...”). “A petition is filed in bad

faith ‘if it is clear that on the filing date there was no reasonable likelihood that the debtor intended

to reorganize and no reasonable probability that it would eventually emerge from bankruptcy

proceedings.’” *In re AAGS Holdings LLC*, 608 B.R. 373, 382 (*quoting Baker v. Latham Sparrowbush*

*Assocs. (In re Cohoes Indus. Terminal, Inc.*), 931 F.2d 222, 227 (2d Cir. 1991).

41.     The Second Circuit has stated the following non-exclusive list of factors that

indicate a Chapter 11 case was filed in bad faith: (1) debtor has only one asset; (2) debtor has few

unsecured creditors whose claims are small in relation to secured claim; (3) debtor’s one asset is

the subject of a foreclosure action due to arrearages or default on the debt; (4) debtor’s financial

troubles are in essence a two-party dispute between debtor and a secured creditor which can be

resolved in a pending state foreclosure action; (5) the timing of filing evidences intent to delay or

frustrate legitimate efforts of secured creditors to enforce their rights; (6) debtor has little to no

case flow; (7) debtor cannot meet current expenses including payment of personal property and

real estate taxes; and (8) debtor has few or no employees. *See, e.g., C-TC 9th Avenue Partnership*,

113 F.3d 1304, 1311 (2d Cir. 1997).

42.     “The filing of a bankruptcy petition merely to prevent foreclosure, without the

ability or intention to reorganize, is an abuse of the Bankruptcy Code.” *In re Casse*, 198 F.3d 327,

332 (2d Cir. 1999) (quoting *In re Felberman*, 196 B.R. 678, 681 (Bankr. S.D.N.Y. 1995)). “The

filing of a petition on the ‘eve of foreclosure or eviction’ is not sufficient alone to constitute bad

faith ‘cause’ to lift the automatic stay but is one of many circumstances which can be considered

in a totality of the circumstances.” In re Valid Value Properties, LLC, No. 16-13299, 2017 WL

123751, *6 (Bankr. S.D.N.Y. 2017). “The bad faith standard in the Second Circuit requires

showing 'both objective futility of the reorganization process and subjective bad faith in filing the petition.'" *Id.* (quoting *In re Kingston Square Assocs.*, 214 B.R. 713, 725 (Bankr. S.D.N.Y. 1997)).

43.     In *In re Ridge View Farm, LLC*, the Court reviewed the C-TC factors and found that debtor had one asset, which was subject to two foreclosure judgments, and that debtor's financial issues involved in essence a two-party dispute "that has already been resolved in the state court foreclosure proceedings including fixing the amount of the outstanding secured debt." *In re Ridge View Farm, LLC*, Nos. 12-31700, 11-30463, 2012 WL 6137690, *8 (Bankr. N.D.N.Y. 2012). In *In re Casse*, the Court reviewed the filing on the eve of a foreclosure and in the context of whether debtor could possibly reorganize, in connection with prior filings, and found that "the Property was listed as the sole asset, general unsecured creditors were non-existent, and [the mortgage holder] was unreceptive to the Debtor's proposals. This precluded any legally available method to force through confirmation of a plan." *In re Casse*, 219 B.R. 657, 661 (Bankr. E.D.N.Y. 1998).

44.     The Debtor's case involves many of the factors cited by the Second Circuit and New York Bankruptcy Courts in support of stay relief based on a debtor's bad faith under Code § 362(d)(1):

- The Debtor has only one primary asset—the Building.

- The Debtor has only two unsecured creditors, and those creditors hold very small claims in relation to Lender's $4.2 million claim.

- The Debtor's primary asset is subject to foreclosure because of arrearages on the mortgage debt.

- The dispute is a two-party dispute that can be resolved in the state court foreclosure action.

- The Debtor filed the First Bankruptcy case on the eve of the foreclosure sale in order to frustrate enforcement of Lender's legitimate rights.

- The Debtor filed the current bankruptcy case a mere four days before the post-dismissal foreclosure sale.

- The Debtor has no assets to pay insurance, real estate taxes, and other administrative claims.

- The Debtor has no employees.

- The Debtor has no ability to reorganize.

45.      This bankruptcy proceeding is a textbook example of a bad faith filing by a Debtor, as this case exhibits nearly every factor deemed relevant by the courts in this circuit for dismissal of a case under Code § 362(d)(1) for bad faith.

### *Lender is also entitled to relief because Debtor is a repeat filer*

46.      Furthermore, this bankruptcy proceeding was commenced immediately after the dismissal of the First Bankruptcy, making the Debtor a bad faith, repeat filer. Repeat filing is frequent factor considered for determining whether cause exist for dismissal or stay relief.. *In re 234–6 West 22nd St. Corp.*, 214 B.R. 751, 757-758 (Bankr. S.D.N.Y. 1997). "Repeat filings do not *per se* require dismissal . . .  but, particularly where they are not the consequence of changed circumstances, they warrant special scrutiny." *AMC Realty Corp.,* 270 B.R. at 141. In this case, there have been no changed circumstances. The Debtor still has no financing, operations, employees, or ability to reorganize. Furthermore, the Debtor still has made no payments to the Lender and the Debtor frustrated yet another foreclosure sale. The facts above clearly establish cause to lift the stay and allow the Lender to enforce its rights as to the Building.

*Lender is entitled to in rem relief from stay to enforce its rights against the Building because the filing of this petition was part of a scheme to delay, hinder, or defraud perpetrated the Debtor*

47.      Section 364(d)(2) gives the Court authority to grant *in rem* relief from stay as to a debtor's interest in property when " with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property,  the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved either. . . or multiple bankruptcy filings affecting such real property." 11 U.S. C. § 364(d)(2)(B). This case was filed a mere **14** days after the dismissal of the First Bankruptcy, which was itself filed to stop a scheduled foreclosure, and a mere four days before the rescheduled foreclosure sale. Multiple filing so close together shows an intent to delay hinder or defraud. *See In re Gel, LLC*, 495 B.R. 240, 249 (Bankr. E.D. N.Y. 2012) (stating a bankruptcy court can "infer an intent to hinder, delay, and defraud creditors from the fact of serial filings alone").

48.      Here, in addition to the multiple filings, the Debtor filed the First Bankruptcy to stop a pending foreclosure, filed this current case to continue to frustrate the foreclosure, and as stated above, has not shown a good-faith effort to prosecute the First Bankruptcy or the current case. Under such circumstances, granting the Lender *in rem* relief as to the property is more than appropriate. *Id.* If *in rem* relief is not granted, the Debtor may again attempt dismiss and relief to further frustrate the Lender's efforts to enforce its rights.

49.      For all these reasons, Lender requests that the Court lift the stay to allow it to enforce its rights against the Building and grant the Lender *in rem* relief as to the Debtor's rights in the Building.

84318644.1

Dated:  July 14, 2022

Respectfully submitted,

POLSINELLI PC


By: _____*/s/ David D. Ferguson*_____
       MORGAN C. FIANDER
       600 Third Avenue, 42nd Floor
       New York, New York 10016
       (212) 684-0199
       mfiander@polsinelli.com

       DAVID D. FERGUSON
       900 West 48th Place, Suite 900
       Kansas City, Missouri 64112
       (816) 360-4311
       dferguson@polsinelli.com

       ATTORNEYS FOR CAF BORROWER GS LLC




**CERTIFICATE OF SERVICE**

I hereby certify that on the 14th day of July, 2022, a true and correct copy of the foregoing

*Motion for Relief from the Automatic Stay and* In Rem *Relief* was served electronically to

Debtor's counsel and the U.S. Trustee by ECF notification from the court, and served by First-

Class United States Mail, postage prepaid, to the creditors and interested parties listed on the

mailing matrix for this case.



_____*/s/  David D. Ferguson*_____

84318644.1