**Law Offices of Avrum J. Rosen, PLLC**
38 New Street
Huntington, New York 11743
(631) 423-8527
Avrum J. Rosen, Esq.
Alex E. Tsionis, Esq.
Nico G. Pizzo, Esq.

*Proposed Counsel to the Plaintiff-Debtor*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
In re:                                                               Chapter 11

FRALEG GROUP, INC.,                                 Case No.: 22-41410-jmm

                                    Debtor.
-------------------------------------------------------X
FRALEG GROUP, INC.,                                 Adv. Pro. No.: 22-

                    Plaintiff,

        -against-

CAF BORROWER GS, LLC
and POLSINELLI PC,

                    Defendants,
-------------------------------------------------------X

## <u>COMPLAINT</u>

        Fraleg Group, Inc., the debtor and debtor-in-possession (the "<u>Plaintiff</u>") in the above-

captioned Chapter 11 case, by and through its counsel, the Law Offices of Avrum J. Rosen, PLLC,

respectfully submits this as and for its complaint (the "<u>Complaint</u>") against CAF Borrower GS,

LLC ("<u>CAF</u>") and Polsinelli PC ("<u>Polsinelli</u>" and CAF collectively, the "<u>Defendants</u>"), and alleges

as follows:

## <u>NATURE OF THE ACTION</u>

        1.        This is a case where the Defendants, one of which is a law firm, filed a false proof

of claim in the Plaintiff's previous bankruptcy case and sought approximately $393,000 more than

1

they were entitled to. CAF, by and through Polsinelli, obtained a final judgment of foreclosure against the Plaintiff in New Jersey state court. However, instead of basing their proof of claim on the final judgment of foreclosure, as was required by New Jersey state law, the Defendants based their proof of claim on an inflated payoff letter that improperly sought, among other things, default rate interest and attorneys' fees and costs, which neither were permitted under the final judgment of foreclosure.

2.      What is worse, Polsinelli, a law firm, knew that CAF had obtained a final judgment of foreclosure because it represented CAF in the state court foreclosure action. In addition, Polsinelli knew that once there was a final judgment of foreclosure, the mortgage and loan documents merged into the final judgment of foreclosure in accordance with New Jersey state law.

3.      The Defendants then filed a lift-stay motion and again used the same figures from the inflated payoff letter, rather than the final foreclosure judgment. And when the Plaintiff was able to later secure financing to payoff CAF, the Defendants compounded their fraud by giving the Plaintiff a payoff letter with an even larger inflated sum knowing that the Plaintiff's refinance would not be able to close. Had the Defendants provided the correct amount, the refinance would have closed, and the underlying bankruptcy case (and this case) would not have been filed.

4.      The Plaintiff now brings this adversary proceeding for fraud, contempt, sanctions, abuse of process, and attorneys' fees and cost.

## JURISDICTION AND VENUE

5.      This adversary proceeding relates to the above-captioned bankruptcy proceeding pending in the United States Bankruptcy Court for the Eastern District of New York and is a "core proceeding" under 28 U.S.C. §§ 157(b)(2)(A), (B), (E), (F), (H), and (O) and 1334, and Rules 7001 and 7065 of the Federal Rules of Bankruptcy Procedure.

6.      The United States Bankruptcy Court for the Eastern District of New York has jurisdiction over this proceeding under 28 U.S.C. §§ 157 and 1334.

7.      This Court is the proper venue for this adversary proceeding in accordance with 28 U.S.C. § 1409(a).

8.      Pursuant to Bankruptcy Rule 7008, the Plaintiff consents to the entry of final orders and judgments by the Court presiding over this adversary proceeding if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgment consistent with Article III of the United States Constitution.

## THE PARTIES

9.      The Plaintiff, Fraleg Group, Inc., is an active New York business corporation with its corporate office located at 931 Lincoln Place, Brooklyn, New York 11213. The Plaintiff is the debtor and debtor-in-possession in the underlying Chapter 11 bankruptcy case.

10.     The Defendant, CAF Borrower GS, LLC, is a foreign limited liability company. According to public records, the name and address for service of process for CAF is Vcorp Agent Services, Inc., 25 Robert Pitt Drive, Suite 204, Monsey, New York 10952.

11.     The Defendant, Polsinelli PC, is a foreign professional service corporation. According to public records, the name and address for service of process for Polsinelli is National Registered Agents, Inc., 28 Liberty St., New York, New York 10005.

## ALLEGATIONS APPLICABLE TO ALL CLAIMS FOR RELIEF

**A.      The Instant Bankruptcy Filing and the Plaintiff's Business**

12.     On June 17, 2022, the Plaintiff filed a voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code (the "Instant Bankruptcy Case").

13.     The Plaintiff continues to operate its business and manage its property as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

14.     The Plaintiff is a real estate investment company formed in or around 2017 and its business involves the purchase, ownership, development/re-development, management, rental and/or sale of real estate for profit.

15.     The Plaintiff is the fee owner of the of the real property commonly known as 112 North Walnut Street, East Orange, New Jersey 07017 (the "Property"). The Property is improved by a 29-unit residential building, which is currently vacant.

16.     In addition, the Plaintiff is also the fee owner of the real property commonly known as 116 North Walnut Street, East Orange, New Jersey 07017 (the "Vacant Lot"). The Vacant Lot is unimproved, is adjacent to the Property, and is used solely as parking for the Property. Currently, the Plaintiff does not own or manage any other real estate.

**B.     The Loan to the Plaintiff**

17.     On or around April 5, 2019, the Plaintiff purchased the Property for the sum of $4,250,000.00.

18.     In order to fund the purchase of the Property, on January 23, 2019, Corevest American Finance Lender LLC (the "Original Lender") and the Plaintiff entered into an $8,000,000.00 commercial construction mortgage loan transaction, evidenced by a Loan Agreement dated as of January 23, 2019 (the "Loan Agreement").

19.     To evidence its repayment obligations under the Loan Agreement, the Plaintiff executed and delivered to the Original Lender a certain promissory note dated January 23, 2019, in the original principal amount of $8,000,000.00 (the "Note").

20.     The Plaintiff secured its obligations under the Loan Agreement by executing and delivering to the Original Lender a certain Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated as of April 5, 2019 (the "Mortgage").

21.     The Note, the Loan Agreement, the Mortgage, and all other documents executed in connection with or further securing the amounts owed under the Note (collectively, the "Loan Documents") were later assigned to CAF.

22.     The choice of law for the Loan Documents was New York.

**C.     The Foreclosure Action**

23.     Following the closing on the Property, the Plaintiff began renovations.

24.     Under the Loan Documents, the Plaintiff was required to expend $1 million dollars on construction before the first draw down of the construction loan of $1.4 million dollars was to be released from a reserve account (although the Loan Documents did not actually require the account to be set up) (the "Construction Reserve").

25.     The Plaintiff expended more than $1.2 million in site work, demolition and construction and then applied for the draw down.

26.     CAF asserted that only approximately $940,000.00 of the outlay qualified under the Loan Documents (which does not set forth those requirements) and refused to fund.

27.     When the Plaintiff could not proceed, CAF allegedly called a default under the Loan Documents.

28.     The Plaintiff, however, asserts that it never received any default notice, which is required under the Loan Documents and is a requitement pursuant to New York law as a predicate to accelerating the note and charging default rate interest. In fact, the amended complaint in the

Foreclosure Action (defined below), does not even allege that a notice of default was served on the Plaintiff.

29.     On January 30, 2020, CAF commenced an action against the Plaintiff styled as *CAF Borrowers GS LLC v. Fraleg Group, Inc.* in the Superior Court of New Jersey, Chancery Division, Essex County, bearing Docket Number F-001632-20, seeking to among other things, foreclose on the Mortgage (the "Foreclosure Action").

30.     CAF was represented by Polsinelli in the Foreclosure Action.

31.     On September 17, 2020, CAF filed an amended complaint naming Renhan LLC and TAM Lending Center Inc. as additional defendants.

32.     Pursuant to the affidavit of service, the initial complaint in the Foreclosure Action was served only on the Plaintiff's agent for service of process in New Jersey (Vcorp Services, LLC) in July of 2020. Upon information and belief, that company was not operational due to the COVID-19 pandemic.

33.     The affidavit of service evidences that no service was made upon the Plaintiff at its actual business address and no service was made upon its New York agent for service of process.

34.     Moreover, according to the state court's docket and the affidavits of service regarding the amended complaint, it appears that the Plaintiff was never even served with the amended complaint.

35.     In addition, there were some very unusual events that took place in the Foreclosure Action.

36.     For example, on March 16, 2021, the state court entered an order denying CAF's motion for final judgment (the "First Denied Order"). The state court in the First Denied Order

raised multiple defects as to CAF's payoff values, all of which are the law in the State of New York. Specifically, the state court stated that:

> The note does not list the interest rates of the loan including that of default interest nor does it mention late charges. A certified true copy of the loan agreement should be provided with the understanding that said loan instrument will have the loan provisions that the note lacks. The amount due schedule includes a late fee due on maturity of $227,500.00 based on 5% of the principal balance. This is not mentioned by the note and unless it is specifically provided for by the loan agreement, this amount will have to be removed. The proposed final judgment and writ of execution list a contract rate of 8.5% on the total unpaid principal balance of $4,550,000.00. However, this amount should be reduced by the credit for amount in reserve of $1,400,000.00 and therefore the contract interest rate mentioned by the judgment and writ should be $3,150,000 (emphasis added).

37.     On March 17, 2021 (the day following the First Denied Order), Polsinelli (the same law firm that represented CAF in the Initial Bankruptcy Case (defined below)) filed a letter with the state court that did not address any of the state court's concerns.

38.     On March 29, 2021, CAF again moved for final judgment.

39.     On April 22, 2021, the state court again issued an order denying CAF's second motion for final judgment (the "Second Denied Order"). The state court again raised multiple defects, and stated that:

> The amount due schedule includes a late fee due on maturity of $227,500.00 based on 5% of the principal balance. This is not mentioned by the note and unless it is specifically provided for by the loan instruments, this amount will have to be removed. Please provide the loan instrument that describes such late fees and please specifically point out where in the loan papers said late fees provisions are described. It is further noted that the $4,550,000.00 that the aforementioned 5% late fees are charged should actually be $3,150,000.00 since the principal balance should be reduced by the credit for amount in reserve of $1,400,000.00. Accordingly, the late fee due on maturity would be $157,500.00 based on 5% of the principal balance. The proposed final judgment and writ of execution list a contract rate of 8.5% on the total unpaid principal balance of $4,550,000.00. However, this amount should be reduced by the credit for amount in reserve of $1,400,000.00 and therefore the contract interest rate mentioned by the judgment and writ should be $3,150,000.00 (emphasis added).

40.     In other words, the state court raised the fact that CAF was seeking interest and default interest on the $1.4 million it held in the Construction Reserve, when it never had an obligation to reserve and which it never advanced.

41.     The Second Denied Order also disallowed the "Exit Late Fee" of $227,500.00 and noted that it was also based upon a percentage of funds that were never advanced.

42.     Then, on April 26, 2022, *and without anything else appearing on the state court's docket*, the state court issued an order vacating the Second Denied Order stating that "[t]he reason for the denial has since been corrected by [CAF]."

43.     In addition, on April 26, 2022, the state court entered an uncontested order of final judgment in foreclosure (the "Foreclosure Judgment").

44.     According to the Foreclosure Judgment:

[CAF] is entitled to have the sum of $4,140,055.22 as of January 31, 2021, plus interest from January 31, 2021, through the date of this judgment 4/26/2021 calculated at the contract rate of 8.50% percent per annum on the principal balance of $4,550,000, and lawful interest thereafter on the total sum due Plaintiff until the same be paid and satisfied, plus costs of this suit to be taxed, including attorneys' fees of $7,500.00, all to be raised and paid on the first place out of the mortgaged premises and collateral… (emphasis added).

45.     Critically, once CAF obtained the Foreclosure Judgment (a New Jersey judgment), the Loan Documents merged into the Foreclosure Judgment.

**D.     The Prior Bankruptcy Case,
the First Payoff Letter, and the False Proof of Claim**

46.     On September 14, 2021, the Plaintiff previously filed a voluntary petition for relief under Chapter 11, Subchapter V of the Bankruptcy Code bearing case number 21-42322-jmm (the "Prior Bankruptcy Case"). The Plaintiff was represented by Hemmings & Snell LLP in the Prior Bankruptcy Case.

47.     On February 24, 2022, CAF, by and through Polsinelli (the same law firm that represented CAF in the Foreclosure Action), filed a proof of claim, docketed as Claim No. 4 on the Court's Claims Register, in the amount of $4,689,794.46 (the "Proof of Claim").

48.     As will be shown below, the Proof of Claim was false because the figures in the Proof of Claim were not based on the Foreclosure Judgment.

49.     Rather, the figures in the Proof of Claim were based on an inflated payoff letter dated September 14, 2021 (the "First Payoff Letter"), which is appended to the Proof of Claim. The First Payoff Letter states a payoff value of $4,689,794.46 broken down as follow:

| | |
|---|---|
| Principal Balance: | $4,550,000.00 |
| Interest Thru 9/14/2021 | $768,131.65 |
| Default Interest thru 9/14/2021 | $451,837.10 |
| Fees | $70,685.91 |
| 5% Maturity late fee | $227,500.00 |
| Release Fees | $348.00 |
| Funds owed by borrower (see details page) | $21,231.80 |
| Funds owed to borrower | ($0.00) |
| Unused Holdback Reserve | ($1,400,000.00) |
| **Total Payoff (includes $60.00 Payoff Demand Fee)** | **$4,689,794.46** |

50.     The figures in the "details page," which is appended to the 2021 Payoff Letter, are broken down as follows:

| | |
|---|---|
| Late Charge | $35,989.75 |
| FC Attorney Fee | $30,387.50 |
| FC Attorney Cost | $3,198.66 |
| Vacant Prop Reg | $595.00 |
| BPO | $465.00 |
| Inspections | $35.00 |
| Phone Pay | $15.00 |
| | **$70,685.91** |

51.     In actuality, the Proof of Claim should have been based on the Foreclosure Judgment and should have been in the reduced amount of $4,296,029.73. This figure is calculated below.

52.     The Foreclosure Judgment awarded a total due in the amount of $4,140,055.22 as of January 31, 2021.

53.     The Foreclosure Judgment further allowed only contract rate interest on the principal balance of $4,550,000.00 from January 31, 2021, through April 26, 2021. That amount is computed as follows:

$4,550,000.00 (*principal balance*) x 8.5% (*contract rate interest*) = $386,750.00

$386,750.00 / 365 (*days in a year*) = $1,059.59 (*daily interest value*)

$1,059.59 x 85 days (*days between 1/31/21 and 4/26/21*) = $90,065.06 (*value of interest Lender is entitled to between 1/31/21 and the date of the Foreclosure Judgment 4/26/21*)

$90,065.06 + $4,140,055.22 (*Foreclosure Judgment value as of 1/31/21*) = $4,230,120.28.

54.     The $4,230,120.28 figure represents the principal and interest owed to CAF as of April 26, 2021 – the date of the Foreclosure Judgment. The Foreclosure Judgment then called for the costs and lawful counsel fees to be added, which were assessed as $8,600.00 for a total of $4,238,720.28. This sum was then to be charged with lawful interest. Lawful interest on a New Jersey judgment at the time was 3.50%.[1] An up-to-date interest calculation is computed as follows:

$4,238,720.28 (*principal, interest & counsel fees as of 4/26/21*) x 3.5% = $148,355.20

$148,355.20 / 365 (*days in a year*) = $406.45 (*daily interest value*)

$406.45 x 141 days (*days between April 26, 2021, to September 14, 2021*) = $57,309.45

$57,309.45 + 4,238,720.28 (*principal, interest & counsel fees 4/26/21*) = $4,296,029.73.

---

[1] For calendar year 2021, the post-judgment interest rate was 3.5%. For 2022 the rate is currently set at 2.25%. *See* N.J. R.4:42-11.

55.     Thus, as of September 14, 2021 (the petition date of the Prior Bankruptcy Case), CAF was only entitled to $4,296,029.73.

56.     In other words, CAF, through, Polsinelli, sought $393,764.73 **more than** it was entitled to under the Foreclosure Judgment.

57.     The Proof of Claim was inflated and false.

58.     The Proof of Claim was based on the First Payoff Letter instead of the Foreclosure Judgment.

59.     Once the Defendants obtained the Foreclosure Judgment, the Loan Documents merged into the Foreclosure Judgment and were extinguished.

60.     The Defendants knew that they had obtained a Foreclosure Judgment because Polsinelli (the same law firm that represented CAF in the Foreclosure Action) represented CAF in the Prior Bankruptcy Case.

61.     The Defendant's intentionally filed the false Proof of Claim despite knowing that the Loan Documents merged into the Foreclosure Action.

62.     The Proof of Claim was inflated because it improperly sought, among other things, default rate interest. In fact, in the Addendum to the Proof of Claim, CAF stated that "Under the terms of the Note, regular interest is calculated at a rate of 8.5% per annum, and default interest is an additional 5% per annum."

63.     In addition, the false Proof of Claim sought attorneys' fees in the amount of $30,387.50. However, under the Foreclosure Judgment, CAF's allowed attorneys' fees were only in the amount of $7,500.00, and the attorneys' fees provision did not survive in the Foreclosure Judgment under the New Jersey merger doctrine.

64.     The Defendants filed the false Proof of Claim because they: (i) knew that the Plaintiff could not acquire the necessary funds to pay off CAF; and (ii) would obtain a valuable redevelopment project – the Property – at a foreclosure sale.

**E.     The Lift-Stay Motion, the Refinance Loan, and the Second Payoff Letter**

65.     On November 9, 2021, CAF, by and through Polsinelli, filed a motion for relief from stay seeking to, among other things, lift the stay with respect to the Property [Prior Bankruptcy Case Dkt. No. 26] (the "Lift Stay Motion").

66.     The Lift Stay Motion also alleged that as of September 14, 2021, the outstanding balance due and owing on the Note was $4,689,794.46.

67.     Once again, the figures used by the Defendants were false as those figures were based on the inflated First Payoff Letter rather than the Foreclosure Judgment.

68.     On May 16, 2022, the Plaintiff, by and through its then-counsel, filed a motion to voluntarily dismiss the Prior Bankruptcy Case [Prior Bankruptcy Case Dkt. No. 53].

69.     The basis for the dismissal motion was that the Plaintiff had obtained a commitment to payoff CAF (the "Refinance Loan") and could only close if the Prior Bankruptcy Case was dismissed.

70.     The commitment for the Refinance Loan was attached as an exhibit to the motion to dismiss.

71.     On June 3, 2022, this Court entered an Order, dismissing the Prior Bankruptcy Case, among other things [Prior Bankruptcy Case Dkt. No. 59].

72.     The closing of the Refinance Loan was scheduled for June 15, 2022.

73.     In the meantime, CAF had obtained stay relief and had rescheduled a sale of the Property for June 21, 2022.

74.    On June 7, 2022 – only approximately nine months after the date of the First Payoff Letter – CAF provided a second payoff letter (the "Second Payoff Letter"), this time demanding a payoff amount of $5,206,960.77, which was approximately $517,000.00 more than the payoff value in the First Payoff Letter.

75.    The $5,206,960.77 figure in the Second Payoff Letter is broken down as follows:

| | |
|---|---|
| Principal Balance | $4,550,000.00 |
| Interest Thru 6/15/2022 | $1,062,492.59 |
| Default Interest thru 6/15/2022 | $624,988.66 |
| Fees | $106,393.62 |
| 5% Maturity late fee | $227,500.00 |
| Release Fees | $348.00 |
| Funds owed by borrower (see details page) | $35,177.90 |
| Funds owed to borrower | ($0.00) |
| Unused Holdback Reserve | ($1,400,000.00) |
| **Total Payoff (includes $60.00 Payoff Demand Fee)** | **$5,206,960.77** |

76.    The figures in the "details page," which is appended to the Second Payoff Letter are broken down as follows:

| | |
|---|---|
| FC Attorney Fee | $93,013.70[2] |
| FC Attorney Cost | $4,992.93 |
| Appraisal | $4,000.00 |
| Late Charge | $3,276.99 |
| Vacant Prop Reg | $595.00 |
| BPO | $465.00 |
| Inspections | $35.00 |
| Phone Pay | $15.00 |
| | **$106,393.62** |

77.    CAF's alleged payoff in the Second Payoff Letter was even more inflated than the first. Crucially, the Second Payoff Letter again failed to comport with the Foreclosure Judgment.

---

[2] No explanation is given for an increase of approximately $60,000.00 in attorneys' fees when only a simple Lift Stay Motion was filed. As noted, there was no legal basis for any attorneys' fees at all.

78.     In actuality, the total amount that CAF should have been entitled to as of June 15, 2022 (the date of the closing on the Refinance Loan) was $4,347,155.63. This figure is broken down as follows:

$4,238,720.28 (*principal, interest & counsel fees as of 4/26/21*) x 3.5% = $148,355.20

$148,355.20 / 365 (*days in a year*) = $406.45 (*daily interest value*)

$406.45 x 415 days (*days between April 26, 2021, to June 15, 2022*) = $168,677.84

$168,677.84 + 4,238,720.28 (*principal, interest & counsel fees 4/26/21*) = $4,407,398.12.

79.     Thus, as of June 15, 2022, CAF was only entitled to $4,347,155.63.

80.     In other words, CAF sought $799,526.65 ***more than*** it was entitled to in the Second Payoff Letter ($5,206,960.77) and knew that the Plaintiff's refinance would not be able to close with that inflated payoff value.

81.     Had the Defendants provided the correct payoff value, the Refinance Loan would have closed and the underlying bankruptcy case (and this adversary proceeding) would not have been filed.

## F.     Further Bankruptcy Proceedings

82.     On June 23, 2022, the Plaintiff filed an Affidavit of Andy Alege pursuant to E.D.N.Y. LBR 1007-4 (the "1007 Affidavit").

83.     The 1007 Affidavit asserts, among other things, that CAF filed a false proof of claim in the Prior Bankruptcy Case, and set the facts alleged herein in great detail. The Plaintiff's counsel initiated a response to these facts.

84.     On July 13, 2022, CAF, through Polsinelli, filed a *Motion to Void Order of Dismissal Pursuant to Bankruptcy Rule 9024 in the Prior Bankruptcy Case* [Prior Bankruptcy Case Dkt. No. 65] (the "9024 Motion").

85.     The 9024 Motion seeks, among other things, an order avoiding the dismissal of the Prior Bankruptcy Case and "also seeks…an order…such that the stay relief order previously granted by the Court in this case [is] effective." 9024 Order ¶ 8.

86.     In other words, the 9024 Motion, in violation of the automatic stay in the Instant Bankruptcy Case, seeks to void the dismissal order in the Prior Bankruptcy Case and reopen the Prior Bankruptcy Case so that the stay-relief obtained by the Defendants could again become effective.

87.     The reasons why the Defendants want the previous stay relief to become effective again appears to be so that the stay in the Instant Bankruptcy Case is not applicable as to the Property, so that the Defendants can schedule another sale of the Property, and so that CAF can ultimately acquire a valuable redevelopment project.

88.     The 9024 Motion was filed in bad faith, as a litigation tactic, in response to the 1007 Affidavit.

89.     Instead of addressing the Plaintiff's assertions regarding the false Proof of Claim and attempting to correct their mistake, the Defendants filed the 9024 Motion, in violation of the automatic stay in the Instant Bankruptcy Case, as part of their scheme to hinder, delay, and frustrate the Plaintiff's bankruptcy rights to reorganize under Chapter 11.

90.     At the same time, the Defendants filed a *Motion for Relief from the Automatic Stay and In Rem Relief* in the Instant Bankruptcy Case [Instant Bankruptcy Case Dkt. No. 15] (the "In Rem Motion").

91.     Like 9024 Motion, the In Rem Motion also seeks stay relief.

92.     Critically, the Defendant's admit in the In Rem Motion that "[CAF's] claim ***had already been fixed by the judgment of the state court***." In Rem Motion ¶ 8 (emphasis added). This

directly contradicts the Defendants' meritless argument in the 9024 Motion seeking the vacatur of the dismissal order in the Prior Bankruptcy Case.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
### (Fraud)

93.    The Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "92" as if set forth fully herein.

94.    The Defendants perpetrated a fraud on the Bankruptcy Court and on the Plaintiff by filing the Proof of Claim, which was based on the inflated 2021 Payoff Letter and not even closely related to the Foreclosure Judgment.

95.    The Defendants knew that the Proof of Claim was fraudulent as the Proof of Claim was solely a reflection of the First Payoff Letter and did not comport with the Foreclosure Judgment.

96.    The Defendants knew that the Loan Documents merged into the Foreclosure Judgment and that the Loan Documents could no longer have served as a basis for determining the obligations of the parties.

97.    In fact, CAF admits to this in its In Rem Motion when it said that "[CAF's] claim *had already been fixed by the judgment of the state court*." In Rem Motion ¶ 8 (emphasis added).

98.    The actions of the Defendants constitute a fraud upon this Court and upon the Plaintiff.

99.    As a result of the fraud perpetrated by the Defendants, the Plaintiff was damaged.

100.    The Plaintiff's damages, which are in an amount to be determined at trial, include, but are not limited to: (i) the fees and costs associated with obtaining the Refinance Loan; (ii) the difference in the amount of interest paid on the full amount borrowed between the Refinance Loan

and the new loan that the Plaintiff would now need to obtain to payoff CAF; (iii) and all of the fees and costs associated with filing the underlying bankruptcy case and any subsequent refinance.

101.    The Plaintiff is entitled to recover those amounts as compensatory damages.

102.    In addition, the Plaintiff is entitled to recover punitive damages from the Defendants, in an amount to be determined by the Court, as the fraud committed by the Defendants was a fraud committed against the public and the Plaintiff, in that the Defendants' actions undermined the public's confidence in, and the integrity of, the Bankruptcy Court.

103.    By reason of the foregoing, the Plaintiff is entitled to a judgment against the Defendants for damages, in an amount to be determined at trial, together with punitive damages and interest at the legal rate.

## SECOND CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
### (Contempt Under the Court's Inherent Authority)

104.    The Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "103" as if set forth fully herein.

105.    The Bankruptcy Court has the inherent authority to impose sanctions for contempt.

106.    That inherent authority is "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *In re Plumeri*, 434 B.R. 515, 327-328 (S.D.N.Y., 2010), quoting *Chambers v. Nasca, Inc.*, 501 U.S. 32, 34,115 L.Ed.27, 111 S.Ct. 2123 (1991).

107.    The Proof of Claim was without color and was brought in bad faith.

108.    The Defendants knew that the Proof of Claim should have been based on the Foreclosure Judgment and not on the inflated 2021 Payoff Letter, which improperly sought, among other things, default rate interest and attorneys' fees and costs.

109.    The Defendants further knew that the Loan Documents merged into the Foreclosure Judgment and that the Loan Documents could no longer have served as a basis for determining the obligations of the parties.

110.    Indeed, CAF admits to this in its In Rem Motion when it stated that "[CAF's] claim *had already been fixed by the judgment of the state court*." In Rem Motion ¶ 8 (emphasis added).

111.    The Defendants knew that the Proof of Claim was false, and despite their knowledge, intentionally filed the Proof of Claim.

112.    When the Defendants were confronted about the false Proof of Claim in the 1007 Affidavit, the Defendants filed the 9024 Motion, in violation of the automatic stay in the Instant Bankruptcy Case, as a litigation tactic in an effort to reimpose the stay-relief obtained in the Prior Bankruptcy Case and to hinder, delay, and/or frustrate the Plaintiff's rights to reorganize in the Instant Bankruptcy Case.

113.    The Defendants actions constitute contempt, and the Court has the inherent authority to impose sanctions for contempt.

114.    By reason of the foregoing, the Defendants should therefore be sanctioned for contempt.

### THIRD CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
### (Contempt Under 11 U.S.C. § 105(a) and 18 U.S.C. § 152(4))

115.    The Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "114" as if set forth fully herein.

116.    The Bankruptcy Court has the statutory authority to impose sanctions for contempt.

117.    The statutory authority is section 105(a) of the Bankruptcy Code, which provides that a Bankruptcy Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing that the raising of an

issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders and rules, or to prevent an abuse of process."

118.    As held by the Court of Appeals in *Bassette v. Avco Fin. Servs.*, 230 F.3d 439, 444 (P 1 Cir., 2000) "§ 105 provides a bankruptcy court with statutory contempt powers, in addition to whatever inherent powers the court may have [citations omitted]. Those contempt powers inherently include the ability to sanction a party."

119.    A party may be sanctioned for contempt not only for violating provisions of the Bankruptcy Code but also for violating any other provision of the United States Code.

120.    Thus, a party may be sanctioned for violations of Chapter 9 of Title 18 of the United States Code.

121.    18 U.S.C. § 152(4) provides, in relevant part, "A person who ... (4) knowingly and fraudulently presents a false proof against the estate of a debtor, or uses and such claim in any case under title 11, in a personal capacity or as and through an agent, proxy, or attorney ... shall be fined under this title, imprisoned not more than 5 years, or both…"

122.    The Defendants clearly violated 18 U.S.C. 152(4) by knowingly and falsely presenting the Proof of Claim against the Plaintiff's estate in the Prior Bankruptcy Case.

123.    The Proof of Claim was without color and was brought in bad faith.

124.    The Defendants knew that the Proof of Claim should have been based on the Foreclosure Judgment and not on the inflated 2021 Payoff Letter, which improperly sought, among other things, default rate interest and attorneys' fees and costs.

125.    The Defendants further knew that the Loan Documents merged into the Final Judgment and that the Loan Documents could no longer have served as a basis for determining the obligations of the parties.

126.    Indeed, CAF admits to this in its In Rem Motion when it stated that "[CAF's] claim *had already been fixed by the judgment of the state court*." In Rem Motion ¶ 8 (emphasis added).

127.    The Defendants knew that the Proof of Claim was false, and despite their knowledge, intentionally filed the Proof of Claim.

128.    When the Defendants were confronted about the false Proof of Claim in the 1007 Affidavit, the Defendants filed the 9024 Motion, in violation of the automatic stay in the Instant Bankruptcy Case, as a litigation tactic in an effort to reimpose the stay-relief obtained in the Prior Bankruptcy Case and to hinder, delay, and/or frustrate the Plaintiff's rights to reorganize in the Instant Bankruptcy Case.

129.    The Defendants actions constitute contempt under section 105(a) of the Bankruptcy Code and 18 U.S.C. § 152(4).

130.    By reason of the foregoing, the Defendants should therefore be sanctioned for contempt.

## FOURTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
### (Abuse of Process)

131.    The Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "130" as if set forth fully herein.

132.    The Defendants filed the Proof of Claim knowing that it was false.

133.    When the Defendants filed the false Proof of Claim, that filing contravened the purpose of certain specific bankruptcy sections.

134.    Under section 501 of the Bankruptcy Code, a creditor is allowed to file a proof of claim, and under section 502(a), the mere filing of a proof of claim means that it is deemed allowed.

135.    Under Bankruptcy Rule 3001(f), a proof of claim filed in accordance with the Bankruptcy Rules constitutes *prima facie* evidence of the validity and amount of the claim.

136.    When the Defendants filed the false Proof of Claim, which is deemed allowed by section 502(a), and entitled to *prima facie* presumption of validity and amount by Rule 3001(f), the Defendants abused the bankruptcy process.

137.    By reason of the foregoing, the Plaintiff is entitled to a judgment against the Defendants for damages, in an amount to be determined at trial, together with punitive damages and interest at the legal rate.

### FIFTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
### (Attorneys' Fees and Costs Under the Court's Inherent Powers)

138.    The Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "137" as if set forth fully herein.

139.    Attorneys' fees may be awarded pursuant to the "court's inherent equitable power" where one acts "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 258-259, 44 L.Ed.2d41, S.Ct. 1612 (quoting *F.D. Rich Co. v. United States*, 417 U.S. 116, 129 40 L.Ed. 2d 703, 94. S.Ct. 2147 (1974))," quoted in *In re Usoskin*, 61 B.R. 869, 872-873 (U.S. Bankr. Ct. E.D.N.Y., 1986).

140.    "The bad faith exception for the award of attorneys' fees is not restricted to cases where the action is filed in bad faith. *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 756, 65 L.Ed.2d. 488, 100 S.Ct. 2455 (1980)[,]" quoted in *In re Usoskin*, 61 BR at 873.

141.    "It may also be found in the conduct of the litigation. *Id.* at 766," quoted in *In re Usoskin*, 61 BR at 873.

142.     The Defendants acted in bad faith by filing the false Proof of Claim and then when confronted, by filing the 9024 Motion in an effort to conceal their fraud.

143.     The Defendants vexatiously multiplied the case by filing the 9024 Motion in an effort to reimpose the stay-relief obtained in the Prior Bankruptcy Case and to hinder, delay, and/or frustrate the Plaintiff's rights to reorganize in the Instant Bankruptcy Case.

144.     There is no legal or equitable basis for filing the 9024 Motion.

145.     The Defendants knew that the Proof of Claim should not have been based on the 2021 Payoff Letter, which sought an inflated amount as opposed to the Foreclosure Judgment.

146.     The Defendants further knew that the Loan Documents merged into the Foreclosure Judgment and that the Loan Documents could no longer have served as a basis for determining the obligations of the parties.

147.     Indeed, CAF admits to this in its In Rem Motion when it stated that "[CAF's] claim *had already been fixed by the judgment of the state court*." In Rem Motion ¶ 8 (emphasis added).

148.     The Defendants knew that the Proof of Claim was false, and despite their knowledge, intentionally filed the Proof of Claim.

149.     By reason of the foregoing, the Plaintiff is entitled to a judgment against the Defendants for reasonable attorneys' fees and costs in an amount to be determined in connection with the prosecution of this action.

## SIXTH CLAIM FOR RELIEF AGAINST POLSINELLI
### (Counsel's Liability for Excessive Costs)

150.     The Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "149" as if set forth fully herein.

151.     In addition to its inherent power to award attorneys' fees for misconduct, a federal court sitting in bankruptcy may award attorneys' fees pursuant to 28 U.S.C. § 1927, which provides

that "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiples the proceeding in any case unreasonably and vexatiously may be required by the Court to satisfy personally the excess costs, and expenses and attorneys' fees because of such conduct."

152.    Polsinelli acted in bad faith by filing the false Proof of Claim and then when confronted, by filing the 9024 Motion in an effort to conceal its fraud.

153.    Polsinelli vexatiously multiplied the case by filing the 9024 Motion in an effort to reimpose the stay-relief obtained in the Prior Bankruptcy Case and to hinder, delay, and/or frustrate the Plaintiff's rights to reorganize in the Instant Bankruptcy Case.

154.    There is no legal or equitable basis for filing the 9024 Motion.

155.    Polsinelli knew that the Proof of Claim should not have been based on the 2021 Payoff Letter, which sought an inflated amount as opposed to the Final Judgment.

156.    Polsinelli further knew that the Loan Documents merged into the Final Judgment and that the Loan Documents could no longer have served as a basis for determining the obligations of the parties.

157.    Indeed, in its In Rem Motion, Polsinelli stated that "[CAF's] claim *had already been fixed by the judgment of the state court*." In Rem Motion ¶ 8 (emphasis added).

158.    Polsinelli knew that the Proof of Claim was false, and despite its knowledge, intentionally filed the Proof of Claim.

159.    By reason of the foregoing, the Plaintiff is entitled to a judgment against Polsinelli for reasonable attorneys' fees and costs in an amount to be determined in connection with the prosecution of this action.

## **RESERVATION OF RIGHTS**

160.     During the course of this adversary proceeding, the Plaintiff may learn (through discovery or otherwise) of additional causes of action. Accordingly, the Plaintiff reserves its right to amend this Complaint to include: (i) further information regarding the allegations herein; (ii) revisions to the Defendants' names; (iii) additional defendants; (iv) additional causes of action; and/or (v) to seek recovery of such additional transfers (the "Amendments"), that may become known to the Plaintiff at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to the Complaint.

**WHEREFORE**, the Plaintiff respectfully demands: (i) judgment against the Defendants consistent with the allegations set forth in the Complaint; together with (ii) such other, further, and different relief that this Court deems just, proper, and equitable under the facts and circumstances herein.

Dated: July 25, 2022
        Huntington, New York

Respectfully submitted,

**Law Offices of Avrum J. PLLC**

By:     _/s/ Avrum J. Rosen_
        Avrum J. Rosen, Esq.
        Alex E. Tsionis, Esq.
        Nico G. Pizzo, Esq.
        38 New Street
        Huntington, New York 11743
        Tel: (631) 423-8527
        arosen@ajrlawny.com
        atsionis@ajrlawny.com
        npizzo@ajrlawny.com

        _Counsel to the Plaintiff-Debtor_