**Law Offices of Avrum J. Rosen, PLLC**
38 New Street
Huntington, New York 11743
(631) 423-8527
Avrum J. Rosen, Esq.
Nico G. Pizzo, Esq.

*Proposed Counsel for the Debtor and Debtor-In-Possession*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
In re:                                                              Chapter 11

FRALEG GROUP, INC.,                                  Case No.: 22-41410-jmm

        Debtor.
---------------------------------------------------------X

## DEBTOR'S OPPOSITION TO CAF BORROWER GS LLC'S
## MOTION FOR RELIEF FROM THE AUTOMATIC STAY AND *IN REM* RELIEF

   Fraleg Group, Inc., the debtor and debtor-in-possession (the "Debtor"), in this Chapter 11 case, by and through its proposed counsel the Law Offices of Avrum J. Rosen, PLLC, respectfully submits this opposition to CAF Borrower GS LLC's (the "Lender"), *Motion for Relief From the Automatic Stay and In Rem Relief* [Dkt. No. 15] (the "*In Rem* Motion"), and respectfully sets forth and represents as follows:

### PRELIMINARY STATEMENT

   1.  The Debtor objects to the Lender's *In Rem* Motion and seeks its denial for the following reasons: (i) the Lender did not make a *prima facie* case because the Lender failed to plead a single *Sonnax* factor is in its favor of granting an automatic stay; and (ii) the Lender failed to establish cause for the relief sought because (a) equity exists in the Property, (b) the Property is necessary for the reorganization of the bankruptcy estate, (c) the Debtor's second filing was not a bad faith filing, and (d) the Debtor's second filing was not part of a scheme to delay, hinder, or defraud creditors.

1

## RELEVANT BACKGROUND

**A.     The Bankruptcy Filing and the Debtor's Business**

2.     On June 17, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

3.     The Debtor continues to operate its business and manage its property as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner or committee has been appointed in this case.

4.     The Debtor is a real estate investment company formed in or around 2017 and its business involves the purchase, ownership, management, rental and/or sale of real estate for profit. The Debtor is a New York corporation, with its corporate office located at 931 Lincoln Place, Brooklyn, New York 11213.

5.     The Plaintiff is the fee owner of the of the real property commonly known as 112 North Walnut Street, East Orange, New Jersey 07017 (the "Property"). The Property is improved by a 29-unit residential building, which is currently vacant.

6.     In addition, the Plaintiff is also the fee owner of the real property commonly known as 116 North Walnut Street, East Orange, New Jersey 07017 (the "Vacant Lot"). The Vacant Lot is unimproved, is adjacent to the Property, and is used solely as parking for the Property. Currently, the Plaintiff does not own or manage any other real estate.  The full facts of the prior case and this case are set forth in the Debtor's Rule 1007 Affidavit [Dkt. No. 5] and are incorporated herein by reference.

B.     **The Prior Dismissed Bankruptcy Case**

7.     Prior to the Petition Date, on September 14, 2021, the Plaintiff previously filed a chapter 11 petition in the dismissed bankruptcy action captioned *Fraleg Group, Inc., Chapter 11 Subchapter V Case Number 21-42322-jmm* (the "Dismissed Bankruptcy"). The Plaintiff was represented by Hemmings & Snell LLP in the Dismissed Bankruptcy.

8.     On November 29, 2021, the Lender filed a motion seeking relief from the automatic stay [Dismissed Bankruptcy Dkt. No. 26] (the "Stay Relief Motion"). The Lender's Stay Relief Motion was sought to continue its litigation of the Foreclosure Action.

9.     On January 12, 2022, the Debtor filed an objection to the Lender's Stay Relief Motion [Dismissed Bankruptcy Dkt. No. 35].

10.    On January 19, 2022 the parties appeared at a hearing on the Lender's Stay Relief Motion and the Court ordered a discovery period.

11.    On February 22, 2022, the Lender filed an amended Stay Relief Motion [Dismissed Bankruptcy Dkt. No. 39]. Following a hearing on March 30, 2022, the Court entered an Order granting the Lender's Stay Relief Motion [Dismissed Bankruptcy Dkt. No. 42] with respect to the Property (the "Stay Relief Order").

12.    On May 16, 2022, the Debtor, by and through its then-counsel, filed a motion to voluntarily dismiss the Initial Bankruptcy Case [Dismissed Bankruptcy Dkt. No. 53]. The basis for that motion was that the Debtor had obtained a commitment to pay off the Lender and could only close if the case was dismissed.

13.    The Court entered an Order dismissing the Dismissed Bankruptcy case on June 3, 2022 [Dismissed Bankruptcy Dkt. No. 59] (the "Order of Dismissal").

14. On June 7, 2022 the Debtor's then-counsel requested a pay-off letter from the Lender's Counsel for a closing scheduled for June 15, 2022. Simultaneously, the adjourned foreclosure sale was scheduled for June 21, 2022. That pay-off letter [Exhibit "B" to the Rule 1007 Affidavit] was for approximately $800,000.00 more than the amount actually due pursuant to the Judgment of Foreclosure and Sale [Exhibit "F" to the 1007 Affidavit].

15. On July 13, 2022, approximately twenty-six (26) days after the automatic stay was in place in the instant bankruptcy case, the Lender filed the 9024 Motion in the Dismissed Bankruptcy seeking, among other things, an Order voiding the Order of Dismissal, reinstating the Dismissed Bankruptcy case, and declaring the Stay Relief Order to be in effect against the Debtor.

**C.     The Action Taken in the Instance Bankruptcy Proceeding**

16. On the Petition Date (June 17, 2022), immediately after filing the Chapter 11 Petition in the instant bankruptcy, the Debtor, by and through the undersigned counsel, notified the Lender of the active bankruptcy case filing and the automatic stay.

17. On June 23, 2022, the Rule 1007 Affidavit was filed [Dkt No. 5] which clearly set forth the allegations against the Lender and its Counsel for filing a false claim and lift stay motion in the Dismissed Case and in persisting its demand for approximately $800,000.00 more than the amount due pursuant to the Foreclosure Judgment. It must be noted that in none of the pleadings filed by the Lender, has it disputed those calculations.

18. The Debtor timely filed its full petition, schedules, statements and supporting documents.

19. On July 14, 2022, the Lender filed the *In Rem* Motion.

20. On July 25, 2022, the Debtor commenced an adversary proceeding against the Lender in the instant bankruptcy case, styled as *Fraleg Group, Inc., against CAF Borrower GS*

4

*LLC and Polsinelli PC*, Adversary Proceeding Number 22-01060-jmm (the "<u>Adversary Proceeding</u>"). The Debtor seeks, *inter alia*, damages and contempt based on the defendants' alleged fraud and abuse of process.

## DISCUSSION

### I. The Lender Failed to Make a *Prima Facie* Case for Relief from the Automatic Stay

21.     The Lender's *In Rem* Motion fails to make a *prima facie* case because it seeks relief from the automatic stay pursuant to section 362 of the Bankruptcy Code, however it argues that it should be entitled to that relief by using the court's analysis used to dismiss a bankruptcy.

22.     It is well settled in the Second Circuit that that the movant bears the burden of establishing sufficient cause to justify lifting the automatic stay. *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1285 (2d Cir. 1990). To establish cause, the court's look to an examination of the factors set forth in *Sonnax*.

23.     Not only did the Lender fail to establish that the *Sonnax* factors weigh in favor of lifting the stay, the Lender failed to even cite the case to establish a *prima facie* case to lift the automatic stay.

24.     "If the movant fails to make an initial showing of cause, however, the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection." *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1285 (2d Cir. 1990). If the movant fails to demonstrate sufficient cause, the burden does not shift; rather, the court should refuse to grant relief from the stay. *In re Schick*, 232 B.R. 589, 600 (Bankr. S.D.N.Y. 1999).

### II. The Facts of the Debtor's Case Do Not Support Lender's Request for Relief from the Automatic Stay under Section 362(d)(2)

25.     The Lender argues that it is entitled to relief from the automatic stay pursuant to section 362(d)(2) of the Bankruptcy. However, the Lender has presented its arguments under

section 362(d)(2) using old appraisals (which are not attached to its *In Rem* Motion), questionable secured loan values, and irrelevant facts as to the Debtor's business to support its argument.

      **i.**      **Equity exists in the Property**

26.    The Lender is not entitled to relief from the automatic stay under section 362(d)(2) of the Bankruptcy Code because there is equity in the Property.

27.    The Debtor is the fee owner of the Property and the Vacant Lot. The Debtor asserts that there is equity in the Property and Vacant Lot combined because according to an appraisal dated May 23, 2022, the "as is" value is not less than $7,500,000. Attached hereto as **Exhibit "A"** is a copy of the appraisal.

28.    The Debtor asserts that the Lender is only owed approximately $4,429,746.87, and equity clearly exists above the $4.4 million and the Lender's motion should be denied. However, even if this Court was to use the Debtor inflated claim of – somewhere in the range of $5,200,000 to $5,400,000 – equity also exists in the Property and Vacant Lot, and the Debtor's motion should be denied.

29.    Thus, the Lender is not entitled to relief from the automatic stay.

      **ii.**      **The Property is necessary to an effective reorganization of the Debtor's bankruptcy estate**

30.    Even in the event that the Debtor did not have equity in the Property, the Lender is not entitled to the relief because the Property is necessary to an effective reorganization of the Debtor's bankruptcy estate.

31.    As the Lender correctly cited, the debtor need not show that the plan is confirmable, but that the things which are to be done after confirmation can be done as a practical matter. *In re 160 Bleecker St. Assocs.*, 156 B.R. 405, 410–11 (S.D.N.Y. 1993). "A motion for relief from the stay should not be turned into a confirmation hearing; the debtor need only show that where there

is lack of equity, the proposed plan has a realistic chance of being confirmed and is not patently unconfirmable." *See*. *United Sav. Ass'n of Tex v. Timbers of Inwood Forest Assoc.*, 484 U.S. 365, 375 (1998); *In re Kolnberger*, 603 B.R. 253, 269 (Bankr. E.D.N.Y. 2019).

32. Initially, it must be noted that the Lender's argument that the Debtor has no reasonable prospect of a successful reorganization because "[t]he Debtor has no revenue, and no prospect for obtaining revenue unless it renovates the [Property and] The Debtor lacks any funding to complete the renovations" is flawed and without merit. The Debtor is a real estate investment/development company, and its business involves the purchase, ownership, management, rental and/or sale of real estate for profit.

33. The fact that the Debtor has no revenue and will not obtain revenue until it renovates the Property and sell the units, does not mean that the Debtor cannot put forth a successful chapter 11 plan of reorganization. In fact, the Debtor filed the instant bankruptcy petition with the intent to do just that, file a plan of reorganization and finish the construction at the Property. The Debtor will maintain costs of insurance, maintenance, etc., by voluntary payments from the Debtor's principals.

34. Prior to the Petition Date, and during the course of the Debtor's Dismissed Bankruptcy, the Debtor contacted several lenders to obtain refinancing and construction loans to finance the Debtor's completed construction costs on the Property, and sell the units for a profit.

35. In furtherance of that goal, the Debtor had received offers from lenders such as, Fortress Holdings and Inivation Aps. Between January and March 2022, the Debtor received proposals for $5,748,753.00 and $4,500,000.00 respectively from those lenders. Attached hereto is **Exhibit "B"** are copies of the loan term sheets and estimated pricing proposal. The Debtor's testimony during the Dismissed Bankruptcy reflected these lenders, which were admittedly not

7

sufficient to finance the Lender and finish the construction.

36. However, the Debtor then engaged the services of a broker and title company and received a loan commitment in or around April 2022 of $6,653,701.02 for refinancing and construction costs. Attached hereto as **Exhibit "C"** is a copy of the email chain with the Debtor's title company, broker and loan officer.

37. As it was more fully and sufficiently alleged in the Adversary Proceeding, when the Lender was informed of the Debtor's financing, it provided the Debtor with a payoff letter with an even larger inflated sum knowing that the Debtor's refinance would not be able to close. Had the Lender provide the correct payoff, the refinance would have closed, the Dismissed Bankruptcy Case would have closed and the Active Bankruptcy Case would not have been filed.

38. The Debtor intends to use the same or similar financing as Exhibit B, clear up the issues surrounding the payoff letter disputes and finish the construction at the Property to sell the units as soon as reasonable possible.

39. The Debtor's principals are familiar with construction costs and timelines. At the 341(a) meeting of creditors, the Debtor's president testified that it expects construction to be completed in some or most of the units to begin marketing to sell in approximately 6 months after construction resumes.

40. As it was stated above, the Debtor's assertions and plan to reorganize this bankruptcy estate is not a secret plot of the Debtor to delay the project. Its intentions to propose a plan that has a realistic chance of being confirmed have been clear since the inception of the filings and were laid out in the Debtor's 1007 Affidavit, its 341(a) meeting of creditors, and pleadings filed in this Chapter 11 bankruptcy. In fact, the only missing element is the determination of the correct value of the Lender's claim.

### III. The Facts of the Debtor's Case Do Not Support Lender's Request for Relief from the Automatic Stay under Section 362(d)(1)

41. The Lender argues that the bankruptcy filing was a bad faith filing under the Bankruptcy Code, and thus should be used as a factor to lift the automatic stay in this proceeding. The Debtor asserts that the instant bankruptcy was not filed in bad faith.

42. In support of its motion, the Lender has relied heavily on the application of the "bad-faith" factors set forth in *C-TC 9th Avenue Partnership*, 113 F.3d 1304, 1311 (2d Cir. 1997). However, the *C-TC* factors should only "guide courts" in "assessing the totality of the circumstances," and "[d]epending on the situation, one or another factor may have greater weight, and the number of factors on one side or the other of the balance is not, standing alone, determinative of the outcome." *In re 300 Wash. St. LLC*, 528 B.R. 534, 551 (Bankr. E.D.N.Y. 2015) *quoting In re Hartford & York LLC*, No. 13-45563, 2014 Bankr. LEXIS 997, 2014 WL 985449,*4 (Bankr. E.D.N.Y. 2014).

43. Even if all, or nearly all, of the *C-TC* factors are arguably present, a debtor may still establish that it has an ability to effectively reorganize. *See e.g., In re 68 W. 127 St., LLC*, 285 B.R. 838 (Bankr. S.D.N.Y. 2002). Applying a "mechanical approach" to the *C-TC* bad faith factors "would automatically doom almost every single asset case, *ab initio*." *In re Willows of Coventry, Ltd. P'ship*, 154 B.R. 959, 967 (Bankr. N.D. Ind. 1993).

44. Additionally, in its analysis of the *C-TC* case, the Lender has neglected to address the impact of the enactment of section 362(d)(3) of the Bankruptcy Code, which states:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> (3) with respect to a stay of an act against single asset real estate under subsection (a), by a creditor whose claim is secured by an interest in such real estate, unless, not later than the date that is 90 days after the entry of the order for relief (or such later date as the court may determine for cause by order entered

9

>    within that 90-day period) or 30 days after the court determines that the debtor is subject to this paragraph, whichever is later—
>
>    (A) the debtor has filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or
>    (B) the debtor has commenced monthly payments that—
>
>    (i) may, in the debtor's sole discretion, notwithstanding section 363(c)(2) [11 USCS § 363(c)(2)], be made from rents or other income generated before, on, or after the date of the commencement of the case by or from the property to each creditor whose claim is secured by such real estate (other than a claim secured by a judgment lien or by an unmatured statutory lien); and
>
>    (ii) are in an amount equal to interest at the then applicable nondefault contract rate of interest on the value of the creditor's interest in the real estate;

11 U.S.C. §362(d)(3).

45.    Since the enactment of section 362(d)(3) of the Bankruptcy Code in 2005, the cases have modified how the *C-TC* factors are applied. *Arm Ventures, LLC*, 564 B.R. 77, FN 14 (Bankr. S.D. Fla. 2017) ("After adoption of the single asset real estate provisions, the fact that a debtor only has one asset and few or no employees is not as significant when the debtor complies with the requirements of 11 U.S.C. §362(d)(3) and timely files a plan or starts making the required payments). *In In re RYYZ, LLC*, 490 B.R. 29 (Bankr. E.D.N.Y. 2013). In this case, the Debtor's time pursuant to that section has not yet run.

46.    Judge Feller went through a thorough review of the case law on the similarities between a motion to lift stay and a motion to dismiss in light of section 362(d)(3), finding that section 362(d)(3) is designed to protect secured creditors by requiring debtors to act quickly, either by filing a confirmable plan within a prescribed timeframe or by compensating the creditor with statutory payments. *See, e.g., NationsBank, N.A. v. LDN Corp*. (*In re LDN Corp*.), 191 B.R. 320, 327 (1996) (stating that Section 362(d)(3) "was enacted to assist secured creditors in single asset real estate cases"); *In re Heather Apts. Ltd. P'ship*, 366 B.R. 45, 50 (Bankr. D. Minn. 2007)

("[W]here the case does not early kick forward toward confirmation," the purpose of Section 362(d)(3)(B) is to "compensate [the] mortgagee for the time-value of the mortgagee's debt investment, by the payment of interest at the original contractual rate.").

47. At the same time, section 362(d)(3) provides a window of opportunity for debtors. Section 362(d)(3)'s specific, albeit nonexclusive, criteria for stay relief ought to counsel against knee-jerk motions at the outset of the case that merely parrot the elements of "bad faith," or other grounds for relief, just because the case involves single asset real estate. *LDN*, 191 B.R. at 327. Its parameters often dictate how a case proceeds, allowing debtors to focus their efforts on formulating and filing a meaningful plan and/or negotiating a compromise. Thus, Section 362(d)(3) protects secured creditors by "'ensur[ing] that the automatic stay provision is not abused,'" and helps debtors by affording them an "'opportunity to create a workable plan of reorganization.'" *Id.* at 326 (quoting S. Rep. No. 103-168, 1st Sess. (1993)).

48. In *In re 68 W. 127 St., LLC*, 285 B.R. 838, 846 (Bankr. S.D.N.Y. 2002). Judge Drain set forth the interplay between these two statutes as follows:

> In practice, cases relying on "bad faith" therefore generally hinge on reasons that also would satisfy the specifically listed criteria in sections 362(d)(2) and 362(d)(3) of the Bankruptcy Code, or on several of the specific criteria in sections 1112(b)(1)-(10), as the case may be. *In re Gucci*, 174 B.R. 401, 410 (Bankr. S.D.N.Y. 1994). See also 3 COLLIER ON BANKRUPTCY P 362.07[6][a] (15th ed. 2002), at 362-105 (noting that Congress' enactment of section 362(d)(3) recognizes the propriety of reorganization by "single asset real estate" debtors, absent extraordinary circumstances, notwithstanding their violation of most of the commonly listed bad faith factors out of the gate).

*In re 68 W. 127 St., LLC*, 285 B.R. 838, 846 (Bankr. S.D.N.Y. 2002).

49. Congress has made it clear that the filing of the typical single asset real estate case is both permitted and is not *per se* bad faith.

50. Turning next to the elements alleged by the Lender, the Lender's argument is

11

flawed on several aspects.

51.     First, the Debtor does not have *only* one asset. The Debtor is also the owner in fee simple in the Vacant Lot. The Vacant Lot has value, and together with the Property, that value is expanded as it provides the parking necessary by the municipality for the housing development plan of the 29-unit building at the Property.[1]

52.     As the Lender pointed out, the Debtor does have unsecured creditors. Admittedly, the value is less than the Lender's secured mortgage interest. However, the Debtor asserts that it is common wherein the Debtor's business is to purchase, redevelopment and sell real estate that the primary mortgage, which includes construction loans, is the majority claim holder.

53.     Lastly, while the Debtor's primary asset was in foreclosure and the instant chapter 11 petition was filed before the foreclosure sale, the Debtor asserts that did not file the petition in bad faith because it has a plan to satisfy the Lender's true and accurate claim owed. Additionally, the Debtor intends to finance the rest of the construction required to sell the unites at the Property for a profit.

54.     As it was more fully alleged in the 1007 Affidavit, the pleadings filed in this bankruptcy matter and the Adversary Proceeding filed, the Debtor is not seeking to simply frustrate the foreclosure sale and buy an extension of time from the automatic stay. The Debtor has not only set forth its intentions from the inception, but it has already taken many steps in furtherance of putting forth a confirmable chapter 11 plan.

### IV.     The Debtor's Second Filing Does Not Entitle the Lender Relief From the Automatic Stay

55.     The Lender argues that the Debtor's second bankruptcy filing alone is proof that

---

[1] As noted in the attached appraisal [Exhibit A. Pg 4] that additional parking may permit a total of 47 units resulting in a $12,000,000 value.

the petition was filed in bad faith and was part of a scheme to delay, hinder, or defraud creditors under section "364(d)(2)(B)" of the Bankruptcy Code. The Debtor asserts that it was not filed in bad faith and was not part of any scheme to delay, hinder or defraud creditors.

56. It must be first corrected, that the Lender miscites the Bankruptcy Code on multiple occasions in these arguments. First the Lender cites section 364(d)(2) (s*ic*) of the Bankruptcy Code, which actually states "In any hearing under this subsection, the trustee has the burden of proof on the issue of adequate protection" 11 U.S.C. § 364(d)(2). Not only does the Debtor assert that this section is not relevant in the instant *In Rem* Motion, but the Lender also cites to a section of the Bankruptcy Code that does not even exist in "364(d)(2)(B)." In the very same paragraph the Debtor references subsection (a) of section 342, which permits the Trustee to operate the debtor's business and obtain unsecured credit in the ordinary course of business. Similarly, this section of the Bankruptcy Code does not apply to the instant relief.

57. It can be assumed from the context of the Lender's *In Rem* Motion that it intended to cite to section 362 of the Bankruptcy Code. The Debtor addressed above why the single act of filing the Chapter 11 petition was not proof of bad faith.

58. In addition, the Debtor has set forth in its multiple timely filed pleadings, 1007 Affidavit and Adversary Proceeding the purpose of filing the instant bankruptcy is to, among other things, resolve the issues of the Lender's alleged claim and to obtain financing to pay the Lender's allowed claim and complete the construction as an exit strategy. Furthermore, the Debtor has retained experienced bankruptcy counsel to handle the few remaining issues and set forth a confirmable plan to reorganize the Debtor's estate in a timely manner.

59. The Debtor is not seeking to frustrate the foreclosure process, but simply protecting its rights in the Property. The Debtor did not file the instant bankruptcy as part of a scheme to

delay, hinder, or defraud creditors. The Debtor simply intends to reorganize its bankruptcy estate.

## V.      The Lender is not Entitled to Equitable relief under the Doctrine of Unclean Hands

60.     The Lender should not be entitled to an equitable remedy – relief from the automatic stay – in this case under the doctrine of unclean hands because it filed a false claim in the Dismissed Bankruptcy, and continues to maintain that it is owed more than $800,000.00 more than the amount due pursuant to the Foreclosure Judgment.

61.     The doctrine of unclean hands is based on the maxim that "one who comes into equity must come with clean hands." *Bentley v. Tibbals*, 223 F. 247, 1915 Dec. Comm'r Pat. 251 (2d Cir. 1915). The defense is limited by the rule that the plaintiff's improper conduct "must be related in some substantial and significant way to the claim he now asserts." 1 Dan B. Dobbs, Law of Remedies § 2-4(2), at 95 (2nd ed. 1993) ("DOBBS") (footnote omitted).

62.     Thus, under New York law, the unclean hands doctrine "bars the grant of equitable relief where the defendant proves: '(1) that the plaintiff is guilty of immoral, unconscionable conduct directly related to the subject matter in litigation; (2) that the conduct was relied upon by the defendant; and (3) that the defendant was injured thereby.'" *Atl. Cas. Ins. Co. v. Coffey*, 548 F. App'x 661, 664 (2d Cir. 2013) (*quoting Lia v. Saporito*, 909 F. Supp. 2d 149, 174 (E.D.N.Y. 2012), cert. denied, 134 S. Ct. 2305, 189 L. Ed. 2d 176 (2014)).

63.     The Debtor's Rule 1007 Affidavit together with the complaint filed in the Adversary Proceeding, set forth the allegations against the Lender and its Counsel surrounding the circumstances of the false claim that was filed in the Dismissed Case and in persisting its demand for approximately $800,000.00 more than the amount due pursuant to the Foreclosure Judgment. It must be noted that in none of the pleadings filed by the Lender, has it disputed those calculations.

64.     The requirements under the unclean hands doctrine are met in this case based on

the following three (3) reasons.

65. First, the conduct in question – the Lender's false proof of claim based off the Lender's inflated payoff value – is related to the subject matter of this motion because it seeks to lift the automatic stay to pursue a foreclosure sale, based on its inflated payoff value.

66. Second, the conduct was relief upon by the Debtor because it dismissed its Dismissed Bankruptcy with the goal of refinancing but with the inflated value of the loan, the Debtor could not have refinanced the higher amount and funded the construction.

67. Third, the Debtor was injured when it lost its proposed financing to finish the project and had to incur costs to file the instant bankruptcy to remedy the issue.

68. Therefore, the unclean hands doctrine should now bar the Lender from seeking equitable relief.

## **CONCLUSION**

69. The *In Rem* Motion must be denied. The *In Rem* Motion is on its face procedurally defective because the Lender failed to plead a single *Sonnax* factor in its favor of granting an automatic stay.

[*Remainder of Page Intentionally Left Blank*]

70. Further, the *In Rem* Motion must be denied because the Lender failed to establish cause for the relief sought because the equity exists in the Property and the Property is necessary for the reorganization of the bankruptcy estate.

**WHEREFORE**, for the reasons set forth above, The Debtor respectfully requests that this Honorable Court enter an Order: (i) denying the *In Rem* Motion; together with (ii) such other, further and different relief as this Honorable Court deems just, proper and equitable.

Dated: August 10, 2022　　　　　　　　　　　　　Respectfully submitted,
　　　　　Huntington, New York

**Law Offices of Avrum J. Rosen, PLLC**

By:　*/s/ Avrum J. Rosen*
　　　Avrum J. Rosen, Esq.
　　　Nico G. Pizzo, Esq.
　　　38 New Street
　　　Huntington, NY 11743
　　　(631) 423-8527
　　　arosen@ajrlawny.com
　　　npizzo@ajrlawny.com

　　　*Proposed Counsel for the Debtor*
　　　*and Debtor-In-Possession*