UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
_____

In re:

Fraleg Group, Inc.,                              Case No. 22-41410-jmm

               Debtor.                         Chapter 11


_____


### LENDER'S REPLY IN FURTHER SUPPORT OF ITS
### MOTION FOR RELIEF FROM THE AUTOMATIC STAY AND *IN REM* RELIEF



POLSINELLI PC

David D. Ferguson
Morgan C. Fiander
600 Third Avenue, 42nd Floor
New York, New York 10016
(212) 684-0199

*Attorneys for CAF Borrower GS, LLC*

## <u>TABLE OF CONTENTS</u>

I.      Preliminary Statement........................................................................................ 1

II.     Fraleg's second bankruptcy is based on nothing but falsehoods and a failure of Fraleg's counsel to investigate applicable New Jersey foreclosure law. ......................................... 3

III.    Lender was, and is, entitled to Stay Relief....................................................... 16

IV.     The Doctrine of Unclean Hands is Not Applicable ........................................ 16

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*79-83 Thirteenth Ave., Limited v. De Marco,*
79 N.J. Super. 47 (Law Div. 1963) ..............................................................14, 15, 18

*Alcoa Edgewater No. 1 Fed. Credit Union v. Carrol,*
44 N.J. 442 (1965) ...............................................................................................15, 18

*Central Penn Nat. Bank v. Stonebridge Ltd.,*
185 N.J. Super. 289 (Ch. Div. 1982) ..................................................................15, 19

*First Union Nat. Bank v. Penn Salem Marina, Inc.,*
190 N.J. 342 (2007) ............................................................................................14, 18

*Greystone Bank v. Samsudeen,*
2012 WL 13034135 (D.N.J. 2012) .....................................................................15, 19

*Hyun Kim v. Jung Brothers, LLC,*
2020 WL 1190461 (App. Div. 2020).................................................................15, 18

*In re Roach,*
824 F.2d 1370 (3d Cir. 1987)............................................................................13, 17

*Silver v. Williams,*
72 N.J. Super. 564 (App. Div. 1962) ................................................................15, 18

*Silvestri v. Wells Fargo Bank Minnesota, N.A.,*
2005 WL 2810698 (Ch. Div. 2005).............................................................13, 17, 18

*Virginia Beach Fed. v. Bank of New York,*
299 N.J. Super 181 (App. Div. 1998) ..............................................................13, 17

*Washington Mut., F.A. v. Wroblewski,*
396 N.J. Super. 14 (Ch. Div. 2007) ................................................................13, 17

**Statutes**

Bankruptcy Code § 362(d)(3) ................................................................................1, 2

Code § 362(d)(2)........................................................................................................16

**Other Authorities**

New Jersey Rules of Court, Rules 4:4-4(a)(1) and 4:4-4(a)(6) ....................................10

New Jersey Rules of Court Rule 4:64-1(d)(3) ................................................................................12

Rule 9024 ..........................................................................................................................2, 4, 7

CAF Borrower GS LLC ("**Lender**"), for its Reply in Further Support of its Motion for Relief from the Automatic Stay and *In Rem* Relief (the "**Stay Relief Motion**"), states as follows.

## I.        Preliminary Statement

Fraleg Group, Inc. ("**Fraleg**" or the "**Debtor**") has responded to Lender's Stay Relief Motion as if Fraleg has just commenced a bankruptcy case for the very first time, as if hiring Fraleg's retention of a new set of lawyers means that the Court should pretend that Fraleg's first bankruptcy case simply never happened. Lender obtained relief from the automatic stay in Fraleg's first bankruptcy case on April 6, 2022. Fraleg's first bankruptcy case was dismissed on May 31, 2022. Fraleg filed its second bankruptcy case on June 17, 2022, only 72 days after the Court granted Lender's stay relief motion in the first case, and only 17 days after the Court dismissed Fraleg's first case. Fraleg refiled its second case so quickly that there wasn't even time for the first case (which remains open) to be closed.

Fraleg's second bankruptcy filing is just the latest step in Fraleg's effort to stall Lender's foreclosure sale. Lender made its loan to Fraleg in January of 2019. Fraleg's last payment on the loan was in **October of 2019—almost three years ago**. After Fraleg defaulted, Lender filed a foreclosure action, obtained judgment, and set a foreclosure sale. Fraleg filed its first Chapter 11 case on the morning of the scheduled foreclosure sale. Fraleg's first bankruptcy case was (as this second case is) a single asset real estate case. Fraleg did not file a plan or make any payments to Lender as required under Bankruptcy Code § 362(d)(3). Based on those failures, the Court granted Lender's stay relief motion in Fraleg's first bankruptcy case. Lender then rescheduled the foreclosure sale.

A month after Lender obtained stay relief, Fraleg filed a motion to dismiss the first bankruptcy. [First Bankruptcy, Dkt. No. 53]. In its motion to dismiss Fraleg told the Court that Fraleg "**has secured financing from Fortress Holdings from which the Debtor will satisfy**

**[Lender]**." [*Id.*, ¶ 11 (Emphasis added.).] Fraleg stated in its motion that the financing secured from Fortress Holdings would be used to make Lender whole by paying Lender in full. [*Id.*, ¶¶ 8, 14]. Fraleg also told the Court that "**In the event that the Debtor is unable to complete the refinancing process, the secured creditor will be free to proceed with a foreclosure sale**." [*Id.*, ¶ 14 (Emphasis added.).]

It turns out that Fraleg did not, in fact, have any secured financing with Fortress Holdings or any other lender. Fraleg knew that it had no financing when it filed its motion to dismiss. Fraleg had no ability or intention of paying Lender upon dismissal of Fraleg's case. Rather, Fraleg dismissed this case so that Fraleg could then file *another* bankruptcy case to restart the § 362(d)(3) clock and prevent Lender from foreclosing. Accordingly, Fraleg procured the order dismissing the First Bankruptcy by fraud on the Court. Lender filed a Motion to Void Order of Dismissal Pursuant to Rule 9024 of the Bankruptcy Rules [the "**Rule 9024 Motion**", First Bankruptcy Dkt. No. 65]. Simultaneously, Lender filed the instant Motion for Stay Relief.

There is nothing special about Fraleg and its second bankruptcy case. Fraleg owes the same debts, still has no cash, still owns the same assets, and faces the same inability to present a confirmable plan. Fraleg successfully used its first bankruptcy case to stall Lender's foreclosure for more than six months (the first bankruptcy case was filed September 14, 2021, and Lender received stay relief on April 6, 2022). Fraleg then dismissed its first case and filed this one, with the aim of extending the Bankruptcy Code § 362(d)(3) clock through mid-September 2022. Through its serial bankruptcy filings, in which Fraleg has never filed a plan or made a single payment to Lender, Fraleg aims to stall Lender's foreclosure by at least an entire year – on a loan where Fraleg has made no payments to Lender for almost three years.

As "cover" for Fraleg's serial filing Fraleg has made false—*sanctionably false*—claims against Lender and Lender's counsel, arguing that Lender's proof of claim in Fraleg's first case was "fraudulent" and "inflated." Notably, Fraleg never objected to Lender's proof of claim, and never objected to Lender's claim amount as set forth in Lender's stay relief motion in the first case. Lender has correctly stated its claim.

As detailed below, Fraleg's wild claims of "fraud" are based on Fraleg's misunderstanding of basic, introductory-level principles of New Jersey foreclosure law that even cursory research would have revealed to Fraleg's counsel. Fraleg's second case is a textbook example (perhaps the textbook example) of a bad faith serial bankruptcy filing, and Fraleg's recklessly irresponsible allegations against Lender aren't sufficient to give Fraleg a pass for what is an obviously bad faith attempt to inequitably hinder Lender from collecting its loan. Lender respectfully requests that the Court grant Lender's Motion.

## II.    Fraleg's second bankruptcy is based on nothing but falsehoods and a failure of Fraleg's counsel to investigate applicable New Jersey foreclosure law.

### *Fraleg's president falsely testified that Fraleg sought to resolve alleged discrepancies in Lender's June 7, 2022 payoff statement.*

Fraleg submitted the Affidavit of its president Andy Alege Pursuant to E.D.N.Y. LBR 1007-4 [Dkt. No. 5] on July 13, 2022. In paragraph 13 of the LBR 1007-4 Affidavit Fraleg, through Mr. Alege, claims that after receiving Lender's June 7, 2022 payoff in the amount of $5,206,960.77

> The Debtor's principals desperately attempted to resolve the discrepancies in the June 7th Payoff and sought an adjournment of the sale. The Lender refused and the Debtor had no choice but to return to this Court to obtain a determination of the amount owed to the Lender and to stay that sale pending that determination.

Mr. Alege lied. Mr. Alege did not contact Lender about the alleged "discrepancies" in the June 7, 2022 payoff letter or to ask for the foreclosure sale to be adjourned. [Declaration of David

Ferguson (the "**Ferguson Declaration**"), ¶ 7; Declaration of Morgan Fiander (the "**Fiander Declaration**"), ¶ 20, 21.]

> ### *Fraleg's president falsely testified that Fraleg had financing to pay Lender $4,703,347.65 upon dismissal of Fraleg's first bankruptcy case.*

In paragraph 14 of Mr. Alege's LBR 1007-4 Affidavit he states:

> As will be set forth below, the simple mathematical computation under the Judgment results in a total amount due of approximately $4,703,347.65. Had that amount been in the June 7th Payoff, the loan would have closed and this case would not have been filed.

Fraleg later claimed at paragraph 27 of its Opposition to CAF Borrower GS LLC's Motion to Void Order of Dismissal Pursuant to Rule 9024 of the Bankruptcy Rules, filed in Fraleg's second bankruptcy case as Dkt. No. 67 ("**Fraleg's Opposition to Lender's Rule 9024 Motion**") that "… the Debtor did not commit fraud because *it did have financing in place*." (Emphasis added). Further, at paragraph 29 of its Opposition to Lender's Rule 9024 Motion, Fraleg stated

> *The Debtor did have financing*. In fact, the Debtor had engaged the services of a broker, title company *and had a loan commitment of $6,653,701.02 in place* for refinancing and construction costs.

(Emphasis added). Fraleg has not supplied the Court with any evidence to support these claims, and with good reason: the claims are false. Fraleg knew at the time it filed the motion to dismiss its first bankruptcy case that Fraleg *did not have financing in place* and that Fraleg *did not have a loan commitment from any lender*.

First, as explained elsewhere herein, Fraleg's calculation of the amount owed to Lender is based on Fraleg's failure to account for basic, introductory-level principles of New Jersey foreclosure law. Second, Fraleg itself admits at paragraph 35 of its Opposition to Lender's Stay Relief Motion that the loan amounts it was discussing with Fortress Holdings and Inivation were insufficient (as Exhibit B to the Opposition reveals, however, Fraleg was only *in discussions* with these Lenders and did not have a commitment from either of them). Third, Fraleg has supplied no

Declaration, document, or other evidence to support any claim that Fraleg had financing available after its first case was dismissed to pay Lender $4,703,347.65 or any other amount.

Finally, the documents that Fraleg *has* supplied show that, in fact, there was *no financing* "in place." Fraleg's "proof" of financing consists of documents that mention loans or loan proposals, but do not reference any commitments to loan or any scheduled loan closings. *See*, Exhibit B to Fraleg's Opposition to Lender's 9024 Motion; Exhibits B and C to Debtor's Opposition to CAF Borrowers GS LLC's Motion for Relief from the Automatic Stay and In Rem Relief filed as Dkt. No. 27 in Fraleg's second bankruptcy case ("**Fraleg's Opposition to Lender's Stay Relief Motion**").

Exhibit B to Fraleg's Opposition to Lender's Stay Relief Motion includes an "Estimated Pricing Proposal" from Fortress Holdings dated March 15, 2022, listing a proposed payoff to Lender of only $3,500,000.00. Fraleg attached this Estimated Pricing Proposal to its motion to dismiss to support Fraleg's statement that "The Debtor has secured financing from Fortress Holdings from which the Debtor will satisfy [Lender]." [Motion to Dismiss, Dkt. No. 53 in Fraleg's first bankruptcy case).

The Estimated Pricing Proposal of Fortress Holdings is not a commitment to loan and does not reflect that the lender had completed due diligence, or that the lender was ready and willing to make a loan to Fraleg in any amount. Fraleg admits at paragraph 35 in its Opposition to Lender's Stay Relief Motion that the Fortress Holdings Estimated Pricing Proposal was infeasible because it was insufficient to pay Lender and complete rehabilitation of Fraleg's property. **Accordingly, Fraleg obtained dismissal of its first case based on a hypothetical loan that Fraleg admits it knew was insufficient to pay Lender in full as represented to the Court in Fraleg's motion to dismiss.**

Exhibit B to Fraleg's Opposition to Lender's Stay Relief Motion also includes a loan term sheet dated January 17, 2022, listing Invation. The proposed loan amount in the term sheet is $4,500,000.00, with a proposed loan term of only six months. The term sheet states that "this proposal shall terminate if not accepted by Borrower on or before June 1, 2022." Fraleg has submitted no evidence that it ever accepted Invation's term sheet. Moreover, the term sheet does not state that the lender is ready, willing, and able to fund a loan to Fraleg. Rather, it states under the heading "Due Diligence" that "this letter is not to be construed as a commitment to loan money." Finally, the term sheet *does not list Fraleg as the borrower*. Instead, the borrower is listed as "A Newly Formed Entity comprised of the assets below."

Exhibit B to Fraleg's Opposition to Lender's Stay Relief Motion provides no proof whatsoever that "the loan would have closed" to pay off Lender's loan or that Fraleg had financing "in place." Further, no part of Exhibit B refers to Lender's June 7, 2022 payoff letter or says anything about whether Lender's payoff amount affected in any way whether the proposed lenders would move forward with any loan to Fraleg. And, as Fraleg has admitted at paragraph 35 of its Opposition to Lender's Stay Relief Motion, the hypothetical loan amounts being discussed with these lenders were insufficient. The lender communications attached as Exhibit B to Fraleg's Opposition to Lender's Stay Relief Motion are complete red herrings.

Exhibit C to Fraleg's Opposition to Lender's Stay Relief Motion also provides no proof whatsoever that "the loan would have closed" to pay off Lender's loan or that Fraleg had financing "in place." Exhibit C is an email string addressing, almost exclusively, communications with a title company. A lender—Fortress Holdings—is mentioned, and a proposed loan amount of $6,653,701.02 is mentioned. But there is no term sheet, loan commitment, or proposed loan documents attached as part of Exhibit C.

Moreover, Exhibit C contains no document signed by either Fraleg or Fortress Holdings reflecting an agreement for terms of a loan. The email string in Exhibit C does not address what became of the discussions with Fortress Holdings, whether final terms were reached with Fortress Holdings, whether there was a loan closing scheduled, or any other statement to show that Fortress Holdings was ready, willing, and able to make *any* loan to Fraleg in *any* amount.

Notably, the email string in Exhibit C cuts off on June 1, 2022—*six days before Lender provided its June 7, 2022 payoff letter to Fraleg*. The email string does not mention Lender's payoff letter or claim amount as affecting the potential new loan. Fraleg also attached this email string as Exhibit B to Fraleg's Opposition to Lender's Rule 9024 Motion as "proof" that Fraleg had financing "in place." Exhibit C to Fraleg's Opposition to Lender's Stay Relief Motion is another red herring. Fraleg has provided absolutely no evidence there was ever any financing "in place" or that Fraleg would have closed "the loan" but for receipt of the Lender's June 7, 2022 payoff letter.

**_Fraleg's president falsely testified that Lender knew
that Lender's June 7, 2022 payoff letter was preventing
Fraleg from closing a loan to refinance Lender's loan._**

At paragraph 27 of his LBR 1007-4 Affidavit, Mr. Alege states that "… the Lender sought $799,526.65 more than it was entitled to in the June 7th Payoff ($5,206,960.77) and knew that the Debtor's refinance would not be able to close with that inflated payoff value." Further, at paragraph 32 of Fraleg's Opposition to Lender's Rule 9024 Motion, Fraleg claims that "when the Lender was informed of the Debtor's financing, it provided the Debtor with a payoff letter with an even larger inflated sum knowing that the Debtor's refinance would not be able to close." Mr. Alege and Fraleg's statements are false. As discussed elsewhere herein, Lender's payoff letter was correct,

and Fraleg's disagreement with Lender's payoff figures stems from Fraleg's misunderstanding of commonly-known principles of New Jersey foreclosure law.

On top of that, however, Lender *did not know* that Fraleg's alleged refinancing option would not be able to close due to Lender's payoff letter or any other reason. Counsel for Lender provided the payoff letter to counsel for Fraleg on June 7, 2022. [Ferguson Declaration, ¶ 5.] Lender never received any complaint about the amount of the June 7, 2022 payoff letter or any other complaint about the payoff letter *until after Fraleg filed its second bankruptcy case*. [*Id.*, ¶ 8.] Counsel for Lender made inquiries with counsel for Fraleg regarding the status of closing of financing, but never received any response. [Ferguson Declaration, ¶ 3-4.] Accordingly, Lender did not "know" whether the Lender's payoff letter was having any impact on Fraleg's efforts to obtain a loan or to close a loan deal with another Lender. [Ferguson Declaration, ¶ 9.] Moreover, Fraleg has never provided any proof that there are *any* loan closing scheduled for *any* amount following the dismissal of its first case.

### *Fraleg's president falsely testified that Fraleg was not served with Lender's foreclosure suit and that he never received any notice of the foreclosure until right before the sale.*

At paragraph 23 of his LBR 1007-4 Affidavit, Mr. Alege states that:

> Pursuant to the affidavit of service, the Foreclosure Action was served only on the Debtor's agent for service of process in New Jersey (VCorp Services, LLC) in July of 2020. Upon information and belief, that company was not operational due to the Covid 19 pandemic. I never received any notice of the foreclosure until right before the sale.

Mr. Alege's statements are false. The affidavit of service of Lender's foreclosure suit is listed on the docket in that suit and is a publicly available document. The affidavit of service shows that Ebony Hill, an Intake Specialist for VCorp Services, LLC accepted service of the Summons

and Complaint in the Foreclosure Action on July 13, 2020 at exactly 2:49 p.m. [Fiander Declaration, ¶ 3 and Exhibit B thereto].

Even more damning to Fraleg's claim that it did not learn of the suit until shortly before the foreclosure sale is that, after Lender's foreclosure suit was served on Fraleg's agent for service of process, Fraleg contacted Lender's counsel about the suit. [*See* Fiander Declaration, ¶ 13-18 and Exhibits I and J thereto.] Fraleg's representatives, specifically Ronald Fraser and Mr. Alege, contacted Lender on July 20, 2020, one week after service of the Summons and Complaint. [Fiander Declaration, ¶ 14.] Lender responded, directing Mr. Fraser and Mr. Alege to contact Lender's Foreclosure Counsel, Amy Hatch at Polsinelli PC. [*Id.*] Ms. Hatch reached out directly to Mr. Fraser and Mr. Alege; several emails were exchanged regarding the foreclosure and a potential resolution. Fraleg indicated it was attempting a refinance at that time. [*Id.*; Exhibit I to Fiander Declaration.] Contrary to Mr. Alege's claim, Fraleg was, indisputably, well-aware of the foreclosure action.

On March 2, 2021, an attorney representing Fraleg contacted Morgan Fiander via telephone and represented Fraleg was again working through refinancing and asked if Lender would adjourn its first final judgment motion. [Fiander Declaration ¶ 16.] Ms. Fiander told this attorney to send a written proposal and evidence of the purported refinance. [*Id.*] Neither Debtor nor its attorney ever sent this requested information. [*Id.*] Then, on June 24, 2021, a new attorney, Darlene Snell, contacted Ms. Fiander. [Fiander Declaration, ¶ 17.] She believed that the prior attorney had been discussing settlement and potential resolution with Lender or Lender's counsel, which, as Ms. Fiander informed Ms. Snell, was not the case. [*Id.*] Ms. Snell indicated that Debtor wanted to avoid the impending Sheriff's Sale of the Property and could provide a commitment on refinancing. [*Id.*]

Ms. Fiander sent an email to Ms. Snell on June 25, 2021, explaining that Debtor had made these same representations on a number of occasions since the foreclosure action was filed, but had not followed through. [*Id.*] The email further requested a proposal in writing and noted that Lender would require a large payment or deposit to be applied to the debt for any proposal to be considered. [*Id.*] Ms. Snell responded on June 25, 2021, that she would speak with Debtor and get back in touch; she never contacted Ms. Fiander again. [*Id.*; Exhibit J thereto.]

Mr. Alege claims "on information and belief" that Fraleg's agent for service "was not operational due to the Covid 19 pandemic," but Mr. Alege fails to explain why there is an affidavit of service showing the date of service, the exact time of service, and the name of the person who signed for receipt of Lender's service package. Moreover, Mr. Alege does not explain what investigation he performed in order to back up his claim that the service agent was "not operational." Mr. Alege also fails to explain why Fraleg never claimed in the foreclosure suit that Fraleg had not been served with process. Mr. Alege's willingness to make these false statements in his LBR 1007-4 Affidavit is astounding.

Mr. Alege's claims in paragraph 23 of his LBR 1007-4 Affidavit that service was not in compliance with law is based on faulty information Mr. Alege received from his counsel. Fraleg has never cited any case or statute in support of its "service of process" arguments because Fraleg is, simply, wrong. New Jersey law governs the foreclosure, and Lender's manner of service is fully compliant with New Jersey law. Under New Jersey Rules of Court, Rules 4:4-4(a)(1) and 4:4-4(a)(6), a corporation may be served by serving a copy of the summons and complaint upon a competent individual of the age of 14 or over, personally, on "any person authorized by appointment or by law to receive service of process on behalf of the corporation, or on a person at

the registered office of the corporation in charge thereof . . . ." This is exactly how Fraleg was served with the Foreclosure Action Summons and Complaint.

Finally, Fraleg was entitled to claim in the foreclosure action that Fraleg had not been served. Fraleg failed to do that, despite having knowledge of the lawsuit. The foreclosure judgment is final, and Fraleg is precluded by the doctrine of *res judicata* from claiming that the suit was not served on Fraleg.

### *Fraleg's president falsely testified that Fraleg was not served with a default notice.*

At paragraph 21 of his LBR 1007-4 Affidavit, Mr. Alege claims that:

> When the Debtor could not proceed, the Lender asserts it called a default. The Debtor asserts that it never received any default notice, which is required under the Loan Documents and is a requirement pursuant to New York law as a predicate to accelerating the note and charging default interest.

As with his claim that Fraleg was not served with Lender's foreclosure suit, Mr. Alege is being untruthful. A notice of default was *not* required under the Loan Documents. Moreover, Fraleg claimed that Lender was not entitled to accelerate the loan or to charge default interest. Fraleg of course offers no actual citation to law or other authority for this position, which is belied by the Loan Documents and law themselves.

Section 6.01 of the Mortgage provides, "Upon the occurrence and during the continuance of any Event of Default, Borrower agrees that Lender may take such action, without notice or demand, as it deems advisable to protect and enforce its rights against Borrower and in and to the Property, including, but not limited to . . . declare the entire unpaid Debt to be immediately due and payable . . . institute proceedings, judicial or otherwise, for the complete or partial foreclosure . . . recover judgment on the Note either before, during or after any proceedings for the enforcement of this Mortgage or the other Loan Documents . . . ." (Emphasis added). Section 2.5.5 of the Loan Agreement provides, "For so long as any Event of Default is continuing, the Principal Indebtedness

and all other portions of the Indebtedness, <u>shall accrue interest at the Default Rate.</u>" (Emphasis added.)

Finally, the Note states that Fraleg "hereby waives diligence, presentment, demand, protest and <u>notice of any kind whatsoever.</u>" (Emphasis added.) Clearly, Lender was under no obligation to send a Notice of Default prior to acceleration or collection of default interest; Fraleg expressly waived same, and the Loan Documents clearly do not require Lender to give notice or demand and in fact state the opposite.

Fraleg has, yet again, presented factually inaccurate and legally meritless arguments and assertions to this Court that ultimately are perjury, given their inclusion in sworn statements. The state court entered a judgment of foreclosure on Lender's petition, and Fraleg is bound by the doctrine of *res judicata* from attempting to relitigate the foreclosure judgment in this Court or otherwise. Moreover, pursuant to New Jersey Rules of Court Rule 4:64-1(d)(3), any party who disputes a certification of amounts owed in a foreclosure action must file an objection so stating. Fraleg failed to do so.

### Fraleg has failed to make any payments to Lender since October of 2019, and Fraleg made no payments to Lender in the first or second bankruptcy case.

Fraleg has failed to make any payments to Lender since October of 2019, which includes payments during either of the two bankruptcy cases of Fraleg. [Fiander Declaration, ¶ 2.] Total per diem interest on the Loan (including regular and default interest) accrues at the rate of $1,706.25. [Ferguson Declaration, ¶ 3.]

### Fraleg's claim that Lender fraudulently "inflated" its claim against Fraleg is based on Fraleg's misunderstanding of well-established New Jersey law.

Mr. Alege claims, pursuant to paragraphs 10, 14, 26, 27 of his LBR 1007-4 Affidavit, that Lender's proof of claim in Fraleg's first bankruptcy case and Lender's June 7, 2022 payoff letter

were improperly "inflated" by Lender. Fraleg takes the position that Lender's loan documents merged into the foreclosure judgment and that the foreclosure judgment therefore represents the limit of what Lender can recover from Fraleg. Fraleg is wrong.

As numerous New Jersey cases have held, it is only a lender's *mortgage* that merges into the foreclosure judgment. "It is well settled that the <u>mortgage</u> merges into the final judgment of foreclosure." *Washington Mut., F.A. v. Wroblewski*, 396 N.J. Super. 14, 149 (Ch. Div. 2007) (emphasis added) (citing *Virginia Beach Fed. v. Bank of New York*, 299 N.J. Super 181, 188 (App. Div. 1998))*; see also, e.g.*, *Silvestri v. Wells Fargo Bank Minnesota, N.A.*, 2005 WL 2810698 (Ch. Div. 2005) ("It is well settled law that upon entry of a final judgment of foreclosure, a mortgage merges into the final judgment"); *In re Roach*, 824 F.2d 1370, 1377-78 (3d Cir. 1987) ("the final judgment in an action to foreclose real estate mortgage fixes the amount due under the mortgage and directs the sale of the real estate").

Although a lender's recovery *from the sale of mortgaged property is governed* by the foreclosure judgment, the lender is free to collect from the borrower all other amounts owed pursuant to the loan documents.  A judgment in foreclosure is just that: a judgment. It is not satisfaction of all amounts owed to a lender by any means. *See, e.g.*, *Silvestri*, 2005 WL at *2 ("The mortgage is not now being paid, but rather a judgment is being paid"). Importantly, the *Silvestri* Court recognized that the lender could still be paid in accordance with the terms of the loan instrument. Similarly, here, the Final Judgment issued by the state court only has the effect of capping the amount which Lender could credit bid at a Sheriff's Sale of the Property. Fraleg is still required to pay the Loan in accordance with the terms of the "loan instrument," in this case, the Note.

In other words, a foreclosure judgment does not limit a lender to recovery of only the amounts in the foreclosure judgment. This is the key error in Fraleg's position, and it is an error that Fraleg could easily have identified through even a cursory investigation of New Jersey foreclosure law. Fraleg irresponsibly and without basis accuses Lender of asserting a "fraudulent" claim in Lender's proof of claim filed in Fraleg's first bankruptcy case and accuses Lender of asserting "fraudulent" and "inflated" amounts in Lender's payoff letters.

Fraleg is wrong, and its error is based on the failure of Fraleg's counsel to investigate and become familiar with New Jersey law governing the amount a lender can recover under a loan secured by a mortgage. Fraleg and its counsel recklessly and irresponsibly attacked Lender and its counsel—going to far as to file a lawsuit against Lender and its counsel—all stemming from a negligent failure of Fraleg and its counsel to become familiar with New Jersey foreclosure law. The conduct of Fraleg's counsel is sanctionable, and counsel for Fraleg has exposed Fraleg to counterclaims by filing wrongful claims against Lender and Lender's counsel. Lender will take appropriate action to address these issues.

The cases supporting Lender's position on New Jersey law are legion. It is well-established that a judgment in foreclosure does not cap Lender's recovery outside of the context of bidding at a Sheriff's Sale. In *First Union Nat. Bank v. Penn Salem Marina, Inc.*, the Court recognized that "remedies in the note and mortgage were cumulative," and that "the note and the mortgage permitted the lender to claim different categories of damages . . . ." *First Union Nat. Bank v. Penn Salem Marina, Inc.*, 190 N.J. 342, 355 (2007).

Similarly, in *79-83 Thirteenth Ave., Limited v. De Marco*, the Court recognized the difference between collecting amounts under a note, versus what is allowed in a foreclosure judgment. "Where the obligation is 'in the form of a note, he (mortgagee) was free to proceed to

recover upon and collect the obligation free from the restrictions and inhibitions of the [foreclosure] statutes cited.'" *79-83 Thirteenth Ave., Limited v. De Marco*, 79 N.J. Super. 47, 52 (Law Div. 1963) (quoting *Silver v. Williams*, 72 N.J. Super. 564, 568 (App. Div. 1962).

One of these rules, for example, is the cap on attorneys' fees in a foreclosure. The rule on limited attorneys' fees under New Jersey law "by its terms is confined to foreclosure actions. Thus . . . the rule 'does not preclude the enforcement of a contractual provision in a promissory note for the payment of a reasonable attorney's fee for services actually rendered in collection[.]'" *Hyun Kim v. Jung Brothers, LLC*, 2020 WL 1190461, *2 (App. Div. 2020) (quoting *Alcoa Edgewater No. 1 Fed. Credit Union v. Carrol*, 44 N.J. 442, 448 (1965)). "Judgment on the note is made against a defendant individually based on its contractual obligations under the note and provides a basis for recovering any deficiencies beyond the value of the foreclosed property." *Greystone Bank v. Samsudeen*, 2012 WL 13034135 (D.N.J. 2012). "A foreclosure proceeding is solely an action *quasi in rem* and the relief granted is only against the land itself, whereas, an action on the note is *in personam*. A foreclosure judgment . . . is not *res judicata* as to the defendant's liability for any deficiency." *Central Penn Nat. Bank v. Stonebridge Ltd.*, 185 N.J. Super. 289, 302-03 (Ch. Div. 1982) (internal citations omitted).

In the instant case, the judgment of foreclosure limits the amount Lender can credit bid at a Sheriff's Sale. New Jersey law, however, does not prevent Lender from collecting all amounts owed under the Note, even where same would not be recoverable in a foreclosure judgment. There are different avenues for collecting such amounts: a subsequent suit on the note or on a guaranty for deficiency; a direct payoff of an agreed-upon amount by the borrower; or a proof of claim and recovery through bankruptcy, as a few examples. Lender would have been—and still is—entitled to pursue a suit on the Note against Fraleg, should a sale of the Property not cover the indebtedness

owed under the *Note*. Lender is also entitled to recover these amounts by way of a proof of claim and was entitled to demand full payment of its loan in the payoff letter provided to Fraleg after Fraleg's bankruptcy case was dismissed.

### III.     Lender was, and is, entitled to Stay Relief

Fraleg has no equity in the building and no money to fund the required renovations to its property or to make payments under a bankruptcy plan. Moreover, Fraleg's first bankruptcy presented a classic bad faith filing. Fraleg filed the first bankruptcy on the eve for foreclosure without any reasonable prospect of reorganizing. Fraleg had and has no employees and only a very few creditors. Fraleg had and has no contracts.  This case involves a two-party dispute and a repeat filer-debtor who seeks to modify a secured loan where the debtor has no income or ability to present a confirmable plan. Further, in the First Bankruptcy, Fraleg concealed its ownership of a vacant lot adjacent to the building, failing to list the property in its schedules and then falsely claiming under oath at the § 341 meeting that the lot was owned by Fraleg's president rather than by Fraleg.

Debtor has stated that it would take 6-8 months to complete renovation on the Property, and will cost an estimated $1.9 million at minimum. Lender is entitled to relief from the automatic stay under Code § 362(d)(2) because Fraleg does not have equity in the building and because the building is not necessary to an effective reorganization.

### IV.     The Doctrine of Unclean Hands is Not Applicable

Fraleg asserts that Lender is not entitled to relief from the automatic stay based on the doctrine of unclean hands. This is entirely baseless, as Lender has shown to the Court in all of its filings. Fraleg asserts that Lender filed a "false claim" in the First Bankruptcy. Fraleg's reasoning for this is completely basis and Lender has explained, and shown, through documentary evidence and citations to actual law, that its proof of claim was accurate and permitted. Fraleg has failed to

cite to any law which would prevent Lender from seeking the full amount due under the Loan Documents by way of its proof of claim. Fraleg relies on a misunderstanding or miscomprehending of New Jersey state law. Lender, however, has counsel who is in fact admitted to practice law in the State of New Jersey. New Jersey law is clear that only the *mortgage* merges into a final judgment for foreclosure; a note or other loan instrument, and other loan documents, remain intact. Lender is free to collect the full amounts due and owing to it under the Loan Documents through its proof of claim, as well as through a private, direct payoff from Borrower. Thus, the assertions of a "false" proof of claim are, in and of themselves, false.

Moreover, Fraleg's assertion that all the Loan Documents merge into the final judgment of foreclosure is patently incorrect. "It is well settled that the mortgage merges into the final judgment of foreclosure." *Washington Mut., F.A. v. Wroblewski*, 396 N.J. Super. 14, 149 (Ch. Div. 2007) (emphasis added) (citing *Virginia Beach Fed. v. Bank of New York*, 299 N.J. Super 181, 188 (App. Div. 1998). *See also, e.g.*, *Silvestri v. Wells Fargo Bank Minnesota, N.A.*, 2005 WL 2810698, *1 (Ch. Div. 2005) ("It is well settled law that upon entry of a final judgment of foreclosure, a mortgage merges into the final judgment"); *In re Roach*, 824 F.2d 1370, 1377-78 (3d Cir. 1987) ("the final judgment in an action to foreclose real estate mortgage fixes the amount due under the mortgage and directs the sale of the real estate"). Fraleg is incorrect on the law when it asserts that all the Loan Documents merged into the foreclosure judgment. Fraleg fails to assert, indeed cannot assert, any law to support the position that a lender is not entitled to any amounts more than what is in a final judgment in foreclosure. Outside of the context of bidding at a Sheriff's Sale, a lender may indeed recover other amounts owed under a promissory note or other loan documents. A judgment in foreclosure is just that: a judgment. It is not satisfaction of all amounts owed to a lender by any means. *See, e.g.*, *Silvestri*, 2005 WL at *2 ("The mortgage is not now being paid,

but rather a judgment is being paid"). Importantly, the *Silvestri* Court recognized that the lender could still be paid in accordance with the terms of the loan instrument. *Id.* Similarly, here, the final judgment issued by the state court only has the effect of capping the amount that Lender could credit bid at a Sheriff's Sale of the Property; Fraleg could still pay the Loan in accordance with the terms of the "loan instrument," in this case, the Note.

Other cases in New Jersey support Lender's position that a judgment in foreclosure does not cap Lender's recovery outside of the context of bidding at a Sheriff's Sale. In *First Union Nat. Bank v. Penn Salem Marina, Inc.*, the Court recognized that "remedies in the note and mortgage were cumulative," and that "the note and the mortgage permitted the lender to claim different categories of damages . . . ." *First Union Nat. Bank v. Penn Salem Marina, Inc.*, 190 N.J. 342, 355 (2007). Similarly, in *79-83 Thirteenth Ave., Limited v. De Marco*, the Court recognized the difference between collecting amounts under a note, versus what is allowed in a foreclosure judgment. "Where the obligation is 'in the form of a note, he (mortgagee) was free to proceed to recover upon and collect the obligation free from the restrictions and inhibitions of the [foreclosure] statutes cited.'" *79-83 Thirteenth Ave., Limited v. De Marco*, 79 N.J. Super. 47, 52 (Law Div. 1963) (quoting *Silver v. Williams*, 72 N.J. Super. 564, 568 (App. Div. 1962). One of these rules, for example, is the cap on attorneys' fees in a foreclosure. The rule on limited attorneys' fees under New Jersey law "by its terms is confined to foreclosure actions. Thus . . . the rule 'does not preclude the enforcement of a contractual provision in a promissory note for the payment of a reasonable attorney's fee for services actually rendered in collection[.]'" *Hyun Kim v. Jung Brothers, LLC*, 2020 WL 1190461, *2 (App. Div. 2020) (quoting *Alcoa Edgewater No. 1 Fed. Credit Union v. Carrol*, 44 N.J. 442, 448 (1965)). "Judgment on the note is made against a defendant individually based on its contractual obligations under the note and provides a basis for

recovering any deficiencies beyond the value of the foreclosed property." *Greystone Bank v. Samsudeen*, 2012 WL 13034135 (D.N.J. 2012). "A foreclosure proceeding is solely an action *quasi in rem* and the relief granted is only against the land itself, whereas, an action on the note is *in personam*. A foreclosure judgment . . . is not *res judicata* as to the defendant's liability for any deficiency." *Central Penn Nat. Bank v. Stonebridge Ltd.*, 185 N.J. Super. 289, 302-03 (Ch. Div. 1982) (internal citations omitted).

In the instant case, Lender was only bound to the judgment of foreclosure as the amount it could credit bid at a Sheriff's Sale. Lender is fully permitted under the Loan Documents and under applicable law to collect amounts owed on the Note and other Loan Documents, even where same would not be recoverable in a foreclosure judgment. There are different avenues for collecting such amounts: a subsequent suit on the note or on a guaranty for deficiency; a direct payoff of an agreed-upon amount by the borrower; or a proof of claim and recovery through bankruptcy, as a few examples. Lender would have been—and still is—entitled to pursue a suit on the Note against Fraleg, should a sale of the Property not cover the indebtedness owed under the Note. Lender is also entitled to recover these amounts by way of a proof of claim and was entitled to demand full payment of same from Fraleg after dismissal of the first bankruptcy case. It is worth noting that Fraleg asserts that the Loan Documents merged into the Judgment, but Fraleg not only fails to cite any cases which support that position but also cites to cases that clearly say the *mortgage* merges into the Judgment. Thus, there is nothing "false" about Lender's prior proof of claim, and there is no support for Fraleg's unclean hands argument.

## **CONCLUSION**

For the reasons detailed above, Lender respectfully requests that the Court grant its Motion for Relief from the Automatic Stay, together with such other and further relief as this Court deems just and proper.

Dated:  August 12, 2022

Respectfully submitted,

POLSINELLI PC

By: ___*/s/ David D. Ferguson*_____
         MORGAN C. FIANDER
         600 Third Avenue, 42nd Floor
         New York, New York 10016
         (212) 684-0199
         mfiander@polsinelli.com

         DAVID D. FERGUSON
         900 West 48th Place, Suite 900
         Kansas City, Missouri 64112
         (816) 360-4311
         dferguson@polsinelli.com

ATTORNEYS FOR CAF BORROWER GS LLC

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 12th day of August, 2022, a true and correct copy of *Lender's Reply in Further Support of Its Motion for Relief from the Automatic Stay and* In Rem *Relief* was served by ECF notification from the court to Debtor's counsel, the U.S. Trustee and the parties who have requested notice in this case.

*/s/  David D. Ferguson*

84703161