# Exhibit F

POLSINELLI PC
Morgan C. Fiander, Esq. (239812017)
600 Third Avenue, 42nd Floor
New York, New York 10016
Phone:  (212) 413-2838
mfiander@polsinelli.com

Attorneys for Plaintiff CAF Borrower GS LLC

| | |
|---|---|
| CAF BORROWER GS LLC | SUPERIOR COURT OF NEW JERSEY |
| | CHANCERY DIVISION:  ESSEX COUNTY |
| Plaintiff, | DOCKET NO.  SWC-F-001632-20 |
| v. | |
| | *Civil Action* |
| FRALEG GROUP INC., a New York corporation; RENHAN LLC, a New Jersey limited liability company and TAM LENDING CENTER INC., a New Jersey corporation, | ***NOTICE OF MOTION FOR FINAL JUDGMENT IN FORECLOSURE*** |
| Defendants. | |

Fraleg Group Inc.
c/o VCorp Services, LLC
820 Bear Tavern Road
West Trenton, NJ  08628

Renhan LLC
c/o Komlika Gill
1818 Old Cuthbert Road, Suite 100
Cherry Hill, New Jersey 08034

TAM Lending Center, Inc.
c/o Phillip T. Valianti
131 Copperfield Drive
Woodbury, New Jersey 08096

TO:

SIR OR MADAM:

PLEASE TAKE NOTICE that the undersigned attorneys for plaintiff CAF Borrower GS LLC,

shall apply to the Superior Court of New Jersey, Chancery Division, Office of Foreclosure, with an

SWC-F-001632-20   03/23/2021 4:31:10 PM Pg 2 of 4 Trans ID: CHC202160518

address at P.O. Box 971, 25 West Market Street, Trenton, New Jersey 08625, for the entry of judgment in this action in favor of the plaintiff for the relief demanded in the complaint and shall file the proof required by R. 4:64-2.

PLEASE TAKE FURTHER NOTICE that pursuant to R. 1:34-6 and R. 4:64-9, judgment will be entered in the discretion of the Court unless the attorney or *pro se* party on whom it has been served notifies the Office of Foreclosure and the attorney for the moving party, in writing, within ten (10) days after the date of service of the motion, that it objects to the entry of judgment. The Office of Foreclosure is located at P.O. Box 971, 25 West Market Street, Trenton, New Jersey 08625. The basis of your objection to entry of judgment must be stated with specificity. Upon receipt of a specific objection or at the direction of the court, the Office of Foreclosure shall deliver the foreclosure case file to the appropriate vicinage judge for scheduling of further proceedings and who shall notify the parties or their attorneys of the time and place thereof.

PLEASE TAKE FURTHER NOTICE THAT IF YOU WANT TO OBJECT TO THE CALCULATION OF AMOUNT DUE, YOU MUST DO SO IN WRITING WITHIN 10 DAYS AFTER THE DAY YOU RECEIVED THIS MOTION. ANY OBJECTION TO THE CALCULATION OF THE AMOUNT DUE MUST ADDRESS AND DETAIL WITH SPECIFICITY THE BASIS OF THE OBJECTION TO THE AMOUNT DUE. YOU MUST FILE YOUR OBJECTION WITH THE OFFICE OF FORECLOSURE, P.O. BOX 971, 25 MARKET STREET, TRENTON, NEW JERSEY 08625, AND SERVE A COPY ON THE MOVING PARTY. THE OFFICE OF FORECLOSURE DOES NOT CONDUCT HEARINGS. YOUR PERSONAL APPEARANCE AT THE OFFICE WILL NOT QUALIFY AS AN OBJECTION. IF YOU FILE A SPECIFIC OBJECTION TO THE CALCULATION OF THE AMOUNT DUE, ON RECEIPT OF A SPECIFIC OBJECTION TO THE CALCULATION OF THE AMOUNT DUE PURSUANT TO *R*. 4:64-1(d)(1)(A), THE OFFICE OF FORECLOSURE SHALL REFER THE MATTER TO THE JUDGE IN THE COUNTY OF VENUE, WHO SHALL SCHEDULE

SUCH FURTHER PROCEEDINGS AND NOTIFY THE PARTIES OR THEIR ATTORNEYS OF THE

TIME AND PLACE THEREOF.

POLSINELLI PC

*Attorneys for plaintiff CAF Borrower GS LLC*

By: */s/ Morgan C. Fiander*

MORGAN C. FIANDER

Dated:  March 29, 2021

<u>CERTIFICATION OF SERVICE</u>

Rebecca O'Brien, does hereby certify that:

      1.      I am a paralegal employed by the law firm of POLSINELLI PC.   On March 29, 2021, I mailed a copy of the within Request for Entry of Default, Certification of Morgan C. Fiander, Esq. in support of the Request for Entry of Default; Notice of Motion for Final Judgment in Foreclosure; Certification of Amount Owed; Certification of Fees and Costs; Certification of Attorneys' Fees; proposed Final Judgment in Foreclosure; and proposed Writ of Execution, via Certified Mail, R.R.R. and Regular Mail, to the Defendants at the following addresses.

      Fraleg Group Inc.
      c/o VCorp Services, LLC
      820 Bear Tavern Road
      West Trenton, NJ  08628

      Renhan LLC
      c/o Komlika Gill
      1818 Old Cuthbert Road, Suite 100
      Cherry Hill, New Jersey 08034

      TAM Lending Center, Inc.
      c/o Phillip T. Valianti
      131 Copperfield Drive
      Woodbury, New Jersey 08096

      I hereby certify that the foregoing statements made by me are true.   I am aware that if any statements made by me are willfully false, I am subject to punishment.

                      /s/ Rebecca M. O'Brien
                      Rebecca O'Brien

Dated:   March 29, 2021

POLSINELLI PC
Morgan C. Fiander, Esq. (239812017)
600 Third Avenue, 42nd Floor
New York, New York 10016
Phone: (212) 413-2838
mfiander@polsinelli.com

Attorneys for Plaintiff CAF Borrower
GS LLC

| | |
|---|---|
| CAF BORROWER GS LLC | SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION: ESSEX COUNTY |
| Plaintiff, | DOCKET NO. SWC-F-001632-20 |
| v. | |
| FRALEG GROUP INC., a New York corporation; RENHAN LLC, a New Jersey limited liability company and TAM LENDING CENTER INC., a New Jersey corporation, | *Civil Action* **CERTIFICATION OF ERICA MEDRANO OF AMOUNT OWED** |
| Defendants. | |

I, ERICA MEDRANO, of full age, do hereby certify and say:

1.     I am the Foreclosure Team Lead with Statebridge Company ("Statebridge").

Statebridge is the authorized agent and servicer for Plaintiff CAF Borrower GS LLC ("Plaintiff").

Plaintiff is the owner and holder of the commercial mortgage loan at issue in the above-captioned

case (the "Mortgage Loan").

2.     In my employment, I am responsible for managing and administering the subject

Mortgage Loan, which is more particularly described below and in the Complaint in Foreclosure

filed in this action. I have access to the business records of Plaintiff, including the business records

for and relating to the subject Mortgage Loan. Plaintiff's business records, including the business

records for and relating to the Mortgage Loan are maintained by Plaintiff in the course of its

regularly conducted business activities and are made at or near the time of the event, by or from

information transmitted by a person with knowledge. It is the regular practice to keep such records

in the ordinary course of a regularly conducted business activity. I make this certification based upon my review of those records relating to the Mortgage Loan, my own personal knowledge of how those records are kept and maintained, and my own personal knowledge of the administration of the Mortgage Loan.

3.      I make this Certification in support of Plaintiff's motion for entry of final judgment in foreclosure. I am authorized by Plaintiff to make this Certification.

4.      In this action, Plaintiff seeks to foreclose a mortgage in the original principal amount of $8,000,000, encumbering certain real property and improvements thereon located at 112 N. Walnut St., East Orange, NJ 07017, and also known as Lot 15 in Block 360 on the Tax Map of East Orange, and as more particularly described on Schedule A annexed to the Complaint in Foreclosure (the "Mortgaged Premises"). As demonstrated below, the mortgagor in this case, defendant Fraleg Group Inc. ("Borrower") defaulted under the subject promissory note and the subject mortgage by failing to repay the amounts owed thereunder for the months of November and December 2019.

5.      On January 23, 2019, Defendant entered into the Mortgage Loan, which was evidenced by a certain Promissory Note dated January 23, 2019 in the original principal amount of $8,000,000 (the "Note"). The terms and conditions with respect to the Mortgage Loan are set forth in that certain Loan Agreement (the "Loan Agreement") dated January 23, 2019, and executed in connection with the Note. All principal, interest and other fees due under the Note and Loan Agreement were to become due and payable on July 23, 2020 (the "Maturity Date").

6.      The indebtedness owed under the Note is secured by a certain Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated as of April 5, 2019

(the "Mortgage") from Borrower. The Mortgage encumbers the Mortgaged Premises and was duly recorded with the Essex County Clerk's Office on April 12, 2019 as Instrument No. 2019034120.

7.      Borrower failed to repay the amounts owed under the Note for the months of November and December 2019. Thereafter, Plaintiff elected to accelerate the amounts due and owing under the Note. As a result of the Borrower's default under the Note and the Mortgage, Plaintiff initiated this foreclosure action.

8.      Based on my own personal knowledge and my review of the books and business records concerning the Mortgage Loan, I attest that Borrower's default under the Note and the Mortgage remains uncured and there is due to Plaintiff from Borrower the sum of $4,210,055.22 as set forth in the Proof of Amount Due annexed hereto. I have reviewed all entries and calculations, and they are correct. *Per diem* interest, as set forth in the annexed schedule, will accrue on the principal amount owed on the Note from January 31, 2021.

9.      The amounts owed includes a default interest charge of five (5%) percent, an amount that is the lesser of the maximum rate permitted by applicable law. The amounts owed also includes a late charge of five (5%) percent of the delinquent payment amount owed under the Note that was due under the Note when Mortgagor failed to pay the amounts owed for November 2019. In addition, the Note matured by its terms on July 23, 2020. Under the Loan Agreement, a maturity late fee in the amount of 5% of the unpaid principal balance also became due on that date, so the amounts owed include a maturity late fee of 5% of the unpaid principal balance.

10.     The Mortgaged Premises in this action cannot be divided and should be sold as a single tract.

11.     There are no just debts, set-offs, credits or allowances due or to become due from Plaintiff to Defendant, other than those set forth herein.

3

12. Plaintiff is the owner and holder of the Note, the Mortgage and the other Loan Documents evidencing Borrower's indebtedness, and is entitled to enforce said Note and the Mortgage.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Erica Medrano
Foreclosure Team Lead
Statebridge Company

Dated: March **23**, 2021

4

### Amount Due Schedule

| | |
|---|---|
| Note Dated: | January 23, 2019 |
| Mortgage Dated: | April 5, 2019 |
| Recorded on: | April 12, 2019, Essex County Clerk's Office, Instrument No. 2019034120 |
| Property Address: | 112 N. Walnut St., East Orange, NJ 07017 |
| Mortgage Holder: | CAF Borrower GS LLC |

### STATEMENT OF AMOUNT DUE[1]

| | | |
|---|---|---|
| (1) | Unpaid Principal Balance as of 1/30//21: | $4,550,000.00 |
| (2) | Interest (10/1/19-1/30/21)[2] <br> (Interest rate = 8.5%/year; $1,074.31/day x 487 days): | $ 523,188.97 |
| (3) | Default Interest: (10/1/19-1/30/21)[3] <br> (Default interest rate = 5%/year; $631.94/day x 487 days): | $ 307,754.78 |
| (4) | Late Fees (November 2019)[4] <br> $1,611.47/month | $1,611.47 |
| (5) | Late Fee Due on Maturity:[5] <br> (5% due on principal balance upon maturity): | $227,500.00 |
| (6) | Credit for Amount in Reserve: | ($1,400,000.00) |
| **TOTAL DUE AS OF January 30, 2021:** | | $4,210,055.22 |

---

[1] Pursuant to Section 2.5.4 of the Loan Agreement, "[i]nterest **shall be computed on the Principal indebtedness** by multiplying the actual number of days elapsed in the period for which interest is being calculated by a daily rate based on the Interest Rate and a 360-day year." (emphasis added). Thus, Lender is entitled to charge interest on the sum of $4,550,000.00 (the principal indebtedness) as opposed to $3,150,000.00.

[2] As defined in the Definitions Section of the Loan Agreement, "'Interest Rate' means eight and one-half percent (8.50%) per annum."

[3] As defined in the Definitions Section of the Loan Agreement, "'Default Rate' means a rate per annum equal to the lesser of (i) the maximum rate permitted by applicable law or (ii) five percent (5%) above the Interest Rate." While it is an "Event of Default" under Section 8.1.1 of the Loan Agreement where "[a]ny portion of the Indebtedness is not paid when due."

[4] Pursuant to Section 2.5.6 of the Loan Agreement, "[i]f any amount due under the Loan Documents is not paid on the date on which it is due, Borrower shall pay to Lender upon demand an amount equal to the lesser of (i) five percent (5.00%) of such unpaid sum or (ii) the maximum amount permitted by Legal Requirements in order to defray the expense incurred by Lender in handling and processing such delinquent payment and to compensate Lender for the loss of the use of such delinquent payment." Thus, Lender is entitled to charge a late fee for the month of November 2019, as well as a late fee due on Maturity.

[5] *See, supra* n. 4.

Surplus Money: If after the sale and satisfaction of the mortgage debt, including costs and expenses, there remains any surplus money, the money will be deposited into the Superior Court Trust Fund and any person claiming the surplus, or any part thereof, may file a motion pursuant to Court Rules 4:64-3 and 4:57-2 stating the nature and extent of that person's claim and asking for an order directing payment of the surplus money.  The Sheriff or other person conducting the sale will have information regarding the surplus, if any.

ERICA MEDRANO

POLSINELLI PC
Morgan C. Fiander (239812017)
600 Third Avenue, 42nd Floor
New York, NY 10016
Phone:  (212) 413-2838
mfiander@polsinelli.com

Attorneys for Plaintiff CAF Borrower GS LLC

| | |
|---|---|
| CAF BORROWER GS LLC<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>FRALEG GROUP INC., a New York corporation; RENHAN LLC, a New Jersey limited liability company and TAM LENDING CENTER INC., a New Jersey corporation,<br><br>　　　　　Defendants. | SUPERIOR COURT OF NEW JERSEY<br>CHANCERY DIVISION:  ESSEX COUNTY<br>DOCKET NO.  SWC-F-001632-20<br><br>*Civil Action*<br><br>***CERTIFICATION OF FEES AND COSTS*** |

　　　　I, MORGAN C. FIANDER ESQ., of full age, do hereby certify and say:

　　1.　　I am an attorney duly admitted to practice law in the State of New Jersey and an associate with the law firm POLSINELLI PC, attorneys for plaintiff CAF Borrower GS LLC ("Plaintiff").  I am responsible for litigating the above-captioned action on Plaintiff's behalf and have personal knowledge of the facts set forth herein.  I am authorized to make the instant Certification on Plaintiff's behalf in this case.

　　2.　　The total amount of fees and charges expended in this foreclosure for which taxation is asked is the sum of $1,964.05.  The aforementioned sum includes only such fees and charges as were actually and necessarily paid or incurred for the purpose of this action, and are reasonable in amount.  This sum does not exceed the fees allowed by law.

　　3.　　The following is an itemized schedule of such fees and charges:

　　　　Statutory Fees:　　　　　　　$50.00

| | |
|---|---|
| Fee for filing Complaint: | $405.00 |
| Fee for recording Lis Pendens: | $63.45 |
| Title and Judgment Searches: (First Jersey Title Services, Inc.) | $390.00 |
| Fees paid to Process Server: | $1,045.60 |
| Fee for Writ of Execution: | $10.00 |
| **Total:** | **$1,964.05** |

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

*/s/ Morgan C. Fiander*
MORGAN C. FIANDER

Dated: March 29, 2021

POLSINELLI PC
Morgan C. Fiander, Esq. (239812017)
600 Third Avenue, 42nd Floor
New York, New York 10016
Phone:  (212) 413-2838
mfiander@polsinelli.com

Attorneys for Plaintiff CAF Borrower GS LLC

| | |
|---|---|
| CAF BORROWER GS LLC<br><br>          Plaintiff,<br><br>   v.<br><br>FRALEG GROUP INC., a New York corporation;<br>RENHAN LLC, a New Jersey limited liability<br>company and TAM LENDING CENTER INC., a<br>New Jersey corporation,<br><br><br>          Defendants. | SUPERIOR COURT OF NEW JERSEY<br><br>CHANCERY DIVISION:  ESSEX COUNTY<br><br>DOCKET NO.  SWC-F-001632-20<br><br><br>*Civil Action*<br><br>***NOTICE OF MOTION FOR FINAL JUDGMENT<br>IN FORECLOSURE*** |

Fraleg Group Inc.
c/o VCorp Services, LLC
820 Bear Tavern Road
West Trenton, NJ  08628

Renhan LLC
c/o Komlika Gill
1818 Old Cuthbert Road, Suite 100
Cherry Hill, New Jersey 08034

TAM Lending Center, Inc.
c/o Phillip T. Valianti
131 Copperfield Drive
Woodbury, New Jersey 08096

TO:

SIR OR MADAM:

      PLEASE TAKE NOTICE that the undersigned attorneys for plaintiff CAF Borrower GS LLC,

shall apply to the Superior Court of New Jersey, Chancery Division, Office of Foreclosure, with an

address at P.O. Box 971, 25 West Market Street, Trenton, New Jersey 08625, for the entry of judgment in this action in favor of the plaintiff for the relief demanded in the complaint and shall file the proof required by R. 4:64-2.

PLEASE TAKE FURTHER NOTICE that pursuant to R. 1:34-6 and R. 4:64-9, judgment will be entered in the discretion of the Court unless the attorney or *pro se* party on whom it has been served notifies the Office of Foreclosure and the attorney for the moving party, in writing, within ten (10) days after the date of service of the motion, that it objects to the entry of judgment.  The Office of Foreclosure is located at P.O. Box 971, 25 West Market Street, Trenton, New Jersey 08625.  The basis of your objection to entry of judgment must be stated with specificity.  Upon receipt of a specific objection or at the direction of the court, the Office of Foreclosure shall deliver the foreclosure case file to the appropriate vicinage judge for scheduling of further proceedings and who shall notify the parties or their attorneys of the time and place thereof.

PLEASE TAKE FURTHER NOTICE THAT IF YOU WANT TO OBJECT TO THE CALCULATION OF AMOUNT DUE, YOU MUST DO SO IN WRITING WITHIN 10 DAYS AFTER THE DAY YOU RECEIVED THIS MOTION.  ANY OBJECTION TO THE CALCULATION OF THE AMOUNT DUE MUST ADDRESS AND DETAIL WITH SPECIFICITY THE BASIS OF THE OBJECTION TO THE AMOUNT DUE.  YOU MUST FILE YOUR OBJECTION WITH THE OFFICE OF FORECLOSURE, P.O. BOX 971, 25 MARKET STREET, TRENTON, NEW JERSEY 08625, AND SERVE A COPY ON THE MOVING PARTY.  THE OFFICE OF FORECLOSURE DOES NOT CONDUCT HEARINGS.  YOUR PERSONAL APPEARANCE AT THE OFFICE WILL NOT QUALIFY AS AN OBJECTION.  IF YOU FILE A SPECIFIC OBJECTION TO THE CALCULATION OF THE AMOUNT DUE, ON RECEIPT OF A SPECIFIC OBJECTION TO THE CALCULATION OF THE AMOUNT DUE PURSUANT TO R. 4:64-1(d)(1)(A), THE OFFICE OF FORECLOSURE SHALL REFER THE MATTER TO THE JUDGE IN THE COUNTY OF VENUE, WHO SHALL SCHEDULE

SUCH FURTHER PROCEEDINGS AND NOTIFY THE PARTIES OR THEIR ATTORNEYS OF THE

TIME AND PLACE THEREOF.


POLSINELLI PC

*Attorneys for plaintiff CAF Borrower GS LLC*



By: */s/ Morgan C. Fiander*
           MORGAN C. FIANDER



Dated:  March 29, 2021

<u>CERTIFICATION OF SERVICE</u>

Rebecca O'Brien, does hereby certify that:

      1.     I am a paralegal employed by the law firm of POLSINELLI PC.   On March 29, 2021, I mailed a copy of the within Request for Entry of Default, Certification of Morgan C. Fiander, Esq. in support of the Request for Entry of Default; Notice of Motion for Final Judgment in Foreclosure; Certification of Amount Owed; Certification of Fees and Costs; Certification of Attorneys' Fees; proposed Final Judgment in Foreclosure; and proposed Writ of Execution, via Certified Mail, R.R.R. and Regular Mail, to the Defendants at the following addresses.

> Fraleg Group Inc.
> c/o VCorp Services, LLC
> 820 Bear Tavern Road
> West Trenton, NJ  08628
>
> Renhan LLC
> c/o Komlika Gill
> 1818 Old Cuthbert Road, Suite 100
> Cherry Hill, New Jersey 08034
>
> TAM Lending Center, Inc.
> c/o Phillip T. Valianti
> 131 Copperfield Drive
> Woodbury, New Jersey 08096

      I hereby certify that the foregoing statements made by me are true.  I am aware that if any statements made by me are willfully false, I am subject to punishment.

/s/ Rebecca M. O'Brien
Rebecca O'Brien

Dated:   March 29, 2021

Certified True Copy

By: /s/ Morgan Fiander
Morgan Fiander, Esq.

*DANA RONE*
*ESSEX COUNTY REGISTER OF DEEDS & MORTGAGES*



Hall of Records
465 Martin Luther King Jr Blvd
Room 130
Newark, NJ 07102
(973) 621-4960

*RETURN DOCUMENT TO:
COREVEST AMERICAN FINANCE LENDER LLC
1920 MAIN STREET
SUITE 850
IRVINE, CA 92614
ATTN: LOAN ADMINISTRATION

Instrument Number - 2019034120
Recorded On 4/12/2019 At 3:06:18 PM
*Instrument Type - MORTGAGE
Invoice Number - 274494        User ID: BB        *Total Pages - 27
*Mortgagor - FRALEG GROUP INC
*Mortgagee - CORVEST AMERICAN FINANCE LENDER LLC
*PARCEL IDENTIFICATION NUMBER
   N/A-EAST ORANGE

*FEES
NJ PRESERVATION            $135.00
ACCOUNT
REGISTER RECORDING FEE  $145.00
HOMELESSNESS TRUST FUND  $3.00
TOTAL PAID                 $283.00

I hereby CERTIFY that this document is
Recorded in the Register of Deeds & Mortgages Office
of Essex County, New Jersey

Dana Rone
Register of Deeds & Mortgages

THIS IS A CERTIFICATION PAGE

# Do Not Detach

THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT
* - Information denoted by an asterisk may change during the verification process and may not be reflected on this page

INSTRUMENT NUMBER - 2019034120

005B6H

| Essex County Recording Data Page<br>Honorable Dana Rone<br>Essex County Register | Official Use Only |
|---|---|
| Official Use Only: | |
| Date of Document:<br>04/05/2019 | Type of Document:<br>MORTGAGE |
| First Party Name:<br>Fraleg Group Inc. | Second Party Name:<br>Corevest American Finance Lender LLC |
| Additional Parties: | |

| THE FOLLOWING SECTION IS REQUIRED FOR DEEDS ONLY | | |
|---|---|---|
| Block: | Lot: | Qualifier: |
| Municipality: | | |
| Consideration: | | |
| Mailing Address of Grantee: | | |

THE FOLLOWING SECTION IS FOR ORIGINAL MORTGAGE BOOKING & PAGING INFORMATION
ASSIGNMENTS, RELEASES, SATISFACTIONS, DISCHARGES & OTHER ORIGINAL MORTGAGE AGREEMENTS ONLY

| Original Book: | Original Page: |
|---|---|

**ESSEX COUNTY RECORDING DATA PAGE**

Please do not detach this page from the original document as it

contains important recording information and is part of the permanent record.

_Space above this line for Recorder's Use_

PREPARED BY AND UPON
RECORDATION RETURN TO:
CoreVest American Finance Lender LLC
1920 Main Street, Suite 850
Irvine, CA 92614
Attn:  Loan Administration

Lot:  15
Block: 360
Map: _____
Address: 112 N Walnut St, East Orange, NJ 07017

### MORTGAGE, ASSIGNMENT OF LEASES AND RENTS,
### SECURITY AGREEMENT AND FIXTURE FILING

**FRALEG GROUP INC**, a New York corporation
("Mortgagor" or "Borrower")

to and for the Benefit of

**COREVEST AMERICAN FINANCE LENDER LLC**
("Mortgagee" or "Lender")

| | |
|---|---|
| Dated: | As of April _5_, 2019 |
| County: | Essex |
| State: | New Jersey |

This Security Instrument serves as a Fixture Filing under the NEW JERSEY Uniform Commercial Code

MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND
FIXTURE FILING

Loan No. 24240

THIS MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, SECURITY
AGREEMENT AND FIXTURE FILING (this *"Mortgage"* or this *"Security Instrument"*) is made as of
this 5ᵗʰ day of April, 2019, by FRALEG GROUP INC, a New York corporation, having an address at
931 Lincoln Place, Brooklyn, NY 11213; Attn Andy O. Alege (*"Mortgagor"* or *"Borrower"*) to and for
the benefit of COREVEST AMERICAN FINANCE LENDER LLC, a Delaware limited liability
company, as Lender, having an address at 1920 Main Street, Suite 850, Irvine, CA 92614, Attn: Loan
Administration (together with its successors and/or assigns, *"Mortgagee"* or *"Lender"*).

WITNESSETH:

A.     This Mortgage is given to secure a loan (the *"Loan"*) in the maximum principal sum of
Eight Million and No/100 Dollars ($8,000,000.00) or so much thereof as may be advanced pursuant to that
certain Loan Agreement dated as of January 23, 2019 by and between Borrower and Lender (as the same
may be amended, restated, replaced, supplemented or otherwise modified from time to time, the *"Loan
Agreement"*), and evidenced by that certain Secured Promissory Note made by Borrower to Lender, dated
as of the date of the Loan Agreement (such Note, together with all extensions, renewals, replacements,
restatements or modifications thereof, being hereinafter referred to as the *"Note"*). Capitalized terms used
herein without definition shall have the meanings ascribed to such terms in the Loan Agreement.

It is understood and agreed that the maximum amount to be secured at any one time outstanding
by this Mortgage is the principal sum of Eight Million and No/100 Dollars ($8,000,000.00), plus all interest,
and plus all taxes, insurance premiums, costs of collection (including reasonable attorney's fees), liability
for environmental non-compliance and other amounts paid pursuant to the terms of this Mortgage, or of
any Note, Loan Document or other obligation secured hereby, or amounts otherwise paid or incurred by
Lender to preserve the mortgage lien. The parties to this Mortgage may agree to change the interest rate,
due date, or other terms of this Mortgage or of the Indebtedness secured hereby. If the Parties agree to a
change, which change is a "modification" as defined in P.L. 1985, c 353, this Mortgage shall be subject to
the priority provisions of that law and to N.J. Stat. § 46:9-8.1 and 8.2.

B.     Borrower desires to secure the payment of the principal amount of the Loan outstanding
from time to time, including without limitation, any and all Advances now or hereafter made under the
Loan Agreement, together with all interest accrued and unpaid thereon and all other sums due to Lender in
respect of the Loan under the Note, the Loan Agreement and the other Loan Documents (the *"Debt"*) and
the performance of all of its obligations under the Note, the Loan Agreement and the other Loan Documents.

C.     This Mortgage is given pursuant to the Loan Agreement, and payment, fulfillment and
performance by Borrower of its obligations thereunder and under the other Loan Documents are secured
hereby, and each and every term and provision of the Loan Agreement and the Note, including the rights,
remedies, obligations, covenants, conditions, agreements, indemnities, representations and warranties of
the parties therein, are hereby incorporated by reference herein as though set forth in full and shall be
considered a part of this Mortgage.

NOW THEREFORE, in consideration of the making of the Loan, and any and all Advances now
or hereafter made thereunder pursuant to the terms of the Loan Agreement, by Lender and the covenants,

agreements, representations and warranties set forth in this Mortgage and other good and valuable consideration, the receipt and sufficiency of which are acknowledged by Borrower:

## ARTICLE I.

## GRANTS OF SECURITY

Section 1.01    Mortgaged Property.  Borrower does hereby irrevocably mortgage, grant, bargain, sell, pledge, assign, warrant, transfer and convey unto Lender, and its successors and assigns, WITH POWER OF SALE, all right, title, interest and estate of Borrower now owned, or hereafter acquired by Borrower, in and to the following (collectively, the "*Property*"):

(a)    Land.  The real property located in the County of Essex, State of New Jersey, identified on Schedule 1 attached hereto and made a part hereof and more particularly described in Exhibit A, attached hereto and made a part hereof (collectively, the "*Land*");

(b)    Additional Land.  All additional lands, estates and development rights hereafter acquired by Borrower for use in connection with the Land and the development of the Land and all additional lands and estates therein which may, from time to time, by supplemental mortgage or deed of trust or otherwise be expressly made subject to the lien of this Mortgage;

(c)    Improvements.  The buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and improvements now or hereafter erected or located on the Land (collectively, the "*Improvements*");

(d)    Easements.  All easements, rights-of-way or use, rights, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, air rights and development rights, and all estates, rights, titles, interests, privileges, liberties, servitudes, tenements, hereditaments and appurtenances of any nature whatsoever, in any way now or hereafter belonging, relating or pertaining to the Land and the Improvements and the reversion and reversions, remainder and remainders, and all land lying in the bed of any street, road or avenue, opened or proposed, in front of or adjoining the Land, to the center line thereof and all the estates, rights, titles, interests, dower and rights of dower, curtesy and rights of curtesy, property, possession, claim and demand whatsoever, both at law and in equity, of Borrower of, in and to the Land and the Improvements and every part and parcel thereof, with the appurtenances thereto;

(e)    Equipment.  All "equipment," as such term is defined in Article 9 of the Uniform Commercial Code (as hereinafter defined), now owned or hereafter acquired by Borrower, which is used at or in connection with the Improvements or the Land or is located thereon or therein (including, but not limited to, all machinery, equipment, furnishings, and electronic data-processing and other office equipment now owned or hereafter acquired by Borrower and any and all additions, substitutions and replacements of any of the foregoing), together with all attachments, components, parts, equipment and accessories installed thereon or affixed thereto (collectively, the "*Equipment*").  Notwithstanding the foregoing, Equipment shall not include any property belonging to Tenants under Leases except to the extent that Borrower shall have any right or interest therein;

(f)    Fixtures.  All Equipment now owned, or the ownership of which is hereafter acquired, by Borrower which is so related to the Land and Improvements forming part of the Property that it is deemed fixtures or real property under the law of the particular state in which the Equipment is located, including, without limitation, all building or construction materials intended for construction, reconstruction, alteration or repair of or installation on the Property, construction equipment, appliances,

-2-

machinery, plant equipment, fittings, apparatuses, fixtures and other items now or hereafter attached to, installed in or used in connection with (temporarily or permanently) any of the Improvements on the Land, including, but not limited to, engines, devices for the operation of pumps, pipes, plumbing, cleaning, call and sprinkler systems, fire extinguishing apparatuses and equipment, lighting, heating, ventilating, plumbing, laundry, incinerating, electrical, air conditioning and air cooling equipment and systems, gas and electric machinery, appurtenances and equipment, pollution control equipment, security systems, disposals, dishwashers, refrigerators and ranges, recreational equipment and facilities of all kinds, and water, gas, electrical, storm and sanitary sewer facilities, utility lines and equipment (whether owned individually or jointly with others, and, if owned jointly, to the extent of Borrower's interest therein) and all other utilities whether or not situated in easements, all water tanks, water supply, water power sites, fuel stations, fuel tanks, fuel supply, and all other structures, together with all accessions, appurtenances, additions, replacements, betterments and substitutions for any of the foregoing and the proceeds thereof (collectively, the "*Fixtures*"). Notwithstanding the foregoing, "Fixtures" shall not include any property which Tenants are entitled to remove pursuant to Leases except to the extent that Borrower shall have any right or interest therein;

(g)     **Personal Property.** All furniture, furnishings, objects of art, machinery, goods, tools, equipment, supplies, appliances, general intangibles, contract rights, accounts, accounts receivable, franchises, licenses, certificates and permits, soil tests and reports, feasibility studies, appraisals, engineering reports, environmental reports and similar materials relating to any portion of or all of the Real Property, and all modifications, supplements and amendments thereto, and all other personal property of any kind or character whatsoever (as defined in and subject to the provisions of the Uniform Commercial Code), other than Fixtures, which are now or hereafter owned by Borrower and which are located within or about the Land and the Improvements, and any and all stored materials to be used in connection with the renovation or construction of any improvements on the Land wherever located, together with all accessories, replacements and substitutions thereto or therefor and the proceeds thereof (collectively, the "*Personal Property*"), and the right, title and interest of Borrower in and to any of the Personal Property which may be subject to any security interests, as defined in the Uniform Commercial Code, as adopted and enacted by the state or states where any of the Property is located (as amended from time to time, the "*Uniform Commercial Code*"), superior in lien to the lien of this Mortgage, and all proceeds and products of any of the above;

(h)     **Leases and Rents.** (i) All leases, subleases or subsubleases, lettings, licenses, concessions or other agreements (whether written or oral) pursuant to which any Person is granted a possessory interest in, or right to use or occupy all or any portion of the Land and the Improvements, and every modification, amendment, extension, renewal, replacement, or other agreement relating to such leases, subleases, subsubleases, or other agreements entered into in connection with such leases, subleases, subsubleases, or other agreements and every guarantee of the performance and observance of the covenants, conditions and agreements to be performed and observed by the other party thereto, heretofore or hereafter entered into, whether before or after the filing by or against Borrower of any petition for relief under 11 U.S.C. §101 et seq., as the same may be amended from time to time (the "*Bankruptcy Code*") (collectively, the "*Leases*"); (ii) all right, title and interest of Borrower, its successors and assigns, therein and thereunder, including, without limitation, cash or securities deposited thereunder to secure the performance by the lessees of their obligations thereunder and all rents, additional rents, revenues, issues and profits (including all oil and gas or other mineral royalties and bonuses) from the Land and the Improvements, whether paid or accruing before or after the filing by or against Borrower of any petition for relief under the Bankruptcy Code (collectively, the "*Rents*"); (iii) all proceeds from the sale or other disposition of the Leases and the right to receive and apply the Rents to the payment and performance of the Obligations, including the payment of the Debt; (iv) all of Borrower's right, title and interest in, and claims under, any and all lease guaranties, letters of credit and any other credit support (individually, a "*Lease Guaranty*", and collectively, the "*Lease Guaranties*") given by any guarantor in connection with any of the Leases or leasing

commissions (individually, a "*Lease Guarantor*", and collectively, the "*Lease Guarantors*") to Borrower; (v) all rights, powers, privileges, options and other benefits of Borrower as the lessor under any of the Leases and the beneficiary under any of the Lease Guaranties, including, without limitation, the immediate and continuing right to make claims for, and to receive, collect and acknowledge receipt for all Rents payable or receivable under the Leases and all sums payable under the Lease Guaranties or pursuant thereto (and to apply the same to the payment of the Debt or the Other Obligations), and to do all other things which Borrower or any lessor is or may become entitled to do under any of the Leases or Lease Guaranties; (vi) the right, subject to the provisions of the Loan Agreement, at Lender's option, upon revocation of the license granted herein, to enter upon the Property in person, by agent or by court-appointed receiver, to collect the Rents; (vii) during the continuance of an Event of Default, Borrower's irrevocable power of attorney, coupled with an interest, to take any or all other actions designated by Lender for the proper management and preservation of the Land and Improvements; and (viii) any and all other rights of Borrower in and to the items set forth in subsections (i) through (vii) above, and all amendments, modifications, replacements, renewals and substitutions thereof;

(i)    Condemnation Awards.  All awards or payments, including interest thereon, which may heretofore and hereafter be made with respect to the Property, whether from the exercise of the right of eminent domain (including, but not limited to, any transfer made in lieu of or in anticipation of the exercise of such right), or for a change of grade, or for any other injury to or decrease in the value of the Property;

(j)    Insurance Proceeds.  All proceeds in respect of the Property under any insurance policies covering the Property, including, without limitation, the right to receive and apply the proceeds of any insurance, judgments or settlements made in lieu thereof, for damage to the Property;

(k)    Tax Certiorari.  All refunds, rebates or credits in connection with any reduction in Taxes, Impositions, assessments or other charges assessed against the Property as a result of tax certiorari proceedings or any other applications or proceedings for reduction;

(l)    Rights.  The right, in the name and on behalf of Borrower, to appear in and defend any action or proceeding brought with respect to the Property and to commence any action or proceeding to protect the interest of Lender in the Property;

(m)    Agreements.  All agreements, contracts, certificates, instruments, franchises, management agreements, permits, licenses, all architectural, design and engineering drawings, plans, specifications and other documents, now or hereafter entered into, and all rights therein and thereto, respecting or pertaining to the use, occupation, construction, renovation, repair, management or operation of the Land and any part thereof and any Improvements or respecting any business or activity conducted on the Land and any part thereof and all right, title and interest of Borrower therein and thereunder, including, without limitation, the right, upon the happening and during the continuance of any Event of Default, to receive and collect any sums payable to Borrower thereunder;

(n)    Intellectual Property.    All tradenames, trademarks, servicemarks, logos, copyrights, goodwill, URLs or other online media, books and records and all other general intangibles relating to or used in connection with the operation of the Property;

(o)    Accounts.  All reserves, escrows and deposit accounts maintained by Borrower with respect to the Property, together with all deposits or wire transfers made to such accounts, and all cash, checks, drafts, certificates, securities, investment property, financial assets, instruments and other property held therein from time to time, and all proceeds, products, distributions, dividends and/or substitutions thereon and thereof, excluding the following (the "*Account Collateral*"): all reserves, escrows and deposit

accounts in which a security interest is granted to Lender pursuant to the Loan Agreement and all amounts at any time contained therein and the proceeds thereof;

   (p) <u>Uniform Commercial Code Property</u>.  All documents, instruments, chattel paper and general intangibles, as the foregoing terms are defined in the Uniform Commercial Code, relating to the Property;

   (q) <u>Minerals</u>.  All minerals, crops, timber, trees, shrubs, flowers and landscaping features now or hereafter located on, under or above Land;

   (r) <u>All Other Assets</u>.  All other accounts, general intangibles, instruments, investment property, documents, chattel paper, goods, moneys, letters of credit, letter of credit rights, certificates of deposit, deposit accounts, escrow deposits, commercial tort claims, oil, gas and minerals,  and all other property and interests in property of Borrower, whether tangible or intangible, and including without limitation all of Borrower's claims and rights to the payment of damages arising under the Bankruptcy Code (*"Bankruptcy Claims"*), excluding the Account Collateral;

   (s) <u>Proceeds</u>.  All proceeds of, and proceeds of any sale of, any of the foregoing, including, without limitation, proceeds of insurance and condemnation awards, whether in cash or in liquidation or other claims, or otherwise; and

   (t) <u>Other Rights</u>.  Any and all other rights of Borrower in and to the items set forth in Subsections (s) through (s) above.

AND, without limiting any of the other provisions of this Mortgage, to the extent permitted by applicable law, Borrower expressly grants to Lender, as secured party, a security interest in all of Borrower's right, title and interest in and to that portion of the Property which is or may be subject to the provisions of the Uniform Commercial Code which are applicable to secured transactions; it being understood and agreed that the Improvements and Fixtures are part and parcel of the Land (the Land, the Improvements and the Fixtures collectively referred to as the *"Real Property"*) appropriated to the use thereof and, whether affixed or annexed to the Land or not, shall for the purposes of this Mortgage be deemed conclusively to be real estate and mortgaged hereby.

It is hereby acknowledged and agreed that Borrower has granted to Lender a security interest in the Account Collateral pursuant to the **Loan Agreement.  Notwithstanding anything to the contrary contained herein,** Lender's security interest in the Account Collateral shall be governed by the Loan Agreement and not this Mortgage.

   Section 1.02 <u>Assignment of Rents</u>.

   (a) Borrower hereby absolutely and unconditionally assigns to Lender all of Borrower's right, title and interest in and to all current and future Leases, Rents, Lease Guaranties and Bankruptcy Claims; it being intended by Borrower that this assignment constitutes a present, absolute assignment and not an assignment for additional security only.  Nevertheless, subject to the terms of the Loan Agreement and this Mortgage, Lender grants to Borrower, so long as no Event of Default has occurred and is continuing, a revocable license to (and Borrower shall have the right to) collect, receive, use and enjoy the Rents, as well as any sums due under the Lease Guaranties.  Borrower shall hold the Rents, as well as all sums received pursuant to any Lease Guaranty, or a portion thereof sufficient to discharge all current sums due on the Debt, in trust for the benefit of Lender for use in the payment of such sums.  This assignment is effective without any further or supplemental assignment documents.

-5-

(o)    Following the occurrence and during the continuance of an Event of Default, or during such other times as may be provided for in the Loan Agreement, Borrower hereby authorizes and directs the lessees named in the Leases, any other future lessees or occupants of the Real Property and all Lease Guarantors to pay over to Lender or to such other party as Lender directs all Rents and all sums due under any Lease Guaranties, upon such lessee's receipt from Lender of written notice to the effect that Lender is then the holder of this assignment. No lessee or Lease Guarantor will be obligated to inquire further as to the occurrence or continuance of an Event of Default. No lessee or Lease Guarantor will be obligated to pay to Borrower any amounts which are actually paid to Lender in response to such a notice. Borrower will not interfere with and will cooperate with Lender's collection of such Rents. Such Rents shall be disbursed and/or applied in accordance with the terms of the Loan Documents. In furtherance of the foregoing, Borrower hereby grants to Lender an irrevocable power of attorney, coupled with an interest, to execute and deliver, on behalf of Borrower, to tenants under current and future Leases and counterparties to Lease Guaranties, direction letters to deliver all Rents and all sums due under any Lease Guaranties directly to Lender or to such other party as Lender directs. Any exercise of the foregoing power of attorney shall constitute an immediate revocation of the revocable license given pursuant to Section 1.02(a).

**Section 1.03    Security Agreement.**  This Mortgage is both a real property mortgage and a "security agreement" within the meaning of the Uniform Commercial Code. The Property includes both real and personal property and all other rights and interests, whether tangible or intangible in nature, of Borrower in the Property. By executing and delivering this Mortgage, Borrower hereby grants to Lender, as security for the Obligations, a security interest in the Fixtures, the Equipment, the Personal Property and the other property constituting the Property to the full extent that the Fixtures, the Equipment, the Personal Property and such other property may be subject to the Uniform Commercial Code (said portion of the Property so subject to the Uniform Commercial Code being called the *"Collateral"*). If an Event of Default shall occur and be continuing, Lender, in addition to any other rights and remedies which it may have, shall have and may exercise immediately and without demand, any and all rights and remedies granted to a secured party upon default under the Uniform Commercial Code, including, without limiting the generality of the foregoing, the right to take possession of the Collateral or any part thereof, and to take such other measures as Lender may deem necessary for the care, protection and preservation of the Collateral. Upon request or demand of Lender after the occurrence and during the continuance of an Event of Default, Borrower shall, at its expense, assemble the Collateral and make it available to Lender at a convenient place (at the Land if tangible property) reasonably acceptable to Lender. Borrower shall pay to Lender on demand any and all expenses, including reasonable attorneys' fees and costs, incurred or paid by Lender in protecting its interest in the Collateral and in enforcing its rights hereunder with respect to the Collateral after the occurrence and during the continuance of an Event of Default. Any notice of sale, disposition or other intended action by Lender with respect to the Collateral sent to Borrower in accordance with the provisions hereof at least ten (10) days prior to such action, shall, except as otherwise provided by applicable law or the Loan Agreement, constitute reasonable notice to Borrower. The proceeds of any disposition of the Collateral, or any part thereof, may, except as otherwise required by applicable law, be applied by Lender to the payment of the Debt in such priority and proportions as Lender in its discretion shall deem proper. The principal place of business of Borrower (Debtor) is as set forth in the preamble of this Mortgage and the address of Lender (Secured Party) is as set forth in the preamble of this Mortgage.

**Section 1.04    Fixture Filing.**  Certain of the Property is or will become "fixtures" (as that term is defined in the Uniform Commercial Code) on the Land, described or referred to in this Mortgage, and this Mortgage, upon being filed for record in the real estate records of the city or county wherein such fixtures are situated, shall operate also as a financing statement naming Borrower as the Debtor and Lender as the Secured Party filed as a fixture filing in accordance with the applicable provisions of said Uniform Commercial Code upon such of the Property that is or may become fixtures. This Mortgage constitutes a fixture filing in accordance with the applicable provisions of said Uniform Commercial Code. For this

purpose, the respective addresses of Borrower, as debtor, and Lender, as secured party, are as set forth in the preamble of this Mortgage.

## CONDITIONS TO GRANT

TO HAVE AND TO HOLD the above granted and described Property unto and to the use and benefit of Lender and its successors and assigns, forever;

PROVIDED, HOWEVER, these presents are upon the express condition that, if Borrower shall well and truly pay and perform the Obligations (including the payment of the Debt) at the time and in the manner provided in this Mortgage, the Note, the Loan Agreement and the other Loan Documents, and shall well and truly abide by and comply with each and every covenant and condition set forth herein and in the Note, the Loan Agreement and the other Loan Documents, these presents and the estate hereby granted shall cease, terminate and be void; provided, however, that, subject to Section 9.06, Borrower's obligation to indemnify and hold harmless Lender pursuant to the provisions hereof shall survive any such payment or release.

## ARTICLE II.

### DEBT AND OBLIGATIONS SECURED

Section 2.01   Obligations.  This Mortgage and the grants, assignments and transfers made in Article I are given for the purpose of securing the Obligations, including, but not limited to, the Debt.

Section 2.02   Other Obligations.  This Mortgage and the grants, assignments and transfers made in Article I are also given for the purpose of securing the following (collectively, the *"Other Obligations"*):

(a)   the performance of all other obligations of Borrower contained herein;

(b)   the performance of each obligation of Borrower contained in the Loan Agreement and in each other Loan Document; and

(c)   the performance of each obligation of Borrower contained in any renewal, extension, amendment, modification, consolidation, change of, or substitution or replacement for, all or any part of the Note, the Loan Agreement or any other Loan Document.

Section 2.03   Debt and Other Obligations.  Borrower's obligations for the payment of the Debt and the performance of the Other Obligations shall be referred to collectively herein as the *"Obligations."*

Section 2.04   Variable Interest Rate.  The Loan secured by this Mortgage may be a variable interest rate loan, if so provided in the Loan Agreement.

Section 2.05   Loan Repayment.  Provided no Event of Default exists, this Mortgage will be satisfied and discharged of record by Lender in accordance with the terms and provisions set forth in the Loan Agreement.

Section 2.06   Other Mortgages; No Election of Remedies.

(a)   The Debt is now or may hereafter be secured by one or more other mortgages, deeds to secure debt, deeds of trust and other security agreements (collectively, as the same may be

-7-

amended, restated, replaced, supplemented, extended, renewed or otherwise modified and in effect from time to time, are herein collectively called the "*Other Mortgages*"), which cover or will hereafter cover other properties that are or may be located in various states and in other counties in New Jersey (collectively, the "*Other Collateral*"). The Other Mortgages will secure the Debt and the performance of the other covenants and agreements of Borrower set forth in the Loan Documents. Upon the occurrence and during the continuance of an Event of Default, Lender may proceed under this Mortgage and/or any or all the Other Mortgages against either the Property and/or any or all the Other Collateral in one or more parcels and in such manner and order as Lender shall elect. Borrower hereby irrevocably waives and releases, to the extent permitted by law, and whether now or hereafter in force, any right to have the Property and/or the Other Collateral marshaled upon any foreclosure of this Mortgage or any Other Mortgage.

(b)      Without limiting the generality of the foregoing, and without limitation as to any other right or remedy provided to Lender in this Mortgage or the other Loan Documents, in the case and during the continuance of an Event of Default (i) Lender shall have the right to pursue all of its rights and remedies under this Mortgage and the Loan Documents, at law and/or in equity, in one proceeding, or separately and independently in separate proceedings from time to time, as Lender, in its sole and absolute discretion, shall determine from time to time, (ii) Lender shall not be required to either marshal assets, sell the Property and/or any Other Collateral in any particular order of alienation (and may sell the same simultaneously and together or separately), or be subject to any "one action" or "election of remedies" law or rule with respect to the Property and/or any Other Collateral, (iii) the exercise by Lender of any remedies against any one item of Property and/or any Other Collateral will not impede Lender from subsequently or simultaneously exercising remedies against any other item of Property and/or Other Collateral, (iv) all liens and other rights, remedies or privileges provided to Lender herein shall remain in full force and effect until Lender has exhausted all of its remedies against the Property and all Property has been foreclosed, sold and/or otherwise realized upon in satisfaction of the Debt, and (v) Lender may resort for the payment of the Debt to any security held by Lender in such order and manner as Lender, in its discretion, may elect and Lender may take action to recover the Debt, or any portion thereof, or to enforce any covenant hereof without prejudice to the right of Lender thereafter to foreclose this Mortgage.

(c)      Without notice to or consent of Borrower and without impairment of the lien and rights created by this Mortgage, Lender may, at any time (in its sole and absolute discretion; but Lender shall have no obligation to), execute and deliver to Borrower a written instrument releasing all or a portion of the lien of this Mortgage as security for any or all of the Obligations now existing or hereafter arising under or in respect of the Note, the Loan Agreement and each of the other Loan Documents, whereupon following the execution and delivery by Lender to Borrower of any such written instrument of release, this Mortgage shall no longer secure such Obligations released.

Section 2.07    Future Advances.    This Mortgage is given to secure not only existing indebtedness, but also all future advances, including without limitation, Advances made from time to time pursuant to the Loan Agreement, whether such advances are obligatory or are to be made at the option of the Lender, or otherwise, to the same extent as if such future advances were made on the date of the execution of this Mortgage.

ARTICLE III.

BORROWER COVENANTS

Borrower covenants and agrees that throughout the term of the Loan:

Section 3.01    Payment of Debt.    Borrower will pay the Debt at the time and in the manner provided in the Loan Agreement, the Note and this Mortgage.

**Section 3.02   Incorporation by Reference.**  All the covenants, conditions and agreements contained in (a) the Loan Agreement, (b) the Note, and (c) all and any of the other Loan Documents, are hereby made a part of this Mortgage to the same extent and with the same force as if fully set forth herein. In the event of any inconsistency between any of the terms of this Mortgage (including the terms of Section 1.03 herein) and the Loan Agreement, the terms of the Loan Agreement shall control. Without limiting the generality of the foregoing, Borrower (i) agrees to insure, repair, maintain and restore damage to the Property, pay Taxes, Impositions, assessments and other charges assessed against the Property, and comply with Legal Requirements, in accordance with the Loan Agreement, and (ii) agrees that the proceeds of insurance and condemnation awards shall be settled, held, applied and/or disbursed in accordance with the Loan Agreement.

**Section 3.03   Performance of Other Agreements.**  Borrower shall observe and perform each and every term, covenant and provision to be observed or performed by Borrower pursuant to the Loan Agreement, any other Loan Document and any other agreement or recorded instrument affecting or pertaining to the Property, and any amendments, modifications or changes thereto.

## ARTICLE IV.

### OBLIGATIONS AND RELIANCES

**Section 4.01   Relationship of Borrower and Lender.**  The relationship between Borrower and Lender is solely that of debtor and creditor, and Lender has no fiduciary or other special relationship with Borrower, and no term or condition of any of the Loan Agreement, the Note, this Mortgage or the other Loan Documents shall be construed so as to deem the relationship between Borrower and Lender to be other than that of debtor and creditor.

**Section 4.02   No Reliance on Lender.**  The general partners, members, principals and (if Borrower is a trust) beneficial owners of Borrower, as applicable, are experienced in the ownership and operation of properties similar to the Property, and Borrower and Lender are relying solely upon such expertise and business plan in connection with the ownership and operation of the Property.  Borrower is not relying on Lender's expertise, business acumen or advice in connection with the Property.

**Section 4.03   No Lender Obligations.**

(a)       Notwithstanding the provisions of Subsections 1.01(h) and (m) or Section 1.02, Lender is not undertaking the performance of (i) any obligations under the Leases, or (ii) any obligations with respect to any other agreements, contracts, certificates, instruments, franchises, permits, trademarks, licenses or other documents.

(b)       By accepting or approving anything required to be observed, performed or fulfilled or to be given to Lender pursuant to this Mortgage, the Loan Agreement, the Note or the other Loan Documents, including, without limitation, any officer's certificate, balance sheet, statement of profit and loss or other financial statement, survey, appraisal or insurance policy, Lender shall not be deemed to have warranted, consented to, or affirmed the sufficiency, legality or effectiveness of same, and such acceptance or approval thereof shall not constitute any warranty or affirmation with respect thereto by Lender.

**Section 4.04   Reliance.**  Borrower recognizes and acknowledges that in accepting the Loan Agreement, the Note, this Mortgage and the other Loan Documents, Lender is expressly and primarily relying on the truth and accuracy of the warranties and representations set forth in the Loan Agreement without any obligation to investigate the Property and notwithstanding any investigation of the Property by Lender; that such reliance existed on the part of Lender prior to the date hereof; that the warranties and

13074400790E
03654-0036914-4-99-297

-9-

representations are a material inducement to Lender in making the Loan; and that Lender would not be willing to make the Loan and accept this Mortgage in the absence of the warranties and representations as set forth in the Loan Agreement.

## ARTICLE V.

## FURTHER ASSURANCES

Section 5.01    Recording. Borrower forthwith upon the execution and delivery of this Mortgage and thereafter, from time to time, will cause this Mortgage and any of the other Loan Documents creating a Lien or security interest or evidencing the Lien hereof upon the Property and each instrument of further assurance to be filed, registered or recorded in such manner and in such places as may be required by any present or future law in order to publish notice of and fully to protect and perfect the Lien or security interest hereof upon, and the interest of Lender in, the Property. Borrower will pay all taxes, filing, registration or recording fees, and all expenses incident to the preparation, execution, acknowledgment and/or recording of the Note, this Mortgage, the other Loan Documents, any note, deed of trust, deed to secure debt or mortgage supplemental hereto, any security instrument with respect to the Property and any instrument of further assurance, and any modification or amendment of any of the foregoing documents, and all federal, state, county and municipal taxes, duties, imposts, assessments and charges arising out of or in connection with the execution and delivery of this Mortgage, any deed of trust, deed to secure debt or mortgage supplemental hereto, any security instrument with respect to the Property or any instrument of further assurance, and any modification or amendment of any of the foregoing documents, except where prohibited by law so to do.

Section 5.02    Further Acts, Etc. Borrower will, at the cost of Borrower, and without expense to Lender, do, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, deeds of trust, deeds to secure debt, mortgages, assignments, notices of assignments, transfers and assurances as Lender shall, from time to time, reasonably require, for the better assuring, conveying, assigning, transferring, and confirming unto Lender the Property and rights hereby mortgaged, deeded, granted, bargained, sold, conveyed, confirmed, pledged, assigned, warranted and transferred or intended now or hereafter so to be, or which Borrower may be or may hereafter become bound to convey or assign to Lender, or for carrying out the intention or facilitating the performance of the terms of this Mortgage or for filing, registering or recording this Mortgage, or for complying with all Legal Requirements. Borrower, on demand, will execute and deliver, and in the event it shall fail to so execute and deliver, hereby authorizes Lender to execute in the name of Borrower or without the signature of Borrower to the extent Lender may lawfully do so, one or more financing statements to evidence more effectively the security interest of Lender in the Property and the Collateral. Financing statements to be filed with the Secretary of State of the State in which the Borrower is organized may describe as the collateral covered thereby "all assets of the debtor, whether now owned or hereafter acquired" or words to that effect, notwithstanding that such collateral description may be broader in scope than the collateral described herein. Lender shall provide Borrower with copies of any notices and/or instruments of filings executed by Lender in accordance with the immediately preceding sentence. Borrower grants to Lender an irrevocable power of attorney coupled with an interest for the purpose of exercising and perfecting any and all rights and remedies available to Lender at law and in equity, including, without limitation, such rights and remedies available to Lender pursuant to this Section 5.02. Notwithstanding anything to the contrary in the immediately preceding sentence, Lender shall not execute any documents as attorney in fact for Borrower unless (i) Borrower shall have failed or refused to execute the same within five (5) days after delivery of Lender's request to Borrower or (ii) an Event of Default is continuing.

-10-

Section 5.03    Changes in Tax, Debt, Credit and Documentary Stamp Laws.

(a)    If any law is enacted or adopted or amended after the date of this Mortgage which deducts the Debt from the value of the Property for the purpose of taxation or which imposes a tax, either directly or indirectly, on the Debt or Lender's interest in the Property, Borrower will pay the tax, with interest and penalties thereon, if any (it being understood that nothing hereunder shall require Borrower to pay any income or franchise tax imposed on Lender by reason of Lender's interest in the Property).  If Lender is advised by counsel chosen by it that the payment of tax by Borrower would be unlawful or taxable to Lender or unenforceable or provide the basis for a defense of usury, then Lender shall have the option, by written notice to Borrower, to declare the Debt due and payable no earlier than one hundred twenty (120) days following such notice.

(b)    Borrower will not claim or demand or be entitled to any credit or credits on account of the Debt for any part of the Taxes, Impositions, assessments or other charges assessed against the Property, or any part thereof, and no deduction shall otherwise be made or claimed from the assessed value of the Property, or any part thereof, for real estate tax purposes by reason of this Mortgage or the Debt.  If such claim, credit or deduction shall be required by law, Lender shall have the option, by written notice to Borrower, to declare the Debt due and payable no earlier than one hundred twenty (120) days following such notice.

(c)    If at any time the United States of America, any State thereof or any subdivision of any such State shall require revenue or other stamps to be affixed to the Note, this Mortgage, or any of the other Loan Documents or shall impose any other tax or charge on the same, Borrower will pay for the same, with interest and penalties thereon, if any.

Section 5.04

DUE ON SALE/ENCUMBRANCE

Section 5.05    Lender Reliance.  Borrower acknowledges that Lender has examined and relied on the experience of Borrower and its general partners, members, principals and (if Borrower is a trust) beneficial owners in owning and operating properties such as the Property in agreeing to make the Loan, and will continue to rely on Borrower's ownership of the Property as a means of maintaining the value of the Property as security for the payment and performance of the Obligations, including the repayment of the Debt.  Borrower acknowledges that Lender has a valid interest in maintaining the value of the Property so as to ensure that, should Borrower default in the payment and/or performance of the Obligations, including the repayment of the Debt, Lender can recover the Debt by a sale or foreclosure of the Property or other sale permitted by applicable law as to the Personal Property, Equipment or Fixtures.

Section 5.06    No Transfer.  Borrower shall not permit or suffer any Transfer to occur except in accordance with the terms of the Loan Agreement.

### ARTICLE VI.

### RIGHTS AND REMEDIES UPON DEFAULT

Section 6.01    Remedies.  Upon the occurrence and during the continuance of any Event of Default, Borrower agrees that Lender may take such action, without notice or demand, as it deems advisable to protect and enforce its rights against Borrower and in and to the Property, including, but not limited to, the following actions, each of which may be pursued concurrently or otherwise, at such time and in such

order as Lender may determine, in its sole discretion, without impairing or otherwise affecting the other rights and remedies of Lender:

(a)    declare the entire unpaid Debt to be immediately due and payable;

(b)    intentionally omitted;

(c)    institute proceedings, judicial or otherwise, for the complete or partial foreclosure of this Mortgage under any applicable provision of law, in which case the Property or any interest therein may be sold for cash or upon credit in one or more parcels or in several interests or portions and in any order or manner, Lender being hereby expressly granted the power to foreclose this Mortgage and sell the Property at public auction and convey the same to the purchaser in fee simple;

(d)    with or without entry, to the extent permitted and pursuant to the procedures provided by applicable law, institute proceedings for the partial foreclosure of this Mortgage for the portion of the Debt then due and payable, subject to the continuing lien and security interest of this Mortgage for the balance of the Obligations not then due, unimpaired and without loss of priority;

(e)    intentionally omitted;

(f)    to the extent permitted by applicable law, sell for cash or upon credit the Property or any part thereof and all estate, claim, demand, right, title and interest of Borrower therein and rights of redemption thereof, pursuant to power of sale or otherwise, at one or more sales, as an entirety or in parcels, at such time and place, upon such terms and after such notice thereof, all as may be required or permitted by law; and, without limiting the foregoing:

(i)    In connection with any sale or sales hereunder, Lender shall be entitled to elect to treat any of the Property which consists of (x) a right in action, or (y) property that can be severed from the Real Property covered hereby, or (z) any Improvements (without causing structural damage thereto), as if the same were personal property, and dispose of the same in accordance with applicable law, separate and apart from the sale of the Real Property. Where the Property consists of Real Property, Personal Property, Equipment or Fixtures, whether or not such Personal Property or Equipment is located on or within the Real Property, Lender shall be entitled to elect to exercise its rights and remedies against any or all of the Real Property, Personal Property, Equipment and Fixtures in such order and manner as is now or hereafter permitted by applicable law;

(ii)    To the extent permitted by applicable law, Lender shall be entitled to elect to proceed against any or all of the Real Property, Personal Property, Equipment and Fixtures in any manner permitted under applicable law; and if Lender so elects pursuant to applicable law, the power of sale herein granted shall be exercisable with respect to all or any of the Real Property, Personal Property, Equipment and Fixtures covered hereby, as designated by Lender and Lender is hereby authorized and empowered to conduct any such sale of any Real Property, Personal Property, Equipment and Fixtures in accordance with the procedures applicable to real property;

(iii)    To the extent permitted by applicable law, should Lender elect to sell any portion of the Property which is Real Property or which is Personal Property, Equipment or Fixtures that the Lender has elected under applicable law to sell together with Real Property in accordance with the laws governing a sale of the Real Property, Lender shall give such notice of the occurrence of an Event of Default, if any, and its election to sell such Property, each as may then be required by law. Thereafter, upon the expiration of such time and the giving of such notice of sale as may then be required by law, subject to the terms hereof and of the other Loan Documents, and without the necessity of any demand on Borrower,

-12-

Lender at the time and place specified in the notice of sale, shall sell such Real Property or part thereof at public auction to the highest bidder for cash in lawful money of the United States of America. Lender may from time to time postpone any sale hereunder by public announcement thereof at the time and place noticed for any such sale; and

      (iv)    If the Property consists of several lots, parcels or items of property, Lender shall, subject to applicable law, (A) designate the order in which such lots, parcels or items shall be offered for sale or sold, or (B) elect to sell such lots, parcels or items through a single sale, or through two or more successive sales, or in any other manner Lender designates. Any Person, including Borrower or Lender, may purchase at any sale hereunder. Should Lender desire that more than one sale or other disposition of the Property be conducted, Lender shall, subject to applicable law, cause such sales or dispositions to be conducted simultaneously, or successively, on the same day, or at such different days or times and in such order as Lender may designate, and no such sale shall terminate or otherwise affect the Lien of this Mortgage on any part of the Property not sold until all the Obligations have been satisfied in full. In the event Lender elects to dispose of the Property through more than one sale, except as otherwise provided by applicable law, Borrower agrees to pay the costs and expenses of each such sale and of any judicial proceedings wherein such sale may be made;

      (g)    institute an action, suit or proceeding in equity for the specific performance of any covenant, condition or agreement contained herein, in the Note, in the Loan Agreement or in the other Loan Documents;

      (h)    recover judgment on the Note either before, during or after any proceedings for the enforcement of this Mortgage or the other Loan Documents;

      (i)    apply for the appointment of a receiver, trustee, liquidator or conservator of the Property, without notice and without regard for the adequacy of the security for the Debt and without regard for the solvency of Borrower, any guarantor or indemnitor with respect to the Loan or any Person otherwise liable for the payment of the Debt or any part thereof, and Borrower hereby irrevocably consents to such appointment;

      (j)    the license granted to Borrower under Section 1.02 hereof shall automatically be revoked and Lender may enter into or upon the Property, either personally or by its agents, nominees or attorneys and dispossess Borrower and its agents and servants therefrom, without liability for trespass, damages or otherwise and exclude Borrower and its agents or servants wholly therefrom, and take possession of all books, records and accounts relating thereto and Borrower agrees to surrender possession of the Property and of such books, records and accounts to Lender upon demand, and thereupon Lender may do such acts and things as Lender deems necessary or desirable to protect the security hereof, including without limitation, (i) use, operate, manage, control, insure, maintain, repair, restore and otherwise deal with all and every part of the Property and conduct the business thereat on such terms and for such period of time as Lender may deem proper; (ii) complete any construction on the Property in such manner and form as Lender deems advisable; (iii) make alterations, additions, renewals, replacements and improvements to or on the Property; (iv) exercise all rights and powers of Borrower with respect to the Property, whether in the name of Borrower or otherwise, including, without limitation, the right to make, cancel, enforce or modify Leases, obtain and evict tenants and demand, sue for or otherwise collect and receive all Rents and all sums due under all Lease Guaranties, including, without limitation, those past due and unpaid; (v) require Borrower to pay monthly in advance to Lender, or any receiver appointed to collect the Rents, the fair and reasonable rental value for the use and occupation of such part of the Property as may be occupied by Borrower; (vi) require Borrower to vacate and surrender possession of the Property to Lender or to such receiver and, in default thereof, Borrower may be evicted by summary proceedings or otherwise; and (vii) apply the receipts from the Property to the payment and performance of the Obligations

-13-

(including, without limitation, the payment of the Debt), in such order, priority and proportions as Lender shall deem appropriate in its sole discretion after deducting therefrom all expenses (including reasonable attorneys' fees and costs) incurred in connection with the aforesaid operations and all amounts necessary to pay the Taxes, Impositions, assessments or other charges assessed against the Property, insurance premiums, other expenses and capital expenditures incurred in connection with the Property, as well as just and reasonable compensation for the services of Lender, its counsel, agents and employees;

(k)    exercise any and all rights and remedies granted to a secured party upon default under the Uniform Commercial Code, including, without limiting the generality of the foregoing: (i) the right to take possession of the Fixtures, the Equipment and/or the Personal Property, or any part thereof, and to take such other measures as Lender may deem necessary for the care, protection and preservation of the Fixtures, the Equipment and the Personal Property, and (ii) request Borrower, at its sole cost and expense, to assemble the Fixtures, the Equipment and/or the Personal Property and make it available to Lender at a convenient place acceptable to Lender. Any notice of sale, disposition or other intended action by Lender with respect to the Fixtures, the Equipment and/or the Personal Property sent to Borrower in accordance with the provisions hereof at least ten (10) days prior to such action, shall constitute commercially reasonable notice to Borrower;

(l)    pursue such other remedies as may be available to Lender at law or in equity; and/or

(m)    apply the undisbursed balance of any escrow or other deposits held by or on behalf of Lender with respect to the Property, to the payment of the Debt in such order, priority and proportions as Lender shall deem to be appropriate in its sole discretion.

In the event of a sale, by foreclosure, power of sale or otherwise, of less than all of the Property, this Mortgage shall continue as a Lien and security interest on the remaining portion of the Property unimpaired and without loss of priority.

The exercise by Lender of its rights under this Section 7.01 and the collection of the Rents and the sums due under the Lease Guaranties and the application thereof as provided in the Loan Documents shall not be considered a waiver of any Default or Event of Default under the Note, the Loan Agreement, this Mortgage or the other Loan Documents.

Section 6.02    Application of Proceeds.    The purchase money proceeds and avails of any disposition of the Property or any part thereof, or any other sums collected by Lender pursuant to the Note, this Mortgage or the other Loan Documents, may be applied by Lender to the payment of the Obligations in such priority and proportions as Lender in its discretion shall deem proper, to the extent consistent with law.

Section 6.03    Right to Cure Defaults.    During the continuance of any Event of Default, Lender may, but without any obligation to do so and without notice to or demand on Borrower and without releasing Borrower from any obligation hereunder, perform the obligations in Default in such manner and to such extent as Lender may deem necessary to protect the security hereof. Lender is authorized to enter upon the Property for such purposes or appear in, defend or bring any action or proceeding to protect its interest in the Property or to foreclose this Mortgage or collect the Debt, and to make any protective advances that Lender may deem necessary to protect the security hereof, the cost and expense of any of the foregoing (including reasonable attorneys' fees and disbursements to the extent permitted by law), with interest thereon at the Default Rate for the period after notice from Lender that such cost or expense was incurred to the date of payment to Lender, shall constitute a portion of the Debt, shall be secured by this Mortgage and the other Loan Documents and shall be due and payable to Lender upon demand.

-14-

**Section 6.04**   <u>Other Rights, Etc.</u>

(a)     The failure of Lender to insist upon strict performance of any term hereof shall not be deemed to be a waiver of any term of this Mortgage. Borrower shall not be relieved of Borrower's obligations hereunder by reason of (i) the failure of Lender to comply with any request of Borrower or any guarantor or indemnitor with respect to the Loan or to take any action to foreclose this Mortgage or otherwise enforce any of the provisions hereof or of the Note or the other Loan Documents, (ii) the release, regardless of consideration, of the whole or any part of the Property, or of any Person liable for the Obligations or any portion thereof, or (iii) any agreement or stipulation by Lender extending the time of payment or otherwise modifying or supplementing the terms of the Note, this **Mortgage or the other Loan Documents.**

(b)     It is agreed that the risk of loss or damage to the Property is on Borrower, and Lender shall have no liability whatsoever for any decline in value of the Property, for failure to maintain the Policies, or for failure to determine whether insurance in force is adequate as to the amount of risks insured. Possession by Lender shall not be deemed an election of judicial relief, if any such possession is requested or obtained, with respect to any Property or collateral not in Lender's possession.

(c)     Lender may resort for the payment and performance of the Obligations (including, but not limited to, the payment of the Debt) to any other security held by Lender in such order and manner as Lender, in its discretion, may elect. Lender may take action to recover the Debt, or any portion thereof, or to enforce the Other Obligations or any covenant hereof, without prejudice to the right of Lender thereafter to enforce any remedy hereunder or under applicable law against Borrower, including the right to foreclose this Mortgage. The rights of Lender under this Mortgage shall be separate, distinct and cumulative and none shall be given effect to the exclusion of the others. No act of Lender shall be construed as an election to proceed under any one provision herein to the exclusion of any other provision. Lender shall not be limited exclusively to the rights and remedies herein stated but shall be entitled to every right and remedy now or hereafter afforded at law or in equity.

**Section 6.05**   <u>Right to Release Any Portion of the Property.</u> Lender may release any portion of the Property for such consideration as Lender may require without, as to the remainder of the Property, in any way impairing or affecting the Lien or priority of this Mortgage, or improving the position of any subordinate lienholder with respect thereto, except to the extent that the Debt shall have been reduced by the actual monetary consideration, if any, received by Lender for such release, and Lender may accept by assignment, pledge or otherwise any other property in place thereof as Lender may require without being accountable for so doing to any other lienholder. This Mortgage shall continue as a Lien and security interest in the remaining portion of the Property.

**Section 6.06**   <u>Right of Entry.</u> Subject to the rights of Tenants and upon reasonable prior notice to Borrower, Lender and its agents shall have the right to enter and inspect the Property at all reasonable times.

## ARTICLE VII.

## INDEMNIFICATION

**Section 7.01**   <u>Mortgage and/or Intangible Tax.</u> Borrower shall, at its sole cost and expense, protect, defend, indemnify, release and hold harmless Lender and any Person claiming by or through Lender (collectively with Lender, the "*Indemnified Parties*" and each, an "*Indemnified Party*") from and against any and all losses, damages, costs, fees, expenses claims, suits, judgments, awards, liabilities, obligations, debts, fines, penalties or charges imposed upon or incurred by or asserted against any Indemnified Party and directly or indirectly arising out of or in any way relating to any mortgage, recording, stamp, intangible

-15-

or other similar taxes required to be paid by any Indemnified Party under applicable Legal Requirements in connection with the execution, delivery, recordation, filing, registration, perfection or enforcement of this Mortgage or any of the other Loan Documents (but excluding any income, franchise or other similar taxes).

Section 7.02  No Liability to Lender.  This Mortgage shall not be construed to bind Lender to the performance of any of the covenants, conditions or provisions contained in any Lease or Lease Guaranty or otherwise impose any obligation upon Lender with respect to the Leases.  Lender shall not be liable for any loss sustained by Borrower resulting from Lender's failure to let the Property after an Event of Default or from any other act or omission of Lender in managing the Property after an Event of Default unless such loss is caused by the willful misconduct, bad faith or gross negligence of Lender.  Lender shall not be obligated to perform or discharge any obligation, duty or liability under the Leases or any Lease Guaranties or under or by reason of this Mortgage and Borrower shall indemnify Lender for, and hold Lender harmless from and against, (a) any and all liability, loss or damage which may or might be incurred under the Leases, any Lease Guaranties or under or by reason of this Mortgage, and (b) any and all claims and demands whatsoever, including the defense of any such claims or demands which may be asserted against Lender by reason of any alleged obligations and undertakings on its part to perform or discharge any of the terms, covenants or agreements contained in the Leases or any Lease Guaranties, unless caused by the willful misconduct or bad faith of Lender.  Should Lender incur any such liability, the amount thereof, including costs, expenses and reasonable attorneys' fees and costs, shall be secured by this Mortgage and by the other Loan Documents and Borrower shall reimburse Lender therefor within seven (7) Business Days after demand therefor, and upon the failure of Borrower so to do Lender may, at its option, declare the Obligations to be immediately due and payable.  This Mortgage shall not operate to place any obligation or liability for the control, care, management or repair of the Property upon Lender, nor for the carrying out of any of the terms and conditions of the Leases or any Lease Guaranties; nor shall it operate to make Lender responsible or liable for any waste committed on the Property by the tenants or any other parties, or for any dangerous or defective condition of the Property, including, without limitation, the presence of any Hazardous Substances (as defined in the Environmental Indemnity), or for any negligence in the management, upkeep, repair or control of the Property resulting in loss or injury or death to any tenant, licensee, employee or stranger.

Section 7.03  Duty to Defend; Attorneys' Fees and Other Fees and Expenses. In connection with any indemnification obligations of Borrower hereunder, upon written request by any Indemnified Party, Borrower shall defend such Indemnified Party (if requested by any Indemnified Party, in the name of the Indemnified Party) by attorneys and other professionals reasonably approved by the Indemnified Parties.  Notwithstanding the foregoing, if the defendants in any such claim or proceeding include both Borrower and any Indemnified Party and Borrower and such Indemnified Party shall have reasonably concluded that there are any legal defenses available to it and/or other Indemnified Parties that are different from or in addition to those available to Borrower, such Indemnified Party shall have the right to select separate counsel to assert such legal defenses and to otherwise participate in the defense of such action on behalf of such Indemnified Party. Upon demand, Borrower shall pay or, in the sole and absolute discretion of any Indemnified Party, reimburse, such Indemnified Party for the payment of the reasonable fees and disbursements of attorneys, engineers, environmental consultants, laboratories and other professionals in connection therewith.

## ARTICLE VIII.

### WAIVERS

Section 8.01  Waiver of Counterclaim.  To the extent permitted by applicable law, Borrower hereby waives the right to assert a counterclaim, other than a mandatory or compulsory counterclaim, in

-16-

any action or proceeding brought against it by Lender arising out of or in any way connected with this Mortgage, the Loan Agreement, the Note, any of the other Loan Documents or the Obligations.

Section 8.02    Marshaling and Other Matters.   To the extent permitted by applicable law, Borrower hereby waives the benefit of all appraisement, valuation, stay, extension, reinstatement and redemption laws now or hereafter in force and all rights of marshalling in the event of any sale hereunder of the Property or any part thereof or any interest therein. Further, to the extent permitted by applicable law, Borrower hereby expressly waives any and all rights of redemption from sale under any order or decree of foreclosure of this Mortgage on behalf of Borrower, and on behalf of each and every Person acquiring any interest in or title to the Property subsequent to the date of this Mortgage.

Section 8.03    Waiver of Notice.   To the extent permitted by applicable law, Borrower shall not be entitled to any notices of any nature whatsoever from Lender, except with respect to matters for which this Mortgage or any of the other the Loan Documents specifically and expressly provide for the giving of notice by Lender to Borrower, and except with respect to matters for which Lender is required by applicable law to give notice, and Borrower hereby expressly waives the right to receive any notice from Lender with respect to any matter for which this Mortgage or any of the other Loan Documents does not specifically and expressly provide for the giving of notice by Lender to Borrower.

Section 8.04    Waiver of Statute of Limitations.   To the extent permitted by applicable law, Borrower hereby expressly waives and releases its right to plead any statute of limitations as a defense to the payment and performance of the Obligations (including, without limitation, the payment of the Debt).

Section 8.05    Waiver of Jury Trial.   TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, BORROWER HEREBY AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND FOREVER WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST, WITH REGARD TO THE NOTE, THIS MORTGAGE OR THE OTHER LOAN DOCUMENTS, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY BORROWER AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE. LENDER IS HEREBY AUTHORIZED TO FILE A COPY OF THIS PARAGRAPH IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER BY BORROWER.

Section 8.06    Survival.   Except as otherwise set forth in the other Loan Documents, the indemnifications made pursuant to Article VIII herein and the representations and warranties, covenants, and other obligations arising under the Loan Documents, shall continue indefinitely in full force and effect and shall survive and shall in no way be impaired by (a) any satisfaction, release or other termination of this Mortgage or any other Loan Document, (b) any assignment or other transfer of all or any portion of this Mortgage or any other Loan Document (or Lender's interest in the Property (but, in such case, such indemnifications shall benefit both the Indemnified Parties and any such assignee or transferee), (c) any exercise of Lender's rights and remedies pursuant hereto, including, but not limited to, foreclosure or acceptance of a deed in lieu of foreclosure, any exercise of any rights and remedies pursuant to the Loan Agreement, the Note or any of the other Loan Documents, any transfer of all or any portion of the Property (whether by Borrower or by Lender following foreclosure or acceptance of a deed in lieu of foreclosure at any other time), (d) any amendment to this Mortgage, the Loan Agreement, the Note or any other Loan Document, and/or (e) any act or omission that might otherwise be construed as a release or discharge of Borrower from the Obligations or any portion thereof. Notwithstanding the foregoing or anything to the contrary set forth herein, in no event shall Borrower be obligated to defend or indemnify any Indemnified

-17-

Party for any damages, losses, claims and liabilities directly resulting from the gross negligence, bad faith or willful misconduct of such Indemnified Party.

## ARTICLE IX.

### NOTICES

All notices or other written communications hereunder shall be delivered in accordance with Section 10.1 of the Loan Agreement.

## ARTICLE X.

### APPLICABLE LAW

Section 10.01 Governing Law; Jurisdiction; Service of Process. WITH RESPECT TO MATTERS RELATING TO THE CREATION, PERFECTION AND THE ENFORCEMENT OF LIENS AND SECURITY INTERESTS CREATED UNDER THIS MORTGAGE, THIS MORTGAGE SHALL BE GOVERNED BY, AND BE CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE IN WHICH THE PROPERTY IS LOCATED, IT BEING UNDERSTOOD THAT, EXCEPT AS EXPRESSLY SET FORTH ABOVE IN THIS PARAGRAPH AND TO THE FULLEST EXTENT PERMITTED BY THE LAW OF SUCH STATE, THE LAW OF THE STATE OF NEW YORK APPLICABLE TO CONTRACTS MADE AND PERFORMED IN SUCH STATE (PURSUANT TO SECTION 5-1401 OF THE NEW YORK GENERAL OBLIGATIONS LAW) SHALL GOVERN ALL MATTERS RELATING TO THIS MORTGAGE AND THE OTHER LOAN DOCUMENTS AND ALL OF THE INDEBTEDNESS OR OBLIGATIONS ARISING HEREUNDER OR THEREUNDER. ALL PROVISIONS OF THE LOAN AGREEMENT INCORPORATED HEREIN BY REFERENCE SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK, AS SET FORTH IN THE GOVERNING LAW PROVISION OF THE LOAN AGREEMENT.

Section 10.02 Usury Laws. Notwithstanding anything to the contrary, (a) all agreements and communications between Borrower and Lender are hereby and shall automatically be limited so that, after taking into account all amounts deemed to constitute interest, the interest contracted for, charged or received by Lender shall never exceed the maximum legal rate of interest ("*Maximum Legal Rate*"), (b) in calculating whether any interest exceeds the Maximum Legal Rate, all such interest shall be amortized, prorated, allocated and spread over the full amount and term of all principal Indebtedness of Borrower to Lender, and (c) if through any contingency or event, Lender receives or is deemed to receive interest in excess of the Maximum Legal Rate, any such excess shall be deemed to have been applied toward payment of the principal of any and all then outstanding Indebtedness of Borrower to Lender, or if there is no such Indebtedness, shall immediately be returned to Borrower.

Section 10.03 Provisions Subject to Applicable Law. All rights, powers and remedies provided in this Mortgage may be exercised only to the extent that the exercise thereof does not violate any applicable provisions of law and are intended to be limited to the extent necessary so that they will not render this Mortgage invalid, unenforceable or not entitled to be recorded, registered or filed under the provisions of any applicable law. If any term of this Mortgage or any application thereof shall be invalid or unenforceable, the remainder of this Mortgage and any other application of the term shall not be affected thereby.

-18-

# ARTICLE XI.

## DEFINITIONS

Unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, words used in this Mortgage may be used interchangeably in the singular or plural form and the word "Borrower" shall mean "each Borrower and any subsequent owner or owners of the Property or any part thereof or any interest therein," the word "Lender" shall mean "Lender and any subsequent holder of the Note," the word "Note" shall mean "the Note and any other evidence of indebtedness secured by this Mortgage," the word "Property" shall include any portion of the Property and any interest therein, and the phrases "attorneys' fees", "legal fees" and "counsel fees" shall include any and all reasonable attorneys', paralegal and law clerk fees and disbursements, including, but not limited to, fees and disbursements at the pre-trial, trial and appellate levels, incurred or paid by Lender in protecting its interest in the Property, the Leases, the Rents, the sums due under the Lease Guaranties, and/or in enforcing its rights hereunder. Whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms.

# ARTICLE XII.

## MISCELLANEOUS PROVISIONS

**Section 12.01  No Oral Change.**  This Mortgage, and any provisions hereof, may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Borrower or Lender, but only by an agreement in writing signed by the party(ies) against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

**Section 12.02  Successors and Assigns.**  This Mortgage shall be binding upon, and shall inure to the benefit of, Borrower and Lender and their respective successors and permitted assigns, as set forth in the Loan Agreement.

**Section 12.03  Inapplicable Provisions.**  If any provision of this Mortgage is held to be illegal, invalid or unenforceable under present or future laws effective during the term of this Mortgage, such provision shall be fully severable and this Mortgage shall be construed and enforced as if such illegal, invalid or unenforceable provision had never comprised a part of this Mortgage, and the remaining provisions of this Mortgage shall remain in full force and effect and shall not be affected by the illegal, invalid or unenforceable provision or by its severance from this Mortgage, unless such continued effectiveness of this Mortgage, as modified, would be contrary to the basic understandings and intentions of the parties as expressed herein.

**Section 12.04  Headings, Etc.**  The headings and captions of the various Sections of this Mortgage are for convenience of reference only and are not to be construed as defining or limiting, in any way, the scope or intent of the provisions hereof.

**Section 12.05  Subrogation.**  If any or all of the proceeds of the Note have been used to extinguish, extend or renew any indebtedness heretofore existing against the Property, then, to the extent of the funds so used, Lender shall be subrogated to all of the rights, claims, liens, titles and interests existing against the Property heretofore held by, or in favor of, the holder of such indebtedness and such former rights, claims, liens, titles and interests, if any, are not waived, but rather are continued in full force and effect in favor of Lender and are merged with the Lien and security interest created herein as cumulative

security for the payment, performance and discharge of the Obligations (including, but not limited to, the payment of the Debt).

**Section 12.06 Entire Agreement.** The Note, the Loan Agreement, this Mortgage and the other Loan Documents constitute the entire understanding and agreement between Borrower and Lender with respect to the transactions arising in connection with the Obligations and supersede all prior written or oral understandings and agreements between Borrower and Lender with respect thereto. Borrower hereby acknowledges that, except as incorporated in writing in the Note, the Loan Agreement, this Mortgage and the other Loan Documents, there are not, and were not, and no Persons are or were authorized by Lender to make, any representations, understandings, stipulations, agreements or promises, oral or written, with respect to the transaction which is the subject of the Note, the Loan Agreement, this Mortgage and the other Loan Documents.

**Section 12.07 Limitation on Lender's Responsibility.** No provision of this Mortgage shall operate to place any obligation or liability for the control, care, management or repair of the Property upon Lender, nor shall it operate to make Lender responsible or liable for any waste committed on the Property by the Tenants or any other Person, or for any dangerous or defective condition of the Property, or for any negligence in the management, upkeep, repair or control of the Property resulting in loss or injury or death to any Tenant, licensee, employee or stranger. Nothing herein contained shall be construed as constituting Lender a "mortgage in possession."

**Section 12.08 Recitals.** The recitals hereof are a part hereof, form a basis for this Mortgage and shall be considered prima facie evidence of the facts and documents referred to therein.

**Section 12.09 Time of Essence.** Time is of the essence with respect to this Mortgage and each and every provision hereof.

**Section 12.10 Commercial Loan.** Mortgagor represents and warrants to Mortgagee that the Loan is for commercial purposes, and not for personal, household or consumer purposes. Mortgagor represents, warrants and covenants to Mortgagee that the Property has been or will be acquired and owned by Mortgagor for investment purposes only and will at no time be occupied by Mortgagor, any Loan Party or any Interest Owner, or by any of their respective affiliates or by any Person related to any Loan Party or any Interest Owner that is a natural person.

## ARTICLE XIII.

## STATE-SPECIFIC PROVISIONS

**Section 13.01 Principles of Construction.** Without limiting Section 11.01, to the extent that the laws of the State of New Jersey govern the interpretation or enforcement of this Mortgage: (a) the provisions of this Article XIV shall apply, and (b) in the event of any inconsistencies between the terms and provisions of this Article XIV and the other terms and provisions of this Mortgage, the terms and provisions of this Article XIV shall control and be binding.

**Section 13.02 Assignment of Leases and Rents.** The assignment of leases and rents contained in this Security Instrument are to and do constitute an assignment of leases and rents as contemplated in New Jersey Statutes. Upon the occurrence of an Event of Default, Lender shall be entitled to the remedies provided at law in addition to all rights and remedies, whether procedural or substantive, in effect at the time of execution or enforcement of this Security Instrument and contained herein.

**Section 13.03**  Attorneys' Fees; Costs of Enforcement and Property Preservation.  In any action to enforce or to foreclose the lien of this Security Instrument, Lender shall be entitled to recover from Borrower its reasonable attorneys' and paralegals' fees, and all costs and expenses incurred, whether incurred in court-ordered mediation, at trial, on appeal, or in bankruptcy and administrative proceedings, and including but not limited to any costs for environmental reports, appraisals, property inspections and inspection reports, title searches and reports, surveys, and costs of a similar nature incurred by Lender for the Property.

**Section 13.04**  Future Advances.  This Mortgage is given to secure not only existing indebtedness, but also such future advances, whether such advances are obligatory or are to be made at the option of the Lender, or otherwise, as are made within twenty (20) years from the date hereof, to the same extent as if such future advances were made on the date of the execution of this Security Instrument. The total amount of indebtedness that may be so secured may decrease or increase from time to time, but the total unpaid balance so secured at one time shall not exceed $16,000,000.00, (if blank, twice the maximum principal amount secured by this Mortgage) plus interest thereon, and any disbursements made for the payment of taxes, levies or insurance on the Property, plus interest thereon.

Without limiting any other provision of this Mortgage, Lender may make future advances and this Mortgage shall also secure repayment of any future advances made by Mortgagee and the unpaid balances of other advances made, with respect to the Property, for the payment of taxes, assessments, maintenance, charges, insurance premiums or costs similar or dissimilar incurred for the protection of the Property or for the lien of this Mortgage, expenses incurred by Lender.  Advances made pursuant to the terms of the indebtedness secured by this Mortgage shall be "modifications" as defined in P.L. 1985, c 353, and the priority of this Mortgage shall be subject to that law and to N.J. Stat. § 46:9-8.2.]

**Section 13.05**  Verification of Information.  Borrower hereby verifies and confirms all factual information in this Security Instrument, including the accuracy and correctness of the legal description set forth herein. In the event any factual errors are found in this Security Instrument or in the legal description, Borrower shall, at its own cost and expense, promptly correct or cause to be corrected subsequent to the date hereof any and all such errors with no further liability incurred by counsel for either Borrower or Lender. Borrower shall promptly pay or cause to be paid all damages, claims or any other costs whatsoever arising out of any impairment of title due to or caused by any inaccuracy or incorrectness of the legal description set forth herein.

**Section 13.06**  Mortgage Insurance.  If Lender required mortgage insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for mortgage insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer selected by lender.  If substantially equivalent mortgage insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of mortgage insurance.  Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve.

**[NO FURTHER TEXT ON THIS PAGE]**

IN WITNESS WHEREOF, THIS MORTGAGE has been executed by Borrower as of the day and year first above written.

BORROWER:

FRALEG GROUP INC,
a New York corporation

By: _____
Andy O. Alege
Its: President

ACKNOWLEDGMENT

State of _New Jersey_ }
                               } ss:
County of _Morris_ }

I CERTIFY that on _Apr 15, 2019_, _Andy O. Alege_ personally came before me and acknowledged under oath, to my satisfaction, that this person:

(a) is named in and personally signed the attached document as _President_ of
_Fraleg Group Inc._ ; and

(b) signed and delivered this document as his or her act and deed on behalf of said limited liability company.

_____

Print Name: ___Kevin F. Brundage___
Print Title: ___An Attorney-at-Law___
               of the State of New Jersey

-27-

## SCHEDULE I

### Property List

112 N WALNUT ST

EAST ORANGE, NJ 07017

SCHEDULE I
-1-

## EXHIBIT A

Legal Description

ALL THAT CERTAIN tract or parcel of land and premises situate in the City of East Orange, County of Essex and the State of New Jersey more particularly described as follows:

BEGINNING at a point in the Southeasterly line of North Walnut Street (50.00 feet wide), said point being distant Southwesterly 250.00 feet from the corner formed by the intersection of the said line of North Walnut Street with the Southwesterly line of Summit Street (50.00 feet wide) and extending;

thence [1] South 53 Degrees 25 Minutes 00 Seconds East, parallel with Summit Street, a distance of 266.08 feet to a point.

thence [2] South 37 Degrees 37 Minutes 00 Seconds West, a distance of 50.00 feet to a point.

thence [3] North 53 Degrees 25 Minutes 00 Seconds West, parallel with Summit Street, a distance of 266.08 feet to a pointing he aforementioned Southeasterly line of North Walnut Street.

thence [4] North 37 Degrees 37 Minutes 00 Seconds East, along said Southeasterly line of North Walnut Street, a distance of 50.00 feet to the point and place of BEGINNING.

BEING known as Lot 15, Block 360 on the City of East Orange Tax Map.

CONTAINING: 13,302 square feet, more or less.

ESSEX COUNTY