Certified True Copy

By: /s/ Morgan Fiander
    Morgan Fiander, Esq.

# SECURED PROMISSORY NOTE
## (Revolving Credit Facility)

Loan No. 24240

$8,000,000.00

New York, NY
January 23, 2019

FOR VALUE RECEIVED, and upon the terms and conditions set forth herein, FRALEG GROUP INC, a New York corporation ("**Borrower**"), promises to pay to the order of COREVEST AMERICAN FINANCE LENDER LLC, a Delaware limited liability company (together with its successors and assigns, "**Lender**"), in lawful money of the United States of America in immediately available funds at 1920 Main St., Suite 850, Irvine, CA 92614, or at any such other place as may be designated in writing by Lender, the principal sum of EIGHT MILLION AND NO/100 DOLLARS ($8,000,000.00), or so much thereof as may be advanced from time to time pursuant to the Loan Agreement (defined below), together with interest on such principal sum from time to time outstanding, until paid, at the rate or rates per annum and payable on such dates as provided in the Loan Agreement, together with all other amounts payable under the Loan Agreement and the other Loan Documents, and to be paid in accordance with the terms of this Secured Promissory Note (this "**Note**") and the Loan Agreement.

This Note is made pursuant to that certain Loan Agreement of even date herewith between Borrower and Lender (as the same may be amended, modified, supplement or restated from time to time, the "**Loan Agreement**") with respect to a loan ("**Loan**") in an amount not to exceed the Loan Amount to be disbursed upon the terms and conditions set forth in the Loan Agreement. The Loan proceeds will be disbursed in one or more Advances pursuant to the terms and conditions of the Loan Agreement. Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Loan Agreement.

Borrower agrees to pay the principal sum of this Note and interest on the unpaid principal sum of this Note from time to time outstanding at the rate or rates and at the times specified in the Loan Agreement and the outstanding balance of the principal sum of this Note, all accrued and unpaid interest thereon, and all other amounts payable under the Loan Agreement and the other Loan Documents shall be due and payable on the Maturity Date.

The fact that the balance of this Note may be reduced to zero from time to time pursuant to the terms of this Note and/or the Loan Agreement will not affect the continuing validity of this Note or the Loan Agreement or the first lien priority of any Security Instrument, and the balance may be increased to the maximum principal amount of the Loan after any such reduction to zero.

Borrower, promises to pay interest, on demand, on any overdue principal of the Loan made to it under the Loan Agreement and, to the extent permitted by law, overdue interest from the due date for the Loan at the rate or rates provided in the Loan Agreement.

Borrower hereby waives diligence, presentment, demand, protest and notice of any kind whatsoever. The non-exercise by the holder hereof of any of its rights hereunder in any particular instance shall not constitute a waiver thereof in that or any subsequent instance.

The Loan made by Lender shall be evidenced by one or more accounts or records maintained by Lender in the ordinary course of business. Lender may also attach schedules to this Note and endorse thereon the date, amount, and maturity of the Loan and payments with respect thereto. Any failure to so

record or any error in doing so shall not, however, limit or otherwise affect the obligations of Borrower under this Note.

This Note is the promissory note referred to in the Loan Agreement, which agreement contains, among other things, provisions for (i) the acceleration of the maturity hereof upon the happening of certain events, (ii) optional and mandatory prepayment of the principal hereof prior to the maturity hereof and (iii) the amendment or waiver of certain provisions of the Loan Agreement, all upon the terms and conditions therein specified. This Note does not purport to summarize the Loan Agreement and reference is made to the Loan Agreement for information with respect to the interests, rights, benefits, obligations, proceeds, and duties evidenced hereby and the rights, duties and obligations of the parties thereto. This Note is subject in all respects to the terms, provisions and conditions of the Loan Agreement. In the case of any conflict between terms specified in this Note and terms specified in the Loan Agreement, the terms of the Loan Agreement shall govern.

This Note is secured by, among other things, the Security Instruments and is subject to the terms of the Loan Agreement and the other Loan Documents. Reference is hereby made to the Loan Agreement and the other Loan Documents for a description of the collateral thereby mortgaged, warranted, bargained, sold, released, conveyed, assigned, transferred, pledged and hypothecated, the nature and extent of the security for this Note, the rights of the holder of this Note and Lender in respect of such security and otherwise.

Notwithstanding anything to the contrary contained herein, (a) all agreements and communications between Borrower and Lender are hereby and shall automatically be limited so that, after taking into account all amounts deemed to constitute interest, the interest contracted for, charged or received by Lender shall never exceed the maximum rate permitted by applicable law, (b) in calculating whether any interest exceeds the maximum rate permitted by applicable law, all such interest shall be amortized, prorated, allocated and spread over the full amount and term of all principal indebtedness of Borrower to Lender, and (c) if through any contingency or event, Lender receives or is deemed to receive interest in excess of the maximum rate permitted by applicable law, any such excess shall be deemed to have been applied toward the payment of the principal of any and all then outstanding indebtedness of Borrower to Lender, or if there is no such indebtedness, shall immediately be returned to Borrower.

All notices to be given pursuant to this Note shall be in writing and shall be given in accordance with Section 10.1 of the Loan Agreement.

This Note may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Borrower or Lender, but only by an agreement in writing signed by the party(ies) against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

THIS NOTE SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK INCLUDING SECTIONS 5-1401 AND 5-1402 OF THE NEW YORK GENERAL OBLIGATIONS LAW.

ANY LEGAL SUIT, ACTION OF PROCEEDING AGAINST LENDER OR BORROWER ARISING OUT OF OR RELATING TO THIS NOTE MAY BE INSTITUTED IN ANY FEDERAL OR STATE COURT IN NEW YORK, NEW YORK. LENDER, BY ITS ACCEPTANCE HEREOF, AND BORROWER HEREBY (i) IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY OBJECTION THAT THEY MAY NOW OR HEREAFTER HAVE TO THE LAYING OF VENUE OF ANY SUCH SUIT, ACTION OR PROCEEDING BROUGHT IN SUCH A COURT AND ANY CLAIM THAT ANY SUCH PROCEEDING BROUGHT IN SUCH A COURT HAS BEEN BROUGHT IN AN INCONVENIENT FORUM, (ii) IRREVOCABLY SUBMIT TO THE

JURISDICTION OF ANY SUCH COURT IN ANY SUCH SUIT, ACTION OR PROCEEDING, AND (iii) IRREVOCABLY CONSENT TO SERVICE OF PROCESS BY MAIL, PERSONAL SERVICE OR IN ANY OTHER MANNER PERMITTED BY APPLICABLE LAW, AT THE ADDRESS SPECIFIED IN THE LOAN AGREEMENT (AND AGREES THAT SUCH SERVICE AT SUCH ADDRESS IS SUFFICIENT TO CONFER PERSONAL JURISDICTION OVER ITSELF IN ANY SUCH SUIT, ACTION OR PROCEEDING IN ANY SUCH COURT, AND OTHERWISE CONSTITUTES EFFECTIVE AND BINDING SERVICE IN EVERY RESPECT).

Upon the transfer of this Note by Lender, Borrower hereby waiving notice of any such transfer, Lender may deliver all the collateral mortgaged, granted, pledged or assigned pursuant to the Loan Documents, or any part thereof, to the transferee who shall thereupon become vested with all the rights herein or under applicable law given to Lender with respect thereto, and Lender shall thereafter forever be relieved and fully discharged from any liability or responsibility in the matter; but Lender shall retain all rights hereby given to it with respect to any liabilities and the collateral not so transferred.

BORROWER, AND BY ITS ACCEPTANCE OF THIS NOTE, LENDER, TO THE FULLEST EXTENT THAT THEY MAY LAWFULLY DO SO, HEREBY AGREE NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND WAIVE ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THIS NOTE, THE SECURITY INSTRUMENTS OR THE OTHER LOAN DOCUMENTS, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY LENDER AND BORROWER AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE. LENDER AND BORROWER ARE EACH HEREBY INDIVIDUALLY AUTHORIZED TO FILE A COPY OF THIS PARAGRAPH IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER.

*[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK – SIGNATURE PAGE TO FOLLOW]*

IN WITNESS WHEREOF, the undersigned has executed this Note as of the date first above written.

**"BORROWER"**

FRALEG GROUP INC,
a New York corporation

By: _____
    Andy O. Alege
    Its: President

*[SIGNATURE PAGE TO NOTE]*

POLSINELLI PC
Morgan C. Fiander, Esq. (239812017)
600 Third Avenue, 42nd Floor
New York, New York 10016
Phone:  (212) 413-2838
mfiander@polsinelli.com

Attorneys for Plaintiff CAF Borrower
GS LLC

| | |
|---|---|
| CAF BORROWER GS LLC <br><br> Plaintiff, <br><br> v. <br><br> FRALEG GROUP INC., a New York corporation; RENHAN LLC, a New Jersey limited liability company and TAM LENDING CENTER INC., a New Jersey corporation, <br><br> Defendants. | SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION:  ESSEX COUNTY <br> DOCKET NO.  SWC-F-001632-20 <br><br> *Civil Action* <br><br> ***FINAL JUDGMENT IN FORECLOSURE*** |

Upon the application to the Court by POLSINELLI PC, attorneys for plaintiff CAF Borrower GS LLC ("**Lender**"); and it appearing that the Summons and the Complaint in Foreclosure (the "**Complaint**") were duly issued and served upon defendant FRALEG GROUP INC. ("**Borrower**"), and defendants Renhan LLC and TAM Lending Center, Inc. (collectively, "**Junior Creditors**") in accordance with the Rules of this Court; and that Borrower and Junior Creditors (collectively, the "**Defendants**") have failed to file an answer to said Complaint or otherwise appear in this action and its time within which to do so has expired and has not been extended;

And it appearing that Lender's Note and its Mortgage have been presented and marked as Exhibits by the Court; and that proofs have been submitted of the amounts due on Lender's Note and its Mortgage; and that there is presently due and owing to Lender on the Note and the Mortgage more particularly described in the Complaint the aggregate sum of $4,210,055.22 as of January 31, 2021, together with

interest at the contract rate of 8.50% percent per annum on the principal balance of $4,550,000 from January 31, 2021, through the date of judgment on _____, 2021, and lawful interest thereafter on all sums due, together with costs to be taxed, including lawful counsel fees;

IT IS on this _____ day of _____2021,

ORDERED and ADJUDGED that Lender is entitled to have the sum of $4,210,055.22 as of January 31, 2021, plus interest from January 31, 2021, through the date of this judgment calculated at the contract rate of 8.50% percent per annum on the principal balance of $4,550,000, and lawful interest thereafter on the total sum due Plaintiff until the same be paid and satisfied, plus costs of this suit to be taxed, including attorneys' fees, all to be raised and paid on the first place out of the mortgaged premises and collateral; and it further

ORDERED and ADJUDGED that Lender, its successors and/or assigns or any purchaser at the foreclosure sale duly recover against Borrower, and all parties holding by, through or claiming under Borrower, possession of the premises and collateral mentioned and described in the Complaint with the appurtenances thereon and that a Writ of Possession issue thereon; and it is further

ORDERED and ADJUDGED that said mortgaged premises and collateral be sold to raise and satisfy the several sums due, in the first place, to Lender the sum of $4,210,055.22 as of January 31, 2021, plus interest and lawful interest thereafter to be computed as aforesaid, plus costs to be taxed, with lawful interest thereon, plus attorneys' fees; and that for that purpose an execution duly issue out of this Court, directed to the Sheriff of Essex County, commanding him/her to make sale, according to law, of the said mortgaged premises and collateral and out of the monies arising from the sale, that the Sheriff pay in the first place to Lender $4,210,055.22, with interest thereon as aforesaid together with the costs of suit, including attorneys' fees, with interest thereon; and in case more money shall be realized by such sale than shall be necessary to satisfy such several payments as aforesaid, that such surplus shall be brought

into this Court and deposited with the Clerk to abide the further order of this Court and that the Sheriff

aforesaid make a report of the aforesaid sale without delays as required by the Rules of this Court; and it

is further

ORDERED and ADJUDGED that this judgment shall not affect the rights of any person protected

by the New Jersey Tenant Anti-Eviction Act (N.J.S.A. 2A:18-61.1 et seq.); and it is further

ORDERED and ADJUDGED that Borrower stands absolutely debarred and foreclosed of an from

all equity of redemption of, in and to said mortgaged premises and collateral described in the Complaint,

when sold aforesaid, by virtue of this judgment, except as provided by 28 U.S.C. Section 2410.

_____
                                                                    J.S.C

POLSINELLI PC
Morgan C. Fiander, Esq. (239812017)
600 Third Avenue, 42nd Floor
New York, New York 10016
Phone:  (212) 413-2838
mfiander@polsinelli.com

Attorneys for Plaintiff CAF Borrower
GS LLC

| | |
|---|---|
| CAF BORROWER GS LLC<br><br>          Plaintiff,<br><br>     v.<br><br>FRALEG GROUP INC., a New York corporation; RENHAN LLC, a New Jersey limited liability company and TAM LENDING CENTER INC., a New Jersey corporation,<br><br>          Defendants. | SUPERIOR COURT OF NEW JERSEY<br>CHANCERY DIVISION:  ESSEX COUNTY<br>DOCKET NO.  SWC-F-001632-20<br><br>*Civil Action*<br><br>***WRIT OF EXECUTION*** |

THE STATE OF NEW JERSEY TO THE SHERIFF OF THE COUNTY OF ESSEX

GREETINGS:

**WHEREAS, on the \_\_\_\_ day of _____, 2021, by a certain judgment made in our Superior Court of New Jersey in a certain cause therein pending wherein CAF BORROWER GS LLC ("Plaintiff") is the plaintiff and FRALEG GROUP INC., RENHAN LLC and TAM LENDING CENTER INC. (collectively, the "Defendants") are the defendants, it was ordered and adjudged that certain mortgaged premises and collateral with the appurtenances particularly set forth and described in the Complaint in Foreclosure, that is to say:  All that certain tract or parcel of land and premises, situate, lying and being in the Municipality of City of East Orange, County of Essex and State of New Jersey as set forth on Exhibit A annexed hereto and made a part hereof together with all collateral as further set forth on Exhibit B;**

TOGETHER with all and singular the rights, liberties, privileges, hereditaments and appurtenances thereunto belonging or in anywise appertaining, and the reversion and remainders, rents, issues, and profits thereof, and also all the estate, right, title, interest, use, property, claim and demand of the said defendant of, in, to and out of the same, be sold to pay and satisfy in the first place unto the Plaintiff the total sum of $4,210,055.22 as of January 31, 2021, secured by a certain mortgage given by Defendant, bearing the date of April 5, 2019, together with interest at the contract rate of 8.50% percent per annum on the sum of $4,550,000.00 representing the mortgage principal, from January 31, 2021, through the date of this judgment on _____, 2021, and lawful interest thereafter on all sums due to Plaintiff until the same be paid and satisfied, and also the costs of the aforesaid Plaintiff, with lawful interest thereon; AND that, for that purpose, a writ of execution should issue, directed to the Sheriff of the County of Essex commanding him/her to make sale as aforesaid, and that the surplus money arising from such sale, if any there be, should be brought into said Court and deposited with the Clerk, subject to the further order of the said Court as by the said judgment remaining as of record in our said Superior Court of New Jersey, at Trenton, doth and may more fully appear; and

**WHEREAS, the costs of the said Plaintiff have been duly taxed in the aggregate amount of _____;**

THEREFORE, you are hereby commanded that you cause a sale to be made of the premises and collateral, by selling so much of the same as may be needful and necessary for the purpose, to raise for the Plaintiff the said sum of $4,210,055.22 as of January 31, 2021, together with contract interest and lawful interest thereafter to be computed as aforesaid, and the Plaintiff's costs to be taxed with lawful interest thereon as aforesaid, and that you pay said amounts to the Plaintiff; and that you have the surplus money, if any there be, before the said Superior Court of New Jersey aforesaid at Trenton, within thirty (30) days after the sale, to abide the further order of the said Court, according to the judgment aforesaid; and you are to make return at the time and place aforesaid, by certificate under your hand, of the manner in which you

have executed this our writ, together with this writ. If there is no sale, the writ shall be returnable within twenty-four months in accordance with R. 4:59-1.

WITNESS the Honorable _____, P.J.Ch., a Judge of the Superior Court of New Jersey, at Trenton, New Jersey aforesaid, the _____ day of _____, 2021.

POLSINELLI PC

*Attorneys for plaintiff CAF Borrower GS LLC*

By:*/s/ Morgan C. Fiander*_____                    _____    _____
      Morgan C. Fiander                              Michelle M. Smith
                                                                 Clerk of the Superior Court

EXHIBIT A

Legal Description

ALL THAT CERTAIN tract or parcel of land and premises situate in the City of East Orange, County of Essex and the State of New Jersey more particularly described as follows:

BEGINNING at a point in the Southeasterly line of North Walnut Street (50.00 feet wide), said point being distant Southwesterly 250.00 feet from the corner formed by the intersection of the said line of North Walnut Street with the Southwesterly line of Summit Street (50.00 feet wide) and extending;

thence (1) South 53 Degrees 25 Minutes 00 Seconds East, parallel with Summit Street, a distance of 266.08 feet to a point.

thence (2) South 37 Degrees 37 Minutes 00 Seconds West, a distance of 50.00 feet to a point.

thence (3) North 53 Degrees 25 Minutes 00 Seconds West, parallel with Summit Street, a distance of 266.08 feet to a pointing he aforementioned southeasterly line of North Walnut Street,

thence (4) North 37 Degrees 37 Minutes 00 Seconds East, along said Southeasterly line of North Walnut Street, a distance of 50.00 feet to the point and place of BEGINNING.

BEING known as Lot 15, Block 360 on the City of East Orange Tax Map.

CONTAINING: 13,302 square feet, more or less.

## EXHIBIT B

### Collateral Description

(a)  <u>Additional Land.</u> All additional lands, estates and development rights hereafter acquired by Borrower for use in connection with the Land and the development of the Land and all additional lands and estates therein which may, from time to time, by supplemental mortgage or deed of trust or otherwise be expressly made subject to the lien of this Mortgage;

(b)  Improvements. The buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and improvements now or hereafter erected or located on the Land (collectively, the "Improvements");

(c)  Easements. All easements, rights-of-way or use, rights, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, air rights and development rights, and all estates, rights, titles, interests, privileges, liberties, servitudes, tenements, hereditaments and appurtenances of any nature whatsoever, in any way now or hereafter belonging, relating or pertaining to the Land and the Improvements and the reversion and reversions, remainder and remainders, and all land lying in the bed of any street, road or avenue, opened or proposed, in front of or adjoining the Land, to the center line thereof and all the estates, rights, titles, interests, dower and rights of dower, curtesy and rights of curtesy, property, possession, claim and demand whatsoever, both at law and in equity, of Borrower of, in and to the Land and the Improvements and every part and parcel thereof, with the appurtenances thereto;

(d)  Equipment. All "equipment," as such term is defined in Article g of the Uniform Commercial Code (as hereinafter defined), now owned or hereafter acquired by Borrower, which is used at or in connection with the Improvements or the Land or is located thereon or therein (including, but not limited to, all machinery, equipment, furnishings, and electronic data-processing and other office equipment now owned or hereafter acquired by Borrower and any and all additions, substitutions and replacements of any of the foregoing), together with all attachments, components, parts, equipment and accessories installed thereon or affixed thereto (collectively, the "Equipment"). Notwithstanding the foregoing, Equipment shall not include any property belonging to Tenants under Leases except to the extent that Borrower shall have any right or interest therein;

(e)  Fixtures. All Equipment now owned, or the ownership of which is hereafter acquired, by Borrower which is so related to the Land and Improvements forming part of the Property that it is deemed fixtures or real property under the law of the particular state in which the Equipment is located, including, without limitation, all building or construction materials intended for construction, reconstruction, alteration or repair of or installation on the Property, construction equipment, appliances, machinery, plant equipment, fittings, apparatuses, fixtures and other items now or hereafter attached to, installed in or used in connection with (temporarily or permanently) any of the Improvements or the Land, including, but not limited to, engines, devices for the operation of pumps, pipes, plumbing, cleaning, call and sprinkler systems, fire extinguishing apparatuses and equipment, lighting, heating, ventilating, plumbing, laundry, incinerating, electrical, air conditioning and air cooling equipment and systems, gas and electric machinery, appurtenances and equipment, pollution control equipment, security systems, disposals, dishwashers, refrigerators and ranges, recreational equipment and facilities of all kinds, and water, gas, electrical, storm and sanitary sewer facilities, utility lines and equipment (whether owned individually or jointly with others, and, if owned jointly, to the extent of Borrower's interest therein) and all other utilities whether or not situated in easements, all water tanks, water supply, water power sites, fuel stations, fuel tanks, fuel supply, and all other structures, together with all accessions, appurtenances, additions, replacements, betterments and substitutions for any of the foregoing and the proceeds thereof (collectively, the **"Fixtures").** Notwithstanding the foregoing, "Fixtures" shall not include any property which Tenants are entitled to remove pursuant to Leases except to the extent that Borrower shall have any right or interest therein;

(g)  <u>Personal Properly.</u> All furniture, furnishings, objects of art, machinery, goods, tools, equipment, supplies, appliances, general intangibles, contract rights, accounts, accounts receivable, franchises,

licenses, certificates and permits, soil tests and reports, feasibility studies, appraisals, engineering reports, environmental reports and similar materials relating to any portion of or all of the Real Property, and all modifications, supplements and amendments thereto, and all other personal property of any kind or character whatsoever (as defined in and subject to the provisions of the Uniform Commercial Code), other than Fixtures, which are now or hereafter owned by Borrower and which are located within or about the Land and the Improvements, and any and all stored materials to be used in connection with the renovation or construction of any improvements on the Land wherever located, together with all accessories, replacements and substitutions thereto or therefor and the proceeds thereof (collectively, the **"Personal Property"),** and the right, title and interest of Borrower in and to any of the Personal Property which may be subject to any security interests, as defined in the Uniform Commercial Code, as adopted and enacted by the state or states where any of the Property is located (as amended from time to time, the **"Uniform Commercial Code"),** superior in lien to the lien of this Mortgage, and all proceeds and products of any of the above;

(h)    Leases and Rents. (i) All leases, subleases or subsubleases, lettings, licenses, concessions or other agreements (whether written or oral) pursuant to which any Person is granted a possessory interest in, or right to use or occupy all or any portion of the Land and the Improvements, and every modification, amendment, extension, renewal, replacement, or other agreement relating to such leases, subleases, subsubleases, or other agreements entered into in connection with such leases, subleases, subsubleases, or other agreements and every guarantee of the performance and observance of the covenants, conditions and agreements to be performed and observed by the other party thereto, heretofore or hereafter entered into, whether before or after the filing by or against Borrower of any petition for relief under 11 U.S.C. §101 et seq., as the same may be amended from time to time (the **"Bankruptcy Code")** (collectively, the **"Leases");** (ii) all right, title and interest of Borrower, its successors and assigns, therein and thereunder, including, without limitation, cash or securities deposited thereunder to secure the performance by the lessees of their obligations thereunder and all rents, additional rents, revenues, issues and profits (including all oil and gas or other mineral royalties and bonuses) from the Land and the Improvements, whether paid or accruing before or after the filing by or against Borrower of any petition for relief under the Bankruptcy Code (collectively, the **"Rents");** (iii) all proceeds from the sale or other disposition of the Leases and the right to receive and apply the Rents to the payment and performance of the Obligations, including the payment of the Debt; (iv) all of Borrower's right, title and interest in, and claims under, any and all lease guaranties, letters of credit and any other credit support (individually, a **"Lease Guaranty",** and collectively, the **"Lease Guaranties")** given by any guarantor in connection with any of the Leases or leasing commissions (individually, a *"Lease Guarantor",* and collectively the *"Lease Guarantors")* to Borrower; (v) all rights, powers, privileges, options and other benefits of Borrower as the lessor under any of the Leases and the beneficiary under any of the Lease Guaranties, including, without limitation, the immediate and continuing right to make claims for, and to receive, collect and acknowledge receipt for all Rents payable or receivable under the Leases and all sums payable under the Lease Guaranties or pursuant thereto (and to apply the same to the payment of the Debt or the Other Obligations), and to do all other things which Borrower or any lessor is or may become entitled to do under any of the Leases or Lease Guaranties; (vi)    the right, subject to the provisions of the Loan Agreement, at Lender's option, upon revocation of the license granted herein, to enter upon the Property in person, by agent or by court-appointed receiver, to collect the Rents; (vii) during the continuance of an Event of Default, Borrower's irrevocable power of attorney, coupled with an interest, to take any or all other actions designated by Lender for the proper management and preservation of the Land and Improvements; and (viii) any and all other rights of Borrower in and to the items set forth in subsections (i) through (vii) above, and all amendments, modifications, replacements, renewals and substitutions thereof;

(i)    Condemnation Awards. All awards or payments, including interest thereon, which may heretofore and hereafter be made with respect to the Property, whether from the exercise of the right of eminent domain (including, but not limited to, any transfer made in lieu of or in anticipation of the exercise of such right), or for a change of grade, or for any other injury to or decrease in the value of the Property;

(j)    Insurance Proceeds. All proceeds in respect of the Property under any insurance policies covering the Property, including, without limitation, the right to receive and apply the proceeds of any insurance, judgments or settlements made in lieu thereof, for damage to the Property;

6

(k)    Tax Certiorari. All refunds, rebates or credits in connection with any reduction in Taxes, Impositions, assessments or other charges assessed against the Property as a result of tax certiorari proceedings or any other applications or proceedings for reduction;

Rights. The right, in the name and on behalf of Borrower, to appear in and defend any action or proceeding brought with respect to the Property and to commence any action or proceeding to protect the interest of Lender in the Property;

(m)    Agreements. All agreements, contracts, certificates, instruments, franchises, management agreements, permits, licenses, all architectural, design and engineering drawings, plans, specifications and other documents, now or hereafter entered into, and all rights therein and thereto, respecting or pertaining to the use, occupation, construction, renovation, repair, management or operation of the Land and any part thereof and any Improvements or respecting any business or activity conducted on the Land and any part thereof and all right, title and interest of Borrower therein and thereunder, including, without limitation, the right, upon the happening and during the continuance of any Event of Default, to receive and collect any sums payable to Borrower thereunder;

(n)    Intellectual Property. All tradenames, trademarks, servicemarks, logos, copyrights, goodwill, URLs or other online media, books and records and all other general intangibles relating to or used in connection with the operation of the Property;

(o)    Accounts. All reserves, escrows and deposit accounts maintained by Borrower with respect to the Property, together with all deposits or wire transfers made to such accounts, and all cash, checks, drafts, certificates, securities, investment property, financial assets, instruments and other property held therein from time to time, and all proceeds, products, distributions, dividends and/or substitutions thereon and thereof, excluding the following (the *"Account Collateral"):* all reserves, escrows and deposit accounts in which a security interest is granted to Lender pursuant to the Loan Agreement and all amounts at any time contained therein and the proceeds thereof;

(p)    Uniform Commercial Code Property. All documents, instruments, chattel paper and general intangibles, as the foregoing terms are defined in the Uniform Commercial Code, relating to the Property;

(q)    Minerals. All minerals, crops, timber, trees, shrubs, flowers and landscaping features now or hereafter located on, under or above Land;

(r)    All Other Assets. All other accounts, general intangibles, instruments, investment property, documents, chattel paper, goods, moneys, letters of credit, letter of credit rights, certificates of deposit, deposit accounts, escrow deposits, commercial tort claims, oil, gas and minerals, and all other property and interests in property of Borrower, whether tangible or intangible, and including without limitation all of Borrower's claims and rights to the payment of damages arising under the Bankruptcy Code *("Bankruptcy Claims"),* excluding the Account Collateral;

(s)    Proceeds. All proceeds of, and proceeds of any sale of, any of the foregoing, including, without limitation, proceeds of insurance and condemnation awards, whether in cash or in liquidation or other claims, or otherwise; and

(t)    Other Rights. Any and all other rights of Borrower in and to the items set forth in Subsections (a) through blabove.

AND, without limiting any of the other provisions of this Mortgage, to the extent permitted by applicable law, Borrower expressly grants to Lender, as secured party, a security interest in all of Borrower's right, title and interest in and to that portion of the Property which is or may be subject to the provisions of the Uniform Commercial Code which are applicable to secured transactions; it being understood and agreed that the

7

Improvements and Fixtures are part and parcel of the Land (the Land, the Improvements and the Fixtures collectively referred to as the **"Real Property')** appropriated to the use thereof and, whether affixed or annexed to the Land or not, shall for the purposes of this Mortgage be deemed conclusively to be real estate and mortgaged hereby.

SWC-1-601632-20 03/29/2021 4:31:10 PM Pg 1 of 13 Trans ID: CHC2021603242

Certified True Copy

By: /s/ Morgan Fiander
Morgan Fiander, Esq.

Inst # 7319658527   Page 1 of 6

## Essex County Register Document Summary Sheet

| | Transaction Identification Number | 3874063 | 3443996 |
|---|---|---|---|
| ESSEX COUNTY REGISTER OF DEEDS & MORTGAGES | Recorded Document to be Returned by Submitter to: | | |
| | OS NATIONAL   RESWARE | | |
| HALL OF RECORDS - ROOM 130 | 3097 S VIELTITE BLVD, STE 400 | | |
| 465 DR. MARTIN LUTHER KING BLVD | DULUTH, GA 30096 | | |
| NEWARK NJ 07102 | | | |

| Official Use Only | | |
|---|---|---|
| | Submission Date (mm/dd/yyyy) | 06/13/2019 |
| | No. of Pages (excluding Summary Sheet) | 4 |
| | Recording Fee (excluding transfer tax) | $70.00 |
| | Realty Transfer Tax | $0.00 |
| | Total Amount | $70.00 |
| | Document Type    MTGEASGS | |
| | Electronic Recordation Level    L2 - Level 2 (With Images) | |

DANA ROSE
REG. OF DEEDS & MORTGAGES
ESSEX COUNTY
New Jersey

DOCUMENT TYPE
3
INSTRUMENT NUMBER
2019058527
RECORDED ON
Jun 18, 2019
9:23:26 AM
Total Pages: 6

NJ PRESERVATION ACCOUNT $25.00
REGISTER RECORDING FEE  $45.00
TOTAL PAID           $70.00
INV. DEBBIE CERR: RMG

| Municipal Codes | |
|---|---|
| ESSEX COUNTY | 00 |

3443996

| Additional Information (Official Use Only) |
|---|

*DO NOT REMOVE THIS PAGE.*
*COVER SHEET (DOCUMENT SUMMARY FORM) IS PART OF ESSEX COUNTY REGISTER FILING RECORD.*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*

1750-L-23-TMH-4475-BD31-DA760074D993-3874063-3443996                         Page 1 of 2

Inst. # 2019055527  Page 2 of 4

## Essex County Register Document Summary Sheet

| Type | MTGE ASSGN |
|---|---|
| Consideration | |
| Submitted By | SIMPLIFILE, LLC. (SIMPLIFILE) |
| Document Date | 04/17/2019 |

| Reference Info | | | | |
|---|---|---|---|---|
| Book ID | Book | Beginning Page | Instrument No. | Recorded/File Date |
| | 2019034126 | 2019034126 | 04/12/2019 | |

| MTGE ASSGN | MORTGAGOR | Name | | Address |
|---|---|---|---|---|
| | | CF COREVEST PURCHASER LLC | | |

| | ASSIGNEE | Name | Address |
|---|---|---|---|
| | | CAF BORROWER GS LLC | |

| Parcel Info | | | | | |
|---|---|---|---|---|---|
| Property Type | Tax Dist. | Block | Lot | Qualifier | Municipality |
| | | | | | |

**\* DO NOT REMOVE THIS PAGE.**
*COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF ESSEX COUNTY REGISTER FILING RECORD*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*

745-0L2A-1E11-4475-BD37-DA70-457-C087-Y576003-3443906

Page 2 of 2

SW-FM-00Ld-2-03-03-H93 ESSEX COUNTY Inst # 2019055527 - Page 2 of 11

Inst. # 201913557 - Page 3 of 2

PREPARED BY:
CF CoreVest Purchaser LLC
c/o CoreVest Finance
807 E South Temple, Suite 200
Salt Lake City, UT 84102
Attn: Loan Administration

AFTER RECORDING RETURN TO:
Wells Fargo Bank, N.A.
Mortgage Document Custody (CMBS)
1055 10th Ave SE
Minneapolis, MN 55414
ATTN: CMBS - GS

_____

THIS SPACE ABOVE FOR RECORDER'S USE

### ASSIGNMENT OF SECURITY INSTRUMENT

FOR VALUE RECEIVED, CF COREVEST PURCHASER LLC, a Delaware limited liability company ("Assignor"), does hereby transfer, assign, grant and convey to CAF BORROWER GS LLC, a Delaware limited liability company (together with its successors and assigns, "Assignee"), having an address at c/o CoreVest Finance, 1920 Main Street, Suite 850, Irvine, CA 92614, all of Assignor's right, title and interest in, to and under Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing (the "Security Instrument") executed by FRALEG GROUP INC, a New York corporation, as mortgagor, to and for the benefit of CoreVest American Finance Lender LLC, a Delaware limited liability company ("Original Lender"), as mortgagee, and recorded on 4/12/2019, in Instrument No. 2019034120, in the County of Essex Recorder's Office, State of New Jersey ("Official Records"), previously assigned to Assignor as mortgagee, from Original Lender by an Assignment of Security Instrument dated as of the date hereof and recorded concurrently herewith in the Official Records, encumbering, among other things, the Real Property as defined in and legally described on Exhibit A to the Security Instrument, and commonly known by the property address(es) set forth on Schedule 1 hereto, and Assignor does hereby grant and delegate to Assignee any and all of the duties and obligations of Assignor thereunder from and after the date hereof.

TOGETHER WITH: (i) the note(s) described or referred to in the Security Instrument, the money due or to become due thereon with interest, and all rights accrued or to accrue thereunder; and (ii) all other "Loan Documents" (as defined in the Security Instrument).

This Assignment of Security Instrument (this "Assignment") is an absolute assignment. This Assignment is made without recourse, representation or warranty, express or implied, by Assignor.

*[Signature Page Follows]*

114464792.DC
374031400046-15-13/ediwss

ESSEX COUNTY                                    Inst # 201913557 - Page 3 of 3

IN WITNESS WHEREOF, the undersigned has executed this Assignment of Security Instrument as of April 17, 2019.

Assignor:

CF COREVEST PURCHASER LLC,
a Delaware limited liability company

By: _____
J. Ryan McBride
Its: Authorized Signatory

ESSEX COUNTY

# ACKNOWLEDGMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of _____ Orange _____ )

On ___ April 17, 2019 ___ before me, __ C. LAI, Notary Public __
                                         (insert name and title of the officer)

personally appeared __ J. Ryan McBride ------------------------------
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____     (Seal)

C. LAI
Notary Public - California
Orange County
Commission # 2274087
My Comm. Expires Jan 30, 2023

Inst # 2019008525 - Page 6 of 6

## Schedule 1
## Schedule of Property Addresses

112 N Walnut St., East Orange, NJ 07017

ALL THAT CERTAIN tract or parcel of land and premises situate in the City of East Orange, County of Essex and the State of New Jersey more particularly described as follows:

BEGINNING at a point in the Southeasterly line of North Walnut Street (50.00 feet wide), said point being distant Southwesterly 250.00 feet from the corner formed by the intersection of the said line of North Walnut Street with the Southwesterly line of Summit Street (50.00 feet wide) and extending;

thence (1) South 53 Degrees 25 Minutes 00 Seconds East, parallel with Summit Street, a distance of 266.08 feet to a point.

thence (2) South 37 Degrees 37 Minutes 00 Seconds West, a distance of 50.00 feet to a point.

thence (3) North 53 Degrees 25 Minutes 00 Seconds West, parallel with Summit Street, a distance of 266.06 feet to a pointing he aforementioned Southeasterly line of North Walnut Street.

thence (4) North 37 Degrees 37 Minutes 00 Seconds East, along said Southeasterly line of North Walnut Street, a distance of 50.00 feet to the point and place of BEGINNING.

BEING known as Lot 13, Block 560 on the City of East Orange Tax Map.

CONTAINING: 13,302 square feet, more or less.

1815317 02.DOC
374434-000014-37-10/pfirock.

Schedule 1

ESSEX COUNTY

Inst # 2019-00527 - Page 1 of 1

| File Number: | 728851 | County: ESSEX | |
|---|---|---|---|
| Search Type: | PO | Tax Map Block: | 360 |
| Due Date: | 1/8/2020 | Tax Map Lot: | 15 |
| Town: | EAST ORANGE | Filed Map#: | |
| Address: | 112 NO. WALNUT ST. | Recorded: | X |
| Unit: | | Set Back Line: | |
| Qualifier: | | FM Block: | FM Lot: |
| Addl Lot Info: | | | |

*201903L115*

Owner(s) Requested: FRALEG GROUP INC.     Copies:     Board Date: 12-12-19

Fraleg Group Inc     4-4-19 →

Deed     LAX
(*crossed out*)
Am 20lb0.5552
Am: 2019135556

UCC:: ✓
Lis pendens: ✓
Surrogates: ✓
Judgments: ✓                                    ITW:

Purchaser:     Fraleg Group Inc.

**Search Notes**

Assessed Owner: PENCHANT FOR PROPERTIES, LLC ?
DEED - Date: 04/03/12 Book: 12363 Page: 9867 Price: 210000
DEED - Date: 05/28/02 Book: 5898 Page: 121 Price: 0 Grantee: FISH TWO EQUITIES LLC
DEED - Date: 11/13/02 Book: 5938 Page: 424 Price: 210000 Grantee: TWO BITS PROPERTIES LLC
DEED - Date: 11/15/02 Book: 5938 Page: 436 Price: 290000 Grantee: 112 NORTH WALNUT LLC
DEED - Date: 10/26/07 Book: 12097 Page: 304 Price: 450000 Grantee: 112 NORTH WALNUT STREET, LLC
DEED - Date: 09/27/11 Book: 12334 Page: 9422 Price: 100 Grantee: 112 N. WALNUT REALTY, LLC
DEED - Date: 04/03/12 Book: 12363 Page: 9867 Price: 210000 Grantee: PENCHANT FOR PROPERTIES, LLC
DEED - Date: 04/05/19 Book: 20190 Page: 3411S Price: 2520000 Grantee: FRALEG GROUP INC.

Order Date: 1/3/2020                           Printed Date: 1/3/2020 11:29:24 AM

Inst # 2019055326 - Page 1 of 6



| Essex County Register Document Summary Sheet | | |
|---|---|---|
| **Transaction Identification Number** | 3874673 | 4443593 |

ESSEX COUNTY REGISTER OF DEEDS & MORTGAGES

HALL OF RECORDS - ROOM 130
465 DR. MARTIN LUTHER KING BLVD
NEWARK NJ 07102

**Recorded Document to be Returned by Submitter to:**

OS NATIONAL - RESWARE
5007 SATELLITE BLVD, STE 400
DULUTH, GA 30096

| Official Use Only | | |
|---|---|---|
| **Submission Date** (mm/dd/yyyy) | | 08/13/2019 |
| **No. of Pages** (excluding Summary Sheet) | | 4 |
| **Recording Fee** (excluding transfer tax) | | $70.00 |
| **Realty Transfer Tax** | | $0.00 |
| **Total Amount** | | $70.00 |
| **Document Type** | MTGEASSGN | |
| **Electronic Recordation Level** | L2 - Level 2 (With Images) | |
| **Municipal Codes** | | |
| ESSEX COUNTY | | 99 |

```
DANA ROSE
REG. OF DEEDS & MORTGAGES
ESSEX COUNTY
New Jersey

DOCUMENT TYPE
3
INSTRUMENT NUMBER
2019055326
RECORDED ON
Jun 18, 2019
9:23:27 AM
Total Pages: 6

NJ PRESERVATION ACCOUNT $25.00
REGISTER RECORDING FEE   $45.00
TOTAL PAID              $70.00
INST: 2019055326 D8823 P981
```

3409463

**Additional Information (Official Use Only)**

**\* DO NOT REMOVE THIS PAGE.**
**COVER SHEET (DOCUMENT SUMMARY FORM) IS PART OF ESSEX COUNTY REGISTER FILING RECORD.**
**RETAIN THIS PAGE FOR FUTURE REFERENCE.**

Page 1 of 2

Sheet # 2019045528 - Page 2 of 2

| | Essex County Register Document Summary Sheet | |
|---|---|---|

| Type | MTGE/ASSGN |
|---|---|
| Consideration | |
| Submitted By | SIMPLIFILE, LLC. (SIMPLIFILE) |
| Document Date | 04/17/2019 |
| Reference Info | |

| Book ID | Book | Beginning Page | Instrument No. | Recorded/File Date |
|---|---|---|---|---|
| | 2019034120 | 2019034120 | 04123019 | |

**MTGE/ASSGN**

| MORTGAGOR | Name | Address |
|---|---|---|
| | COREVEST AMERICAN FINANCE LENDER LLC | |

| ASSIGNEE | Name | Address |
|---|---|---|
| | CF COREVEST PURCHASER LLC | |

Parcel Info

| Property Type | Tax Dist. | Block | Lot | Qualifier | Municipality |
|---|---|---|---|---|---|
| | | | | | |

**\* DO NOT REMOVE THIS PAGE.**
*COVER SHEET (DOCUMENT SUMMARY FORM) IS PART OF ESSEX COUNTY REGISTER FILING RECORD*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*

7A1T9C0N-1B10-4435-BD31-DA7A957A0983 3874005 3443995

Page 2 of 2

inst # 2019055526 - Page 8 of 4

PREPARED BY:
CoreVest American Finance Lender LLC
507 E South Temple, Suite 200
Salt Lake City, UT 84102
Attn: Loan Administration

AFTER RECORDING RETURN TO:
Wells Fargo Bank, N.A.
Mortgage Document Custody (CMBS)
1055 10th Ave SE
Minneapolis, MN 55414
ATTN: CMBS - GS

_____

THIS SPACE ABOVE FOR RECORDER'S USE

### ASSIGNMENT OF SECURITY INSTRUMENT

FOR VALUE RECEIVED, COREVEST AMERICAN FINANCE LENDER LLC, a Delaware limited liability company ("Assignor"), does hereby transfer, assign, grant and convey to CF COREVEST PURCHASER LLC, a Delaware limited liability company (together with its successors and assigns, "Assignee"), having an address at c/o CoreVest Finance 1920 Main Street, Suite 850, Irvine, CA 92614, all of Assignor's right, title and interest in, to and under that certain Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing executed by FRALEG GROUP, a New York corporation, as mortgagor, to and for the benefit of CoreVest American Finance Lender LLC, a Delaware limited liability company, as mortgagee, and recorded on 4/12/2019, in Instrument No. 2019034120, in the County of Essex Recorder's Office, State of New Jersey (the "Security Instrument"), encumbering, among other things, the Real Property as defined in and legally described on Exhibit A to the Security Instrument, and commonly known by the property address(es) set forth on **Schedule 1** hereto, and Assignor does hereby grant and delegate to Assignee any and all of the duties and obligations of Assignor thereunder from and after the date hereof.

TOGETHER WITH: (i) the note(s) described or referred to in the Security Instrument, the money due or to become due thereon with interest, and all rights accrued or to accrue thereunder; and (ii) all other "Loan Documents" (as defined in the Security Instrument).

This Assignment of Security Instrument (this "Assignment") is an absolute assignment. This Assignment is made without recourse, representation or warranty, express or implied, by Assignor.

*[Signature Page Follows]*

SYSTEMWIDE
374526400645 17-Preview4

inst # 2019055526 - Page 8 of 14

ESSEX COUNTY

Inst # 2013655824 - Page 4 of 6

IN WITNESS WHEREOF, the undersigned has executed this Assignment of Security Instrument as of October 17, 2019.

Assignor:

COREVEST AMERICAN FINANCE LENDER LLC,
a Delaware limited liability company

By: _____
J. Ryan McInnis
Its: Chief Operating Officer

Inst. # 201800832 - Page 5 of 6

# ACKNOWLEDGMENT

A notary public or other officer completing this
certificate verifies only the identity of the individual
who signed the document to which this certificate is
attached, and not the truthfulness, accuracy, or
validity of that document.

State of California
County of _____ Orange _____ )

On ___April 17, 2019___ before me, ___C. LAI, Notary Public___
                                              (insert name and title of the officer)

personally appeared ___J. Ryan McBride___-----------------------------------------
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____     (Seal)

C. LAI
Notary Public - California
Orange County
Commission # 2174087
My Comm. Expires Jan 10, 2023

Inst # 2019055306 - Page 3 of 3

## Schedule 1
## Schedule of Property Addresses

### 112 N Walnut St., East Orange, NJ 07017

ALL THAT CERTAIN tract or parcel of land and premises situate in the City of East Orange, County of Essex and the State of New Jersey more particularly described as follows:

BEGINNING at a point in the Southeasterly line of North Walnut Street (60.00 feet wide), said point being distant Southwesterly 250.00 feet from the corner formed by the intersection of the said line of North Walnut Street with the Southwesterly line of Summit Street (50.00 feet wide) and extending;

thence (1) South 53 Degrees 25 Minutes 00 Seconds East, parallel with Summit Street, a distance of 266.08 feet to a point.

thence (2) South 37 Degrees 37 Minutes 00 Seconds West, a distance of 50.00 feet to a point.

thence (3) North 53 Degrees 25 Minutes 00 Seconds West, parallel with Summit Street, a distance of 266.08 feet to a pointing he aforementioned Southeasterly line of North Walnut Street.

thence (4) North 37 Degrees 37 Minutes 00 Seconds East, along said Southeasterly line of North Walnut Street, a distance of 50.00 feet to the point and place of BEGINNING.

BEING known as Lot 15, Block 360 on the City of East Orange Tax Map.

CONTAINING: 13,302 square feet, more or less.

Schedule 1

Inst # 2019055306 - Page 3 of 3

POLSINELLI PC
Morgan C. Fiander, Esq. (239812017)
600 Third Avenue, 42nd Floor
New York, New York 10016
Phone: (212) 413-2838
mfiander@polsinelli.com

Attorneys for Plaintiff CAF Borrower
GS LLC

|  |  |
|---|---|
| CAF BORROWER GS LLC<br><br>        Plaintiff,<br><br>   v.<br><br>FRALEG GROUP INC., a New York corporation; RENHAN LLC, a New Jersey limited liability company and TAM LENDING CENTER INC., a New Jersey corporation,<br><br>        Defendants. | SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION: ESSEX COUNTY<br>DOCKET NO. SWC-F-001632-20<br><br>*Civil Action*<br><br>***CERTIFICATION OF ATTORNEYS' FEES*** |

I, MORGAN C. FIANDER, ESQ., of full age, do hereby certify and say:

1.     I am an attorney duly admitted to practice law in the State of New Jersey and an associate with the firm POLSINELLI PC, attorneys for plaintiff CAF BORROWER GS LLC ("Plaintiff"). I am responsible for litigating the above-captioned action on Plaintiff's behalf and have personal knowledge of the facts set forth herein. I am authorized to make the instant Certification on Plaintiff's behalf in this case.

2.     I make this Certification in support of Plaintiff's motion for entry of final judgment in foreclosure. I am authorized to make the instant Certification on Plaintiff's behalf in this case.

3.     Pursuant to R. 4:42-9, the allowance for counsel fees shall be calculated on all sums adjudged to be paid Plaintiff as set forth on the following itemized schedule:

      **Amounts up to $5,000.00 @ the rate of 3.5%    $175.00**

**(minimum of $75.00):**

**Amounts over $5,000.00 and up to $10,000.00          $75.00
@ 1.5%:**

**Amounts in excess of $10,000.00 @ 1.0%:          $42,000.55**

4.        Plaintiff respectfully requests the maximum amount of attorneys' fees allowable by law of $7,500.

I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

*/s/ Morgan C. Fiander*
MORGAN C. FIANDER

Dated:  March 29, 2021

POLSINELLI PC
Morgan C. Fiander, Esq. (239812017)
600 Third Avenue, 42nd Floor
New York, New York 10016
Phone:  (212) 413-2838
mfiander@polsinelli.com

*Attorneys for Plaintiff CAF Borrower GS LLC*

| | |
|---|---|
| CAF BORROWER GS LLC<br><br>　　　　Plaintiff,<br><br>　　　v.<br><br>FRALEG GROUP INC., a New York corporation; RENHAN LLC, a New Jersey limited liability company and TAM LENDING CENTER INC., a New Jersey corporation,<br><br>　　　　Defendants. | SUPERIOR COURT OF NEW JERSEY<br>CHANCERY DIVISION:  ESSEX COUNTY<br>DOCKET NO. SWC-F-001632-20<br><br>*Civil Action*<br><br>***CERTIFICATION OF SERVICE*** |

　　　I, MORGAN C. FIANDER, ESQ., of full age, do hereby certify and say:

　　　1.　　　I am an attorney duly admitted to practice law in the State of New Jersey and an associate with the firm Polsinelli PC, attorneys for plaintiff CAF Borrower GS LLC ("Plaintiff"). I am responsible for litigating the above-captioned action on Plaintiff's behalf and have personal knowledge of the facts set forth herein.  I am authorized to make the instant Certification on Plaintiff's behalf in this case.

　　　2.　　　On March 26, 2021, I caused to be delivered a copy of the Request for Entry of Default, which was filed in this action on March 26, 2021, on defendants Fraleg Group Inc., Renhan LLC and TAM Lending Center, Inc. (collectively, the "Defendants") via Certified Mail, Return Receipt Requested and U.S. Mail, to Defendants at the following last known addresses:

　　　　　Fraleg Group, Inc.
　　　　　c/o VCorp Services, LLC
　　　　　820 Bear Tavern Road
　　　　　West Trenton, New Jersey 08628

Renhan LLC
c/o Komlika Gill
1818 Old Cuthbert Road, Suite 100
Cherry Hill, New Jersey 08034

TAM Lending Center, Inc.
c/o Phillip T. Valianti
131 Copperfield Drive
Woodbury, New Jersey 08096

I certify that the foregoing statements made by me are true.  I am aware that if any of the

foregoing statements made by me are willfully false, I am subject to punishment.

/s/Morgan C. Fiander
MORGAN C. FIANDER

Dated: March 26, 2021

Certified True Copy

By: /s/ Morgan Fiander
    Morgan Fiander, Esq.

**LOAN AGREEMENT**
(Revolving Credit Facility
with Renovation Reserves for Renovation Properties)

by and between

**FRALEG GROUP INC,**
a New York corporation,
as Borrower,

and

**COREVEST AMERICAN FINANCE LENDER LLC,**
a Delaware limited liability company,
as Lender,

**Dated as of January 23, 2019**

**TABLE OF CONTENTS**

Page

ARTICLE 1    DEFINITIONS................................................................................................ 1

ARTICLE 2    THE LOAN................................................................................................... 15

ARTICLE 3    CONDITIONS PRECEDENT TO THE EFFECTIVENESS OF THIS
AGREEMENT............................................................................................... 22

ARTICLE 4    CONDITIONS PRECEDENT TO ADVANCES ........................................... 23

ARTICLE 5    REPRESENTATIONS AND WARRANTIES................................................ 26

ARTICLE 6    COVENANTS OF BORROWER.................................................................. 31

ARTICLE 7    NEGATIVE COVENANTS ......................................................................... 45

ARTICLE 8    EVENTS OF DEFAULT AND REMEDIES ................................................. 46

ARTICLE 9    BENEFIT OF AGREEMENT; ASSIGNMENTS; PARTICIPATIONS......................... 51

ARTICLE 10   MISCELLANEOUS .................................................................................... 52

ARTICLE 11   PROPERTY RELEASES ............................................................................. 57

**LOAN AGREEMENT**
**(Revolving Credit Facility with Renovation Reserves for Renovation Properties)**

Loan No. 24240

THIS LOAN AGREEMENT (this "**Agreement**"), dated as of January 23, 2019, is made by and between FRALEG GROUP INC, a New York corporation ("**Borrower**"), and COREVEST AMERICAN FINANCE LENDER LLC, a Delaware limited liability company (together with its successor and assigns, "**Lender**").

R E C I T A L S:

A.      Borrower desires to obtain a loan (the "**Loan**") from Lender in the maximum principal amount of Eight Million Dollars ($8,000,000.00) (the "**Loan Amount**"), and Lender is willing to make Advances up to the Loan Amount on the terms and conditions set forth in this Agreement and the other Loan Documents.

NOW, THEREFORE, in consideration of the making of the Loan by Lender, the covenants, agreements, representations and warranties set forth in this Agreement, and for other valuable consideration, the receipt and adequacy of which is hereby acknowledged, Borrower and Lender agree as follows:

**ARTICLE 1**

**DEFINITIONS**

1.1      Definitions.  As used herein, the following terms shall have the meanings set forth below:

"**Advance**" is defined in Section 2.2 hereof.

"**Advance Amount**" means the amount of an Advance made hereunder (and includes the Renovation Reserve Funds advanced for deposit into the Renovation Reserve established for each Renovation Property whether or not disbursed from the Renovation Reserve).

"**Advance Date**" means the date an Advance is disbursed by Lender to or for the benefit of Borrower and in the case of an Advance for a Renovation Property, the date the Initial Disbursement of such Advance is disbursed to or for the benefit of Borrower.

"**Advance Exit Fee**" means for each Advance made hereunder, a non-refundable fee in an amount equal to one and one-half percent (1.50%) of the Advance Amount which shall be due and payable to Lender upon the earlier to occur of (a) the Advance Repayment Date of such Advance or (b) the date the Advance is repaid, and provided that the Advance Exit Fee will be waived for any Advance that is repaid with a permanent loan from Lender.

"**Advance Fee**" means a fee payable to Lender concurrently with each Advance under this Agreement in the amount equal to one and one-half percent (1.50%) of the Advance Amount, which Advance Fee shall be fully earned by Lender and non-refundable to Borrower for any reason from and after the Advance Date.

"**Advance Repayment Date**" has the meaning set forth in Section 2.5.3.

"**Affiliate**" means, with respect to any Person, any manager, managing member, non-member manager, general partner, officer or director thereof and any Person that is, directly or indirectly, the legal or beneficial owner of or otherwise controls more than 10% of any class of shares or other equity security of such Person, or any Person that directly or indirectly Controls or is Controlled by or is under common Control with such Person.

"**Agreement**" means this Agreement, as the same may be amended, modified, supplemented or restated from time to time.

"**Allocated Loan Amount**" means for each Property, the portion of the Loan that is advanced for the financing of such Property pursuant to one or more Advances, less any prepayments of principal applied to the reduction thereof pursuant to Section 2.5.7.

"**Appraised Value**" means for each Property, the "as is" fair market value of such Property as determined by Lender in its sole discretion based on, at Lender's sole election, (i) a broker's opinion of value for such Property dated within 30 days of the Advance Date or other date of determination, as applicable, from a real estate broker licensed within the State in which such Property is located and selected by or otherwise acceptable to Lender (the cost of which shall be paid for by Borrower); (ii) an appraisal prepared by an appraiser selected by Lender dated within 30 days of the Advance Date or other date of determination, as applicable (the cost of which shall be paid for by Borrower); or (iii) such other evidence satisfactory to Lender, in its sole discretion, of the fair market value of such Property as of the proposed Advance Date or other date of determination.

"**Approved Property State(s)**" means the following State(s): Georgia, New Jersey and New York.

"**Approved Renovation Costs**" means for any Property excluding a Renovation Property, the actual costs and expenses incurred and paid for by Borrower in connection with the renovation and repair of such Property prior to the Advance Date approved by Lender in its sole and absolute discretion, and for which Lender has received evidence satisfactory to Lender and Lender's Consultant (i) of the amount of such paid costs and expenses; (ii) that all of the work has been completed in a good and workmanlike, lien free manner and in accordance with all applicable Legal Requirements, including without limitation, copies of paid invoices, cancelled checks, unconditional mechanic's lien releases, copies of all Permits and such other evidence as may be required by Lender, all of which shall be certified as true and complete by Borrower in the Request for Advance and in the Renovation Certificate executed and delivered Borrower along with the Request for Advance.

"**Award**" means any compensation paid by any Governmental Authority in connection with a Condemnation in respect to all or any part of a Property.

"**Bankruptcy Code**" means 11 U.S.C. §101 et seq., as the same may be amended from time to time.

"**Borrower**" has the meaning set forth in the preamble.

"**Budgeted Renovation Costs**" means for each Renovation Property, the total hard and soft costs necessary to Complete the Renovation Work for such Renovation Property as set forth in the Renovation Budget for such Renovation Work approved by Lender and Lender's Consultant.

"**Business Day**" means any day other than (i) a Saturday and a Sunday and (ii) a day on which federally insured depository institutions in the State of New York, or the state in which the offices of Lender

or its Servicer are located, are authorized or obligated by law, governmental decree or executive order to be closed.

"**Casualty**" has the meaning set forth in <u>Section 6.2.2</u>.

"**Casualty Prepayment Amount**" is defined in <u>Section 6.2.4(c)</u>.

"**Change Order**" is defined in <u>Section 6.1.13(c)</u>.

"**Claim**" means any loss, judgment, claim, lawsuit, demand, liability, expense or damage of any kind or nature, including consequential, indirect and special damages, legal fees and expenses.

"**Collateral**" means collectively, all of the real, personal and mixed property in which Liens are purported to be granted from time to time in favor of Lender pursuant to the Loan Documents as security for the Obligations.

"**Completion**", "**Complete**" or "**Completed**" means for each Renovation Property, that, in Lender's sole judgment: (a) the Renovation Work has been completed in a good and proper manner, free and clear of all defects, mechanics and other liens in accordance with: (i) the Statement of Proposed Renovations and Plans approved by Lender for such Renovation Property, together with any changes thereto approved by Lender, in its sole discretion; (ii) the Renovation Budget approved by Lender, without substantial deviation, unless approved by Lender, in its sole discretion and (iii) all Legal Requirements; (b) issuance of a final certificate of occupancy (or reasonable equivalent) by the applicable governmental authority or if a certificate of occupancy is not required for the Renovation Work, evidence that the Renovation Work has been completed in accordance with all Legal Requirements; (c) all notices of completion with respect to the Improvements, as renovated by the Renovation Work, will have been filed and all statutory lien periods will have expired; (d) all costs of completing the Renovation Work shall have been paid, including, without limitation, interest due and owing on the Principal Indebtedness prior to the Completion Date; and (e) all of the conditions for the final disbursement of the Renovation Reserve Funds set forth in <u>Section 2.9.4</u> hereof have been satisfied.

"**Completion Date**" is defined in <u>Section 6.1.13(d)</u>.

"**Condemnation**" means a taking or voluntary conveyance of a Property or any interest in, right accruing to, use of or access to a Property, as the result of, or in settlement of, any condemnation or other eminent domain proceeding by any Governmental Authority.

"**Construction Contract**" is defined in <u>Section 6.1.13(a)</u>.

"**Construction Documents**" is defined in <u>Section 6.1.13(a)</u>.

"**Contractor**" is defined in Section <u>6.1.13(a)</u>.

"**Contract Price**" is defined in <u>Section 6.1.13(a)</u>.

"**Control**" means the power to direct the management and policies of an entity, directly or indirectly, whether through the ownership of voting securities or other beneficial interests, by contract or otherwise. The terms "Controlled" and "Controlling" shall have correlative meanings.

"**Default**" means any condition or event that with notice, the passage of time, or both, would be an Event of Default.

"**Default Rate**" means a rate per annum equal to the lesser of (i) the maximum rate permitted by applicable law or (ii) five percent (5%) above the Interest Rate.

"**Disbursement**" is defined in <u>Section 2.9.1</u>.

"**Disbursement Request**" is defined in <u>Section 2.9.1</u>.

"**Disqualified Property**" means any Property with respect to which there is an Event of Default that is specific to such Property (other than as a result of a voluntary act or omission of any Restricted Party).

"**Effective Date**" means the date that all of the conditions precedent set forth in <u>Section 3.1</u> have been satisfied (or waived) as determined by Lender, in its sole and absolute discretion.

"**Eligible Property**" means a residential investment property (i) containing 1-20 dwelling units or such greater number of units as may be approved by Lender in its sole and absolute discretion; (ii) located within an Approved Property State; (iii) that is either to be acquired by Borrower or recently acquired by Borrower; and (iv) approved by Lender, in its sole and absolute discretion.

"**Embargoed Person**" means a Person subject to trade restrictions under any Federal Trade Embargo.

"**Environmental Indemnity**" means that certain Environmental Indemnity Agreement of even date herewith executed by the Borrower for the benefit of Lender, as such Environmental Indemnity may be amended, modified, extended, renewed, restated or supplemented from time to time.

"**Environmental Laws**" has the meaning set forth in the Environmental Indemnity.

"**ERISA**" means the Employee Retirement Income Security Act of 1974, as amended from time to time, and the regulations promulgated thereunder.

"**ERISA Affiliate**" at any time, means each trade or business (whether or not incorporated) that would, at the time, be treated together with Borrower as a single employer under Title IV or Section 302 of ERISA or Section 412 of the Code.

"**Event of Bankruptcy**" means, with respect to any Person (i) such Person shall fail generally to pay, or admit in writing its inability to pay, its debts as they come due, or shall make a general assignment for the benefit of creditors; (ii) any case or other proceeding shall be instituted by or with the consent or acquiescence of such Person seeking to adjudicate it as bankrupt or insolvent, or seeking liquidation, reorganization, debt arrangement, dissolution, winding up, or composition or readjustment of debts of it or its debts, or the appointment of a trustee, receiver, custodian, liquidator, assignee, sequestrator or the like for such Person or all or substantially all of its assets, or any similar action, or such Person shall take any corporate, partnership, limited partnership or limited liability company action to authorize any of such actions; or (iii) a case or other proceeding described in the foregoing clause (ii) shall be commenced, without the application, consent or acquiescence of such Person, and (A) such case or proceeding shall continue undismissed, or unstayed and in effect for a period of sixty (60) consecutive days or (B) an order for relief in respect of such Person shall be entered in such case or proceeding or a decree or order granting such other requested relief shall be entered.

"**Event of Default**" means the occurrence of any of the events listed in <u>Section 8.1</u>.

"**Excluded Taxes**" means Taxes imposed on or measured by net income (however denominated), franchise Taxes, and branch profits Taxes that are imposed by the jurisdiction in which Lender is organized or in which Lender's applicable lending office is located.

"**Federal Trade Embargo**" means any federal law imposing trade restrictions, including (i) the Trading with the Enemy Act, as amended, and each of the foreign assets control regulations of the United States Treasury Department (31 CFR, Subtitle B, Chapter V, as amended), (ii) the International Emergency Economic Powers Act (50 U.S.C. §§ 1701 et seq., as amended), (iii) any enabling legislation or executive order relating to the foregoing, (iv) Executive Order 13224, and (v) the PATRIOT Act.

"**Financing Statements**" means such UCC-1 financing statements as may be required from time to time by Lender, in its sole and absolute discretion identifying Borrower as debtor, in favor of Lender as secured party, perfecting Lender's security interest in the personal property Collateral now owned or hereafter acquired by Borrower, including the Reserve Collateral. The Financing Statements have been or will be filed with all recording or filing offices in such jurisdictions as Lender shall desire to perfect Lender's security interest or to reflect such security interest in appropriate public records.

"**Fully Condemned Property Prepayment Amount**" is defined in Section 6.2.3.

"**Governmental Authority**" means any national, federal, state, regional or local government, or any other political subdivision of any of the foregoing, in each case with jurisdiction over Borrower, any Property, or any Person with jurisdiction over Borrower, any Property exercising executive, legislative, judicial, regulatory or administrative functions of or pertaining to government.

"**Guarantor**" means Andy O. Alege, an individual.

"**Guaranty**" means that certain Guaranty of even date herewith executed by Guarantor for the benefit of Lender, as such Guaranty may be amended, modified, extended, renewed, restated or supplemented from time to time.

"**HOA**" means a home owners or condominium association, board, corporation or a similar entity with authority to create a Lien on a Property as a result of the non-payment of HOA Fees that are payable with respect to such Property.

"**HOA Fees**" means all homeowner's and condominium dues, fees, assessments and impositions, and any other charges levied or assessed or imposed against a Property, or any part thereof, by an HOA.

"**Impositions**" means all (a) Taxes, assessments, water, sewer and other utility charges, any charges for or arising under any reciprocal easement agreement, declaration of covenants, conditions, restrictions, condominium declaration or condominium arrangement or any other easement or agreement maintained for the benefit of a Property, and all other charges and assessments imposed by any Governmental Authority, general and special, ordinary and extraordinary, foreseen and unforeseen, of any kind and nature whatsoever which at any time may be assessed, levied or imposed upon a Property, or the rent or income received therefrom, or any use or occupancy thereof, (b) HOA Fees; and (c) other Taxes, assessments, fees and governmental charges levied, imposed or assessed upon or against the Borrower or any Property.

"**Improvements**" means all buildings, improvements and fixtures of every kind or nature now or in the future situated or to be constructed on the Land; all machinery, appliances, equipment, furniture and all other personal property of every kind or nature located in or on, or attached to, or used or to be used in connection with the Land, buildings, structures, improvements or fixtures; all building materials and goods

procured for use or in connection with the foregoing; and all additions, substitutions and replacements to any of the foregoing.

"**In Balance**" is defined in <u>Section 6.1.13(e)</u>.

"**Increased Costs**" has the meaning set forth in <u>Section 2.7</u>.

"**Indebtedness**" means, the outstanding principal amount of the Loan set forth in, and evidenced by, this Agreement and the Note (including, without limitation, all Advances advanced or hereafter advanced under this Agreement), together with all accrued and unpaid interest thereon, late charges, Advance Exit Fees and all other obligations and liabilities due or to become due to Lender in respect of the Loan and/or pursuant to the Note, this Agreement, each and every Security Instrument (whether now or hereafter executed) or any of the other Loan Documents (excluding the Guaranty), and all other amounts, sums and expenses paid by or payable to Lender pursuant to the Loan Documents (excluding the Guaranty) and any and all obligations and liabilities of Borrower, including without limitation, any increases in the maximum principal amount of the Loan, contained in any written renewal, extension, amendment, modification, consolidation, restatement of, or substitution or replacement for, all or any part of the Note, this Agreement or any of the other Loan Documents (excluding the Guaranty).

"**Indemnified Taxes**" means all Taxes (including any stamp, court, documentary, intangible, recording, filing or similar Taxes) that arise from or are imposed upon any payment made under, from the execution, delivery, performance, or enforcement of any of the Loan Documents, or the registration of, from the receipt or perfection of any Lien under any Loan Document, other than Excluded Taxes.

"**Individual Material Adverse Effect**" means, with respect to any Property, any event or condition that has a material adverse effect on (a) the profitability, value, use, occupation, leasing or marketability of such Property or results in any material liability to, claim against or obligation of Lender or any Loan Party with respect to such Property or (b) the enforceability, validity, perfection or priority of the Lien of the Security Instrument with respect to such Property.

"**Initial Disbursement**" is defined in <u>Section 4.2.3</u>.

"**Insurance Proceeds**" means property and business interruption insurance proceeds paid or payable to Borrower or Lender in connection with damage to or destruction of a Property.

"**Interest Accrual Period**" means each period from and including the first day of a calendar month through and including the last day of such calendar month; <u>provided</u>, that Lender shall have the right, in connection with a change in the Monthly Payment Date in accordance with the definition thereof, to make a corresponding change to the Interest Accrual Period. Notwithstanding the foregoing, the first Interest Accrual Period shall commence on and include the Advance Date of the first Advance made hereunder through and including the last day of the calendar month in which such first Advance was made.

"**Interest Owner(s)**" means any Person owning an interest (directly or indirectly) in Borrower.

"**Interest Rate**" means eight and one-half percent (8.50%) per annum.

"**Land**" has the meaning set forth in each Security Instrument.

"**Lease**" means a lease of, or other occupancy agreement with respect to any portion of a Property or space in the Improvements located thereon.

"**Legal Action**" is defined in <u>Section 5.3</u>.

"**Legal Requirements**" means all governmental statutes, laws, rules, orders, regulations, ordinances, judgments, decrees and injunctions of Governmental Authorities or any homeowners' or similar associations (including securities laws, Environmental Laws and zoning restrictions) affecting a Restricted Party, any of the Properties or any other Collateral or any portion thereof or the construction, ownership, use, alteration or operation thereof (whether now or hereafter enacted and in force), and all permits, licenses and authorizations relating thereto.

"**Lender's Appraisal Costs**" means all fees and costs incurred by Lender in determining the Appraised Value of a Property or the Projected Value of a Renovation Property.

"**Lender's Closing Instructions**" has the meaning set forth in <u>Section 4.1.2</u> hereof.

"**Lender's Consultant**" means a construction consultant selected and engaged by Lender, at Borrower's expense, to act as Lender's construction consultant for the purposes set forth herein.

"**Lender's Settlement Statement**" has the meaning set forth in <u>Section 4.1.4</u> hereof.

"**Lien**" means any mortgage, lien (statutory or other), pledge, hypothecation, assignment, preference, priority, security interest, restrictive covenant, easement, or any other encumbrance or charge on or affecting any Collateral or any portion thereof, or any interest therein, including any conditional sale or other title retention agreement, any sale-leaseback, any financing lease or similar transaction having substantially the same economic effect as any of the foregoing, the filing of any financing statement or similar instrument under the Uniform Commercial Code or comparable law of any jurisdiction, and mechanics', materialmen's and similar liens and encumbrances, and any option to purchase, right of first refusal, right of first offer or similar right.

"**Loan**" means the loan from Lender to Borrower described in this Agreement in the maximum principal amount of the Loan Amount.

"**Loan Amount**" means the maximum principal amount of Eight Million and No/100 Dollars ($8,000,000.00).

"**Loan Parties**" means, collectively, Borrower and each Guarantor, each of which shall be individually a "**Loan Party**".

"**Loan Documents**" means this Agreement, the Note, each Security Instrument, the Guaranty, the Environmental Indemnity, each Request for Advance, each Lender's Closing Instructions, each Disbursement Request and any and all other agreements, documents, certificates or instruments now or hereafter evidencing, securing or otherwise executed in connection with the Loan, as each of the same may be amended, modified, extended, renewed, supplemented or restated from time to time.

"**Loss Proceeds**" means (i) Insurance Proceeds or (ii) Awards, whichever the case may be, and in each case after deduction of Lender's reasonable costs and expenses (including reasonable counsel fees) in collecting and disbursing the same.

"**Loss Proceeds Deficiency**" is defined in <u>Section 6.2.4(d)</u>.

"**Material Adverse Effect**" means a material adverse effect on (a) the property, business, operations or financial condition of a Restricted Party, (b) the use, operation or value of the Properties taken

as a whole, (c) the ability of Borrower to repay the principal and interest of the Loan when due or the ability of a Restricted Party to satisfy its Obligations under the Loan Documents when due, or (d) the enforceability or validity of any Loan Document, the perfection or priority of any Lien created under any Loan Document or the rights, interests and remedies of Lender under any Loan Document.

"**Maturity Date**" means the Stated Maturity Date, or such earlier date as may result from acceleration of the Loan in accordance with this Agreement.

"**Maximum Renovation Advance Amount**" is defined in Section 4.2.3.

"**Monthly Debt Service Payment**" means for each Monthly Payment Date, an amount equal to interest accrued on the Principal Indebtedness at the Interest Rate for the preceding Interest Accrual Period.

"**Monthly Payment Date**" means, with respect to each Interest Accrual Period, the tenth (10th) day of the calendar month immediately succeeding such Interest Accrual Period; provided, that Lender shall have the right from time to time to change the Monthly Payment Date in connection with a change to the Interest Accrual Period.

"**Note**" means that certain Secured Promissory Note, of even date herewith, executed by Borrower and payable to the order of Lender, as the same may be amended, modified, extended, renewed, restated or supplemented from time to time.

"**Obligations**" means (i) the Indebtedness; plus (ii) the performance of each and every covenant, condition, and agreement contained in this Agreement and the other Loan Documents, including without limitation, each and every Security Instrument whether now or hereafter executed from time to time; plus (iii) any and all Protective Advances made by Lender and any and all other amounts due and owing under the Loan Documents.

"**OFAC List**" means the list of specially designated nationals and blocked persons subject to financial sanctions that is maintained by the U.S. Treasury Department, Office of Foreign Assets Control and any other similar list maintained by the U.S. Treasury Department, Office of Foreign Assets Control pursuant to any applicable governmental statutes, laws, rules, orders, regulations, ordinances, judgments, decrees and injunctions of Governmental Authorities, including trade embargo, economic sanctions, or other prohibitions imposed by Executive Order of the President of the United States. The OFAC List currently is accessible at http://www.treasury.gov/ofac/downloads/t11sdn.pdf.

"**Officer's Certificate**" means a certificate duly executed by Borrower in favor of Lender, in form and substance reasonably acceptable to Lender.

"**Organizational Documents**" means, with respect to any Person: (a) if such Person is a limited liability company, such Person's articles of organization, operating agreement and other documents governing the management and operation of such Person; (b) if such Person is a general or limited partnership, such Person's certificate of limited partnership, partnership agreement and other documents governing the management and operation of such Person; (c) if such Person is a corporation, such Person's articles of incorporation, bylaws and the other documents and instruments governing the management and operation of such Person; (d) if such Person is a trust, such Person's certificate of trust, trust agreement and the other documents and instruments governing the management and operation of such Person; and (e) if such Person is another type of entity, the documents and instruments pursuant to which such Person is formed, managed and operated; in each case, certified by (i) the applicable Secretary of State (for any Organizational Documents that have been filed with any Secretary of State) or (ii) an authorized

representative of the Person (for any Organizational Documents that have not been filed with any Secretary of State).

"**Outside Advance Date**" means January 23, 2020.

"**PATRIOT Act**" means the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act (Title III of Pub. L. 107-56 (signed into law October 26, 2001)), as amended from time to time.

"**Permitted Exceptions**" means (i) the Liens created by the Loan Documents; (ii) all Liens and other matters specifically disclosed on Schedule B of the Title Insurance Policies obtained by Lender with respect to the Properties; (iii) Liens for Taxes not yet delinquent; (iv) Liens for Taxes or Impositions becoming delinquent after the date hereof, in each case only if being diligently contested in good faith and by appropriate proceedings pursuant to and in accordance with Section 6.12, (v) any workers', mechanics' or other similar Liens on any Property arising after the date the Security Instrument is recorded against such Property that are (a) discharged of record within sixty (60) days of attachment, or by the expiration of such sixty (60) day period, Borrower deposits with Lender an amount that at all times equals at least 125% of the dollar amount of such Lien (including any increases thereto from time to time) or a bond in the aforementioned amount from such surety, and upon such terms and conditions, as is reasonably satisfactory to Lender as security for payment or release of such Lien and (b) if contested, are contested in good faith and by appropriate proceedings pursuant to and in accordance with Section 6.12 and (vi) rights of tenants as tenants only pursuant to written Leases entered into in conformity with the provisions of this Agreement.

"**Permitted Indebtedness**" (i) the Indebtedness; (ii) unsecured trade payables which (A) are not evidenced by a note and are incurred in the ordinary course of business relating to the ownership or renovation of a Property, (B) are in amounts reasonable and customary for similar properties and do not exceed 2% of the Allocated Loan Amount for such Property and (C) are paid within 60 days of the date incurred; and (iii) operational debt from a Person that does not own a direct or indirect interest in Borrower and which is not evidenced by a note and in an aggregate amount not exceeding $10,000.

"**Permits**" means all licenses, permits, variances, approvals and certificates used in connection with the ownership, operation, renovation, repair, use or occupancy of each of the Properties (including certificates of occupancy, business licenses, state health department licenses, licenses to conduct business and all such other permits, licenses, consents, approvals and rights, obtained from any Governmental Authority or private Person concerning ownership, operation, renovation, repair, use or occupancy of a Property).

"**Person**" means any natural person, unincorporated association, corporation, partnership, joint venture, limited liability company, trust, other legal entity or any Governmental Authority.

"**Plan Assets**" means assets of any (i) employee benefit plan (as defined in Section 3(3) of ERISA) subject to Title I of ERISA, (ii) plan (as defined in Section 4975(e)(1) of the Code) subject to Section 4975 of the Code, or (iii) governmental plan (as defined in Section 3(32) of ERISA) subject to federal, state or local laws, rules or regulations substantially similar to Title I of ERISA or Section 4975 of the Code.

"**Plans**" is defined in Section 6.1.13(a).

"**Policy(ies)**" is defined in Section 6.2.

"**Principal Indebtedness**" means the principal balance of the Loan outstanding from time to time.

"**Projected Value**" means for each Renovation Property, the "as repaired" value of a Renovation Property based upon Completion of all the Renovation Work for such Renovation Property as underwritten by Lender, in its sole and absolute discretion" based on, at Lender's sole election, (i) an interior broker's opinion of value for such Renovation Property dated within 30 days of the Advance Date or other date of determination, as applicable, from a real estate broker licensed within the State in which such Renovation Property is located and selected by or otherwise acceptable to Lender (the cost of which shall be paid for by Borrower); (ii) an appraisal prepared by an appraiser selected by Lender dated within 30 days of the Advance Date or other date of determination, as applicable (the cost of which shall be paid for by Borrower); or (iii) such other evidence satisfactory to Lender, in its sole discretion, of the projected value of such Renovation Property based upon Completion of all Renovation Work for such Renovation Property as of the proposed Advance Date or other date determination.

"**Property**" means each "Property" (as defined in and set forth in each Security Instrument) and collectively, the "**Properties**".

"**Property Documents**" means collectively the Permitted Exceptions, any reciprocal easement agreement, declaration of covenants, conditions, restrictions, condominium declaration or condominium arrangement and any easements, reciprocal operating agreements, restrictive covenants, management agreements, leases, agreements regarding utilities and other agreements affecting or governing the operation, management or permitted uses of a Property.

"**Protective Advances**" means all sums expended by Lender: (a) to protect the priority, validity and enforceability of the Lien of any Security Instrument and any and all other Loan Documents encumbering any of the Collateral; (b) to protect or preserve the value or the security of any of the Collateral, including without limitation, payment of Taxes, Impositions, Insurance Premiums, and any amounts expended in accordance with Section 8.2 of this Agreement; (c) if a receiver is appointed for the Borrower or any of the Properties at the request of Lender, amounts expended in connection with the ownership of any of the Properties or to complete, lease, sell or operate the Improvements or any of the Properties; and (d) any other amount advanced by Lender and permitted by law to be secured as an additional or protective advance.

"**Qualified Release Property Default**" is defined in Section 11.1.

"**Regulatory Change**" means any change after the Effective Date in Legal Requirements or the adoption or the making, after such date, of any interpretations, directives or requests applying to Lender, or any Person in Control of Lender or to a class of banks or companies Controlling banks of or under any Legal Requirements by any court or Governmental Authority.

"**Release**" is defined in Section 11.1.

"**Release Conditions**" is defined in Section 11.1.

"**Release Price**" is defined in Section 11.1.

"**Release Property**" is defined in Section 11.1.

"**Renovation Budget**" means for each Renovation Property, a written itemization of all hard and soft costs necessary to Complete the Renovation Work for such Property which shall have been approved by Lender.