"**Renovation Certificate**" means a certificate duly executed by Borrower, in form and substance acceptable to Lender, that (i) identifies the Property(ies) and the portion of the Advance requested to be used to reimburse Borrower for Approved Renovation Costs incurred prior to the date of the Advance for such "Property(ies); (ii) describes all items of work to be funded, (iii) certifies that the work to be funded has been performed at the applicable Property(ies), (iv) states that such work has been completed in a good and workmanlike manner and in accordance with all applicable Legal Requirements, (v) states that such work has not been the subject of a previous Advance, and has been paid for in full by Borrower (including any cost in excess of the requested Advance), (vi) for any expenditure greater than $1,000, is delivered together with copies of any invoices for the work performed, and (vii) is delivered with such mechanics lien releases and waivers that are requested by Lender and copies of all Permits for the work to be funded.

"**Renovation Property**" means any Property with an Advance Amount that includes Loan proceeds to be deposited in a Renovation Reserve for such Property.

"**Renovation Reserve**" has the meaning set forth in Section 2.9.

"**Renovation Reserve Funds**" means that portion of each Advance for a Renovation Property that is to be withheld by Lender for deposit into the Renovation Reserve for such Property, as determined by Lender.

"**Renovation Work**" means all work to be performed in connection with the renovation and repair of a Renovation Property in accordance with the Statement of Proposed Renovations, the Plans and the Renovation Budget for such Renovation Property and this Agreement.

"**Rents**" means all right, title and interest of Borrower, its successors and assigns, therein and thereunder, including, without limitation, cash or securities deposited thereunder to secure the performance by the lessees of their obligations thereunder and all rents, additional rents, revenues, issues and profits (including all oil and gas or other mineral royalties and bonuses) from the Land and the Improvements, whether paid or accruing before or after the filing by or against Borrower of any petition for relief under the Bankruptcy Code.

"**Request for Advance**" means a Request for Advance duly executed by Borrower that (i) identifies the Property(ies), each of which must be an Eligible Property, (ii) certifies for each Property that is the subject of the Request for Advance, as to the purchase price to be paid by Borrower in the case of an acquisition or paid by Borrower in the case of a refinancing of an Eligible Property recently acquired by Borrower, (iii) sets forth the amount of the requested Advance for each Property, as applicable, and if the Property is a Renovation Property, sets forth the allocation of the total requested Advance amount for such Renovation Property between the Initial Disbursement and the Renovation Reserve Funds to be deposited into a Renovation Reserve for such Renovation Property, as determined by Lender; (iv) if required by Lender, sets forth the Allocated Loan Amount for each Property (including the pending Advance and all previous Advances made with respect to each such Property); (v) is delivered with a Renovation Certificate, if all or a portion of the Advance is for the reimbursement of Approved Renovation Costs incurred prior to the date of such requested Advance; (vi) for each Renovation Property, includes a Statement of Proposed Renovation Work and a Renovation Budget for such Property, in each case as prepared by Borrower and approved by Lender; and (vii) is otherwise in form and substance acceptable to Lender, in its sole discretion.

"**Reserve Collateral**" is defined in Section 2.9.8.

"**Reserve Deficiency**" is defined in Section 6.1.13(e).

"**Reserve Deficiency Funds**" is defined in Section 6.1.13(e).

"**Restoration**" means the repair and restoration of a Property after a Casualty or Condemnation as nearly as possible to the condition such Property was in immediately prior to such Casualty or Condemnation, with such material alterations as may be approved by Lender, which such approval shall not to be unreasonably withheld.

"**Restoration Conditions**" means (a) no Event of Default shall have occurred and be continuing, (b) within thirty (30) days after the occurrence of the Casualty or Condemnation, Borrower delivers to Lender a written undertaking to expeditiously commence and to satisfactorily complete with due diligence the Restoration of the affected Property in accordance with the terms of this Agreement, (c) Lender shall be satisfied that any debt service and operating deficits which will be incurred with respect to the Property as a result of the occurrence of the Casualty will be covered out of (i) the applicable Loss Proceeds or (ii) by other funds of Borrower; (d) Lender shall be satisfied that the Restoration will be completed on or before the earliest of (i) two (2) months prior to the Advance Repayment Date for the Advance made to acquire or finance the affected Property or (ii) such time as may be required under applicable Legal Requirements and (e) the Loss Proceeds together with any Loss Proceeds Deficiency deposited by Borrower with Lender are sufficient to cover the cost of the Restoration, as determined by Lender.

"**Restoration Threshold Amount**" means, as of any date of determination, an amount equal to ten percent (10%) of the Allocated Loan Amount for the affected Property.

"**Restricted Parties**" means, collectively, Borrower and the other Loan Parties, and any partner, member, shareholder, non-member manager, and any other direct or indirect legal or beneficial owner of Borrower, any other Loan Party, or any non-member manager of Borrower or any other Loan Party, each of which shall be individually a "**Restricted Party**".

"**Revenues**" means all rents, rent equivalents, moneys payable as damages pursuant to a Lease or in lieu of rents (including lease termination fees), royalties, revenues, deposits (including security, utility and other deposits that have been forfeited), charges for services rendered, and other consideration of whatever form or nature received by or paid to or for the account of or benefit of Borrower from any and all sources including proceeds from the sale, lease, license, concession or other grant of the right of the use and occupancy of property or rendering of services by Borrower and proceeds, if any, from business interruption or other loss of income insurance.

"**Security Instrument**" means each of the mortgages, deeds of trust, trust deeds, deeds to secure debt or security deeds, as applicable, now or hereafter executed by Borrower in favor of Lender and recorded against one or more Properties described therein as security for the Loan, as the same may be amended, supplemented, or amended and restated from time to time, and collectively, the "**Security Instruments**".

"**Security Deposits**" means all security deposits held or to be held with respect to each Property, pursuant to the applicable Leases.

"**Solvent**" means, with respect to any Person on a particular date, that on such date (a) the fair value of the assets of such Person is greater than the total amount of indebtedness and other liabilities of such Person, (b) the present fair market value of the assets of such Person is not less than the amount that will be required to pay the probable liability of such Person on its indebtedness and other liabilities as they become absolute and matured, (c) such Person is able to realize upon its assets and pay its indebtedness and other liabilities as they mature in the normal course of business and (d) such Person does not intend to, and does not believe that it will, incur indebtedness and other liabilities beyond such Person's ability to pay such indebtedness and other liabilities as they mature.

"**Stated Maturity Date**" means July 23, 2020.

"**Statement of Proposed Renovations**" means a detailed description of the proposed Renovation Work for each Renovation Property prepared by Borrower and approved by Lender, in its sole and absolute discretion, which may be included as part of the Renovation Budget for each such Renovation Property.

"**Taxes**" means all real estate and personal property taxes, assessments, fees, Indemnified Taxes, taxes on rents or rentals, water rates or sewer rents, facilities and other governmental, municipal and utility district charges or other similar taxes or assessments now or hereafter levied or assessed or imposed against the Properties or Borrower with respect to the Properties or rents therefrom or that may become Liens upon any of the Properties, without deduction for any amounts reimbursable to Borrower by third parties and including any interest, additions to tax or penalties applicable thereto.

"**Third Party Purchase Agreement**" means the written purchase and sale agreement (including all amendments thereto) for the acquisition of an Eligible Property between Borrower and a Third Party Seller.

"**Third Party Purchase Price**" means the total amount payable by Borrower to a Third Party Seller for the acquisition of an Eligible Property pursuant to a Third Party Sale as evidenced by a Third Party Purchase Agreement and Third Party Settlement Statement.

"**Third Party Sale**" means a sale of an Eligible Property from a Third Party Seller to Borrower that has been approved by Lender, in its sole and absolute discretion.

"**Third Party Seller**" means the seller under a written purchase agreement for the sale of Eligible Property to Borrower who is unrelated to Borrower, Guarantor and other Restricted Parties.

"**Third Party Settlement Statement**" means the final Settlement Statement for a Third Party Sale.

"**Title Company**" means such title company selected from time to time by Lender, in its sole discretion.

"**Title Insurance Commitment**" means for each Property that is the subject of an Advance, a commitment for a loan policy of title insurance for such Property issued by Title Company with respect to such Property with coverage in an amount equal to the proposed Advance Amount for such Property to insure the first priority lien in favor of Lender created by the Security Instrument, subject only to the Permitted Exceptions.

"**Title Insurance Policy**" means for each Property that is the subject of an Advance, a loan policy of title insurance for such Property issued by Title Company to Lender, and its successors and assigns, with respect to such Property, with coverage in an amount equal to the Advance Amount made with respect to such Property, showing fee title to such Property vesting exactly in the name of Borrower and insuring the first priority lien in favor of Lender created by the Security Instrument recorded against such Property, subject only to the Permitted Exceptions, and in each case otherwise acceptable to Lender in Lender's sole and absolute discretion, and with such endorsements thereto as may be required by Lender, in its sole and absolute discretion.

"**Transfer**" means:

(a)    any sale, transfer, or conveyance of any Property, or any part thereof or interest therein, to any Person, or grant of any options with respect thereto, (whether directly or indirectly, voluntary

or involuntary, by operation of law or otherwise and whether or not for consideration or of record) other than a Transfer of a Property in connection with its Release in accordance with the terms and conditions of Article 11 hereof;

        (b)     any sale, transfer, assignment, conveyance, hypothecation, encumbrance or vesting of any interest in Borrower or any other Restricted Party, including without limitation, by consolidation or merger, whether voluntary, involuntary, by operation of law, or otherwise;

        (c)     the creation, sufferance or granting of any lien, encumbrance, security interest or collateral assignment (whether voluntarily, involuntarily or by operation of law) in all or any part of the Properties or other Collateral, other than the Permitted Exceptions;

        (d)     any Lease of a Property except for Leases in compliance with the terms of this Agreement and the Security Instrument, and which at all times remains, subordinate to the lien of the applicable Security Instrument;

        (e)     any change in Control of Borrower or any other Loan Party;

        (f)     the issuance or other creation of ownership interests in a Restricted Party;

        (g)     the reconstitution or conversion of a Restricted Party from one entity to another type of entity;

        (h)     a merger, consolidation, reorganization or any other business combination of any Restricted Party;

        (i)     a conversion to or operation of all or any portion of a Property as a cooperative or condominium form of ownership; and

        (j)     the execution of any agreements to do any of the foregoing.

     **"Work and Payment Schedule"** is defined in Section 6.1.13(a).

     1.2     Rules of Construction. Unless otherwise specified, (a) all references to sections, schedules and exhibits are to sections, schedules and exhibits in or to this Agreement, (b) all meanings attributed to defined terms in this Agreement shall be equally applicable to both the singular and plural forms of the terms so defined, (c) "including" means "including, but not limited to," (d) the words "hereof," "herein," "hereby," "hereunder" and words of similar import when used in this Agreement shall refer to this Agreement as a whole and not to any particular provision, article, section or other subdivision of this Agreement, (e) unless otherwise indicated, all references to "this Section" shall refer to the Section of this Agreement in which such reference appears in its entirety and not to any particular clause or subsection or such Section, (f) the use of the phrases "an Event of Default exists," "during the continuance of an Event of Default" or similar phrases in the Loan Documents shall not be deemed to grant Borrower any right to cure an Event of Default, and each Event of Default shall continue unless and until the same is waived by Lender in writing in accordance with the requirements of the Loan Documents, and (g) terms used herein and defined by cross-reference to another agreement or document shall have the meaning set forth in such other agreement or document as of the date of this Agreement, notwithstanding any subsequent amendment or restatement of or modification to such other agreement or document. Except as otherwise indicated, all accounting terms not specifically defined in this Agreement shall be construed in accordance with GAAP, as the same may be modified in this Agreement.

## ARTICLE 2
## THE LOAN

2.1    The Loan.  Subject to, and upon the terms and conditions set forth herein, during the period commencing on the Effective Date and ending on the Outside Advance Date, Lender may, in its sole and absolute discretion, make Advances under the Loan to Borrower, in the maximum aggregate amount not to exceed the Loan Amount.  Notwithstanding anything to the contrary contained herein or in any of the other Loan Documents, Lender shall have no obligation to make any Advances under the Loan and all Advances are subject to Lender's approval, in its sole and absolute discretion.

2.2    Disbursements; Purpose.  The Loan shall be disbursed to or for the benefit of Borrower in multiple advances (each an "**Advance**" and collectively, "**Advances**") upon satisfaction of the conditions precedent set forth in Article 4 of this Agreement.  The Loan proceeds shall be disbursed and used solely for the purpose of financing Eligible Properties to be acquired by Borrower or which have been recently acquired by Borrower, and in the case of an Advance for a Renovation Property to also fund the Renovation Reserve for such Renovation Property as provided in Section 2.9.  It is understood that Lender does not intend to make, nor does Borrower expect to receive, an Advance after the Outside Advance Date.

2.3    Borrowing and Reborrowing.  Advances shall be on a revolving basis.  Advances repaid may be re-borrowed subject to the terms and the conditions herein.  Notwithstanding the fact that the outstanding principal amount of the Loan may be zero from time to time, the Loan Documents shall remain in full force and effect until the Outside Advance Date has occurred and all of the Obligations have been paid and performed in full.

2.4    Evidence of Indebtedness.  Lender shall maintain in accordance with its usual practice an account or accounts evidencing the Indebtedness of the Borrower to Lender, including amounts of principal and interest payable and paid to Lender from time to time hereunder.  The entries maintained in the accounts maintained pursuant to this Section 2.4 shall be prima facie evidence of the existence of the amounts of, and other information regarding, the Indebtedness therein recorded; provided, however, that the failure of Lender to maintain such accounts, or any error therein, shall not in any manner affect the obligation of Borrower to repay the Indebtedness and other Obligations in accordance with the terms of this Agreement, the Note and the other Loan Documents.

2.5    Principal and Interest.

2.5.1    The Principal Indebtedness shall bear interest at the Interest Rate.

2.5.2    On each Monthly Payment Date through and including the Monthly Payment Date occurring immediately prior to the Maturity Date, Borrower shall pay to Lender a monthly payment of interest equal to the Monthly Debt Service Payment.

2.5.3    Principal advanced under the Note shall be due and payable, as follows: (a) each Advance, together with all accrued and unpaid interest thereon through the date of repayment plus the Advance Exit Fee (unless waived by Lender pursuant to this Agreement), shall be due and payable in full on the earlier to occur of (i) the date occurring two hundred seventy (270) days from the Advance Date of such Advance or (ii) the Maturity Date (each, an "**Advance Repayment Date**"), and (b) all remaining principal, accrued and unpaid interest to and including the date of payment, the Advance Exit Fee on each and every then outstanding Advance and all other amounts due under the Loan Documents shall be due and payable in full, on the Maturity Date.

2.5.4    Interest shall be computed on the Principal Indebtedness by multiplying the actual number of days elapsed in the period for which interest is being calculated by a daily rate based on the Interest Rate and a 360-day year.

2.5.5    For so long as any Event of Default is continuing, the Principal Indebtedness and all other portions of the Indebtedness, shall accrue interest at the Default Rate. Interest at the Default Rate shall be paid immediately upon demand, which demand may be made as frequently as Lender shall determine.

2.5.6    If any amount due under the Loan Documents is not paid on the date on which it is due, Borrower shall pay to Lender upon demand an amount equal to the lesser of (i) five percent (5.00%) of such unpaid sum or (ii) the maximum amount permitted by Legal Requirements in order to defray the expense incurred by Lender in handling and processing such delinquent payment and to compensate Lender for the loss of the use of such delinquent payment.

2.5.7    Except as otherwise specifically provided in this Agreement, all reductions of principal shall reduce the Allocated Loan Amounts of the Properties on a pro rata basis, except only that (i) prepayments of the Release Price for any Property released, (ii) prepayments of the Fully Condemned Property Prepayment Amount or the Casualty Prepayment Amount for any Property, (iii) prepayments of principal in order to cause a Property to comply with Section 2.6.1, and (iv) the application of any undisbursed Renovation Reserve Funds for any Property to the Principal Indebtedness pursuant to Section 2.9.7(a) shall in each case, reduce the Allocated Loan Amount for such Property until the same is zero, and then any excess of such principal shall reduce the Allocated Loan Amounts of the remaining Properties on a pro rata basis.

2.5.8    Except as otherwise specifically provided in this Agreement, all payments and prepayments under this Agreement and the Note shall be made to Lender not later than 1:00 p.m., New York City time, on the date when due and shall be made in lawful money of the United States of America by wire transfer in federal or other immediately available funds to the account specified from time to time by Lender. Any funds received by Lender after such time shall be deemed to have been paid on the next succeeding Business Day. Whenever any payment to be made under any Loan Document shall be stated to be due on a day that is not a Business Day, the due date thereof shall be deemed to be the immediately preceding Business Day.

2.5.9    Funds representing the proceeds of the Loan which are disbursed by Lender by wire transfer to or for the benefit of Borrower, for all purposes, shall be deemed outstanding and to have been received by Borrower as of the date of such wire transfer notwithstanding the fact that such funds may not at any time have been remitted from escrow or otherwise to Borrower or for its benefit. With regard to each Renovation Property, that portion of the Advance comprising Renovation Reserve Funds shall also be deemed advanced and outstanding as of the date of such wire transfer notwithstanding that the Renovation Reserve Funds are deposited into the Renovation Reserve for such Renovation Property, to be held and disbursed in accordance with Section 2.9. Lender may submit monthly billings reflecting the amount of the monthly payments due. Neither the failure of Lender to submit a billing nor any error in any such billing shall excuse Borrower from the obligation to make full payment of all Borrower's payment obligations when due. Lender may record the date and amount of all Advances and all payments of principal, interest and other amounts hereunder in the records Lender maintains with respect thereto. Lender's books and records showing the account between Lender and Borrower shall be admissible in evidence in any action or proceeding and shall constitute prima facie proof of the items therein set forth, absent manifest error.

2.5.10    Notwithstanding anything to the contrary contained herein, during the continuance of an Event of Default amounts received by Lender in respect of the Indebtedness may be applied by Lender

toward interest, principal and other components of the Indebtedness or to other Obligations in such order, priority and proportion as Lender shall determine, in its sole and absolute discretion.

2.5.11   All payments made by Borrower under the Loan Documents shall be made irrespective of, and without any deduction for, any offsets, counterclaims or defenses, including without limitation in respect of any undertakings or obligations in connection with the making of additional Advances. Borrower waives the right to assert a counterclaim, other than a mandatory or compulsory counterclaim, in any action or proceeding brought against it by Lender arising out of or in any way connected with the Loan Documents or the Indebtedness. Any assignee of Lender's interest in the Loan, or any portion thereof, shall take the same free and clear of all offsets, counterclaims or defenses against the assigning Lender.

2.5.12   If Borrower is required to make any prepayment under Section 6.2.3 as a result of a Condemnation, on the next occurring Monthly Payment Date following the date on which the applicable Award is paid to Lender, Lender shall apply the Loss Proceeds thereof toward the prepayment of the Indebtedness in the amount required by Section 6.2.3 and Borrower shall prepay the Indebtedness in the amount, if any, required by Section 6.2.3.

2.5.13   If Borrower is required to make any prepayment under Section 6.2.2 as a result of a Casualty, on the next occurring Monthly Payment Date following the date on which the applicable Insurance Proceeds are paid to Lender, Lender shall apply the Loss Proceeds thereof toward the prepayment of the Indebtedness in the amount required by Section 6.2.2 and Borrower shall prepay the Indebtedness in the amount, if any, required by Section 6.2.2.

2.6      Loan-to-Value Requirement; Mandatory Principal Payments; Principal Prepayment.

2.6.1   Notwithstanding anything to the contrary contained herein, if any Advance made hereunder remains outstanding and is not repaid in full within one hundred eighty (180) days after the Advance Date of such Advance, then Lender shall have the right at its election at any time thereafter to determine, at Borrower's sole expense, the then-current Appraised Value of each Property that was the subject of such outstanding Advance. In the event the Allocated Loan Amount of any such Property is greater than sixty-five percent (65%) of the then-current Appraised Value of such Property (or seventy-five percent (75%) of the then current Appraised Value of such Property, if the Property is a Renovation Property), in each case as determined by Lender, then within ten (10) Business Days following receipt of written notice from Lender, Borrower shall pay to Lender in immediately available funds an amount sufficient to result in an Allocated Loan Amount for such Property equal to sixty-five percent (65%) of such then-current Appraised Value (or seventy-five percent (75%) of such then current Appraised Value, if the Property is a Renovation Property) (which payment shall be applied to the Principal Indebtedness).

2.6.2   Prior to the Maturity Date so long as no Event of Default has occurred upon not less than ten (10) Business Days prior written notice, Borrower shall have the right, without penalty or premium, to pay in whole but not in part, the total Principal Indebtedness, provided that such prepayment is accompanied by payment of all interest accrued and unpaid through the date of prepayment and any other sums due and owing under the Loan Documents, and provided further that partial prepayments of the Principal Indebtedness are permitted, without premium or penalty, in connection with the payment of the Release Price for the release of a Property in accordance with the terms and conditions of Article 11 and any payments made pursuant to Section 2.6.1.

2.7      Increased Costs.  If as a result of any Regulatory Change or compliance of Lender therewith, the basis of taxation to Lender or its Affiliate of payments in respect of a Loan is changed or Lender or its Affiliate becomes subject to any increased cost, reduction in income or additional expense in

respect of the Loan Documents, including, without limitation (i) any Indemnified Tax (without duplication of payment of Indemnified Taxes under Section 2.8 or (ii) any reserve, special deposit or similar requirements relating to any extensions of credit or other assets of, or any deposits with or other liabilities (such increase in cost, reduction in income or additional expense being herein called "**Increased Costs**"), then Borrower shall upon demand promptly pay to Lender such Increased Costs to the extent that Lender reasonably determines that such Increased Costs are allocable to the Loan.

      2.8    Taxes. Any payments by or on account of any obligation of Borrower under any Loan Document shall be made without deduction or withholding for any Tax; provided, however, that if Legal Requirements require deduction or withholding of a Tax, then Borrower shall deduct or withhold and pay such Tax to the relevant Governmental Authority in accordance with Legal Requirements, and, if such Tax is an Indemnified Tax, then the sum payable by Borrower shall be increased so that after such deduction or withholding (including deductions or withholdings applicable to additional amounts payable) Lender receives an amount equal to the sum it would have received had no such deduction or withholding been made. Borrower shall promptly indemnify Lender for all Indemnified Taxes (including Taxes in respect of additional amounts payable) and related expenses, and such indemnity obligation shall survive any assignment or replacement of Lender or satisfaction or discharge of other obligations under the Loan Documents. Borrower shall promptly deliver evidence reasonably satisfactory to Lender of any payments made pursuant to this Section 2.8. Borrower shall pay (i) to the applicable Governmental Authority as and when due all Indemnified Taxes, in accordance with the applicable Legal Requirements, and (ii) to Lender, within ten (10) days after written request by Lender, all other Indemnified Taxes. Promptly following written request therefor by Lender, Borrower shall deliver to Lender evidence, reasonably satisfactory to Lender, of payment of Indemnified Taxes.

      2.9    Renovation Reserve.

      2.9.1    Renovation Reserve. For each Renovation Property, Lender shall hold back from the Advance for such Renovation Property, an amount equal to the Renovation Reserve Funds for such Renovation Property, as determined by Lender and set forth in the Request for Advance approved by Lender for such Renovation Property which Renovation Reserve Funds shall be deposited into a renovation reserve established by Lender for such Renovation Property (each a "**Renovation Reserve**"). For the avoidance of doubt, the portion of the Advance Amount comprising Renovation Reserve Funds will accrue interest at the Interest Rate from and after the Advance Date of the Advance notwithstanding such funds have been deposited in a Renovation Reserve and whether or not disbursed therefrom.

      2.9.2    Renovation Reserve Disbursements. For each Renovation Property, each of the promises, covenants, representations and warranties Borrower makes in this Agreement and each Request for Advance and each Disbursement Request shall be considered made again as of the time (i) Lender, or Lender's Consultant, receives any request from Borrower and Contractor for a disbursement from the Renovation Reserve ("**Disbursement**"), in form and substance required by Lender ("**Disbursement Request**"); or (ii) Borrower endorses any Loan proceeds check to Contractor or a Supplier. Disbursements from the Renovation Reserve established for such Renovation Property will be made from time to time as the Renovation Work progresses, and, if required by Lender or Lender's Consultant, in accordance with a disbursement schedule approved by Lender and Lender's Consultant, provided no Disbursement will be made unless all the following conditions are satisfied as determined by Lender and Lender's Consultant:

      (a)    No Default or Event of Default shall exist as of the date of each Disbursement Request or on the date a Disbursement from the Renovation Reserve is to be made;

      (b)    All of the Loan Documents shall be in full force and effect in accordance with their respective provisions;

        (c)      No material violation of any Legal Requirements shall have occurred or be continuing;

        (d)      The Plans are satisfactory and approved by Lender and Lender's Consultant, in its sole and absolute discretion, and by all Government Authorities having jurisdiction over the applicable Renovation Property and the Renovation Work. To the extent not previously delivered to Lender's Consultant, copies of all entitlements, contracts and subcontracts for construction of the Renovation Work has been delivered and reviewed by Lender.

        (e)      A copy of the then current Change Order log and any pending Change Order log has been delivered to Lender's Consultant.

        (f)      Certificate of insurance evidencing the insurance coverage that Borrower is required to maintain for the applicable Renovation Property pursuant to Section 6.2 and Schedule 6.2 has been delivered to Lender.

        (g)      If required by Lender, a date down report from the Title Company issuing the Lender's Title Insurance Policy and/or an endorsement to the Lender's Title Insurance Policy covering the date of disbursement and showing the Security Instrument as a first, prior and paramount lien on the applicable Renovation Property, without any exception for mechanic's liens and subject only to the exceptions set forth in Lender's Title Insurance Policy and real estate taxes that have accrued but are not yet due and payable and particularly that nothing has intervened to affect the validity or priority of the Security Instrument. All title fees and charges incurred in connection with the issuance of any such date down report or title endorsement to the Lender's Title Insurance Policy shall be the sole responsibility of Borrower.

        (h)      The Renovation Work for which a Disbursement is requested has been completed in a good and workmanlike manner, and complies with the Construction Documents, the Permits, and all Legal Requirements, and all conditions of Section 2.9.3(i)-(v) have been completed, in each case as determined by Lender or by Lender's Consultant, as applicable, in its sole and absolute discretion.

        (i)      Borrower has provided evidence satisfactory to Lender from time to time, that Borrower has sufficient funds immediately available at its disposal to pay for the portion of the total cost of the Renovations not being funded by Lender hereunder and pursuant to the Loan Documents and the Renovation Reserve for the applicable Renovation Property shall be In Balance.

        (j)      Borrower shall deliver to Lender's Consultant such additional due diligence information, documentation and certificates with respect to the Renovation Work and the Renovation Property as Lender or Lender's Consultant may reasonably request.

        2.9.3   Disbursement Request.

        (a)      For each Renovation Property, Contractor will deliver to Lender's Consultant (i) a Disbursement Request, properly completed, and signed by Borrower and Contractor; (ii) the invoices, bill of sale, statements, receipted vouchers and any other supporting document for the Renovation Work; (iii) evidence of payment of all invoices and bills for which prior Disbursements were made; (iv) unconditional construction lien waivers from Contractor and from Suppliers for all Renovation Work covered by the Disbursement Request in a form approved by Lender or Lender's Consultant; and (v) all other required information described in the Disbursement Request.

(b)     Lender will rely on Lender's Consultant and third-party draw inspections for review of the Disbursement Request and on the invoices and lien waivers submitted by Contractor and/or Borrower.

(c)     The funds disbursed pursuant to the Disbursement Request will be used solely to pay for the Renovation Work described in the Disbursement Request in accordance with this Agreement, and for no other purpose.

(d)     For each Renovation Property, no Disbursement Request may be submitted by Borrower after the date that is forty-five (45) days prior to the Advance Repayment Date of the Advance for the financing of such Renovation Property and under no circumstances shall any Disbursements be made from the Renovation Reserve for such Renovation Property on or after the date that is ten (10) Business Days prior to such Advance Repayment Date.

2.9.4     <u>Retention; Final Disbursement</u>. Upon Lender's approval of the requested Disbursement and satisfaction of the conditions to Disbursement set forth in this Agreement, including <u>Section 2.9.2</u> and <u>Section 2.9.3</u> hereof, Lender shall disburse 90% of the approved Disbursement. Upon Completion of the Renovation Work for a Renovation Property, the 10% retainage will be released (unless waived by Lender with respect to any particular retainage) (i) after the relevant state specific statutory lien period has lapsed and (ii) upon Lender's confirmation that such Renovation Property is free from any mechanics' liens by contractors, subcontractors, material suppliers, or other persons who have furnished or claim to have furnished labor, services, or materials in connection with the Renovation Work for such Renovation Property. It is Borrower's responsibility to ensure that all contractors, subcontractors, material suppliers, or other persons who have furnished labor, services, or materials have been paid in a timely manner to avoid any such liens.

2.9.5     <u>Recipient of Disbursements</u>. Lender may, at its election, disburse, and Borrower hereby authorizes Lender to disburse, the Renovation Reserve Funds directly to any contractor or subcontractor employed by Borrower for the Renovation Work, or jointly to Borrower and the contractor or subcontractor who performed the Renovation Work. Borrower hereby releases Lender from any liability regarding the disbursement of the Renovation Reserve Funds or any portion thereof to any third party or the application of the Renovation Reserve Funds by such third party so long as the third party is the authorized recipient named in the foregoing sentence.

2.9.6     <u>Default</u>. While an Event of Default exists, Lender shall have no obligation to disburse any funds from any Renovation Reserve, and while an Event of Default exists, Lender shall be entitled, without notice to Borrower or any other Person, to apply any funds in any Renovation Reserve to the Indebtedness, in such order, proportion and priority as Lender may determine in its sole and absolute discretion. Lender's right to so apply funds from any Renovation Reserve shall be in addition to all other rights and remedies provided to Lender under this Agreement and the other Loan Documents, and at law or in equity.

2.9.7     <u>General Provisions Regarding Renovation Reserves</u>.

(a)     Any Renovation Reserve Funds and any Reserve Deficiency Funds that remain undisbursed from a Renovation Reserve (less any funds that may be required, in Lender's estimate, to fund any pending Disbursement Request from such Renovation Reserve) shall be applied by Lender to the Principal Indebtedness as of the date such Advance is repaid in full whether on or before the Advance Repayment Date for such Advance or the date such Advance is repaid in connection with the Release of such Renovation Property in accordance with the terms and conditions of <u>Article 11</u>.

(b)    All funds deposited in a Renovation Reserve shall be held by Lender, without interest, and may be commingled with Lender's general funds. Borrower shall not be entitled to any earnings or interest on funds deposited into any Renovation Reserve.

(c)    The insufficiency of funds in the Restoration Reserve for a particular Renovation Property shall not absolve Borrower of the obligation to cause the Completion of the Renovation Work for such Renovation Property in the time and manner required under this Agreement, and such obligations shall be separate and independent, and not conditioned on any event or circumstance whatsoever. For the avoidance of doubt, the Renovation Reserve Funds available for a particular Renovation Property can only be used to pay for completed Restoration Work for that particular Restoration Property and under no circumstances may any portion of such Renovation Reserve Funds be used to pay for Restoration Work on another Property.

(d)    Borrower acknowledges and agrees that it solely shall be, and shall at all times remain, liable to Lender for all fees, charges, costs and expenses in connection with each Renovation Reserve, this Agreement and the enforcement hereof, including, without limitation, any commercially reasonable monthly or annual fees or charges as may be assessed by Lender or Lender's Consultant in connection with the administration of each Renovation Reserve and the Reserve Collateral and the reasonable fees and expenses of legal counsel to Lender as needed or advisable, in Lender's sole opinion, to enforce, protect or preserve the rights and remedies of Lender under this Agreement.

(e)    Borrower shall indemnify Lender and hold Lender harmless from and against any and all actions, suits, claims, demands, liabilities, losses, damages, obligations and costs and expenses (including litigation costs and reasonable attorneys' fees and expenses) arising from or in any way connected with the Reserve Collateral or the performance of the obligations for which the Renovation Reserve Funds were established, except to the extent arising solely from the gross negligence or willful misconduct of Lender. Borrower shall assign to Lender all rights and claims Borrower may have against all Persons supplying labor, materials or other services which are to be paid from or secured by the Reserve Collateral; provided, however, that Lender may not pursue any such right or claim unless an Event of Default has occurred and remains uncured.

2.9.8    Security Interest.

(a)    As additional security for the Loan, Borrower hereby grants to Lender a first-priority security interest in each Renovation Reserve established from time to time for a Renovation Property, and all Renovation Reserve Funds and any other amounts at any time contained therein, including any Reserve Deficiency Funds deposited from time to time in such Renovation Reserve, and the proceeds thereof (collectively, the "**Reserve Collateral**") and will take all actions necessary to maintain in favor of Lender a perfected first priority security interest therein, including executing and delivering to Lender deposit account control agreements, and hereby irrevocably authorizes Lender at any time and from time to time to prepare and file in the appropriate jurisdiction an "all assets" UCC-1 financing statement, together with any amendments thereto, and continuations thereof deemed advisable by Lender and without any signature by, or further authorization from, Borrower. In addition to the rights and remedies herein set forth, Lender shall have all of the rights and remedies with respect to the funds in each Renovation Reserve available to a secured party at law or in equity, including, without limitation, the rights of a secured party under the Uniform Commercial Code, as if such rights and remedies were fully set forth herein.

(b)    This Agreement shall constitute a security agreement for purposes of the Uniform Commercial Code and other applicable law. Borrower acknowledges and agrees that the funds in each Restoration Reserve are subject to the sole dominion, control and discretion of Lender, its authorized agents or designees, subject to the terms hereof, and neither Borrower nor any other Loan Party shall have

any right of withdrawal with respect to any Renovation Reserve Funds or other monies in a Renovation Reserve. The Renovation Reserve Funds and any other monies in a Renovation Reserve shall not constitute trust funds and may be commingled with other monies held by Lender.

(c) Borrower shall not, without obtaining the prior written consent of Lender, further pledge, assign or grant any security interest in the Reserve Collateral or permit any lien to attach thereto, or any levy to be made thereon, or any UCC-1 financing statements, except those naming Lender as the secured party, to be filed with respect thereto. Lender shall have the right to file a financing statement or statements under the UCC in connection with any of the Reserve Collateral with respect thereto in the form required to properly perfect Lender's security interest therein. Borrower agrees that at any time and from time to time, at the expense of Borrower, Borrower will promptly execute and deliver all further instruments and documents, and take all further action, that may be reasonably necessary or desirable, or that Lender may reasonably request, in order to perfect and protect any security interest granted or purported to be granted hereby or to enable Lender to exercise and enforce its rights and remedies hereunder with respect to any Reserve Collateral.

## ARTICLE 3
## CONDITIONS PRECEDENT TO
## THE EFFECTIVENESS OF THIS AGREEMENT

3.1 The effectiveness of this Agreement and the funding of the initial Advance hereunder is subject to the satisfaction of the condition precedent that Lender shall have received from Borrower all of the following items, each of which shall be satisfactory in form and substance to Lender and its counsel, and the following fees and reserve deposits, if applicable:

(a) this Agreement, duly completed, executed and delivered by each of the parties hereto (including any exhibits hereto);

(b) the Note, duly executed and delivered by Borrower;

(c) the Guaranty, duly executed and delivered by Guarantor;

(d) the Environmental Indemnity, duly executed and delivered by Borrower;

(e) the Financing Statements, as required by Lender;

(f) if required by Lender, opinions of Borrower's outside counsel reasonably acceptable to Lender (including, but not limited to, those relating to enforceability and corporate matters);

(g) good standing certificate from the jurisdiction of formation, and certified copies of the Organizational Documents) of Borrower, Guarantor and any Interest Owners, if applicable, and of all corporate or other authority for Borrower, Guarantor and each Interest Owner with respect to the execution, delivery and performance of the Loan Documents and each other document to be delivered by Borrower, Guarantor and any Interest Owner from time to time in connection herewith, and a certified copy of Borrower's registration to do business and a current good standing certificate from each Approved State;

(h) payment to Lender all costs and expenses, including attorney's fees and costs, incurred by Lender (or any of its Affiliates) in connection with the origination of the Loan less any expense deposit previously paid to Lender by Borrower;

(i)     financial statements of Borrower and Guarantor in form and substance satisfactory to Lender, certified by Borrower and Guarantor, respectively, and in form and substance satisfactory to Lender; and

(j)     all such other and further documents and documentation as Lender in its sole and absolute discretion shall require.

## ARTICLE 4
## CONDITIONS PRECEDENT TO ADVANCES

4.1     Conditions Precedent to Each Advance.  In addition to the conditions set forth in Section 3.1 above and subject to Section 2.1 hereof, each Advance (including the initial Advance hereunder) is subject to the satisfaction, in Lender's sole and absolute judgment, of the following further conditions precedent, both immediately prior to funding such Advance and also after giving effect to the consummation thereof:

4.1.1   Lender shall have received and approved a Request for Advance duly executed by Borrower for such Advance, in form and substance acceptable to Lender and if applicable, a Renovation Certificate duly executed by Borrower, in form and substance acceptable to Lender, in its sole and absolute discretion;

4.1.2   Lender shall have received a fully executed copy of Lender's title and escrow instructions ("**Lender's Closing Instructions**"), duly executed by Borrower, Title Company and the escrow agent, if applicable, in form and substance acceptable to Lender, and all conditions precedent set forth in such instructions shall have been satisfied, to Lender's satisfaction;

4.1.3   Borrower shall have executed and delivered to Lender a Security Instrument in favor of Lender, creating a valid first priority lien against each Property which is the subject of the Advance, subject only to the Permitted Exceptions, in form and substance acceptable to Lender, in its sole and absolute discretion;

4.1.4   Borrower shall have executed and delivered to Lender a copy of Lender's settlement statement for the Advance prepared or approved in writing by Lender setting forth Lender's fees and expenses to be paid by Borrower in connection with the Advance ("**Lender's Settlement Statement**") and which may, at Lender's election, be included on the Third Party Settlement Statement approved in writing by Lender and Borrower;

4.1.5   Lender shall have received payment from Borrower of the Advance Fee for such Advance;

4.1.6   Lender shall have received and approved a fully executed copy of the Third Party Purchase Agreement and Third Party Settlement Statement for each Property that is the subject of the Request for Advance together with such further documentation and/or information concerning the Third Party Sale and/or the Property as may be requested by Lender to complete Lender's evaluation and underwriting of the requested Advance and the Property;

4.1.7   For any Property that is owned by Borrower at the time the Request for Advance is submitted to Lender, (a) Lender shall have received and approved of a recorded copy of the deed of conveyance showing title to the Property vested exactly in Borrower's name, and (b) if acquired by

Borrower pursuant to a foreclosure sale, Lender shall have also received evidence satisfactory to Lender of the winning bid amount paid by Borrower and evidence that such foreclosure sale was properly conducted in accordance with applicable law and is not subject to rescission or challenge;

4.1.8    Each Property that is the subject of the Advance must be an Eligible Property approved by Lender, in its sole and absolute discretion and Lender shall have approved of the "as is" Appraised Value of such Property in its sole and absolute discretion;

4.1.9    For each Property that is the subject of a Request for Advance, Lender shall have received a Title Insurance Commitment together with copies of all of the underlying title exception documents shown in the Title Insurance Commitment, all of which must be acceptable to Lender, in its sole and absolute discretion;

4.1.10   Title Company shall be unconditionally committed to issue the Title Insurance Policy for each Property that is the subject of the Advance;

4.1.11   No Event of Default or Default under any of the Loan Documents then exists, and no Event of Default or Default will occur under any of the Loan Documents as a result of the requested Advance;

4.1.12   The representations and warranties of Borrower in the Loan Documents shall be true and correct as of the date of the Request for Advance and as of the Advance Date;

4.1.13   Lender shall have received satisfactory evidence that there has been no material adverse change in (or newly discovered information which could adversely impact), the ownership, operation, performance, or condition (financial, physical or otherwise) of, or Lender's security interest in, any of the Properties securing the Loan including each Property that is the subject of the pending Advance, Borrower, any Guarantor, any other Restricted Party or any key principal or owner of any such Person, between the date hereof and the date of the Advance;

4.1.14   Borrower shall have delivered to Lender certificates of insurance or other evidence in form and substance satisfactory to Lender that all insurance required under this Agreement is or will be in full force and effect as of the Advance Date with respect to each Property secured or to be secured by a Security Instrument, together with evidence that the premiums for such insurance have been paid, with respect to each such Property;

4.1.15   Borrower shall have delivered evidence to Lender and the Title Company that all accrued and unpaid Taxes and other Impositions levied or assessed against each Property that is the subject of the Advance request have been paid in full;

4.1.16   Borrower shall pay all of Lender's costs and expenses (including, without limitation, reasonable attorney's fees and Lender's Appraisal Costs) associated with the proposed Advance whether or not the Advance is ultimately made and all costs and fees of the Title Company and all amounts including the purchase price as required pursuant to the Third Party Settlement Statement and/or Lender's Settlement Statement, as applicable;

4.1.17   Borrower shall have delivered to Lender and Lender shall have approved:

(A)    All agreements and inspection and test reports made by or for Borrower for each Property that is the subject of the Advance Request; and

(B)   All authorizations, permits, approvals, consents or licenses, including building permits, annexation agreements, plot plan approvals, subdivision approvals, environmental approvals (including an environmental impact report or negative declarations if required under applicable law), sewer and water permits and zoning and land use entitlements, required by Lender;

4.1.18  At Lender's election, Lender, and/or Lender's Consultant, shall be satisfied with the results of an inspection of each Property that is the subject of the Advance, including without limitation, for the purpose of Lender's approval of the Property and of the amount and nature of any Approved Renovation Costs; and

4.1.19  Lender shall have received and approved such other certificates, opinions, instructions, updated financial information concerning Borrower and/or Guarantor, documents and instruments as Lender may request.

4.1.20  For any Property that is a Renovation Property, the following additional conditions shall be satisfied, in Lender's sole and absolute discretion:

(a)   Lender shall have received and approved of (i) the Projected Value of the Renovation Property;(ii) a Statement of Proposed Renovation Work; and (iii) a Renovation Budget.

(b)   Lender shall have determined the amount of the Initial Disbursement and the amount of the Renovation Reserve Funds to be deposited into the Renovation Reserve for such Renovation Property.

4.2  Disbursements; Advance Amount; Minimum and Maximum Advance Amounts.

4.2.1   Within five (5) Business Days following satisfaction of each of the conditions precedent to an Advance set forth in Section 4.1, Lender shall disburse the Advance Amount (net of the Advance Fee payable to Lender in connection with such Advance and any and all other fees and expenses to be paid or reimbursed to Lender as set forth in Lender's Settlement Statement for such Advance and if the Property is a Renovation Property, net any Renovation Reserve Funds to be deposited into the Renovation Reserve for such Renovation Property) to the Title Company for disbursement in accordance with the terms of Lender's Closing Instructions and this Agreement.

4.2.2   Subject to the limitations set forth in this Section 4.2, each Advance under the Loan for a Property (other than a Renovation Property) shall be in an amount equal to the lesser of (a) sixty-five percent (65%) of the Appraised Value of the Property, as determined by Lender in its sole discretion and (b) ninety percent (90%) of the sum of (i) the Third Party Purchase Price paid by Borrower for such Property plus (ii) an amount equal to any Approved Renovation Costs.

4.2.3   Subject to the limitations set forth in this Section 4.2, each Advance under the Loan for a Renovation Property shall be in a maximum amount ("**Maximum Renovation Advance Amount**") equal to the lesser of: (a) sixty-five percent (65%) of the Projected Value of the Renovation Property and (b) ninety percent (90%) of the sum of (i) the Third Party Purchase Price paid by Borrower for such Renovation Property plus (ii) an amount equal to the Budgeted Renovation Costs for such Renovation Property.  Each Advance for a Renovation Property will be disbursed as follows: (A) the lesser of (1) seventy-five percent (75%) of the "as is" Appraised Value of the Renovation Property, as determined by Lender in its sole discretion, and (2) seventy-five percent (75%) of the Third Party Purchase Price paid by Borrower for such Renovation Property ("**Initial Disbursement**") will be disbursed to or for the benefit of Borrower to acquire an Eligible Property or finance an Eligible Property already owned by Borrower,

and (B) the remaining portion of the Advance will be allocated to the Renovation Reserve Funds to be deposited into a Renovation Reserve for such Renovation Property in amount equal to the Maximum Renovation Advance Amount less the Initial Disbursement, subject to the limitations set forth in Section 4.2.6 below.

4.2.4    The maximum Advance Amount for any one Property is the lesser of (a) $2,000,000.00 and (b) fifty percent (50%) of the Loan Amount.

4.2.5    The minimum Advance Amount for any one Property is $35,000.00 unless the Property is a Renovation Property in which case, the minimum Advance Amount for any one Renovation Property is $100,000.00.

4.2.6    The maximum amount of the Renovation Reserve Funds to be withheld from the Advance Amount for any one Renovation Property shall not in any case exceed the lesser of (a) 100% of the Third Party Purchase Price paid by Borrower for such Renovation Property or (b) the Budgeted Renovation Costs for such Renovation Property;

4.2.7    The minimum Advance Amount that may be advanced at any one time pursuant to each Request for Advance is $100,000.00.

4.2.8    The sum of (A) the aggregate principal amount of all prior Advances, (B) the requested Advance, and (C) any other pending requested Advance shall not in any event exceed an amount equal to the Loan Amount.

## ARTICLE 5
## REPRESENTATIONS AND WARRANTIES

As a material inducement to Lender to execute this Agreement and to make Advances of the proceeds of the Loan and Disbursements of Renovation Reserve Funds from each Renovation Reserve established under this Agreement, Borrower represents and warrants to Lender that the statements set forth in this Article 5 are true, correct and complete as of the date hereof, as of the Effective Date, as of the date of each Advance, as of the date of each Disbursement from a Renovation Reserve, and as of each date on which representations and warranties are renewed pursuant to this Agreement and the other Loan Documents:

5.1    Organization, Powers and Good Standing.

5.1.1    Organization and Powers of Borrower.  Borrower is duly organized and validly existing under the laws of the jurisdiction of its organization and has all requisite power, authority, rights and franchises to own and operate its properties, to carry on its businesses as now conducted and as proposed to be conducted, and to enter into and perform this Agreement and the other Loan Documents to which it is a party or signatory.  The sole business of Borrower is the acquisition, development, management, leasing, ownership, maintenance and operation of Properties and activities incidental thereto.

5.1.2    Good Standing.  Borrower has made all filings and is in good standing in the state of its formation and in each other jurisdiction in which the character of the property it owns or the nature of the business it transacts makes such filings necessary or where the failure to make such filings could have a materially adverse effect on the business, operations, assets or condition (financial or otherwise) of Borrower.

5.1.3    Non-Foreign Status.    Borrower is not a "foreign corporation," "foreign partnership," "foreign trust," or "foreign estate," as those terms are defined in the Internal Revenue Code and the regulations promulgated thereunder.

5.2    Authorization of Loan Documents.

5.2.1    Authorization.  The execution, delivery and performance of the Loan Documents to which Borrower is a signatory are within Borrower's powers and have been duly authorized by all necessary action of Borrower.

5.2.2    No Conflict.  The execution, delivery and performance of the Loan Documents by Borrower will not:  (i) violate (A) the Organizational Documents of any Loan Party, (B) any legal requirement affecting Borrower or any of its properties or assets or (C) any agreement to which Borrower is bound or to which it is a party; or (ii) result in or require the creation (except as provided in or contemplated by this Agreement) of any lien upon any of its properties or assets.

5.2.3    Binding Obligations.  This Agreement and the other Loan Documents executed by Borrower have been duly executed by Borrower and are the legal, valid and binding obligations of Borrower, enforceable against Borrower in accordance with their terms, except as enforceability may be limited by bankruptcy, insolvency, reorganization, moratorium or similar laws affecting creditors' rights generally and by general principles of equity.

5.2.4    Agreements.  Borrower is not a party to any agreement or instrument or subject to any restriction which might reasonably be expected to have a Material Adverse Effect or an Individual Material Adverse Effect.  Borrower is not in default with respect to any order or decree of any court or any order, regulation or demand of any Governmental Authority, which default might have consequences that might reasonably be expected to have a Material Adverse Effect or an Individual Material Adverse Effect. Borrower is not in default in any material respect in the performance, observance or fulfillment of any of the obligations, covenants or conditions contained in any Permitted Exception or any other agreement or instrument to which Borrower is a party or by which Borrower or any Property is bound.

5.3    Litigation; Adverse Facts; Bankruptcy.  There is no action, suit, investigation, proceeding or arbitration at law or in equity or before or by any foreign or domestic court or other governmental entity (a "**Legal Action**"), pending or, to Borrower's knowledge, threatened (a) against or affecting any Property, Borrower or any other Loan Party or any of their respective properties or assets, or (b) questioning the validity or the enforceability of this Agreement or any of the other Loan Documents or affecting any Property. Neither Borrower nor any other Loan Party is contemplating either the filing of a petition by it under any state or federal bankruptcy or insolvency law or the liquidation of all or a major portion of Borrower's assets or properties (a "**Bankruptcy Proceeding**"), and Borrower has no knowledge of any Person contemplating the filing of any such petition against Borrower or such constituent Persons.  In addition, neither Borrower nor any other Loan Party, nor any principal or Affiliate of any Loan Party has been a party to, or the subject of a Bankruptcy Proceeding for the past ten (10) years.

5.4    Title to Properties; Liens.  Borrower has good, sufficient and legal title to all properties and assets reflected in its most recent balance sheet delivered to Lender, except for assets disposed of in the ordinary course of business since the date of such balance sheet.

5.5    Disclosure.  There is no fact known to Borrower that (and, to Borrower's knowledge, no event has occurred which, upon the giving of notice or passage of time or both) would materially and adversely affects any Property or the business, operations, properties, assets or condition (financial or

otherwise) of Borrower or any Loan Party which has not been disclosed in this Agreement or in other documents, certificates and written statements furnished to Lender in connection herewith.

5.6     Payment of Taxes. Borrower has filed all tax returns (federal, state, local and foreign) required to be filed by it (including interest and penalties). Borrower is not liable for Taxes payable by any other Person. All transfer Taxes, deed stamps, intangible Taxes and other amounts required to be paid under applicable Legal Requirements in connection with the transfer of each Property to Borrower have been paid. All Taxes and governmental assessments due and owing in respect of each Property have been paid and none of the same is delinquent.

5.7     Use of Loan Proceeds. The Loan is solely for the business purpose of Borrower or for distribution to Borrower's equity holders in accordance with the Loan Documents and Legal Requirements and no portion thereof shall be used for personal, consumer, household purposes for the purpose of purchasing or acquiring any "margin stock" within the meaning of Regulations T, U or X of the Board of Governors of the Federal Reserve System or for any other purpose.

5.8     Government Regulations. Borrower is not subject to regulation under the Investment Company Act of 1940, the Federal Power Act, the Public Utility Holding Company Act of 1935, the Interstate Commerce Act or to any federal or state statute or regulation limiting its ability in incur indebtedness for money borrowed.

5.9     Financial Condition. The financial statements, operating statements and all financial data previously delivered to Lender in connection with the Loan or any of the Properties or relating to Borrower are true, correct and complete in all material respects. Such financial statements, operating statements and other financial data comply with the requirements of Section 6.4 and fairly present the financial position of the Persons who are the subject thereof as of the date thereof; and no materially adverse change has occurred in the financial conditions reflected therein since the respective dates thereof.

5.10     Disclosures to Loan Parties. Before each Loan Party became obligated in connection with the Loan, Borrower made full disclosure to each Loan Party regarding Borrower's financial condition and business operations, and all other circumstances bearing upon Borrower's ability to pay and perform its obligations under the Loan Documents.

5.11     Insurance. Borrower has obtained insurance policies reflecting the insurance coverages, amounts and other requirements set forth in this Agreement. All premiums on such insurance policies required to be paid as of the Effective Date and on each Advance Date have been paid for the current policy period. No Person, including Borrower, has done, by act or omission, anything that would impair the coverage of any such policy.

5.12     Solvency. Borrower and each other Loan Party is Solvent as of the Effective Date and as of each date on which this representation and warranty is renewed pursuant to this Agreement and the other Loan Documents and will be Solvent after giving effect to the transactions contemplated by the Loan Documents, including all Obligations incurred thereby, the security interests granted therein and the payment of all fees related thereto.

5.13     Representations Regarding the Properties. With respect to each Property, Borrower represents and warrants as follows:

5.13.1     Title to Property. Each Property is an Eligible Property. Borrower is the sole owner of and has good and marketable title to the fee interest in each Property, the Improvements and all

other real and personal property described in each Security Instrument, free from any lien or encumbrance of any kind whatsoever, excepting only the Permitted Exceptions.

5.13.2  Utilities and Access.  Telephone services, electric power, storm sewers, sanitary sewer, potable water facilities and all other utilities and services necessary for the construction, use, operation and maintenance of the Improvements are available to each Property, are adequate to serve the Improvements located on such Property, and are not subject to any conditions limiting the use of such utilities, other than normal charges to the utility supplier. All publicly dedicated, physically open and publicly maintained streets and easements necessary for the operation and maintenance of the Improvements are available to the boundaries of each Property.

5.13.3  Compliance with Legal Requirements and Property Documents.  Each Property, and the present and contemplated use, occupancy, operation and renovation thereof, are and will remain in full compliance with all Legal Requirements and all Property Documents and obligations created by private contracts.

5.13.4  No Condemnation.  No condemnation proceedings or moratorium is pending or, to Borrower's actual knowledge, threatened against any Property (or any portion thereof).

5.13.5  Leases and Rents.  Borrower represents and warrants with respect to each Property:

(a)  No Prior Assignment.  There are no prior assignments of the Leases or any portion of the Rents due and payable or to become due and payable which are presently outstanding.

(b)  Security Deposits.  Borrower is in compliance with all applicable Legal Requirements relating to all Security Deposits, if any.

(c)  Leases.  (i) Borrower is the sole owner of the entire lessor's interest in the Leases, if any; (ii) the Leases, if any, are and will remain subordinate to the lien of the Security Instrument securing such Property; (iii) none of the Rents have been collected for more than one (1) month in advance; (iv) there exists no offset or defense to the payment of any portion of the Rents; (v) no Lease contains an option to purchase, right of first refusal to purchase or any other similar provision; (vi) no Person has any possessory interest in, or right to occupy the Property, except under and pursuant to a Lease that is and shall remain subordinate to the lien of the Security Instrument securing such Property; and (vii) all leasing broker fees and commissions payable by Borrower with respect to the Lease(s) have been paid in full, in cash or other form of immediately available funds.

5.13.6  Permits; Certificates of Occupancy.  Except as previously disclosed to Lender in writing, Borrower has obtained all Permits necessary for the present and contemplated use and operation of each Property and Borrower, has obtained, or will have obtained prior to commencing any Renovation Work on a Renovation Property, all Permits necessary to commence and complete the Renovation Work for such Renovation Property. The uses being made of each Property are in conformity in all material respects with the certificate of occupancy and/or Permits for such Property and any other restrictions, covenants or conditions affecting such Property (including any homeowners association requirements). The certificate of occupancy for each Property does not permit the use of such Property for any purpose other than as a one to up to twenty unit single-family residential home or residential condominium. No Property is (i) zoned for, or being used for, any purpose other than a one to up to twenty unit single-family residential or residential condominium occupancy, (ii) an assisted living or similar facility, (iii) subject to any rent control, rent stabilization or similar Legal Requirements limiting, or placing conditions upon, the amount of rent that can be charged under a Lease or the ability of a landlord to decline the renewal or extension of a Lease.

5.13.7 <u>Property Documents</u>. The Property Documents are in full force and effect and neither Borrower nor any other party thereto is in material default thereunder. Borrower has delivered to Lender a true, correct and complete copy of all Property Documents.

5.13.8 <u>Personal Property</u>. Borrower is now and shall continue to be the sole owner of the personal property Collateral free from any adverse lien, security interest or adverse claim of any kind whatsoever, except for liens or security interests in favor of Lender.

5.13.9 <u>Entire Property; No Encroachments</u>. (a) all Improvements on each Property are included wholly within the boundaries and building restriction lines of such Property, (b) no improvements on adjoining properties (now or will) encroach upon any Property, so as to materially adversely affect the value, use or marketability of the applicable Property; and (c) all easements, licenses and other rights necessary or desirable in order to own and operate such Property have been granted and obtained and are in full force and effect.

5.13.10 <u>Separate Tax Parcels</u>. Each Property is comprised of one or more tax parcels that are separately identified from and assessed separately from any other real property.

5.13.11 <u>Assessments</u>. There are no pending or, to Borrower's knowledge, proposed special or other assessments (whether by any Governmental Authority or homeowners association or any similar association) for public improvements or otherwise affecting any of the Properties, nor are there any contemplated improvements to any of the Properties that may result in such special or other assessments. No extension of time for assessment or payment by Borrower of any federal, state or local tax is in effect. There are no delinquent Impositions outstanding with respect to any Property and there are no pending or, to Borrower's knowledge, proposed, special or other assessments for HOA improvements affecting any Property.

5.13.12 <u>No Joint Assessment</u>. Neither Borrower nor any of its Affiliates have suffered, permitted or initiated the joint assessment of any Property (i) with any other real property constituting a separate tax lot, or (ii) with any personal property, or any other procedure whereby the Lien of any Taxes that may be levied against such other real property or personal property shall be assessed or levied or charged to any of the Properties as a single Lien.

5.13.13 <u>Property Condition</u>. Except as expressly disclosed to Lender in writing prior to the applicable Advance Date, each Property, including all buildings, improvements, parking facilities, sidewalks, storm drainage systems, roofs, plumbing systems, HVAC systems, fire protection systems, electrical systems, equipment, elevators, exterior sidings and doors, landscaping, irrigation systems and all structural components, are in good condition, order and repair in all material respects; there exists no structural or other material defects or damages to any Property, whether latent or otherwise. Borrower has not received notice from any insurance company or bonding company of any defects or inadequacies in any Property, or any part thereof, which would adversely affect the insurability of the same or cause the imposition of extraordinary premiums or charges thereon or any termination or threatened termination of any policy of insurance or bond. The Improvements have suffered no material casualty or damage which has not been fully repaired and the cost thereof fully paid. No portion of the Improvements located on any Property is located in an area identified by the Secretary of Housing and Urban Development or the Federal Emergency Management Agency or any successor thereto as an area having special flood or seismic hazards, or, if now or hereafter located within any such area, Borrower has obtained and will maintain the applicable flood hazard and/or earthquake insurance prescribed herein or in the other Loan Documents.

5.14 <u>Federal Trade Embargos</u>. Each Restricted Party is in compliance with all Federal Trade Embargos in all material respects. No Embargoed Person owns any direct or indirect equity interest in

Borrower. No Tenant at any Property is identified on the OFAC List. Borrower has implemented procedures, and will consistently apply those procedures throughout the term of the Loan, to ensure that the foregoing representations and warranties remain true and correct with respect to each Tenant at each Property at the time such Tenant is initially screened by Borrower.

5.15     ERISA. Neither Borrower nor any ERISA Affiliate of Borrower has incurred or could be subjected to any liability under Title IV or Section 302 of ERISA or Section 412 of the Code or maintains or contributes to, or is or has been required to maintain or contribute to, any employee benefit plan (as defined in Section 3(3) of ERISA) subject to Title IV or Section 302 of ERISA or Section 412 of the Code. The consummation of the transactions contemplated by this Agreement will not constitute or result in any non-exempt prohibited transaction under Section 406 of ERISA, Section 4975 of the Code or substantially similar provisions under federal, state or local laws, rules or regulations.

5.16     Other Debt. Borrower has no indebtedness outstanding other than Permitted Indebtedness.

5.17     Full and Accurate Disclosure. No documents or information delivered by, or on behalf of any Restricted Party or any of their Affiliates to Lender in respect of the Properties or any Restricted Party contains any untrue statement of a material fact or omits to state any material fact necessary to make statements contained therein not misleading (except that the foregoing representation, as it relates to any title policies delivered to Lender in connection with the making of Advances hereunder, shall be limited to Borrower's knowledge). There is no event or condition that has not been disclosed to Lender that has had or could reasonably be expected to have a Material Adverse Effect or Individual Material Adverse Effect.

5.18     Renovation Work. Each Statement of Proposed Renovations and each Renovation Budget submitted to Lender from time to time is a true and accurate reflection of the scope and cost of the Renovation Work that Borrower intends to and shall cause to be Completed in accordance with the terms and conditions of this Agreement. After diligent investigation of all relevant conditions and due consultation with such parties as Borrower deems appropriate, Borrower represents that each Renovation Budget for a Renovation Property submitted to Lender reflects Borrower's best true, accurate, and complete estimate of the costs necessary to Complete the Renovation Work for such Renovation Property. Borrower represents that no portion of the Renovation Work for a Renovation Property will be commenced until after the Advance Date of the Advance made to finance such Renovation Property and no other work or action has been taken or will be taken that could give rise to a mechanic lien against any of the Properties.

5.19     Survival. All of the representations of the Restricted Parties set forth herein and in the other Loan Documents shall survive for so long as any portion of the Indebtedness is outstanding. All representations, covenants and agreements made by Borrower in the Loan Documents shall be deemed to have been relied upon by Lender notwithstanding any investigation heretofore or hereafter made by Lender or on its behalf.

## ARTICLE 6
## COVENANTS OF BORROWER

As a material inducement to Lender to execute this Agreement and to make each Advance, Borrower hereby covenants as set forth in this Article 6, which covenants shall remain in effect until the occurrence of the Outside Advance Date and payment and performance in full of all of the Obligations.

6.1     Property Covenants.

6.1.1     Compliance with Laws; Governmental Approvals. With respect to each Property, Borrower will comply, and will cause the Improvements to comply, with all Legal Requirements having