acted with gross negligence, bad faith or willful misconduct. Notwithstanding anything herein to the contrary, Borrower shall not assert, and hereby waives, any claim against Lender and/or its Affiliates, directors, employees, attorneys, agents or sub-agents, on any theory of liability, for special, indirect, consequential or punitive damages (whether or not the claim therefor is based on contract, tort or duty imposed by any applicable Legal Requirement) arising out of, as a result of, or in any way related to, the Loan Documents or any agreement or instrument contemplated thereby or referred to therein, the transactions contemplated thereby, the Loan or the use of the proceeds thereof or any act or omission or event occurring in connection therewith, and Borrower hereby waives, releases and agrees not to sue upon any such claim for any such damages, whether or not accrued and whether or not known or suspected to exist in its favor.

## ARTICLE 9
## BENEFIT OF AGREEMENT; ASSIGNMENTS; PARTICIPATIONS

9.1    Binding Effect. The provisions of this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns permitted hereby, except that neither Borrower nor any other Loan Party may assign or otherwise transfer any of its rights or obligations under the Loan Documents without the prior written consent of Lender, in Lender's sole and absolute discretion (and any attempted assignment or transfer by Borrower or any other Loan Party without such consent shall be null and void).

9.2    Assignment by Lender. The Loan, the Note, the Loan Documents, any individual Advance separate from other Advances, and/or Lender's rights, title, obligations and interests therein may be sold, assigned, participated, pledged or otherwise transferred by Lender and any of its successors and assigns to any Person at any time in its sole and absolute discretion, in whole or in part, whether by operation of law (pursuant to a merger or other successor in interest) or otherwise without notice to or consent from any Restricted Party or any other Person and without any other restriction of any kind. Notwithstanding any assignment of individual Advances, all Advances are cross-defaulted with all other Advances and cross-collateralized by all Properties securing Advances under the Loan. Any sale, assignment, participation, pledge or other transfer of the Loan, the Note, the Loan Documents, any Advance and/or Lender's rights, title and interests therein may be assigned separately from any covenants by Lender to consider the making of any additional Advances hereunder and under the other Loan Documents. Upon any such sale, assignment, participation, pledge or other transfer, all references to Lender in this Agreement and in any Loan Document shall be deemed to refer to such assignee or successor in interest to the extent of the interest so transferred and such assignee or successor in interest shall thereafter stand in the place of Lender in all respects. To the extent any such assignee or transferee assumes the rights, title and interests of Lender hereunder and under the other Loan Documents, Lender shall be released from such rights, title and interests and shall have no further liability with respect thereto; provided, however, that Lender shall retain any and all covenant to consider the making of future Advances unless Borrower shall have received notice from Lender and such assignee or transferee that such assignee or transferee has assumed the covenant to consider the making of additional Advances. Borrower hereby agrees to execute any amendment and/or any other document that may be necessary to effectuate the foregoing, including an amendment to this Agreement to provide for multiple lenders and an administrative agent to act on behalf of such lenders.

9.3    Dissemination of Information. Borrower authorizes Lender to disclose to any participant, any assignee or any other Person acquiring an interest in the Obligations, the Loan or the Loan Documents by operation of law (each a "**Transferee**"), and to any prospective Transferee, any and all information in Lender's possession concerning the Properties, the Borrower or any other Loan Party, or any of their respective Affiliates. Notwithstanding any such provisions or agreements, Lender may also disclose any and all information in Lender's possession concerning the Properties, Borrower or any other Loan Party or any of their respective Affiliates to: (a) Lender's Affiliates; (b) the legal counsel, accountants or other

professional advisors to Lender, any assignee or participant of Lender's interest in the Obligations or any portion thereof or their respective Affiliates; (c) regulatory officials; (d) any Person as requested pursuant to or as required by law, regulation, or legal process; and (e) any Person in connection with any legal proceeding to which Lender is a party.

## ARTICLE 10
## MISCELLANEOUS

10.1  Notices.  All notices, consents, approvals and requests required or permitted under any Loan Document (any of the foregoing, a "**Notice**") shall be given in writing by expedited prepaid delivery service, either commercial or United States Postal Service, with proof of delivery or attempted delivery, addressed as set forth below (except that any party hereto may change its address and other contact information for purposes hereof at any time by sending a written notice to the other parties to this Agreement in the manner provided for in this Section). A Notice shall be deemed to have been given when delivered or upon refusal to accept delivery.  Borrower shall not be permitted to designate more than one place for service of Notice concurrently.

>     If to Borrower:      FRALEG GROUP INC
>                          931 Lincoln Place
>                          Brooklyn, NY 11213
>                          Attn: Andy O. Alege
>
>     If to Lender:        CoreVest American Finance Lender LLC
>                          1920 Main St., Suite 850
>                          Irvine, CA  92614
>                          Attn:  Loan Administration (Loan No. 24240)
>
>                          And to:
>
>                          CoreVest American Finance Lender LLC
>                          c/o Fortress Investment Group
>                          1345 Avenue of the Americas, 46th Floor
>                          New York, NY 10105
>                          Attn: General Counsel – Credit Funds (Loan No. 24240)

10.2  Retention of Servicer.  Lender may delegate any and all rights and obligations of Lender under the Loan Documents to the Servicer upon notice by Lender to Borrower, whereupon any notice or consent from the Servicer to Borrower, and any action by Servicer on Lender's behalf, shall have the same force and effect as if Servicer were Lender.

10.3  Authority to File Notices.  Borrower irrevocably appoints Lender as its attorney-in-fact, with full power of substitution, to file for record, at Borrower's sole cost and expense and in Borrower's name, any notices of completion, notices of cessation of labor, or any other notices that Lender considers necessary or desirable to protect its security.

10.4  Inconsistencies with the Loan Documents.  In the event of any inconsistencies between any terms of this Agreement and any terms of any of the Loan Documents, the terms of this Agreement shall govern and prevail.

10.5  Modifications; Waivers.  No modification, amendment, extension, discharge, termination or waiver of any provision of this Agreement or of any other Loan Document, nor consent to any departure

by any Borrower therefrom, shall in any event be effective unless the same shall be in writing signed by the party or parties against whom enforcement is sought, and then such waiver or consent shall be effective only in the specific instance, and for the purpose, for which given. Except as otherwise expressly provided herein, no notice to or demand on Borrower shall entitle Borrower to any other or future notice or demand in the same, similar or other circumstances. Neither any failure nor any delay on the part of Lender in insisting upon strict performance of any term, condition, covenant or agreement, or exercising any right, power, remedy or privilege hereunder, or under any other Loan Document, shall operate as or constitute a waiver thereof, nor shall a single or partial exercise thereof preclude any other future exercise, or the exercise of any other right, power, remedy or privilege. In particular, and not by way of limitation, by accepting payment after the due date of any amount payable under any Loan Document, Lender shall not be deemed to have waived any right either to require prompt payment when due of all other amounts due under the Loan Documents, or to declare an Event of Default for failure to effect prompt payment of any such other amount. Lender shall have the right to waive or reduce any time periods that Lender is entitled to under the Loan Documents in its sole and absolute discretion.

10.6   Lender Determination of Facts; Lender's Discretion. Lender shall at all times be free to establish independently, to its satisfaction, the existence or nonexistence of any fact or facts, the existence or nonexistence of which is a condition, term or requirement of this Agreement. Whenever pursuant to this Agreement or any other Loan Document, Lender exercises any right given to it to approve or disapprove, or consent or withhold consent, or any arrangement or term is to be satisfactory to Lender or is to be in Lender's discretion, the decision of Lender to approve or disapprove, to consent or withhold consent, or to decide whether arrangements or terms are satisfactory or not satisfactory, or acceptable or unacceptable or in Lender's discretion shall (except as is otherwise specifically herein provided) be in the sole and absolute discretion of Lender and shall be final and conclusive. Additionally, whenever in this Agreement or any other Loan Document, Lender exercises any right given to it to approve or disapprove, or consent or withhold consent, or any arrangement or term is to be satisfactory to Lender in Lender's reasonable discretion, or Lender agrees to not withhold, condition or delay its consent, the decision of Lender to approve or disapprove, to consent, condition, delay or withhold consent, or to decide whether arrangements or terms are satisfactory or not satisfactory, or acceptable or unacceptable or in Lender's discretion shall (except as is otherwise specifically herein provided) be in the sole and absolute discretion of Lender while an Event of Default is continuing unless otherwise specifically herein provided.

10.7   Incorporation of Preamble, Recitals and Exhibits. The preamble, recitals and exhibits hereto are hereby incorporated in to this Agreement.

10.8   Payment of Expenses. Borrower shall pay or, if Borrower fails to pay, reimburse Lender upon receipt of notice from Lender for all out-of-pocket costs and expenses (including reasonable attorneys' fees and disbursements) incurred by Lender or Servicer in connection with the Loan, including (i) the preparation, negotiation, execution and delivery of the Loan Documents and the consummation of the transactions contemplated thereby, including without limitation all Advances made hereunder; (ii) Borrower's and Lender's ongoing performance under and compliance with the Loan Documents, including confirming compliance with environmental and insurance requirements in accordance with the Loan Documents; (iii) the negotiation, preparation, execution, delivery and administration of any consents, amendments, waivers or other modifications of or under any Loan Document and any other documents or matters requested by Lender or a Borrower; (iv) filing and recording of any Loan Documents; (v) title insurance, surveys, inspections and appraisals; (vi) the creation, perfection or protection of Lender's Liens in the Properties (including fees and expenses for title and lien searches, intangibles taxes, personal property taxes, mortgage recording taxes, due diligence expenses, travel expenses, accounting firm fees, costs of appraisals, environmental reports and Lender's consultant, surveys and engineering reports); (vii) enforcing or preserving any rights in response to third party claims or the prosecuting or defending of any action or proceeding or other litigation, in each case against, under or affecting Borrower, the Loan Documents, one

or more of the Properties, or any other security given for the Loan; and (viii) enforcing any obligations of or collecting any payments due from Borrower under any Loan Document or with respect to any Property or in connection with any refinancing or restructuring of the Loan in the nature of a "work-out," or any insolvency or bankruptcy proceedings. This Section 10.8 shall survive closing of the Loan and repayment thereof.

10.9     Disclaimer by Lender. Lender shall not be liable to any contractor, subcontractor, supplier, laborer, architect, engineer or any other party for services performed or materials supplied in connection with the Properties. Lender shall not be liable for any debts or claims accruing in favor of any such parties against Borrower or others or against the Properties. Borrower is not and shall not be an agent of Lender for any direct or indirect purpose. Lender is not a joint venture partner with Borrower or with the partners, members, managers or shareholders in Borrower in any manner whatsoever. Lender shall not be deemed to be in privity of contract with any contractor or provider of services to the Properties, nor shall any payment of funds directly to any contractor, subcontractor, supplier, laborer, architect, engineer or any other provider of services be deemed to create any third party agent status or recognition of same by Lender. Approvals granted by Lender for any matters covered under this Agreement shall be narrowly construed to cover only the parties and facts identified in any written approval or, if not in writing, such approvals shall be solely for the benefit of Borrower.

10.10    Waiver of Recovery. Borrower waives any and all right to claim or recover against Lender, its respective successors and assigns and its directors, officers, employees, agents and representatives, for any loss of or damage to Borrower, the Properties, Borrower's property or the property of others under Borrower's control from any cause insured against or required to be insured against by this Agreement.

10.11    No Set-Off by Borrower. All Obligations shall be paid by Borrower without notice (except for such notice as may be expressly required hereunder or under the other Loan Documents), demand, counterclaim, setoff, deduction or defense and without abatement, suspension, deferment, diminution or reduction, and the Obligations shall in no way be released, discharged or otherwise affected (except as expressly provided herein) by reason of: (a) any damage to or destruction of or any Condemnation of any Property or any part thereof; (b) any restriction or prevention of, or interference by any Person with, any use of any Property or any part thereof; (c) any title defect or encumbrance or any eviction from any Property or the Improvements or any part thereof by title paramount or otherwise; (d) any bankruptcy, insolvency, reorganization, composition, adjustment, dissolution, liquidation or other like proceeding relating to Lender, or any action taken with respect to this Agreement by any trustee or receiver of Lender, or by any court, in any such proceeding; (e) any claim that Borrower has or might have against Lender; (f) any default or failure on the part of Lender to perform or comply with any of the terms of the Loan Documents or of any other agreement with Borrower; or (g) any other occurrence whatsoever, whether similar or dissimilar to the foregoing; in each case, whether or not Borrower shall have notice or knowledge of any of the foregoing. Borrower waives all rights now or hereafter conferred by statute or otherwise to any abatement, suspension, deferment, diminution or reduction of any Obligation.

10.12    Indemnification. Borrower shall protect, indemnify, defend and save harmless Lender and its directors, officers, agents, employees, successors and assigns for, from and against any and all Claims on account of or arising out of: (a) this Agreement or the Loan Documents or otherwise in connection herewith or in connection with any Property, the Improvements, any Collateral or any Obligation, including, without limitation, any Claim arising out of the removal of, or failure to remove, any and all hazardous waste from any Property; (b) any Lease, including, without limitation, any Claim that Borrower has violated any such Lease; (c) any applicable Property Documents, including any Claim that Borrower, any tenant or any other person has violated or failed to comply with any such Property Documents; (d) any applicable approvals by any Governmental Authority, including, without limitation, any Claim that seeks to challenge any approval (including zoning approvals) issued or granted by any such Governmental Authority with

respect to any Property; and (e) any matter arising from or related to any Property or any other person providing labor, services or materials with respect to any Property, including, without limitation, any Claim that Lender is obligated to make any disbursements of Loan proceeds to or for the benefit of any such Person. Upon receiving knowledge of any Claim asserted by a third party that Lender believes is covered by this indemnity, Lender shall give Borrower notice of the matter and an opportunity to defend it, at Borrower's sole cost and expense, with legal counsel satisfactory to Lender. Lender may also require Borrower to so defend the matter. This Section 10.12 shall survive the closing of the Loan and repayment thereof.

10.13  Brokers. Borrower hereby represents that it has dealt with no financial advisors, brokers, underwriters, placement agents, agents or finders in connection with the Loan. Borrower shall indemnify and hold Lender harmless from and against any and all claims, liabilities, costs and expenses (including attorneys' fees, whether incurred in connection with enforcing this indemnity or defending claims of third parties) of any kind in any way relating to or arising from a claim by any Person that such Person acted on behalf of Borrower in connection with the transactions contemplated herein. The provisions of this Section 10.13 shall survive the expiration and termination of this Agreement and the repayment of the Indebtedness.

10.14  Preference. Upon the occurrence and continuance of an Event of Default, Lender shall have the continuing and exclusive right to apply or reverse and reapply any and all payments by Borrower to any portion of the Indebtedness. To the extent Borrower makes a payment to Lender, or Lender receives proceeds of any collateral, which is in whole or part subsequently invalidated, declared to be fraudulent or preferential, set aside or required to be repaid to a trustee, receiver or any other party under any bankruptcy law, state or federal law, common law or equitable cause, then, to the extent of such payment or proceeds received, the Indebtedness or part thereof intended to be satisfied shall be revived and continue in full force and effect, as if such payment or proceeds had not been received by Lender. This provision shall survive the expiration or termination of this Agreement and the repayment of the Indebtedness.

10.15  Counterparts. This Agreement may be executed in any number of counterparts, each of which when so executed and delivered shall be an original, but all of which shall together constitute one and the same instrument. Copies of originals, including copies delivered by facsimile, pdf or other electronic means, shall have the same import and effect as original counterparts and shall be valid, enforceable and binding for the purposes of this Agreement.

10.16  Time is of the Essence. Time is of the essence of this Agreement.

10.17  Prior Agreements. THE LOAN DOCUMENTS CONTAIN THE ENTIRE AGREEMENT OF THE PARTIES THERETO IN RESPECT OF THE TRANSACTIONS CONTEMPLATED THEREBY, AND ALL PRIOR AGREEMENTS AMONG OR BETWEEN SUCH PARTIES, WHETHER ORAL OR WRITTEN, INCLUDING ANY TERM SHEETS, CONFIDENTIALITY AGREEMENTS AND COMMITMENT LETTERS, ARE SUPERSEDED BY THE TERMS OF THE LOAN DOCUMENTS.

10.18  Exculpation of Lender. Lender neither undertakes nor assumes any responsibility or duty to Borrower or any other party to select, review, inspect, examine, supervise, pass judgment upon or inform Borrower or any third party of (a) the existence, quality, adequacy or suitability of appraisals of the Properties or other Collateral, (b) any environmental report, or (c) any other matters or items, including engineering, soils and seismic reports that are contemplated in the Loan Documents. Any such selection, review, inspection, examination and the like, and any other due diligence conducted by Lender, is solely for the purpose of protecting Lender's rights under the Loan Documents, and shall not render Lender liable to Borrower or any third party for the existence, sufficiency, accuracy, completeness or legality thereof.

10.19 Severability of Provisions. Any provision in any Loan Document that is held to be inoperative, unenforceable, or invalid in any jurisdiction shall, as to that jurisdiction, be inoperative, unenforceable, or invalid without affecting the remaining provisions in that jurisdiction or the operation, enforceability, or validity of that provision in any other jurisdiction, and to this end the provisions of all Loan Documents are declared to be severable.

10.20 Conflict; Construction of Documents. In the event of any conflict between the provisions of this Agreement and the provisions of the other Loan Documents, the provisions of this Agreement shall prevail. The parties acknowledge that they were each represented by competent counsel in connection with the negotiation, drafting and execution of the Loan Documents and that the Loan Documents shall not be subject to the principle of construing their meaning against the party that drafted same.

10.21 Nonliability of Lender; No Third Party Beneficiaries.

10.21.1 The relationship between Borrower and the Lender shall be solely that of borrower and lender. Lender shall not have any fiduciary responsibilities to Borrower. Lender shall not have any responsibility to Borrower to review or inform Borrower of any matter in connection with any phase of the Borrower's business or operations. Borrower agrees that Lender shall not have liability to Borrower (whether sounding in tort, contract or otherwise) for losses suffered by Borrower in connection with, arising out of or related to, the transactions contemplated and the relationship established by the Loan Documents, or any act, omission or event occurring in connection therewith, unless it is determined in a final non-appealable judgment by a court of competent jurisdiction that such losses resulted from the gross negligence or willful misconduct of the party from which recovery is sought. Lender shall not have any liability with respect to, and Borrower hereby waives, releases and agrees not to sue for, any special, indirect or consequential damages suffered by Borrower in connection with, arising from or related to the Loan Documents or the transactions contemplated thereby.

10.21.2 The Loan Documents are solely for the benefit of Lender and Borrower and nothing contained in any Loan Document shall be deemed to confer upon anyone other than Lender and Borrower any right to insist upon or to enforce the performance or observance of any of the obligations contained therein.

10.22 Governing Law, Submission to Jurisdiction, Waivers.

10.22.1 THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK PURSUANT TO SECTION 5-1401 OF THE NEW YORK GENERAL OBLIGATIONS LAW.

10.22.2 ANY LEGAL SUIT, ACTION OR PROCEEDING AGAINST LENDER OR ANY RESTRICTED PARTY ARISING OUT OF OR RELATING TO THE LOAN DOCUMENTS (OTHER THAN ANY ACTION IN RESPECT OF THE CREATION, PERFECTION OR ENFORCEMENT OF A LIEN OR SECURITY INTEREST CREATED PURSUANT TO ANY LOAN DOCUMENTS NOT GOVERNED BY THE LAWS OF THE STATE OF NEW YORK) MAY BE INSTITUTED IN ANY FEDERAL OR STATE COURT IN NEW YORK, NEW YORK. BORROWER AND LENDER HEREBY (i) IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY OBJECTION THAT THEY MAY NOW OR HEREAFTER HAVE TO THE LAYING OF VENUE OF ANY SUCH SUIT, ACTION OR PROCEEDING BROUGHT IN SUCH A COURT AND ANY CLAIM THAT ANY SUCH PROCEEDING BROUGHT IN SUCH A COURT HAS BEEN BROUGHT IN AN INCONVENIENT FORUM, (ii) IRREVOCABLY SUBMIT TO THE JURISDICTION OF ANY SUCH COURT IN ANY SUCH SUIT, ACTION OR PROCEEDING, AND (iii) IRREVOCABLY CONSENT TO SERVICE OF PROCESS BY MAIL, PERSONAL SERVICE OR

IN ANY OTHER MANNER PERMITTED BY APPLICABLE LAW, AT THE ADDRESS SPECIFIED IN SECTION 10.1 HEREOF (AND AGREES THAT SUCH SERVICE AT SUCH ADDRESS IS SUFFICIENT TO CONFER PERSONAL JURISDICTION OVER ITSELF IN ANY SUCH SUIT, ACTION OR PROCEEDING IN ANY SUCH COURT, AND OTHERWISE CONSTITUTES EFFECTIVE AND BINDING SERVICE IN EVERY RESPECT).

10.23 WAIVER OF SPECIAL DAMAGES. TO THE EXTENT PERMITTED BY APPLICABLE LAW, BORROWER SHALL NOT ASSERT, AND HEREBY WAIVES, ANY CLAIM AGAINST LENDER, ON ANY THEORY OF LIABILITY FOR SPECIAL INDIRECT, CONSEQUENTIAL, OR PUNITIVE DAMAGES ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY AGREEMENT OR INSTRUMENT CONTEMPLATED HEREBY, THE TRANSACTIONS, THE LOAN OR THE USE OF PROCEEDS THEREOF.

10.24 TRIAL BY JURY. LENDER AND BORROWER, TO THE FULLEST EXTENT THAT THEY MAY LAWFULLY DO SO, HEREBY AGREE NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND WAIVE ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THE LOAN DOCUMENTS, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY LENDER AND BORROWER AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE. LENDER AND BORROWER ARE EACH HEREBY INDIVIDUALLY AUTHORIZED TO FILE A COPY OF THIS PARAGRAPH IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER.

10.25 PATRIOT Act Records. Lender hereby notifies Borrower that pursuant to the requirements of the PATRIOT Act, it is required to obtain, verify and record information that identifies Borrower, Guarantor and certain other Restricted Parties.

# ARTICLE 11
# PROPERTY RELEASES

11.1 Borrower shall have the right, at its option, to obtain the release ("**Release**") of any Property (each, a "**Release Property**") from the Lien of the Security Instrument encumbering such Release Property, provided that the following conditions shall have been satisfied (the "**Release Conditions**"):

11.1.1 Borrower shall deliver to Lender a written request for such Release not less than thirty (30) days prior to the proposed Release date, and shall submit to Lender, not less than ten (10) nor more than thirty (30) days prior to the proposed Release date, evidence reasonably satisfactory to Lender that the Release Conditions will be satisfied upon the consummation of such Release;

11.1.2 The Release Property shall be transferred to a Person who is not a Restricted Party, pursuant to a bona fide all-cash sale on arms-length terms and conditions, except that (a) Borrower may continue to own the Release Property following the Release provided the Release Price is paid from Borrower's funds and following the Release, the Release Property at all times remains free and clear of all monetary Liens and shall otherwise be in compliance with Section 11.1.7, and (b) in connection with a refinancing of the Release Property, the Release Property may be transferred to an affiliate of Borrower for consideration then paid in cash equal to not less than the appraised value of the Property;

11.1.3 All lot split, zoning, use, access, reciprocal access and title insurance matters shall be addressed to the satisfaction of Lender;

11.1.4 No Default or Event of Default shall have occurred and be continuing either as of the date on which Borrower shall request such Release and/or as of the effective date of such Release, other than if such Release Property is a Disqualified Property and each Qualified Release Property Default applicable to such Disqualified Property would be cured as a result of the Release of the Disqualified Property. If a Disqualified Property is released in accordance with these Release Conditions, then the release of such Property shall be deemed to cure each Event of Default that relates solely to such Disqualified Property (a "**Qualified Release Property Default**");

11.1.5 Borrower shall have paid to Lender or Title Company, as applicable, in immediately available funds, all costs and expenses, including without limitation all third party reports, escrow, closing, title, and recording costs, any Lender's Appraisal Costs, the costs of preparing and delivering such documentation required to effectuate such Release and any other related documents, including without limitation reasonable attorneys' fees, and the costs and expenses incurred by Lender in verifying that all of the Release Conditions have been satisfied;

11.1.6 Contemporaneously with the Release, Borrower shall pay to Lender in immediately available funds a principal payment in an amount equal to the lesser of (A) one hundred twenty percent (120%) of the Allocated Loan Amount for such Release Property or at Lender's election, in its sole and absolute discretion, one hundred percent (100%) of the Allocated Loan Amount for such Release Property or (B) the total outstanding amount of the Loan, plus, in each case, an amount equal to all accrued and unpaid interest owing on such principal payment plus the Advance Exit Fee, unless waived by Lender pursuant to this Agreement (the "**Release Price**"); and

11.1.7 Following the Release, Borrower (and the Release Property if owned by Borrower following the Release) shall continue to comply with the provisions of Sections 6.8, 7.5, 7.6 and 7.7 hereof.

11.1.8 If the Release Property is a Renovation Property, there shall be no Disbursement Request pending with respect to such Renovation Property.

Neither the acceptance of any payment or the issuance of any Release by Lender shall affect the Borrower's obligation to pay all amounts owing under this Agreement or the other Loan Documents or the liens of the Security Instruments on the remaining Properties.

*[remainder of page intentionally blank]*

IN WITNESS WHEREOF, Borrower and Lender have caused this Agreement to be duly executed and delivered as of the date first above written.

"BORROWER"

FRALEG GROUP INC,
a New York corporation

By: _____
Andy O. Alege
Its: President

*[ADDITIONAL SIGNATURE PAGE FOLLOWS]*

"LENDER":

COREVEST AMERICAN FINANCE LENDER LLC,
a Delaware limited liability company

By: _____
     J. Christopher Hoeffel
     Its: Chief Financial Officer

Schedule 6.2

**Insurance Requirements**

1.  **Insurance.** Borrower shall at all times during the term of the Loan maintain or cause to be maintained in full force and effect, at Borrower's cost and expense, the following insurance coverages for each Property:

    (a)   At all times, Borrower will maintain the following insurance coverages for each Property:

        (i)   All Risk Insurance against loss by fire, lightning and risk customarily covered by standard extended coverage endorsement, including the cost of debris removal, together with a vandalism and malicious mischief endorsement, or all perils endorsements, all in the amount of not less than 100% of the full replacement cost of the Improvements, pursuant to an appraisal submitted to and approved by Lender, on the Property and Improvements, and together with an agreed-amount endorsement, a replacement cost endorsement, no co-insurance and a waiver of subrogation endorsement.

        (ii)  Flood Insurance in an amount reasonably acceptable to Lender unless evidence is provided that the Property is not within a flood plain as defined by the Federal Insurance Administration and the Premises is not designated as being within a flood plain and earthquake insurance in an amount approved by Lender.

        (iii) Mechanical Breakdown coverage.

        (iv)  rental value insurance for the perils specified herein for one hundred percent (100%) of the Rents (including operating expenses, real estate taxes, assessments and insurance costs which are lessee's liability) for a period of twelve (12) months if the Property subject to a Lease.

        (v)   To the extent such coverage is available for residential properties, Builder's Risk Insurance and Worker's Compensation Insurance during the making of any alterations or Improvements to the Property.

        (vi)  Insurance against all other hazards as may be reasonably required by Lender, including, without limitation, insurance against loss or damage by flood and earthquake.

        (vii) Commercial general liability insurance naming Lender as an additional insured protecting Borrower and Lender against liability for bodily injury or property damage occurring in, on or adjacent to the Property, with a combined single limit of not less than One Million Dollars ($1,000,000) per occurrence with not less than a Two Million Dollar ($2,000,000) aggregate limit (if the required insurance is provided under a blanket insurance program, coverage must be on a "Per Location" basis) and excess umbrella liability insurance of not less than Two Million Dollars ($2,000,000).

    (b)   Such insurance policies shall be written by insurance companies licensed to do business in in the state in which the Property is located, having a minimum noncontingent rating in Best's Key Rating Guide of A, with a financial class size of IX or better and shall otherwise be satisfactory to

Lender as to amount, form, deductibles and insurer, and must cover all risks Lender requires as set forth above.

(c)  Such insurance policies and endorsements (A) shall name as the insured parties Borrower and Lender as their interests may appear; provided, all property policies shall name Lender as a loss payee, (B) shall be in amounts sufficient to prevent Borrower from becoming a co-insurer of any loss thereunder, (C) shall bear a satisfactory mortgagee clause in favor of Lender with loss proceeds under any such policies to be made payable to Lender, and (D) shall contain such other endorsements as Lender may reasonably require. All required policies of insurance and acceptable certificates thereof, together with evidence of the payment of current premiums therefore, shall be delivered to Lender and shall provide that Lender shall receive at least thirty (30) days' advance written notice prior to cancellation, amendment or termination of any such policy of insurance. Borrower shall, within thirty (30) days prior to the expiration of any such policy, deliver other original policies of the insurer evidencing the renewal of such insurance together with evidence of the payment of current premiums therefore. Borrower shall at its expense furnish evidence of the replacement value of the improvements on the Property in form satisfactory to Lender on renewal of insurance policies or upon request of Lender. Insurance coverage must at all times be maintained in proper relationship to such replacement value and must always provide for agreed amount coverage. Failure to maintain proper insurance shall be an Event of Default hereunder.

Lender makes no representations that the above insurance requirements are adequate protection for any Property.

Scaled Insurance Requirements

General Liability Deductible
- $15,000 per occurrence for a Property that is on a policy with less than $5 million in total insurable value
- $25,000 per occurrence for a Property that is on a policy with greater than or equal to $5 million in total insurable value and less than $50 million in total insurable value
- $100,000 per occurrence for a Property that is on a policy with greater than or equal to $50 million in total insurable value or total and less than $100 million in total insurable value

Umbrella – If Umbrella IS NOT per Location Limits shall be as follows:

1 – 50 Residential units - $2MM
50 – 250 Residential units - $5MM
250 – 500 Residential units - $10MM
500 – 1500 Residential units - $25MM