jurisdiction over such Property or repair and/or renovation of the Improvements, and will furnish Lender with reports of any violations or official searches for violations of any such Legal Requirements established by Governmental Authorities.

      6.1.2   Lender Inspections.  With respect to each Property, throughout the term of the Loan and during normal business hours, Borrower will permit Lender and Lender's representatives, inspectors, appraisers and consultants, to (a) inspect such Property, the Improvements and any materials to be used therein, (b) audit, examine and copy all contracts, records (including financial and accounting records pertaining to the Loan or such Property) and plans which are kept at such Property or at Borrower's offices, and (c) discuss the affairs, finances and accounts of Borrower with designated representatives of Borrower.  Borrower will cooperate with any such representatives, inspectors, appraisers or consultants retained by Lender to enable them to perform their functions under this Agreement.

      6.1.3   Maintenance of Property.

      (a)   Borrower shall cause each Property to be maintained in a good and safe condition and repair and shall not remove, demolish or alter the Improvements (except for alterations performed in accordance with Section 6.1.3(b) below and normal replacement of fixtures and personal property of equivalent value and functionality).  Borrower shall promptly comply with all Legal Requirements and promptly cure any violation of a Legal Requirement.  Borrower shall notify Lender in writing within one (1) Business Day after Borrower first receives notice of any such non-compliance. Borrower shall promptly repair, replace or rebuild any part of any Property that becomes damaged, worn or dilapidated and shall complete and pay for any Improvements at any time in the process of construction or repair.

      (b)   Borrower will not remove, demolish, or substantially alter any of the Improvements on a Property; provided, Borrower may renovate the Improvements so long as no Event of Default has occurred, such renovation is completed on a timely basis and in a good and workman like, lien free manner, in accordance with all applicable Legal Requirements, and does not negatively affect the structural integrity of the Improvements or the value of the Property or otherwise impair Lender's security for the Loan.  Borrower shall comply with all Leases, Property Documents and Legal Requirements and shall not permit any violation of any of the foregoing to occur or exist at any time.

      6.1.4   Title to Fixtures.  Borrower will not acquire, purchase or install materials, personal property, equipment or fixtures subject to any security agreement or other contract wherein the right is reserved to any Person to remove or repossess any such materials, equipment or fixtures, or whereby title to any of the same is not completely vested in Borrower at the time of installation, without prior written consent of Lender.

      6.1.5   Ownership of Personal Property.  Borrower will be the sole owner of all personal property Collateral acquired after the date hereof, free from any adverse lien, security interest or adverse claim of any kind whatsoever, except for security interests and liens in favor of the interest of a lessor pursuant to a lease of personal property approved in writing by Lender and the liens and security interests approved by Lender pursuant to the Loan Documents.

      6.1.6   Mechanic Liens.

      (a)   Subject to the right to contest in strict accordance with Section 6.12, Borrower, at Borrower's sole cost and expense, shall promptly discharge or cause to be discharged (i) any mechanic's or materialmen's liens or claims of lien filed or otherwise asserted against a Property or (ii) any

proceedings for the enforcement thereof. Borrower shall obtain lien waivers from all contractors engaged to work on the Property(ies) prior to the final payment of amounts owed to such contractors.

(b)     If Borrower fails to promptly discharge liens or claims of lien and provide the security or indemnity in the manner provided in this Section 6.1.6, then Lender may, but shall not be required to, procure the release and discharge of any such lien and any judgment or decree thereon, and in furtherance thereof may affect any settlement or furnish any security or indemnity as may be required by the Title Company to induce it to issue an endorsement to the Title Insurance Policy insuring against all such claims or liens.   All amounts expended by Lender in connection with the provisions of this Section 6.1.6 shall be immediately due and payable together with interest thereon at the Default Rate from the date incurred by Lender and shall be deemed to constitute a protective advance, added to the Indebtedness and secured by each of the Security Instruments. In settling, compromising or arranging for the discharge of any liens under this Section 6.1.6, Lender shall not be required to establish or confirm the validity or amount of the lien.

6.1.7     Other Liens.  Borrower shall not grant or permit, and shall promptly pay and discharge, at Borrower's sole cost and expense, all Liens and claims thereof on each Property or any part thereof or interest therein other than the Liens in favor of Lender.

6.1.8     Management.

(a)     Borrower shall at all times be responsible for the management and operation of the Properties.  Any management and operations conducted by a Person other than Borrower shall be conducted pursuant to a bona fide management agreement which must (i) provide for management fees obtained through arm's-length negotiations and comparable to existing local market rates for similar properties, (ii) be on commercially reasonable terms, (iii) provide that such management agreement, and the management fees payable thereunder, are subordinate in lien and payment to each Security Instrument and the other Loan Documents, (iv) not contain any terms which would have a Material Adverse Effect, (v) be terminable on thirty (30) days' notice or less without cause and without payment of any termination fees or other penalty, and (vi) not be with a Restricted Party or an Affiliate thereof unless disclosed in writing to Lender prior to the date of this Agreement and upon terms and conditions that are intrinsically fair and substantially similar to those that would be available on an arm's length basis with third parties other than any such party. Upon Lender's request, Borrower shall promptly provide to Lender a true and correct copy of any such management agreement. Upon Lender's request, any such management agreement shall be assigned to Lender, for the benefit of Lender, as additional security for the Loan and subordinated to the applicable Security Instruments and other Loan Documents, with the express written consent of such manager pursuant to an assignment and subordination agreement in form and substance satisfactory to Lender in its sole and absolute discretion.

(b)     Lender may terminate or require Borrower to terminate the engagement of any such manager and engage a replacement manager selected by Lender pursuant to a management agreement approved by Lender (i) during the continuance of an Event of Default, (ii) following any foreclosure, conveyance in lieu of foreclosure or other similar transaction, (iii) during the continuance of a material default by such manager under such management agreement (after the expiration of any applicable notice and/or cure periods), (iv) if an Event of Bankruptcy occurs in respect of such manager, (v) if such manager engages in gross negligence, willful misconduct, fraud or misappropriation of funds in respect of the Properties or its duties with respect thereto, or (vi) the terms and conditions of the management agreement with such manager are not in compliance with the provisions of Section 6.1.8(a).

(c)     Notwithstanding that the Properties may be managed by a property manager, Borrower shall ensure that the Properties are managed in a commercially reasonable manner and

that its obligations as the lessor under any Leases are performed. Borrower shall enforce, in a commercially reasonable manner, the obligations of the tenants under such Leases.

        6.1.9    Revenues from Properties; Restriction on Distributions. Borrower shall first apply all Revenues from the Properties, to pay amounts due Lender under this Agreement and the other Loan Documents and then to costs and expenses associated with the ownership, maintenance, development and operation of the Properties. Borrower shall not make, declare or permit any distribution to any officer, member, manager, partner or other direct or indirect beneficial owner of Borrower at any time that an Event of Default has occurred and is continuing.

        6.1.10   Impositions. Borrower shall pay or discharge all Impositions prior to the date upon which penalties attach thereto, and shall submit evidence satisfactory to Lender confirming such payment.

        6.1.11   Utilities. Borrower shall pay when due all charges that are incurred by Borrower for the benefit of the Properties or that may become a charge or lien against the Properties for gas, telephone, electricity, water, sewer, or other services furnished to the Properties.

        6.1.12   No Change in Use. Borrower shall not permit any change in use or additional uses on any Property without the prior written consent of Lender, in its sole and absolute discretion.

        6.1.13   Renovation Work Covenants.

        (a)    Construction Documents. Prior to the commencement of any Renovation Work at a Renovation Property, Borrower shall: (a) enter into a written agreement ("**Construction Contract**") with a contractor approved by Lender's Consultant ("**Contractor**") for all the Renovation Work, which Construction Contract shall state the maximum total amount that Borrower will pay Contractor for the Renovation Work ("**Contract Price**"), and shall include (i) the blueprints, shop drawings, plans and specifications for the Renovation Work ("**Plans**") consistent with the Statement of Proposed Renovations; (ii) the Renovation Budget as approved by Lender; and (iii) an itemized description of each segment of the Renovation Work (each, a "**Stage**") that sets the timetable for completing the Renovation Work, and the corresponding payments for the Renovation Work ("**Work and Payment Schedule**"; together with the Construction Contract, Plans and Renovation Budget collectively, the "**Construction Documents**"), all of which shall be subject to the review and approval of Lender's Consultant, and (b) have provided Lender Consultant with a copy of the Construction Documents and any and all information concerning the Contractor as Lender or Lender's Consultant may reasonably require, including a resume and financial information. Borrower shall have no other agreements for the Renovation Work other than the Construction Contracts. The Contractor shall have provided Lender the name, address and telephone number of each Person that has a contract with Contractor to supply materials or labor for the Renovation Work (each, a "**Supplier**"). Borrower hereby covenants and agrees to provide Contractor a copy of this Agreement prior to commencement of any Renovation Work.

        (b)    Permits. Prior to the commencement of any Renovation Work, Borrower shall obtain, and at all times thereafter, keep in full force, all Permits that are required by any Government Authority. Borrower shall comply with all Legal Requirements. Borrower shall, upon request by Lender, obtain from Contractor and provide to Lender copies of all Permits required by Government Authorities or applicable Legal Requirements in connection with the Renovation Work.

        (c)    Change Orders. Any change in the Contract Price, the Renovation Work or the Work and Payment Schedule must be in a written agreement signed by Borrower and Contractor and approved by Lender or Lender's Consultant (each a "**Change Order**").

(d)     Completing the Renovation Work.   The Renovation Work for each Renovation Property will begin promptly after the Advance Date of the Advance for such Renovation Property. The Renovation Work will continue diligently without undue delay and in a good and workmanlike, free of defects and lien, in strict accordance with the Construction Documents and all Legal Requirements, the applicable Statement of Proposed Renovations, Renovation Budget and this Agreement. The Renovation Work will not violate any of the conditions, covenants or restrictions on the applicable Renovation Property or other Legal Requirements.  Borrower will notify Lender and Lender's Consultant immediately in writing if (i) Borrower knows or has reason to believe that the Renovation Work does not comply with the Construction Documents or this Agreement; (ii) any notice of lien on such Renovation Property is served on Borrower or Contractor; or (iii) any Government Authority issues any notice or claim relating to any Renovation Property.  Borrower agrees to cause the Renovation Work for each Renovation Property to be Completed on or before the date that is forty-five (45) days before the Advance Repayment Date of the Advance made to finance such Renovation Property (each, a **"Completion Date"**).

(e)     Renovation Reserve In Balance.  Anything contained in this Agreement to the contrary notwithstanding, it is expressly understood and agreed that the Renovation Reserve for each Renovation Property shall at all times be "In Balance", on an aggregate basis and within each cost category (i.e., hard costs and soft costs).   A Renovation Reserve for a Renovation Property shall be deemed to be **"In Balance"** only when the total of the undisbursed portion of the funds in such Renovation Reserve equals or exceeds the aggregate of (a) the costs required to complete the Renovation Work for such Renovation Property substantially in accordance with the Plans and the Renovation Budget for such Renovation Property; (b) the amounts to be paid as retainages to Persons who have supplied labor or materials to such Renovation Property; and (c) any and all other hard and soft costs not yet paid for in connection with the Renovation Work for such Renovation Property, as such costs and amounts described in clauses (a), (b), and (c) may be estimated and/or approved in writing by Lender, in its sole discretion, from time to time. Borrower agrees that if for any reason, in Lender's sole discretion, the amount of the undistributed funds in a Renovation Reserve shall at any time be or become insufficient (**"Reserve Deficiency"**) for such purpose regardless of how such condition may be caused, Borrower will (i) within five (5) Business Days after written request by Lender, deposit immediately available funds equal to the Reserve Deficiency **"Reserve Deficiency Funds"**) with Lender for deposit in the Restoration Reserve for such Renovation Property, or (b) at Lender's sole election (if requested by Borrower), Borrower shall first pay from its own funds (and not from the Renovation Reserve Funds) Budgeted Renovation Costs in an amount equal to such Reserve Deficiency (and Lender's Consultant shall have received and approved evidence, satisfactory to Lender of same) before Borrower shall be entitled to receive any further Disbursements from the Renovation Reserve.  Lender shall not be obligated to make any Disbursements from the Renovation Reserve for the applicable Renovation Property if and for as long as the Renovation Reserve for such Renovation Property is not In Balance.

(f)     Inspections.  Lender or Lender's consultant or representatives has the right to enter a Renovation Property to inspect the Renovation Work or exercise any of its rights and remedies, without notice to Borrower, during normal business hours, or any other times that Lender arranges with Borrower.  Borrower shall promptly pay for all inspections performed at the request of Lender. Each inspection will cost $200.00.

(g)     Defects and Variances. Borrower will, upon demand of Lender and at Borrower's sole expense, correct any structural or other defect in the Improvements, or any variance from the Plans which is not either (i) permitted pursuant to a Change Order approved by Lender's Consultant, or (ii) approved in writing by Lender's Consultant.

(h)     Responsibility for Renovation Work.   Borrower has full and sole responsibility to make sure that the Renovation Work complies with the Construction Documents and all

applicable Legal Requirements.  Lender has no liability, obligation or responsibility for the Renovation Work.  Lender shall not liable for any failure to construct, complete, protect, or insure the Renovation Work. Lender shall not be liable for any costs of the Renovation Work.  Nothing Lender does (including inspecting the Renovation Work or making any disbursements from the Renovation Reserve) will be a representation or warranty by Lender that the Renovation Work complies with the Plans, this Agreement, the Permits or any Legal Requirements.  Borrower shall repair or replace at Borrower's sole cost and expense any Renovation Work that does not comply with the Plans or Legal Requirements.  Borrower will not have the right to assert or claim any offset, counterclaim or defense against Lender or Lender's Consultant based on any claim Borrower may have against Contractor, any Suppliers or any other Person.

       6.2    Insurance.  Borrower, at its sole cost and expense, shall obtain and deliver to Lender policies (or certificates) of insurance as required by Lender, in Lender's sole and absolute discretion, meeting the requirements set forth in this Section 6.2 and Schedule 6.2 attached hereto (collectively, the "**Policies**" and each a "**Policy**").

       6.2.1    Delivery of Policies, Payment of Premiums.

       (a)    All Policies required pursuant to Section 6.2 above shall (i) be issued by companies approved by Lender in writing; (ii) name Lender and its successors and/or assigns as their interest may appear as the mortgagee/lender's loss payable (in the case of property insurance and business interruption/loss of rents coverage) and an additional insured (in the case of liability insurance); (iii) contain (in the case of property insurance) a Non-Contributory Standard Mortgagee Clause/Lender's Loss Payable Endorsement, or their equivalents, naming Lender as the person to which all payments made by such insurance company shall be paid; (iv) with respect to property (including business interruption/loss of rents), commercial general liability and excess/umbrella liability policies, contain a waiver of subrogation in favor of Lender; (v) with respect to property policies (including business interruption/loss of rents), contain such provisions as Lender deems reasonably necessary or desirable to protect its interest, including (A) endorsements providing that neither Borrower, Lender nor any other party shall be a co-insurer under the Policies, (B) that Lender shall receive at least thirty (30) days' prior written notice of cancellation of any of the property Policies, except ten (10) days' notice for cancellation due to non-payment of premium and, when available, liability policies, (C) such policy shall not contain any provision that would make the Lender liable for any premiums and commissions, provided that the policy need not waive the requirement that the premium be paid in order to effect continuation of coverage if the policy will be cancelled due to non-payment of premium and (D) providing that Lender is permitted to make payments to effect the continuation of such policy upon notice of cancellation due to non-payment of premiums; (vi) in the event any property insurance policy shall contain breach of warranty provisions, such policy shall provide that with respect to the interest of Lender, such insurance policy shall not be invalidated by and shall insure Lender regardless of (A) any act, failure to act or negligence of or violation of warranties, declarations or conditions contained in such policy by any named insured, (B) the occupancy or use of the premises for purposes more hazardous than permitted by the terms thereof, or (C) any foreclosure or other action or proceeding taken by Lender pursuant to any provision of the Loan Documents; and (vii) be satisfactory in form and substance to Lender and approved by Lender as to amounts, form, risk coverage, deductibles, loss payees and insureds and complete copies thereof delivered to Lender.

       (b)    In the event of foreclosure or other transfer of title, Borrower agrees that all proceeds payable thereunder pertaining to such Property shall thereupon vest in the purchaser at such foreclosure or in Lender or other transferee in the event of such other transfer of title.

       (c)    Borrower shall pay the premiums for the Policies (the "**Insurance Premiums**") as the same become due and payable and furnish to Lender evidence of the renewal of each of the Policies together with receipts for or other evidence of the payment of the Insurance Premiums

reasonably satisfactory to Lender.  If at any time Lender is not in receipt of written evidence all insurance required herein is in full force and effect, Lender has the right, without notice to Borrower, to take such action as Lender deems necessary to protect its interest in the Properties, including, without limitation, obtaining such insurance coverage as Lender determines. All cost incurred by Lender in connection with such action or in obtaining such insurance and keeping insurance in-force shall be paid by Borrower to Lender upon demand and, until paid, shall be secured by the Loan Documents and shall bear interest at the Default Rate.  Borrower shall deliver to Lender a complete copy of each Policy within thirty (30) days after its effective date.  Within thirty (30) days after request by Lender, Borrower shall obtain such increases in the amounts of coverage required hereunder as may be reasonably requested by Lender, taking into consideration changes in the value of money over time, changes in liability laws, changes in prudent customs and practices, and the like.  Lender agrees that the Policies may be in the form of a blanket policy provided that (i) such policy otherwise meets the requirements set forth in this Section 6.2 and (ii) Lender shall be satisfied by evidence required by Lender that the blanket policy provides the same protection as would a separate Policy insuring only such Property in accordance with the terms of this Agreement.

(d)     WARNING

IF BORROWER FAILS TO PROVIDE LENDER WITH EVIDENCE OF THE INSURANCE COVERAGE REQUIRED BY THIS AGREEMENT, INCLUDING, WITHOUT LIMITATION, FLOOD INSURANCE TO THE EXTENT EXPRESSLY REQUIRED HEREUNDER, LENDER MAY, IN ITS SOLE DISCRETION (AND WITHOUT PRIOR NOTICE TO BORROWER IF THERE IS A LAPSE IN COVERAGE), PURCHASE INSURANCE AT BORROWER'S EXPENSE TO PROTECT THE PROPERTIES; SUCH INSURANCE MAY BE PLACED BY LENDER DURING ANY STATUTORY OR OTHER REQUIRED NOTICE PERIOD.  BORROWER MAY LATER CANCEL THIS COVERAGE BY PROVIDING EVIDENCE TO LENDER THAT BORROWER HAS OBTAINED THE APPLICABLE INSURANCE COVERAGE ELSEWHERE. LENDER SHALL HAVE NO DUTY TO PLACE SUCH INSURANCE, LENDER SHALL HAVE NO LIABILITY WITH RESPECT TO THE TERMS OF SUCH INSURANCE OR THE CREDIT OF THE INSURER IF LENDER ELECTS TO PLACE SUCH INSURANCE, AND BORROWER IS NOT ENTITLED TO RELY ON THE EXISTENCE OF ANY LENDER PLACED COVERAGE EVEN IF BORROWER HAS BEEN NOTIFIED THAT LENDER HAS ELECTED TO PLACE SUCH COVERAGE.

BORROWER IS RESPONSIBLE FOR THE COST OF ANY INSURANCE PURCHASED BY LENDER, INCLUDING INSURANCE PURCHASED DURING ANY NOTICE PERIOD.  ALL ACTUAL AND REASONABLE EXPENSES INCURRED BY LENDER IN OBTAINING SUCH INSURANCE AND KEEPING IT IN EFFECT SHALL BE PAID BY BORROWER TO LENDER UPON DEMAND AND UNTIL PAID SHALL BE SECURED BY THE SECURITY INSTRUMENT AND SHALL BEAR INTEREST AT THE DEFAULT RATE.  AT LENDER'S OPTION, THE COST OF THIS INSURANCE MAY BE ADDED TO THE LOAN BALANCE.  IF THE COST IS ADDED TO THE LOAN BALANCE, THE INTEREST RATE ON THE UNDERLYING LOAN WILL APPLY TO THIS ADDED AMOUNT.  THE EFFECTIVE DATE OF THE LENDER PURCHASED COVERAGE MAY BE THE DATE THE PRIOR COVERAGE LAPSED OR THE DATE BORROWER FAILED TO PROVIDE PROOF OF COVERAGE TO LENDER.

THE COVERAGE PURCHASED BY LENDER MAY BE CONSIDERABLY MORE EXPENSIVE THAN INSURANCE BORROWER CAN OTHERWISE OBTAIN ON ITS OWN AND MAY NOT SATISFY ANY NEED FOR PROPERTY DAMAGE COVERAGE OR ANY MANDATORY LIABILITY INSURANCE REQUIREMENTS IMPOSED BY APPLICABLE LAW.

6.2.2    Casualties; Insurance Proceeds. If a Property is damaged or destroyed, in whole or in part, by fire or other casualty (in either case, a "**Casualty**"), Borrower shall give prompt written notice thereof to Lender, whether or not covered by insurance. Lender shall be named as a mortgagee/loss payee under Borrower's property insurance policies and as an additional insured under Borrower's liability insurance policies. Lender may, but shall not be obligated to make proof of loss if not made promptly by Borrower. In addition, Lender may participate in any settlement discussions with any insurance companies and Borrower shall not settle or permit any settlement of any claim without Lender's approval, (i) if an Event of Default is continuing or (ii) with respect to any Casualty in which the Loss Proceeds thereof or the costs of completing the Restoration are reasonably expected to be equal to or greater than the Restoration Threshold Amount and Borrower shall deliver to Lender all instruments required by Lender to permit such participation. Any Insurance Proceeds in connection with any Casualty (whether or not Lender elects to settle and adjust the claim or Borrower settles such claim) shall be due and payable solely to Lender and held and disbursed by Lender in accordance with the terms of this Agreement. If Borrower or any party other than Lender receives any Insurance Proceeds, Borrower shall immediately deliver such proceeds to Lender and shall endorse, and cause all such third parties to endorse, check payable therefor to the order of Lender. Borrower hereby irrevocably appoints Lender as its attorney-in-fact, coupled with an interest, to endorse any such check payable to the order of Lender. Borrower hereby releases Lender from any and all liability with respect to the settlement and adjustment by Lender of any claims in respect of any Casualty other than for actions that constitute gross negligence or intentional misconduct. Notwithstanding any Casualty, Borrower shall continue to pay the Indebtedness at the time and in the manner provided for in this Agreement.

6.2.3    Condemnation. Borrower shall promptly give Lender notice of the actual or threatened commencement of any proceeding for the Condemnation of all or any portion of a Property and shall deliver to Lender copies of any and all papers served in connection with such proceedings. Lender may participate in any such proceedings, and Borrower shall from time to time deliver to Lender all instruments requested by it to permit such participation. Borrower shall, at its expense, diligently prosecute any such proceedings, and shall consult with Lender, its attorneys and experts, and cooperate with them in the carrying on or defense of any such proceedings which is reasonably expected to involve an Award of an amount greater than the Restoration Threshold Amount. Notwithstanding any taking by any public or quasi-public authority through Condemnation or otherwise (including any transfer made in lieu of or in anticipation of the exercise of such taking), Borrower shall continue to pay the Indebtedness at the time and in the manner provided for in this Agreement and the Indebtedness shall not be reduced until any Award shall have been actually received and applied by Lender, after the deduction of expenses of collection, to the reduction or discharge of the Indebtedness. If Borrower or any party other than Lender receives any Award, Borrower shall immediately deliver such proceeds to Lender and shall endorse, and cause all such third parties to endorse, a check payable therefore to the order of Lender. Lender shall not be limited to the interest paid on the Award by the condemning authority but shall be entitled to receive out of the Award interest at the applicable rate provided herein. Loss Proceeds from a Condemnation shall be applied as follows:

(a)    If a partial Condemnation of a Property does not interfere with the use of such Property as a residential property, as determined by Lender, then, unless Lender approves the use of Loss Proceeds for the Restoration of the applicable Property and the Restoration Conditions are satisfied with respect to the Restoration of such Property, the Loss Proceeds thereof paid by the condemning authority shall be applied to the prepayment of the Indebtedness in accordance with Section 2.5.12.

(b)    If a partial Condemnation of a Property does interfere with the use of such Property as a residential property or the Restoration Conditions are not satisfied, as determined by Lender, or if there occurs a complete Condemnation of a Property (each, a "**Fully Condemned Property**"), then (i) Lender may retain any Award received by it, (ii) Borrower shall immediately deliver to Lender any Award

paid to Borrower, (iii) the Loss Proceeds of such Award shall be applied to the prepayment of the Indebtedness pursuant to Section 2.5.12 in an amount equal to the Release Price for the Fully Condemned Property, together with an amount equal to Lender's costs and fees set forth in Section 11.1.5 (collectively, the "**Fully Condemned Property Prepayment Amount**") and (iv) Borrower shall prepay the Indebtedness in an amount equal to the excess, if any, of the Fully Condemned Property Prepayment Amount over the Loss Proceeds of the Award.  Following Borrower's written request after receipt by Lender of the Fully Condemned Property Prepayment Amount, Lender shall (x) release the Fully Condemned Property from the applicable Security Instrument, **provided** that (A) Borrower has delivered to Lender a draft release (and, in the event the Security Instrument applicable to the Fully Condemned Property encumbers other Property(ies) in addition to the Fully Condemned Property, such release shall be a partial release that relates only to the Fully Condemned Property and shall not affect the Liens and security interests encumbering the other Property(ies)) in form and substance appropriate for the jurisdiction in which such Fully Condemned Property is located and shall contain standard provisions protecting the rights of Lender and (B) Borrower shall pay all costs, Taxes and expenses associated with such release (including cost to file and record the release and Lender's reasonable attorneys' fees) and (y) disburse to Borrower the Loss Proceeds paid by the condemning authority and held by Lender in excess of the Fully Condemned Property Prepayment Amount for such Property.

      6.2.4    Restoration.    The following provisions shall apply in connection with the Restoration of a Property affected by a Casualty:

      (a)    If (i) the Loss Proceeds reasonably expected to be received in connection with any single Casualty event is less than the Restoration Threshold Amount and (ii) the Restoration Conditions are satisfied, then (A) if Insurance Proceeds are paid by the insurance company directly to Borrower subsequent to delivering the undertaking required by the Restoration Conditions, such Insurance Proceeds may be retained by Borrower (for the avoidance of doubt, Insurance Proceeds received by Borrower prior to delivering the undertaking required by the Restoration Conditions shall be immediately paid to Lender as required by Section 6.2.2), (B) if Insurance Proceeds are paid by the insurance company to Lender, such Insurance Proceeds will be disbursed by Lender to Borrower and (C) Borrower shall conduct the Restoration of the affected Property in accordance with the terms of Section 6.2.4(d) and Section 6.2.4(e).

      (b)    If (i) the Loss Proceeds reasonably expected to be received in connection with any single Casualty event is greater than the Restoration Threshold Amount and (ii) the Restoration Conditions are satisfied, then (A) Borrower shall immediately deliver to Lender any Insurance Proceeds paid to Borrower and (B) Borrower shall conduct the Restoration of the affected Properties in accordance with the terms of and subject to the conditions of Section 6.2.4(d) and Section 6.2.4(e).

      (c)    If following a Casualty, the Restoration Conditions are not satisfied, as determined by Lender, then (i) Lender may retain any Insurance Proceeds received by it, (ii) Borrower shall immediately deliver to Lender any Insurance Proceeds paid to Borrower, (iii) the Loss Proceeds of such Insurance Proceeds shall be applied to the prepayment of the Indebtedness pursuant to Section 2.5.13 in an amount equal to the Release Price for the applicable Property, plus an amount equal to Lender's costs and fees set forth in Section 11.1.5 (collectively, the "**Casualty Prepayment Amount**"), (iv) Borrower shall prepay the Indebtedness in an amount equal to the excess, if any, of the Casualty Prepayment Amount over such Loss Proceeds, and (v) following Borrower's written request after receipt by Lender of the Casualty Prepayment Amount, Lender shall (x) release the affected Property from the applicable Security Instrument, **provided** that (A) Borrower has delivered to Lender a draft release (and, in the event the Security Instrument applicable to the affected Property encumber other Property(ies) in addition to the affected Property, such release shall be a partial release that relates only to the affected Property and shall not affect the Liens and security interests encumbering the other Property(ies)) in form and substance appropriate for

the jurisdiction in which such affected Properties are located and shall contain standard provisions protecting the rights of Lender and (B) Borrower shall pay all costs, Taxes and expenses associated with such release (including cost to file and record the release and Lender's reasonable attorneys' fees) and (y) disburse to Borrower the Loss Proceeds paid by the applicable insurance company and held by Lender in excess of the Casualty Prepayment Amount for such Property.

(d)    If the Restoration Conditions are satisfied then (i) Borrower shall commence the Restoration as soon as reasonably practicable (but in no event later than thirty (30) days after payment of Loss Proceeds by the insurance company or condemning authority (as applicable) with respect to the Casualty or Condemnation) and shall diligently pursue the Restoration to satisfactory completion; (ii) Borrower shall cause the affected Property and the use thereof after the Restoration to be in compliance with and permitted under all applicable Legal Requirements and such Property, after Restoration, shall be of the same character as prior to such damage or destruction; (iii) the Restoration shall be done and completed by Borrower in an expeditious and diligent fashion and in compliance with all applicable Legal Requirements and (iv) Borrower shall deliver, or cause to be delivered, to Lender a signed detailed budget approved in writing by Borrower's architect or engineer stating the entire cost of completing the Restoration, which budget shall be reasonably acceptable to Lender. If at any time the Loss Proceeds or the unused portion thereof shall not, in the opinion of Lender, be sufficient to pay in full the balance of the costs which are estimated by Lender to be incurred in connection with the completion of the Restoration, Borrower shall deposit the deficiency (the "**Loss Proceeds Deficiency**") with Lender before any further use or disbursement of the Loss Proceeds shall be made. The Loss Proceeds Deficiency deposited with Lender shall be disbursed for costs actually incurred in connection with the Restoration on the same conditions applicable to the disbursement of the Loss Proceeds pursuant to Section 6.2.4(e), and until so disbursed, shall constitute additional security for the Obligations.

(e)    If the Restoration Conditions are satisfied, then Lender may impose such reasonable requirements on the use or expenditure of Loss Proceeds as Lender may require, in accordance with Lender's standard construction lending practices or in any other manner approved by Lender. Without limiting the generality of the foregoing, Lender may, at its option, condition disbursement of Loss Proceeds on (i) delivery of a Renovation Certificate satisfactory to Lender, (ii) completion of a property inspection reasonably satisfactory to Lender, (iii) Lender's approval of plans and specifications of an architect satisfactory to Lender; (iv) the identity, experience, reputation and financial condition of contractors and subcontractors; (v) contractor's cost estimates; (vi) architect's certificates; (vii) waivers of liens; (viii) sworn statements of mechanics and materialmen and such other evidence of costs; (ix) percentage completion of construction; (x) frequency of disbursements; (xi) application of payments; (xii) customary retainage and satisfaction of liens, in each case, as Lender may reasonably require. The excess, if any, of the Loss Proceeds and the remaining balance, if any, of the Loss Proceeds Deficiency deposited with Lender after the Restoration has been completed, and the receipt by Lender of evidence satisfactory to Lender that all costs incurred in connection with the Restoration have been paid in full, shall be remitted by Lender to Borrower, **provided** no Event of Default shall have occurred and shall be continuing.

6.3    Records. Borrower shall keep and maintain full and accurate accounts and records of Borrower's operations with respect to the Obligations according to sound accounting practices consistently applied.

6.4    Reporting Requirements.

6.4.1    Borrower shall deliver to Lender, within ten (10) Business Days of Lender's request therefor such financial statements relating to Borrower and each Loan Party reasonably required by Lender, in Lender's reasonable discretion. Such financial statements shall be certified by an authorized officer, manager or member of Borrower and such other Loan Parties, as applicable.

6.4.2    Borrower shall deliver to Lender, within ten (10) Business Days of Lender's request therefor, a rent roll for the Properties, containing such information reasonably requested by Lender, certified by Borrower as true and correct.

6.4.3    Borrower shall deliver to Lender, within ten (10) Business Days of Lender's request therefor, copies of any requested Tax, HOA or condo assessment or insurance bills, statements or invoices received by Borrower with respect to the Properties together with evidence satisfactory to Lender of payment in full of same on or before the applicable due date.

6.4.4    Borrower shall, as soon as reasonably practicable after request by Lender, furnish or cause to be furnished to Lender in such manner and in such detail as may be reasonably requested by Lender, such evidence of compliance with the Loan Documents, copies of Leases and such additional information, documents, records or reports as may be reasonably requested with respect to any Property or the conditions or operations, financial or otherwise, of the Restricted Parties.

6.5    Environmental Matters.  As soon as possible, and in any event within ten (10) days after receipt by Borrower, Borrower shall provide Lender with a copy of (a) any notice or claim to the effect that the Borrower or any other Loan Party, or any of their respective Affiliates, is or may be liable to any Person as a result of the release of any toxic or hazardous waste or substance into the environment, and (b) any notice alleging any violation of any federal, state or local environmental, health or safety law or regulation by the Borrower or any Loan Party, or any of their respective Affiliates.

6.6    Notice of Litigation; Material Event.  Borrower will give prompt written notice (containing reasonable detail) to Lender of (a) any litigation or governmental proceeding pending or threatened in writing by or against Borrower, any other Loan Party or any Property, (b) any Default or Event of Default, (c) any default under any of the Property Documents, (d) any Event of Bankruptcy occurs in respect of Borrower, any Loan Party or an Affiliate of any of the foregoing, and (e) any other circumstance or event that could reasonably be expected to result in a Material Adverse Effect.

6.7    General Covenants.

6.7.1    Compliance with Loan Documents.  Borrower will comply with all conditions of this Agreement, whether or not an Advance under the Loan is requested.  It will comply and, to the extent it is able, will cause compliance by parties thereto, with all other Loan Documents and the Property Documents.

6.7.2    Representations and Warranties.  Until the occurrence of the Outside Advance Date and payment and performance in full of all of the Obligations, the representations and warranties contained in this Agreement and the other Loan Documents shall remain true and complete.

6.7.3    Maintenance of Existence; Trade Names.  Borrower and each of the other Loan Parties that is not an individual shall maintain and preserve its existence and all rights and franchises material to its business.  Borrower does not and will not use any trade name and has not and will not do business under any name other than its actual name set forth herein.  The principal place of business of Borrower is the address set forth in Section 10.1, and Borrower has no other place of business.

6.7.4    Further Assurances.  Borrower shall execute and deliver from time to time, promptly after any request by Lender, any and all instruments, agreements and documents, and shall take such other action, as may be necessary or desirable in the opinion of Lender to maintain, perfect or insure the security of Lender provided for herein and in the other Loan Documents, and Borrower shall pay all fees and expenses (including attorneys' fees) related thereto.

   6.7.5 <u>Keeping Loan Parties Informed</u>. Borrower shall at all times keep each of the Loan Parties informed of Borrower's financial condition and business operations, the condition and use of each Property, and all other circumstances which affect Borrower's ability to pay or perform the Obligations.

   6.7.6 <u>Actions Affecting Property</u>. Borrower shall appear in and contest any action or proceeding purporting to affect any Property or any other Collateral or the rights or powers of Lender and shall pay all costs and expenses (including costs of evidence of title, litigation, and attorneys' fees) in any such action or proceeding.

   6.8 <u>Special Purpose</u>. Borrower hereby represents, warrants and covenants that as of the date hereof and until such time as the Outside Advance Date has occurred and all of the Obligations have been paid and performed in full:

   6.8.1 Borrower (i) has been, is, and will be organized solely for the purpose of acquiring, renovating, rehabilitating, owning, holding, selling, leasing, transferring, exchanging, managing and operating the Properties, entering into and performing its obligations under the Loan Documents to which it is a party, refinancing the Properties in connection with a permitted repayment of the Loan, and transacting lawful business that is incident, necessary and appropriate to accomplish the foregoing, and (ii) has not owned, does not own, and will not own any asset or property other than (A) the Properties, and (B) incidental personal property necessary for the ownership or operation of the Properties.

   6.8.2 Borrower shall conduct and operate its business as presently conducted and operated and has not engaged and will not engage in any business other than the acquisition, renovation, rehabilitation, ownership, management and operation of the Properties.

   6.8.3 Borrower has not and will not enter into any contract or agreement with any Affiliate of Borrower, any constituent party of Borrower or any Affiliate of any constituent party, except upon terms and conditions that are intrinsically fair and substantially similar to those that would be available on an arm's length basis with third parties other than any such party.

   6.8.4 Borrower has not incurred and will not incur any indebtedness other than Permitted Indebtedness. No indebtedness of Borrower other than the Indebtedness may be secured (senior, subordinate or *pari passu*) by the Collateral.

   6.8.5 Borrower has not made and will not make any loans or advances to any third party (including any Affiliate or constituent party), and shall not acquire obligations or securities of its Affiliates.

   6.8.6 Borrower has been, is, and intends to remain Solvent and Borrower has paid and intends to pay its debts and liabilities (including, as applicable, shared personnel and overhead expenses) from its assets; provided that the foregoing shall not require any direct or indirect member, partner or shareholder of Borrower to make any additional capital contributions to Borrower.

   6.8.7 Borrower has done or caused to be done and will do all things necessary to observe organizational formalities and preserve its existence, and Borrower will not amend, modify or terminate its Organizational Documents without the prior written consent of Lender.

   6.8.8 Borrower has maintained and will maintain all of its books, records, financial statements and bank accounts separate from those of its Affiliates and any other Person. Borrower's assets will not be listed as assets on the financial statement of any other Person, provided, however, that Borrower's assets may be included in a consolidated financial statement of its Affiliates provided that (i) appropriate notation shall be made on such consolidated financial statements to indicate the separateness

of Borrower and such Affiliates and to indicate that Borrower's assets and credit are not available to satisfy the debts and other obligations of such Affiliates or any other Person, and (ii) such assets shall be listed on Borrower's own separate balance sheet. Except to the extent that Borrower is treated as a "disregarded entity" for tax purposes and is not required to file tax returns under applicable law, Borrower will file its own tax returns (to the extent that Borrower is required to file any such tax returns) and will not file a consolidated, combined, or unitary income tax return (as provided for in IRC Sec. 1501 or any applicable state or local law) with any other Person. Borrower has maintained and shall maintain its books, records, resolutions and agreements as official records.

6.8.9    Borrower has been, will be, and at all times has held and will hold itself out to the public as, a legal entity separate and distinct from any other entity (including any Affiliate of Borrower or member, manager, partner or shareholder in Borrower, or any constituent party of Borrower), shall correct any known misunderstanding regarding its status as a separate entity, shall conduct business in its own name, shall not identify itself or any of its Affiliates as a division or department or part of the other and shall maintain and utilize separate stationery, invoices and checks bearing its own name.

6.8.10    Borrower has maintained and intends to maintain adequate capital for the normal obligations reasonably foreseeable in a business of its size and character and in light of its contemplated business operations; provided that the foregoing shall not require any direct or indirect member, partner or shareholder of Borrower to make any additional capital contributions to Borrower.

6.8.11    Neither Borrower nor any constituent party has sought or will seek or effect the liquidation, dissolution, winding up, consolidation or merger, in whole or in part, of Borrower or transfer or otherwise dispose of all or substantially all of its assets.

6.8.12    Borrower has not and will not commingle the funds and other assets of Borrower with those of any Affiliate or constituent party or any other Person, and has held and will hold all of its assets in its own name.

6.8.13    Borrower has and will maintain its assets in such a manner that it will not be costly or difficult to segregate, ascertain or identify its individual assets from those of any Affiliate or constituent party or any other Person.

6.8.14    Borrower has not and will not assume or guarantee or become obligated for the debts of any other Person and Borrower has and will not hold itself out to be responsible for or have its credit available to satisfy the debts or obligations of any other Person, except, in each case, as contemplated by this Agreement or the other Loan Documents.

6.8.15    Borrower has paid and will pay the salaries of its own employees (if any) from its own funds and maintain a sufficient number of employees (if any) in light of its contemplated business operations; provided that the foregoing shall not require any direct or indirect member, partner or shareholder of Borrower to make any additional capital contributions to Borrower.

6.9    Leasing.

6.9.1    Provided that no Event of Default is continuing, renewals, amendments and modifications of existing Leases and proposed leases, shall not be subject to the prior approval of Lender provided the proposed lease or Lease as amended or modified (a) shall be a valid enforceable Lease that complies with all applicable Legal Requirements, (b) shall provide for net effective rental rates comparable to existing local market rates, (c) shall have an initial term (together with all renewal options) of not greater than one (1) year, (d) shall provide for automatic self-operative subordination to the Security Instrument

securing the applicable Property and, at Lender's option, (i) attornment to Lender and (ii) the unilateral right by Lender, at the option of Lender, to subordinate the liens of such Security Instrument to the Lease, (e) shall not contain any option to purchase or any right of first refusal to purchase all or any portion of a Property, (f) requires monthly rent payments, (g) complies with all regulations promulgated by the Office of Foreign Assets Control of the United States Department of the Treasury and (h) shall be in writing and on terms and conditions which are consistent with then existing market conditions for leases in the same market, and of similar size and with similar tenants, as such Lease and negotiated on arm's length terms with a Person who is not an Affiliate Borrower or an Affiliate of or related to any Guarantor. Borrower shall deliver to Lender copies of all Leases which are entered into pursuant to the preceding sentence together with Borrower's certification that it has satisfied all of the conditions of the preceding sentence within ten (10) days after Lender's written request.

6.9.2    Borrower (a) shall observe and perform the material obligations imposed upon the lessor under the Leases and shall not do or permit anything to impair the value of the Leases as security for the Indebtedness; (b) shall promptly send copies to Lender of all notices of default that Borrower shall send or receive under any Lease; (c) shall enforce, in accordance with commercially reasonable practices for properties similar to the applicable Property, the terms, covenants and conditions in the Leases to be observed or performed by the lessees; (d) shall not collect any of the Rents more than one (1) month in advance (other than security deposits); (e) shall not execute any other assignment of lessor's interest in the Leases or the Rents (except in favor Lender as contemplated by the Loan Documents); (f) shall not modify any Lease in a manner inconsistent with the Loan Documents; (g) shall not convey or transfer or suffer or permit a conveyance or transfer of any Property so as to effect a merger of the estates and rights of, or a termination or diminution of the obligations of, lessees under Leases; (h) shall not consent to any assignment of or subletting under any Lease without the prior consent of Lender, which, with respect to a subletting, may not, so long as no Event of Default is continuing, be unreasonably withheld or delayed; and (i) shall not cancel or terminate any Lease or accept a surrender thereof (except in the exercise of Borrower's commercially reasonable judgment in connection with a tenant default) without the prior consent of Lender, which consent shall not, so long as no Event of Default is continuing, be unreasonably withheld or delayed.

6.10    Prohibited Persons. Borrower shall not (i) knowingly conduct any business, or engage in any transaction or dealing, with any Embargoed Person, including the making or receiving of any contribution of funds, goods, or services, to or for the benefit of a Embargoed Person, or (ii) knowingly engage in or conspire to engage in any transaction that evades or avoids, or has the purpose of evading or avoiding, or attempts to violate, any Federal Trade Embargo. Borrower shall cause the representation set forth in Section 5.14 to remain true and correct at all times.

6.11    Plan Assets. Borrower will do, or cause to be done, all things necessary to ensure that it will not be deemed to hold Plan Assets at any time.

6.12    Taxes, Impositions and Other Claims. Borrower shall pay and discharge all Taxes and Impositions levied upon it, its income and its assets as and when such Taxes and Impositions are due and payable, as well as all lawful claims for labor, materials and supplies or otherwise. Borrower shall file all federal, state and local tax returns and other reports that it is required by law to file. Notwithstanding the foregoing, after prior written notice to Lender, Borrower may contest by appropriate legal proceedings conducted in good faith and with due diligence, the amount or validity of any such Taxes, Impositions and claims and, in such event, may permit such Taxes, Impositions and claims being so contested to remain unsatisfied or unpaid during such contest so long as (a) no Event of Default shall exist, (b) such proceeding shall be permitted under and conducted in accordance with all applicable Legal Requirements, (c) no Property or other Collateral nor any part thereof or interest therein will be in danger of being sold, forfeited, terminated, canceled or lost, as determined by Lender, (d) enforcement of the contested such Taxes, Impositions and claims is effectively stayed for the entire duration of such contest, (e) any such Taxes,

Impositions and claims determined to be due, together with any interest or penalties thereon, shall be promptly paid as required after final resolution of such contest, (f) Borrower has set aside on its books adequate reserves in accordance with GAAP, (g) Borrower shall deliver to Lender cash security in an amount determined by Lender to be sufficient to insure the payment of such Taxes, Impositions and other claims, together with all interest and penalties thereon, (h) failure to pay such Taxes, Impositions and other claims will not, as determined by Lender, present an unreasonable risk of any civil or criminal liability to Lender or any Material Adverse Effect or Individual Material Adverse Effect, (i) such contest shall not affect the ownership, use or occupancy of any Property or other Collateral, (j) if any such claim results in a workers', mechanics' or other similar Lien on any Property, Borrower shall be in compliance with the provisions of clause (v) of the definition of Permitted Exceptions, and (k) Borrower shall, upon request by Lender, give Lender prompt notice of the status of such proceedings and/or confirmation of the continuing satisfaction of the conditions set forth above.  Notwithstanding the foregoing, Borrower shall comply with all Legal Requirements and pay any contested Taxes, Impositions and other amounts (or, if cash or other security has been provided, Lender may pay over any such cash or other security held by Lender to the claimant) if, in the Lender's reasonable judgment, any of the foregoing conditions is not satisfied at any time or there shall be any danger of the Lien of any Security Instrument being extinguished.  Borrower shall promptly pay for all utility services provided to each Property as they become due and payable (other than any such utilities, which are, pursuant to the terms of any Lease, required to be paid by the tenant thereunder directly to the applicable service provider).

## ARTICLE 7
## NEGATIVE COVENANTS

As a material inducement to Lender to execute this Agreement and to make any Advance, Borrower hereby covenants as set forth in this Article 7, which covenants shall remain in effect until the occurrence of the Outside Advance Date and payment and performance in full of all of the Obligations.

7.1     Fundamental Changes.  Neither Borrower nor any other Loan Party (that is not a natural person) shall dissolve or liquidate or become a party to any merger or consolidation.

7.2     Prohibited Transfers.  Borrower shall not directly or indirectly make, suffer or permit the occurrence of any Transfer.

7.3     Organizational Documents.  Borrower will not amend, modify or terminate its Organizational Documents without the prior written consent of Lender.

7.4     Government Regulation.  Borrower shall not (a) be or become subject at any time to any law, regulation, or list of any Governmental Authority (including, without limitation, the U.S. OFAC Lists) that prohibits or limits Lender from making any Advance or extension of credit to Borrower or from otherwise conducting business with Borrower, or (b) fail to provide documentary and other evidence of Borrower's identity as may be requested by Lender at any time to enable Lender to verify Borrower's identity or to comply with any applicable law or regulation, including, without limitation, Section 326 of the USA Patriot Act of 2001, 31 U.S.C. Section 5318.

7.5     Business Purpose; Non-Owner Occupied. The Indebtedness is for the sole purpose of acquiring or financing Eligible Property as a business or commercial investment, and all proceeds of the Loan shall be used solely for said business or commercial investment purpose and not for personal, family or household purposes.  No proceeds of the Loan will be used for the purchase of any security within the meaning of the Securities Exchange Act of 1934, as amended, or any regulation issued pursuant thereto, including without limitation, Regulations U, T and X of the Board of Governors of the Federal Reserve System. Each Property has been or will be acquired and owned by Borrower for investment purposes only

and will at no time be occupied by Borrower, any Loan Party or any Interest Owner, or by any of their respective affiliates, family members or relatives or by any Person related to any Loan Party or any Interest Owner that is a natural person. Borrower shall not purchase or own any real property other than the Properties and shall not enter into any line of business other than the ownership and operation of the Properties, or make any material change in the scope or nature of its business objectives, purposes or operations, or undertake or participate in activities other than the continuance of its present business.

7.6  Other Indebtedness. Borrower shall not directly or indirectly create, incur or assume any indebtedness other than Permitted Indebtedness.

7.7  No Liens. Without Lender's prior written consent, Borrower shall not create, incur, assume, permit or suffer to exist any Lien on all or any portion of any Property owned by Borrower (and whether or not encumbered by a Security Instrument) or any direct or indirect legal or beneficial ownership interest in Borrower, except liens in favor of Lender and Permitted Exceptions.

7.8  ERISA. Borrower shall not maintain or contribute to, or agree to maintain or contribute to, or permit any ERISA Affiliate of Borrower (as applicable) to maintain or contribute to or agree to maintain or contribute to, any employee benefit plan (as defined in Section 3(3) of ERISA) subject to Title IV or Section 302 of ERISA or Section 412 of the Code. Borrower shall not engage in a non-exempt prohibited transaction under Section 406 of ERISA, Section 4975 of the Code, or substantially similar provisions under federal, state or local laws, rules or regulations or in any transaction that would cause any obligation or action taken or to be taken hereunder (or the exercise by Lender of any of its rights under any other Loan Document) to be a non-exempt prohibited transaction under such provisions.

## ARTICLE 8
## EVENTS OF DEFAULT AND REMEDIES

8.1  Events of Default. The occurrence of any one or more of the following shall constitute an "Event of Default" under this Agreement:

8.1.1  Any portion of the Indebtedness is not paid when due;

8.1.2  Any of the Taxes or Impositions are not paid prior to delinquency;

8.1.3  Any of the Policies are not kept in full force and effect, or certified copies thereof are not delivered to Lender within ten (10) days of written request;

8.1.4  Any certification, representation or warranty made by Borrower or any other Loan Party herein or in any other Loan Document, or in any report, certificate, financial statement or other instrument, agreement or document furnished by Borrower or any other Loan Party in connection with any Loan Document, shall be false or misleading in any material respect as of the date the representation or warranty was made;

8.1.5  An Event of Bankruptcy shall occur with respect to any Restricted Party;

8.1.6  An Event of Default as defined or described elsewhere in this Agreement or in any other Loan Document occurs;

8.1.7  A default occurs under any term, covenant or provision set forth herein or in any other Loan Document which specifically contains a notice requirement or grace period and such notice has been given and such grace period has expired;

8.1.8    Borrower breaches any covenant contained in Section 6.8;

8.1.9    Any litigation or proceeding is commenced before any Governmental Authority against or affecting Borrower any other Loan Party, or any Property that if adversely determined would have a Material Adverse Effect or an Individual Material Adverse Effect, as determined by Lender in its sole judgment;

8.1.10    A final judgment or decree for monetary damages or a monetary fine or penalty in excess of $5,000.00 is entered against Borrower by any Governmental Authority;

8.1.11    Commencement of any action or proceeding which seeks as one of its remedies the dissolution of Borrower or any other Loan Party or a final judgment is entered dissolving Borrower or any other Loan Party;

8.1.12    All or any material part of the property of Borrower is attached, levied upon, garnished or otherwise seized by legal process, and such attachment, levy, garnishment or seizure is not quashed, stayed, or released within twenty (20) days of the date thereof;

8.1.13    Any Transfer in violation of Section 7.2 occurs;

8.1.14    Any uninsured damage to or loss, theft or destruction of any of the Improvements in excess of $5,000 occurs;

8.1.15    Borrower or any Person on behalf of Borrower, shall claim or assert that the Loan Documents are not legal, valid and binding agreements enforceable against Borrower in accordance with their respective terms; or the Loan Documents shall in any way be terminated (except in accordance with their terms) or become or be judicially declared ineffective or inoperative or shall in any way cease to give or provide the respective liens, security interests, rights, titles, interests, remedies, powers or privileges intended to be created thereby;

8.1.16    Any Person shall obtain an order or decree in any court of competent jurisdiction (a) enjoining or delaying the construction of any Improvements; or (b) enjoining or prohibiting Lender or Borrower from carrying out the terms and conditions of any of the Loan Documents; in either case, if such order or decree is not vacated or stayed within ten (10) days after the filing thereof;

8.1.17    Formal charges are filed against Borrower, any other Loan Party or any other Person under any federal, state, or municipal statute, law, or ordinance for which forfeiture of any of the Collateral is a potential penalty, or any Collateral is in fact so seized or forfeited;

8.1.18    Any Loan Document shall fail to be in full force and effect or to convey the Liens, rights, powers and privileges purported to be created thereby; any Restricted Party shall disaffirm or contest in writing such effectiveness; or a default by any Restricted Party or any of their respective Affiliates shall occur under any of the other Loan Documents, in each case, beyond the expiration of any applicable cure period;

8.1.19    Any Loan Party that is a natural person dies or is incapacitated or any Loan Party that is not a natural person is terminated, revoked or dissolved;

8.1.20    Any failure on the part of Borrower to duly observe or perform any of its covenants set forth in Section 5.14 or Section 6.10;

8.1.21    Any failure shall occur in the due performance or observance by Borrower of any term, covenant or agreement contained in Section 6.11 or Article 7;

8.1.22    The appearance of defective workmanship or materials in the Renovation Work at any Renovation Property, which deviations or defects are not corrected or substantially corrected within ten (10) Business Days after receipt of written notice of such deviations or defects from Lender to Borrower;

8.1.23    The Renovation Work for any Renovation Property is (i) discontinued due to acts or matters within Borrower's control for a period of ten (10) or more consecutive days; (ii) not carried on with reasonable dispatch; (iii) not Completed by the Completion Date for such Renovation Work;

8.1.24    Borrower is unable to satisfy any condition of Borrower's right to receive Disbursements from the Renovation Reserve for such Renovation Property for a period in excess of thirty (30) days after Lender's refusal to make any further Disbursements;

8.1.25    Any Permit for all or any portion of a Renovation Property shall be removed or suspended for ten (10) days or longer, or if, after Completion of the Renovation Work for a Renovation Property and for all Properties that are not Renovation Properties, Borrower fails to comply with any Legal Requirements pertaining to such Property, such that an occupancy permit is or would be denied due to such condition or circumstance and such condition or circumstance remains unchanged and uncured upon the expiration of twenty (20) days after the occurrence thereof; or

8.1.26    A default shall be continuing under any of the other terms, covenants or conditions of this Agreement or any other Loan Document not otherwise specified in this Section 8.1, for ten (10) days after notice to Borrower from Lender, in the case of any default which can be cured by the payment of a sum of money, or for thirty (30) days after notice from Lender in the case of any other default.

8.2    Remedies.

8.2.1    Advances; Renovation Reserve Disbursements.  Upon the occurrence and during the continuance of a Default or an Event of Default, at Lender's election, in its sole and absolute discretion, Borrower shall have no right to request or obtain further Advances and/or Lender shall have the right to immediately terminate any further Disbursements from the Renovation Reserve established for one or more Renovation Properties, and from time to time apply all or any part of the undisbursed funds in the Renovation Reserve towards the payment of accrued interest under the Note or towards any other obligations of Borrower under this Agreement or under the other Loan Documents, in such order, proportion and priority as Lender may determine in its sole and absolute discretion.

8.2.2    Acceleration; Remedies.  During the continuance of an Event of Default, Lender may by written notice to Borrower, in addition to any other rights or remedies available pursuant to the Loan Documents, at law or in equity, declare by written notice to Borrower all or any portion of the Indebtedness to be immediately due and payable, whereupon all or such portion of the Indebtedness shall so become due and payable, and Lender may enforce or avail itself of any or all rights or remedies provided in the Loan Documents against Borrower and the Collateral (including all rights or remedies available at law or in equity); provided, however, that, notwithstanding the foregoing, if an Event of Default specified in Section 8.1.5 shall occur, then the Indebtedness shall immediately become due and payable without the giving of any notice or other action by Lender.

8.2.3    Completion of Renovation Work.  Lender, and its agents, may enter on any Renovation Property and complete the Renovation Work in accordance with the Statement of Proposed Renovations, with such changes as Lender may decide from time to time and in its judgment deem

appropriate, all at the risk and expense of Borrower. Lender shall have the right at any time to discontinue any work commenced, in respect to the Renovation Work or to change any course of action undertaken by it, and not be bound by any limitations or requirements of time, whether set forth in this Agreement or otherwise. Lender shall have the right and power (but shall not be obligated) to assume any renovation contract made by or on behalf of Borrower in any way relating to the Renovation Work and to take over and use all or any part of the labor, materials, supplies, and equipment contracted for by or on behalf of Borrower whether or not previously incorporated into the Improvements, all in the discretion of Lender. In connection with any work of renovation undertaken by Lender pursuant to the provisions of this Section 8.2.3, Lender may (i) engage builders, contractors, architects, engineers, and others for the purpose of furnishing labor, materials, and equipment in connection with the work of renovation; (ii) pay, settle, or compromise all bills or claims that may become liens against such Property or that have been or may be incurred in any manner in connection with the Improvements or for the discharge of liens, encumbrances, or defects in title of such Property; and (iii) take such other action, including the employment of watchmen to protect the Improvements, or refrain from taking action under this Agreement as Lender may in its discretion determine from time to time. Borrower shall be liable to Lender for all reasonable sums paid or incurred for the Renovation Work, whether the same shall be paid or incurred pursuant to the provisions of this Section 8.2.3 or otherwise, and all payments made or liabilities incurred by Lender under this Agreement of any kind shall be paid by Borrower to Lender on demand, with interest at the Default Rate, and all of such payments shall be deemed and shall constitute advances under this Agreement and be secured by the Loan Documents. For the purpose of carrying out the provisions and exercising the rights, powers, and privileges granted herein, Borrower unconditionally and irrevocably constitutes and appoints Lender its true and lawful attorney-in-fact to enter into such contracts, perform such acts, and incur such liabilities as are referred to in this Section 8.2.3 in the name and on behalf of Borrower. This power of attorney is coupled with an interest.

        8.2.4    Remedies Cumulative. Upon the occurrence of an Event of Default, all or any one or more of the rights, powers, privileges and other remedies available to Lender against Borrower under the Loan Documents or at law or in equity may be exercised by Lender at any time and from time to time, whether or not all or any of the Indebtedness shall be declared, or be automatically, due and payable, and whether or not Lender shall have commenced any foreclosure proceeding or other action for the enforcement of its rights and remedies under any of the Loan Documents. Any such actions taken by Lender shall be cumulative and concurrent and may be pursued independently, singly, successively, together or otherwise, at such time and in such order as Lender may determine in its discretion, to the fullest extent permitted by law, without impairing or otherwise affecting the other rights and remedies of Lender permitted by law, equity or contract or as set forth in the Loan Documents. Without limiting the generality of the foregoing, Borrower agrees that if an Event of Default is continuing, (i) to the extent permitted by applicable law, Lender is not subject to any "one action" or "election of remedies" or "anti-deficiency" law or rule, and (ii) all liens and other rights, remedies or privileges provided to Lender shall remain in full force and effect until the Obligations have been indefeasibly paid and performed in full. To the extent permitted by applicable law, nothing contained in any Loan Document shall be construed as requiring Lender to resort to any particular Collateral, any particular Property or any portion of any Property for the satisfaction of any of the Indebtedness in preference or priority to any other portion, and Lender may seek satisfaction out of all or less than all of the Collateral including all or less than all of the Properties or any part of any Property, and in such preference, order or priority, as determined by Lender in its sole and absolute discretion.

        8.2.5    Enforcement of Remedies. Lender may enforce any and all rights and remedies under the Loan Documents, any one or more of the Security Instruments and all other documents delivered in connection therewith and against any or all Collateral and may pursue all rights and remedies available at law or in equity. If Lender forecloses on any Collateral, Lender shall apply all net proceeds of such foreclosure to repay the Indebtedness, in such order, priority and proportion as Lender shall determine, the

Indebtedness shall be reduced to the extent of such net proceeds and the remaining portion of the Indebtedness shall remain outstanding and secured by the remaining Collateral. At the election of Lender, the Note shall be deemed to have been accelerated only to the extent of the net proceeds actually received by Lender with respect to the Properties and applied in reduction of the Indebtedness.

8.2.6    Delay. No delay or omission to exercise any remedy, right or power accruing upon an Event of Default, or the granting of any indulgence or compromise by Lender shall impair any such remedy, right or power hereunder or be construed as a waiver thereof, but any such remedy, right or power may be exercised from time to time and as often as may be deemed expedient. A waiver of one Default or Event of Default shall not be construed to be a waiver of any subsequent Default or Event of Default or to impair any remedy, right or power consequent thereon. Notwithstanding any other provision of this Agreement, Lender reserves the right to seek a deficiency judgment or preserve a deficiency claim in connection with the foreclosure of any Security Instrument or any of the other Loan Documents to the extent necessary to foreclose on all or any portion of any Property, the Rents, or any other Collateral.

8.2.7    Protective Advances; Right to Cure. During the continuance of any Event of Default, Lender may, but without any obligation to do so and without notice to or demand on Borrower and without releasing Borrower from any obligation hereunder, make Protective Advances and otherwise take any action to cure such Event of Default. Lender may enter upon any or all of the Properties upon reasonable notice to Borrower for such purposes or appear in, defend, or bring any action or proceeding to protect its interest in the Collateral or to foreclose any one or more of the Security Instruments and the other Loan Documents or collect the Indebtedness. The costs and expenses incurred by Lender in exercising rights under this Section (including reasonable attorneys' fees), with interest at the Default Rate for the period after notice from Lender that such costs or expenses were incurred to the date of payment to Lender, shall constitute a portion of the Indebtedness, shall be secured by the Security Instruments and other Loan Documents (excluding the Guaranty) and shall be due and payable to Lender upon demand therefor.

8.2.8    Preferences; Waiver of Marshalling of Assets. Lender shall have no obligation to marshal any assets in favor of Borrower or any other Person or against or in payment of any or all of the Obligations of Borrower pursuant to the Loan Documents. Lender shall have the continuing and exclusive right to apply or reverse and reapply any and all payments by Borrower to any portion of the Obligations of Borrower hereunder and under the Loan Documents. If any payment to Lender is subsequently invalidated, declared to be fraudulent or preferential, set aside or required to be repaid to a trustee, receiver or any other party under any bankruptcy law, state or federal law, common law or equitable cause, then the Obligations hereunder or portion thereof intended to be satisfied by such payment shall be revived and continue in full force and effect, as if such payment had not been made. Borrower hereby waives any legal right otherwise available to Borrower that would require the sale of any Collateral either separate or apart from other Collateral, or require Lender to exhaust its remedies against any Collateral before proceeding against any other Collateral. Without limiting the foregoing, to the fullest extent permitted by law, Borrower hereby waives and shall not assert any rights in respect of a marshalling of Collateral, a sale in the inverse order of alienation, any homestead exemption, the administration of estates of decedents, or any other matters whatsoever to defeat, reduce or affect the right of Lender under the Loan Documents to a sale of the Collateral or any portion thereof in any sequence and any combination as determined by Lender.

8.2.9    Remedies of Borrower. If a claim is made that Lender or its agents have unreasonably delayed acting or acted unreasonably in any case where by law or under any Loan Document any of such Persons has an obligation to act promptly or reasonably, Borrower agrees that no such Person shall be liable for any monetary damages, and Borrower's sole remedy shall be limited to commencing an action seeking specific performance, injunctive relief and/or declaratory judgment; provided, however, that the forgoing shall not prevent Borrower from obtaining a monetary judgment against Lender for actual out of pocket losses incurred by Borrower if it is determined by a court of competent jurisdiction that Lender