**Law Offices of Avrum J. Rosen, PLLC**
38 New Street
Huntington, New York 11743
(631) 423-8527
Avrum J. Rosen, Esq.
Nico G. Pizzo, Esq.

*Attorneys for the Debtor and Debtor-in-Possession*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In re:                                                        Chapter 11

FRALEG GROUP, INC.,                                           Case No.: 22-41410-jmm

                           Debtor.
-----------------------------------------------------------X

## DEBTOR'S DISCLOSURE STATEMENT

## DISCLAIMER

THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS INCLUDED HEREIN FOR THE PURPOSES OF SOLICITING ACCEPTANCES OF THE CHAPTER 11 PLAN OF REORGANIZATION OF FRALEG GROUP, INC., THE DEBTOR AND DEBTOR-IN-POSSESSION, DATED SEPTEMBER 15, 2022, AS MAY BE AMENDED, MODIFIED OR SUPPLEMENTED FROM TIME TO TIME (THE "PLAN"), AND MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE PLAN. A COPY OF THE PLAN IS ANNEXED HERETO AS EXHIBIT "1". NO SOLICITATION OF VOTES TO ACCEPT OR REJECT THE PLAN MAY BE MADE EXCEPT PURSUANT TO SECTION 1125 OF TITLE 11 OF THE UNITED STATES CODE.

**THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE COURT. THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE COURT.**

**ALL HOLDERS OF CLAIMS ARE ADVISED AND ENCOURAGED TO READ THIS DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. THE PLAN SUMMARIES AND STATEMENTS MADE IN THIS DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN AND THE EXHIBITS ANNEXED TO THIS DISCLOSURE STATEMENT. IN THE EVENT OF ANY CONFLICTS BETWEEN THE DESCRIPTIONS SET FORTH IN THIS DISCLOSURE STATEMENT AND THE TERMS OF THE PLAN, THE TERMS OF THE PLAN SHALL GOVERN.**

THIS DISCLOSURE STATEMENT WAS PREPARED IN ACCORDANCE WITH SECTION 1125 OF TITLE 11 OF THE UNITED STATES CODE AND RULE 3016(b) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE, AND NOT NECESSARILY IN ACCORDANCE WITH OTHER NON-BANKRUPTCY LAW.

CERTAIN STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT, INCLUDING WITH RESPECT TO PROJECTED CREDITOR RECOVERIES AND OTHER FORWARD-LOOKING STATEMENTS ARE BASED ON ESTIMATES AND ASSUMPTIONS. THERE CAN BE NO ASSURANCE THAT SUCH STATEMENTS WILL BE REFLECTIVE OF ACTUAL OUTCOMES. FORWARD-LOOKING STATEMENTS ARE PROVIDED IN THIS DISCLOSURE STATEMENT PURSUANT TO THE SAFE HARBOR ESTABLISHED UNDER THE PRIVATE SECURITIES REFORM ACT OF 1995 AND SHOULD BE EVALUATED IN THE CONTEXT OF ESTIMATES, ASSUMPTIONS, UNCERTAINTIES, AND RISKS DESCRIBED HEREIN.

AS TO CONTESTED MATTERS AND OTHER ACTIONS OR THREATENED ACTIONS, THIS DISCLOSURE STATEMENT WILL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS. THIS DISCLOSURE STATEMENT ALSO WILL NOT BE CONSTRUED TO BE CONCLUSIVE ADVICE ON THE TAX, SECURITIES, OR OTHER LEGAL EFFECTS OF THE PLAN AS TO HOLDERS OF CLAIMS AGAINST, OR EQUITY INTERESTS IN, THE DEBTOR. EACH HOLDER OF A CLAIM OR EQUITY INTEREST IS URGED TO CONSULT WITH ITS OWN ADVISORS WITH RESPECT TO ANY TAX, SECURITIES, OR OTHER LEGAL EFFECTS OF THE PLAN ON SUCH HOLDER'S CLAIM OR EQUITY INTEREST.

THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN, AND THE DELIVERY OF THIS DISCLOSURE STATEMENT WILL NOT CREATE AN IMPLICATION THAT THERE HAS BEEN NO CHANGE IN THE INFORMATION STATED SINCE THE DATE HEREOF.

# I
# INTRODUCTION

On June 17, 2022 (the "Filing Date"), Fraleg Group, Inc., the debtor and debtor-in-possession (the "Debtor") filed a voluntary petition for relief pursuant to Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court").

On _____ __, 2022, the Bankruptcy Court approved this Disclosure Statement as containing adequate information of a kind and in sufficient detail to enable a hypothetical holder of an allowed claim against the Debtor to make an informed judgment whether to accept or reject the Debtor's Plan of Reorganization dated September 15, 2022 (the "Plan").[1] APPROVAL OF THIS DISCLOSURE STATEMENT DOES NOT, HOWEVER, CONSTITUTE A DETERMINATION BY THE BANKRUPTCY COURT AS TO THE FAIRNESS OR MERITS OF THE PLAN.

The purpose of this Disclosure Statement is to provide holders of Claims entitled to vote to accept or reject the Plan with adequate information about: (i) certain historical events relating to the Debtor and its assets; (ii) the Debtor's Chapter 11 Case; (iii) the Plan; (iv) the rights of holders of Claims and Equity Interests under the Plan; and (v) other information necessary to enable each Holder of a Claim entitled to vote on the Plan to make an informed judgment as to whether to vote to accept or reject the Plan.

The following are exhibits to this Disclosure Statement:

Exhibit "A" – the Plan

Exhibit "B" – The Conditional Commitment letter

Exhibit "C" – Monthly Operating Report for the first reporting period.

A.    **Overview**

As emphasized throughout the Plan, the Debtor's primary goal is to refinance the underlying mortgage debt, so as to permit the Debtor to maintain ownership of its real properties, consisting of one (1) multi-family residential building located at 112 North Walnut Street, East Orange, New Jersey 07017 (the "Property") and a vacant unimproved land commonly known as

---

[1] Unless otherwise defined herein, all capitalized terms contained herein will have the meanings ascribed to them in the Plan.

and located at 116 North Walnut Street, East Orange, New Jersey 07017 (the "Vacant Lot" and the Property are collectively the "Properties").

CAF Borrower GS, LLC ("CAF") the mortgagee in connection with the Mortgage debt, filed a proof of claim docketed as Claim Number 5 on the Bankruptcy Court's Claims Register ("CAF's Claim"). The Debtor asserted that CAF's Claim is miscalculated and is not permitted under the law. The issue of the proper calculation of CAF's Claim is being briefed before the Court and will be decided by the Court.

The Debtor's preferred treatment is to have the parties agree to, or have the Court determine, the Allowed amount of CAF's Claim and refinance that amount with a new lender on terms sufficient to pay CAF's Allowed Secured Claim.

Under any scenario, it is the Debtor's intention to properly address the Mortgage (CAF's Claim) so as to comply with the provisions of the Bankruptcy Code. In addition, the Plan also provides for a 100% distribution to general unsecured creditors plus interest at the federal judgment rate in effect on the date the Plan is confirmed.  It is the Debtor's position that none of the classes of creditors are impaired and, as a result, are not entitled to vote on the Plan. In the event that the Bankruptcy Court determines that any classes are impaired, the provisions on voting on the Plan are included in this Disclosure Statement and Plan.

## B.    **Voting Procedures**

As set forth in more detail in Article III of this Disclosure Statement, certain holders of Claims may be entitled to vote to accept or reject the Plan. For each holder of a Claim entitled to vote, the Debtor has enclosed, along with a copy of this Disclosure Statement, among other things, a ballot and voting instructions regarding how to properly complete the ballot and submit a vote with respect to the Plan. Holders of more than one Claim will receive an additional ballot

for each Claim. The individual ballots must be used to vote each individual Claim. For detailed voting instructions, please refer to the specific voting instructions and the ballot enclosed with this Disclosure Statement.

All completed ballots must be actually received no later than 5:00 p.m. (Eastern) on _____ __, 2022 (the "Voting Deadline") by regular mail, overnight mail, hand delivery, electronic mail, or facsimile to:

| If by regular mail, overnight mail or hand delivery: | If by electronic mail: | If by facsimile |
|---|---|---|
| Law Offices of Avrum J. Rosen, PLLC Attn: Avrum J. Rosen, Esq. 38 New Street Huntington, New York 11743 | arosen@ajrlawny.com | (631) 423-4536 |

If you are a holder of a Claim that is entitled to vote on the Plan and you did not receive a ballot, received a damaged ballot or lost your ballot, or if you have questions concerning this Disclosure Statement, the Plan, or the procedures for voting with respect to the Plan, please contact Nico G. Pizzo, Esq. at (631) 423-8527 or npizzo@ajrlawny.com.

**BALLOTS RECEIVED AFTER THE VOTING DEADLINE MAY NOT BE COUNTED.**

**C.      Summary of Distribution and Voting Eligibility**[2]

The following summary table briefly outlines the classification and treatment of Claims and Equity Interests in the Debtor under the Plan, and the voting eligibility of the holders of such Claims and Equity Interests. Nothing set forth in the table below shall be deemed an admission by the Debtor as to the existence, validity, priority or amount of any claim asserted against the Debtor's Estate. All rights to object to Claims are fully reserved and preserved.

---

[2] This summary is qualified in its entirety by reference to the Plan. Statements as to the rationale underlying the treatment of Claims and Equity Interests under the Plan are not intended to, and will not, waive, compromise or limit any rights, claims, defenses, or causes of action in the event that the Plan is not confirmed. You should read the Plan in its entirety before voting to accept or reject the Plan.

| Class | Designation | Impaired | Entitled to Vote |
|---|---|---|---|
| 1 | CAF | No | No |
| 2 | General Unsecured Claims | No | No |
| 3 | Allowed Equity Interests | No | No |

In accordance with the section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, Professional Fee Claims, Priority Tax Claims and United States Trustee Fees have not been classified. Section III of this Disclosure Statement provides a more detailed description of the treatment of Claims and Equity Interests under the Plan.

Pursuant to various provisions of the Bankruptcy Code, only classes of claims that are "impaired" under the terms and provisions of a plan are entitled to vote to accept or reject such plan. Accordingly, since there are no Classes that are impaired, Classes 1, 2 and 3 are not entitled to vote and are deemed to have accepted the Plan.

**D.    Confirmation Under Section 1129(b)**

The Bankruptcy Code permits confirmation of a Chapter 11 plan notwithstanding the rejection of such plan by one or more impaired classes of claims or equity interests. Under section 1129(b) of the Bankruptcy Code, a Chapter 11 plan may be confirmed by a bankruptcy court if it does not "discriminate unfairly" and is "fair and reasonable" with respect to each rejecting class.

If a Class of Claims entitled to vote on the Plan rejects the Plan, the Debtor reserves the right to amend the Plan or request confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code or both.

**E.    The Confirmation Hearing**

In accordance with section 1128 of the Bankruptcy Code, the Bankruptcy Court shall schedule a hearing, pursuant to a separate notice or Order of the Bankruptcy Court, to consider

confirmation of the Plan (the "<u>Confirmation Hearing</u>") before the Honorable Jil Mazer Marino.

**DUE TO COVID RESTRICTIONS, AS OF THE DATE OF THIS DISCLOSURE STATEMENT, THE BANKRUPTCY COURT IS CONDUCTING ALL HEARINGS VIRTUALLY USING ECOURT APPEARANCES. PARTICIPANTS MAY REGISTER FOR THE VIRTUALLY HEARING WITH ECOURT APPEARANCES AT https://www.nyeb.uscourts.gov/registering-remote-hearing-appearance-using-ecourt-appearances.**

**F.**     **<u>Important Dates</u>**

Please take note of the following important dates and deadlines with respect to the Plan.

| Event | Date and Time |
|---|---|
| Voting Deadline | by 5:00 p.m. (Eastern) |
| Plan Confirmation Objection Deadline | by 5:00 p.m. (Eastern) |
| Ballot Summary Deadline: | by 5:00 p.m. (Eastern) |
| Deadline to Reply to Plan Objections | by 5:00 p.m. (Eastern) |
| Hearing on Final Disclosure Statement Approval and Plan Confirmation: | by 5:00 p.m. (Eastern) |

**II**

**EVENTS LEADING UP TO THE CHAPTER 11 CASE
AND HISTORY OF THE CHAPTER 11 CASE**

**A.**     **<u>The Debtor's Business</u>**

The Debtor is a New York Corporation with its corporate office located at 931 Lincoln Place, Brooklyn, New York 11213. The Debtor is also registered in New Jersey as a Foreign Profit Corporation with an address for service of process care of VCorp services at 820 Bear Tavern Road, West Trenton, New Jersey 11213 along with the corporate address. The Debtor is a real estate investment company formed in or around 2017 and its business involves the purchase, ownership, management, rental and/or sale of real estate for profit. The Debtor's president is

Andy Alege. The remaining officers of the Debtor are its vice presidents, Andre Juman and Ronald Fraser.

Currently, the Debtor owns one (1) multi-family residential building located at 112 North Walnut Street, East Orange, New Jersey 07017 (the "Property") and an adjacent vacant unimproved lot (the "Vacant Lot") commonly known as and located at 116 North Walnut Street, East Orange, New Jersey 07017 (together the "Properties").

**B.      The Mortgage with CAF**

Prior to the Filing Date, on or about April 5, 2019, Corevest American Finance Lender LLC (the "Original Lender") made a construction loan to the Debtor in the original principal amount of $8,000,000.00 (the "Loan"). The Loan is evidenced by a Promissory Note (the "Note") in the original principal amount of $8,000,000.00 executed by the Debtor in favor of the Original Lender. The terms and conditions of the Loan are further governed by a Loan Agreement (the "Loan Agreement") dated January 23, 2019.

As security for repayment of the Note, the Debtor executed and delivered to the Original Lender a Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing (and together with all modifications thereof, the "Mortgage" and together with the Note and the Loan Agreement, collectively, the "Loan Documents"), creating a mortgage lien on, among other things, the Property. The Loan Documents were later assigned to CAF.

Following the closing on the Property, the Debtor began renovations, in an effort to fix, sell or rent the individual condominium units for profit. Under the Loan documents the Debtor was required to expend $1 million dollars on the construction before the first draw down of the construction loan of $1.4 million dollars was to be released from a reserve account (although the loan documents did not actually require the account to be set up) (the "Construction Reserve").

### C.    <u>The Foreclosure Action</u>

The Debtor expended in excess of $1.2 million in site work, demolition and construction and then applied for the draw down. However, CAF asserted that only about $940,000.00 of the outlay qualified under the loan (which does not set forth those requirements) and refused to fund. When the Debtor could not proceed, CAF asserts it called a default.

On or about January 30, 2020, CAF commenced an action in the Superior Court of New Jersey, Chancery Division, Essex County, captioned *CAF Borrowers GS, LLC, Plaintiff vs. Fraleg Group Inc. A New York Corporation; et. als*, Case Number F001632-20 (the "<u>Foreclosure Action</u>") seeking to, among other things, foreclose on the Mortgage and recover the Property. The Judgement of Foreclosure and Sale was entered on April 24, 2021 (the "<u>Foreclosure Judgment</u>"). The amount of the Foreclosure Judgment as of that date was $4,550,000.00.

By Order of the Foreclosure Judgment, a foreclosure sale was scheduled.

### D.    <u>The Debtor's Commencement of the Chapter 11 Cases</u>

On June 17, 2022 (the Filing Date herein), the Debtor filed a voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code.

The Debtor continues to operate its business and manage its property as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner or committee has been appointed in this case.

### 1.    <u>The Prior Dismissed Bankruptcy Case</u>

The Debtor previously filed a Chapter 11 Subchapter V petition on September 14, 2021 captioned *Fraleg Group, Inc., Chapter 11 Subchapter V Case Number 21-42322-jmm* (the "<u>Dismissed Bankruptcy</u>"). The Debtor was represented by Hemmings & Snell LLP in the Dismissed Bankruptcy.

On November 29, 2021 in the Dismissed Bankruptcy, CAF filed a motion seeking relief from the automatic stay [Dismissed Bankruptcy Dkt. No. 26] (the "Stay Relief Motion"). CAF's Stay Relief Motion was sought to continue its efforts to foreclose on the Property, pursuant to the Order of the Foreclosure Action. On January 12, 2022, the Debtor filed an objection to CAF's Stay Relief Motion [Dismissed Bankruptcy Dkt. No. 35]. Following a hearing an amended filing, the Court entered an Order granting CAF's Stay Relief Motion with respect to the Property [Dismissed Bankruptcy Dkt. No. 42] (the "Stay Relief Order").

On May 16, 2022, the Debtor, by and through its then-counsel, filed a motion to voluntarily dismiss the Dismissed Bankruptcy [Dismissed Bankruptcy Dkt. No. 53]. The basis for that motion was that the Debtor had obtained a commitment to pay off CAF and could only close if the case was dismissed. The Court entered an Order dismissing the Dismissed Bankruptcy on June 3, 2022 [Dismissed Bankruptcy Dkt. No. 59] (the "Order of Dismissal").

On June 7, 2022 the Debtor's then-counsel requested a pay-off letter from CAF's counsel for a closing scheduled on or about June 15, 2022. Simultaneously, the adjourned foreclosure sale was scheduled for June 21, 2022. The Debtor asserted that the pay-off letter [Exhibit "B" to the Rule 1007 Affidavit] was for approximately $800,000.00 more than the amount actually due pursuant to the Foreclosure Judgment.

E.    **Major Post Petition Events**

The Debtor prepared a detailed bankruptcy petition and a comprehensive set of schedules and statements, which were filed with the bankruptcy petition. The Debtor also appeared for a section 341(a) Meeting of Creditors, and its attorneys conducted numerous conversations with counsel for CAF and the Office of the United States Trustee.

1.    **CAF's Mortgage Claim Dispute**

On July 14, 2022, CAF filed its motion for *in rem* relief from the automatic stay from certain real property known as 112 N. Walnut St., East Orange, NJ 07017 [Dkt. No. 15] (the "In Rem Motion"). The Debtor opposed CAF's In Rem Motion [Dkt. No. 27] raising defenses to the relief sought by CAF. Subsequently, CAF filed its reply and the Court held a hearing on August 17, 2022 (the "Hearing Date").

In response to CAF's In Rem Motion, and CAF's attempt to void a dismissal order entered in the Debtor's previous Dismissed Bankruptcy, the Debtor commenced an adversary proceeding on July 25, 2022 against CAF, styled as *Fraleg Group, Inc., against CAF Borrower GS LLC and Polsinelli PC*, Adversary Proceeding Number 22-01060-jmm (the "Adversary Proceeding"). The Debtor seeks, *inter alia*, damages and contempt based on the defendants' alleged fraud and abuse of process surrounding the circumstances of CAF's Mortgage payoff calculation.

Thereafter, on August 4, 2022, the Debtor filed an application enforcing the automatic stay and seeking award for damages from CAF's alleged violation of the automatic stay [Dkt. No. 22] (the "Motion to Enforce the Stay" together with the In Rem Motion are the "Motions"). CAF filed its opposition and the Court held a hearing on the Hearing Date. At the hearing on the Motions, this Court set forth a briefing schedule to further brief the Motions narrowed issue to determine which law applies to the calculation of CAF's Motion. The Debtor has submitted its brief on September 9, 2022. CAF's time to respond to the Debtor's brief will expire on September 28, 2022.

### III

### <u>THE PLAN OF REORGANIZATION</u>

THE FOLLOWING IS A BRIEF SUMMARY OF THE PLAN. THE PLAN REPRESENTS A PROPOSED LEGALLY BINDING AGREEMENT AND CREDITORS ARE URGED TO CONSULT WITH THEIR COUNSEL IN ORDER TO FULLY UNDERSTAND THE PLAN AND TO MAKE AN INFORMED JUDGMENT CONCERNING IT. THE PLAN GOVERNS OVER ANY DISCREPANCY IN THIS SUMMARY.

The Plan shall be funded through a combination of: (i) Refinancing of the Property; and (ii) contributions from the Debtor's principal and insiders.

A.    <u>Designation of Classes</u>

<u>Class 1:</u>  Class 1 shall consist of the Allowed CAF Secured Claim.

<u>Class 2:</u>  Class 2 shall consist of all Allowed General Unsecured Claims.

<u>Class 3:</u>  Class 3 shall consist of all Allowed Equity Interests.

B.    <u>Treatment of Classes under the Plan</u>

<u>Class 1:</u>        (Preferred Treatment) Class 1 is unimpaired. Since the Filing Date, the Debtor and CAF have engaged in motion practice and litigation surrounding the accurate calculation of the Mortgage and CAF's Secured Claim.

Upon Final Order of this court, the Debtor shall pay CAF's Allowed Secured claim as determined by the Bankruptcy Court, or such other amount as the Debtor and CAF agree to by stipulation. The Debtor shall then proceed with refinancing the Properties (the "<u>Refinancing</u>") to satisfy CAF's Allowed Claim (Mortgage). The Refinancing shall be completed within ten (10) business days of the Effective Date.

The Debtor has obtained a Conditional Mortgage Commitment, which is attached as Exhibit "B".   The proceeds of that Loan shall be used to pay the Allowed Claim of CAF.

**Class 2:**   Class 2 Claimants shall receive a 100% distribution to be paid by the Debtor within 60 days after the Effective Date with interest at the federal judgment rate in effect on the Confirmation Date. The New York State Department of Taxation and Finance filed its proof of claim [Claim Number 1] claiming $640.47 in Corporation tax as general unsecured liability. In addition, the Debtor received a loan from the Small Business Association in an amount of approximately $625,875.00 (the "SBA Loan"). The Debtor applied for forgiveness of the SBA Loan, which is currently pending. The SBA Loan will either be paid in full or forgiven, in accordance with its terms.  Class 2 Claimants are unimpaired, are not eligible to vote on the Plan and are deemed to have accepted the Plan.

**Class 3:**   Class 3 Claimants shall retain all existing pre-petition Equity Interest in the Debtor effective as of the Effective Date. Class 3 Claimants are unimpaired, are not eligible to vote on the Plan and are deemed to have accepted the Plan.

**C.     Treatment of Unclassified Claims under the Plan**

Pursuant to section 1123(a) of the Bankruptcy Code, the Plan does not classify Administrative Claims, Priority Tax Claims or United States Trustee Fees, all of which shall be paid in full as required by section 1129(a)(9).

**1.     Allowed Administrative Claims of the Debtor and the Debtor's Professionals**

Under the Plan, the Allowed Administrative Claims of the Debtor and the Debtor's Professionals are unimpaired and shall be paid in full by the Debtor on the Effective Date even if estimates fall below actual awarded amounts, or such later date after approval by the Court after notice and a hearing.

2. **Allowed Administrative Claims Other than the Debtor and the Debtor's Professionals**

Under the Plan, allowed Administrative Claims (other than Claims of the Debtor and the Debtor's Professionals), to the extent that any such Claims exist, are unimpaired and shall be paid in full by the Debtor on the Effective Date.

3. **Priority Tax Claims**

Under the Plan, all outstanding real estate tax claims and related charges are treated as Allowed Priority Tax Claims for purposes of the Plan, and shall be paid in full as required by section 1129(a)(9) with statutory interest.

4. **United States Trustee Fees**

The Debtor is current on the payment of quarterly fees charges by the United States Trustee. To the extent not otherwise paid, the Debtor shall pay all accrued United States Trustee Fees, together with any interest thereon, until the Chapter 11 Case is closed by entry of a final decree.

D. **Means for Implementation of the Plan**

The Plan shall be funded through a combination of: (i) the Refinancing of the Properties and/or (ii) contributions from the Debtor's principal and insiders. The Plan will be implemented in the following order:

a) The Court shall enter the Confirmation Order and that Order shall become a Final Order;

b) Upon the issuance of a Final Commitment Letter, (no later than sixty (60) days from the entry of the Confirmation Order) from the new lender the Debtor shall issue a Notice of Effective Date;

c)      The refinancing shall take place pursuant to the Final Commitment and all payments pursuant to the Plan shall be made within Thirty Days of the Effective Date; and

d)      Exemption from Certain Transfer Taxes and Fees. To the maximum extent provided by section 1146(a) of the Bankruptcy Code, any transfer of the Properties pursuant to this Plan and any mortgage or instrument recorded in connection with such transfer shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents pursuant to such transfers of property without the payment of any such tax, recordation fee, or governmental assessment.

## E.      Administrative Expense Bar Date

A date establishing an Administrative Expense Bar Date shall be included as part of the Confirmation Order, which shall be served upon all creditors and other parties-in-interest. All requests for payment of Administrative Expenses that accrued on or before the Confirmation Date must be filed with the Bankruptcy Court by the Administrative Expense Bar Date, except for Professional Fee Claims. Any holder of an Administrative Expense which fails to file a timely request for the payment of an Administrative Expense shall forever be barred, estopped and enjoined from asserting such Administrative Expense against the Debtor and Reorganized Debtor. The Debtor may object to the allowance of any Administrative Expense Claim.

**F.**    <u>**Vesting of Assets**</u>

On the Effective Date, the Properties and any other assets of the Debtor shall revest in the Reorganized Debtor.

**G.**    <u>**Executory Contracts**</u>

No executory contracts or unexpired leases currently exists.

**H.**    <u>**Effect of Confirmation; Discharge of Claims; Confirmation Injunction; Release; Exculpation**</u>

On the Confirmation Date, the terms of the Plan shall bind all Holders of all Claims against, and Equity Interests in, the Estate, whether or not such Holders accepted the Plan. The rights afforded under the Plan and the treatment of all Claims under the Plan shall be in exchange for a complete satisfaction, discharge and release of Claims of any of any nature whatsoever, against the Estate or any of its assets or property. Except as otherwise provided herein, on the Confirmation Date, all such Claims against the Estate shall be satisfied, discharged and released in full, and all Persons or entities are precluded and enjoined from asserting against the Estate, the Debtor and/or its successors or their assets, any other or further claims based upon any act, omission, transaction or other activity of any kind or nature that occurred before the Confirmation Date.

Under the Plan, the Estate shall retain any and all claims and Causes of Action belonging to the Debtor and its Chapter 11 Estate, whether arising before or after the Filing Date, regardless of whether such claims and Causes of Action arise under the Bankruptcy Code. The Debtor may pursue any and all such Causes of Action. The Plan expressly provide that, unless any claims and Causes of Action against an Entity are expressly and unambiguously waived, relinquished, exculpated, released, compromised, or settled in the Plan or in a Bankruptcy Court order, the Debtor expressly reserves all Causes of Action, for later prosecution, settlement, or adjudication

16

and no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or a consequence of entry of the Confirmation Order, occurrence of the Effective Date, or consummation of the Plan.

The Plan provides that, effective on the Effective Date, all Persons who have held, hold or may hold Claims or Equity Interests are enjoined from taking any of the following actions against or affecting the Released Parties, the Debtor, the Estate, the Property or any other assets of the Estate with respect to such Claims or Equity Interests, except as otherwise set forth in the Plan and other than actions brought to enforce any rights or obligations under the Plan or appeals, if any, from the Confirmation Order:

i.    commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind against the Released Parties, the Debtor, the Estate, the Property or any other assets of the Estate;

ii.   enforcing, levying, attaching, collecting or otherwise recovering by any manner or means, directly or indirectly, any judgment, award, decree, or order against the Released Parties, the Debtor, the Estate, the Property or any other assets of the Estate;

iii.  creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Released Parties, the Debtor, the Estate, the Property or any other assets of the Estate;

iv.   asserting any set-off, right of subrogation or recoupment of any kind, directly or indirectly, against any obligation against the Released Parties, the Debtor, the Estate, the Property or any other assets of the Estate; and/or

v.    proceeding in any manner in any place whatsoever that does not conform to or comply with the provisions of the Plan.

**The Plan provides that, effective as of the Effective Date, the Released Parties are released from all Claims, Causes of Action, and demands of any nature whatsoever, in law and in equity, that any creditor of the Debtor had, has, or may hereafter have against the**

Released Parties arising prior to the Effective Date. Except as otherwise provided herein and in section 1141 of the Bankruptcy Code, all Persons shall be precluded and enjoined from asserting against the Released Parties, their assets or properties, or against any property that is distributed, or is to be distributed under the Plan, any other or further Claim upon any acts or omissions, transactions, or other activity of any kind or nature that occurred prior to the Effective Date.

In order to secure enough funds in the Fairbridge Loan to refinance the CAF Mortgage, the Guarantor pledged the Additional Property as collateral to the Fairbridge Loan. This constitutes substantial contribution to justify a release of the Guarantor, as one of the Released Parties, to the CAF Mortgage in the unlikely event that the CAF Mortgage is not paid in full.

The Plan provides that the Released Parties (collectively, the "**Exculpated Parties**") will not have or incur any liability to any Person for any act taken or omission occurring on or after the Filing Date in connection with this Case, including but not limited to:

    (a) the commencement and administration of the Case;

    (b) the formulation, preparation, dissemination, implementation, confirmation, consummation, or administration of: (i) the Plan (including soliciting acceptances or rejections thereof); and/or (ii) the Disclosure Statement;

    (c) any Distributions made pursuant to the Plan.

Nothing in this section shall: (a) affect the liability of any Exculpated Party that otherwise would result from any act or omission to the extent that the act or omission is determined in a Final Order to have resulted from fraud, willful misconduct, gross negligence, or criminal conduct; or (b) limit liability pursuant to Rule 1.8(h)(1) of the New York Rules of Professional Conduct; or (c) modify the terms of the Sale Stipulation.

I.    **Claims and Distribution Matters**

All Claims in this Case will be reviewed, and to the extent necessary and appropriate, the Debtor will file objections to certain Claims. The Bankruptcy Court will retain jurisdiction to adjudicate objections to claims brought by the Debtor, including any settlements or compromises of such Claims. Debtor reserves all of its rights to object to Claims.

The Plan provides that objections to Claims, to the extent not already commenced by the Debtor, must be filed and served by the Debtor no later than the sixtieth (60th) day after the Effective Date (or the next business day if the 60th day is a holiday or weekend day), or within such other extended time period as may be requested (with such application or motion being made prior to the expiration of the period) by the Debtor and fixed by the Bankruptcy Court. The Debtor shall hold in reserve: (a) 100% of any Disputed Claim that is an Administrative Claim or a Priority Claim; and/or (b) the Pro Rata portion of the General Unsecured Claims Reserve of any Disputed Claim that is a General Unsecured Claim until such Claim is resolved by a Final Order or settled. Should the amount reserved by the Debtor on account of the Disputed Claim exceed the amount required to satisfy the Disputed Claim, any excess will be distributed in accordance with the Plan.

If, on or after the Effective Date, any Disputed Claim becomes an Allowed Claim, the Debtor shall, within fifteen (15) days after the later of: (x) the date on which the Claim becomes an Allowed Claim or as soon thereafter as is practicable; and (y) when claims in the same Class are paid, pay to the Holder of such Allowed Claim the amount that such Holder would have been entitled to receive under the Plan if such Claim had been an Allowed Claim on the Effective Date.

All Distributions under the Plan to any Holder of an Allowed Claim shall be made at the address of such Holder as set forth in the filed or scheduled Claim unless the Debtor has been notified in writing of a change of address. For a period of ninety (90) days subsequent to any Distributions made under the Plan, Unclaimed Property will be held by the Debtor for the Holders of Allowed Claims which have failed to claim such Distribution, and will be released by the Debtor and delivered to such Holder, without interest, upon presentation and proper proof by such Holder to the Debtor (in the sole and absolute discretion of the Debtor) of its entitlement thereto. At the end of the ninety (90) days subsequent to any Distributions made under the Plan, all Unclaimed Property will be deposited by the Debtor with the Clerk of the Court, notwithstanding any provision to the contrary in the Plan, or any federal or state escheat laws to the contrary.

The Plan provides that, if a Distribution to be made to a given Holder of an Allowed Claim would be $5.00 or less, notwithstanding any contrary provision of the Plan, no such Distribution will be made to such Holder. Any unclaimed or retained Distributions shall be disbursed by the Debtor pursuant to the terms of the Plan. Distributions may be made by the Debtor by wire, electronic transfer, check or such other method as the Debtor deems appropriate under the circumstances. No payments of portions of a Dollar will be made. Whenever any payment of a portion of a Dollar would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole Dollar (up or down).

The Plan provides that the Debtor may withhold from any Distribution under the Plan any amount which must be withheld for taxes payable by the Entity entitled to such Distribution to the extent required by applicable law. As a condition to making any Distribution under the Plan, the Debtor may request that the Holder of any Allowed Claim provide such Holder's taxpayer

identification number and such other certification as may be deemed necessary to comply with applicable tax reporting and withholding laws.

Notwithstanding any other provision of the Plan, each Entity receiving a Distribution pursuant to the Plan will have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on it by any governmental unit on account of such Distribution, including income, withholding and other tax obligations.

**J.**     **Retention of Jurisdiction**

The Plan provides that the Bankruptcy Court (or the United States District Court for the Eastern District of New York, as the case may be) shall have and retain exclusive jurisdiction of matters arising out of, and related to the Case and the Plan under, and for the purposes of, sections 105(a), 1127, 1142 and 1144 of the Bankruptcy Code and for, among other things, the following purposes:

    i.    to hear and determine all Claims (including Administrative Claims) concerning the classification, allowance or disallowance of any such Claim, if any;

    ii.    to hear and determine any and all adversary proceedings, Causes of Action, claims of the Estate, applications, and contested matters, whether filed or commenced before or after the Effective Date;

    iii.    to hear and determine all Claims arising out of any agreement entered into by the Debtor after the Filing Date, if any;

    iv.    to hear and determine applications for the assumption or rejection of Executory Contracts, if any, and allowance of Claims resulting therefrom;

    v.    to hear and determine any settlement and/or compromise pursuant to Bankruptcy Rule 9019 concerning any of the foregoing;

    vi.    to alter, modify and amend the Plan pursuant to section 1127 of the Bankruptcy Code, or to remedy any defect, cure any omissions or reconcile any inconsistency in the Plan or Confirmation Order as may be necessary or advisable to carry out the purpose and intent of the Plan and to the extent authorized by the Bankruptcy Code or Bankruptcy Rules;

vii.    to make such orders *ex parte* or upon application, and to hear and adjudicate any settlements or disputes concerning the provisions of the Plan, or to enforce and/or implement the terms of the Plan;

viii.    to hear and determine such other matters as may be provided for in the Confirmation Order of the Bankruptcy Court, and for the purposes set forth in section 1127(b) and section 1142 of the Bankruptcy Code or as contained in Rules 1019 and 3020(d) of the Bankruptcy Rules;

ix.    to hear and determine all applications for compensation;

x.    to hear and determine matters concerning local, state and federal taxes in accordance with sections 345, 505 and/or 1146 of the Bankruptcy Code;

xi.    to enter a Final Order or decree concluding the Case or an order of substantial consummation;

xii.    to hear and determine that distributions are accomplished as provided in the Plan; and/or to determine other matters contained in the Confirmation Order or Plan or that is authorized under the provisions of the Bankruptcy Code.

## IV

## **FEASIBILITY**

The funding of the Plan through either: (a) a combination of: (i) the Refinancing of the Properties; and/or (ii) contributions from the Debtor's principal and insiders, will allow the Debtor make all distributions contemplated under the Plan. As a result, the Debtor submits that the Plan is feasible.

## V

## **REQUIREMENTS FOR CONFIRMATION OF THE PLAN**

### A.    **Confirmation Hearing**

The Bankruptcy Code requires that the Bankruptcy Court, after notice, hold a hearing to consider confirmation of the Plan. The Confirmation Hearing shall be scheduled by the Bankruptcy Court to be held before the Honorable Jil Mazer-Marino. The Confirmation Hearing

may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement made at the Confirmation Hearing.

**B.**    <u>**Objections to Confirmation**</u>

The Bankruptcy Court has directed that objections, if any, to Confirmation of the Plan be in writing, filed with the Bankruptcy Court with a courtesy copy to chambers of the Honorable Jil Mazer-Marino, with proof of service and such objections served on or before such date as set forth in an additional notice or Order of the Bankruptcy Court. Objections must be served upon: (i) counsel to the Debtor, Law Offices of Avrum J. Rosen, PLLC, 38 New Street, Huntington, New York, 11743, Attn.: Avrum J. Rosen, Esq. (arosen@ajrlawny.com); and (ii) the Office of the United States Trustee, 201 Varick Street, Suite 1006, New York, New York 10004, Attn.: Nazar Khodorovsky, Esq. (Nazar.khodorovsky@usdoj.gov). Objections to confirmation of the Plan are governed by Bankruptcy Rule 9014.

**C.**    <u>**Acceptance of the Plan**</u>

Acceptance of the Plan requires that each impaired Class of Claims accepts the Plan, with certain exceptions discussed below. Thus, acceptance of the Plan is tested on a class-by-class basis. Classes of Claims that are not impaired under the Plan are deemed to have accepted the Plan. Under the Plan, all of the classes are unimpaired, not entitled to vote and are presumed to have accepted the Plan.

**D.**    <u>**Confirmation of the Plan**</u>

In order to confirm the Plan, the Bankruptcy Code requires that the Bankruptcy Court make a series of determinations concerning the Plan, including: (i) that the Plan has classified Claims in a permissible manner; (ii) that the contents of the Plan comply with the technical requirements of the Bankruptcy Code; (iii) that the Plan has been proposed in good faith; and (iv)

that disclosures concerning the Plan have been made which are adequate and include information concerning all payments made or promised in connection with the Plan and the Case. The Debtor believes that all of these conditions have been or will be met.

## VI

## ALTERNATIVES TO THE PLAN AND OTHER CONSIDERATIONS

### A.    Alternatives to the Plan

The Debtor believes that the Plan provides creditors with the earliest and greatest possible value that can be realized on their respective Claims. The principal alternatives to confirmation of the Plan are: (i) confirmation of alternative plans submitted by another party-in-interest; or (ii) conversion of the Case to Chapter 7 of the Bankruptcy Code.

In this case, no other party filed an alternative plan.

The Debtor believes that a conversion to Chapter 7 would not be in the best interest of creditors. As described in section B below (the "Best Interests of Unsecured Creditors"), liquidation of the Debtor's assets under Chapter 7 of the Bankruptcy Code would not generate a greater distribution to creditors than proposed under the Plan. Conversion under Chapter 7 of the Bankruptcy Code would also entail the appointment of a Chapter 7 trustee and the incurrence of additional administrative fees and expenses, which would adversely affect any distributions to Claimants.

The Debtor believes that confirmation of the Plan is preferable to the alternatives described above because the Plan will yield the greatest distributions to holders of Allowed Claims as the Plan is a 100% plan.

**B.**    **Best Interests of Unsecured Creditors**

Notwithstanding acceptance of the Plan by Classes of Claims, in order to confirm the Plan, the Bankruptcy Court must independently determine that the Plan is in the best interests of all Classes of Claims. The "best interests" test requires that the Bankruptcy Court find that the Plan provides to each member of each impaired Class of Claims a recovery that has a present value at least equal to the present value of the distribution which each such Person would receive from the debtor's estate if its assets were instead distributed by a trustee under Chapter 7 of the Bankruptcy Code. The Debtor believes that the Plan satisfies the "Best Interests Test" with respect to all Classes of Claims as all Claimants are fully unimpaired.

In addition, the cost of converting the Chapter 11 Case to one under Chapter 7 would include the fees of a Chapter 7 trustee, as well as those of the Chapter 7 trustee's counsel and other professionals that may be retained by the Chapter 7 trustee, unpaid expenses incurred during the Chapter 11 Case. These Claims, and such other Claims as might arise in the liquidation or result from the Debtor's Chapter 11 Case, would be paid from the Debtor's assets before its assets would be available to pay Allowed Unsecured Claims and may result in substantially less of a recovery by the Chapter 7 trustee for the creditors of this estate.

THE DEBTOR BELIEVES THAT THE PLAN PROVIDES THE GREATEST AND EARLIEST POSSIBLE RECOVERY ON ACCOUNT OF CLAIMS AND THAT CONFIRMATION OF THE PLAN IS IN THE BEST INTERESTS OF CREDITORS.

**C.**    **Liquidation Analysis**

As part of the Chapter 11 process, section 1129(a)(7) of the Bankruptcy Code requires that a Bankruptcy Court determine that a Chapter 11 plan provides, with respect to each class, that each holder of a claim or an equity interest in such class either (i) has accepted the plan or

(ii) will receive under the plan value that is not less than the amount that such holder would receive if the debtor had liquidated under Chapter 7 of the Bankruptcy Code. In this case, since the Plan is a 100% plan and there are no impaired classes, a liquidation analysis is not required.

## VII

## RECOMMENDATION OF THE DEBTOR

The Plan and this Disclosure Statement were drafted and submitted on behalf of the Debtor. As such, the Debtor strongly supports the Plan and believes that Confirmation of the Plan provides creditors with the best possible recovery in the shortest possible time.

## VIII

## ADDITIONAL INFORMATION

Requests for information and additional copies of this Disclosure Statement, the Plan, and any other materials or questions relating to the Plan and this Disclosure Statement should be directed to the Debtor's counsel, Law Offices of Avrum J. Rosen, PLLC, 38 New Street, Huntington, New York 11743, Attn.: Avrum J. Rosen, Esq., or by telephone at: (631) 423-8527, or by email to: arosen@ajrlawny.com during regular business hours.

## IX

## TAX CONSEQUENCES

Creditors should consult with their own tax advisor concerning any tax related implications and: (i) any deductions which may be applicable to them as bad debt deductions, or (ii) income tax implications based upon forgiveness of debt, if applicable, based upon the provisions of the Plan.

Pursuant to IRS Circular 230 Notice: To ensure compliance with IRS Circular 230, holders of Claims or Equity Interests are hereby notified that: (i) any discussion of U.S. federal

tax issues contained or referred to in this Disclosure Statement is not intended or written to be used, and cannot be used, by holders of Claims or Equity Interests for the purpose of avoiding penalties that may be imposed on them under the Tax Code; (ii) such discussion is written in connection with the promotion or marketing by the Debtor, on behalf of the Debtor's Estate, of the transactions or matters addressed herein; and (iii) holders of Claims or Equity Interests should seek advice based upon their particular circumstances from an independent tax advisor.

## X

### AMENDMENTS, MODIFICATION, WITHDRAWAL OR REVOCATION OF THE PLAN

The Debtor reserves the right, in accordance with section 1127 of the Bankruptcy Code, to amend or modify the Plan provided the Bankruptcy Court approves such modification, if required.

*[Remainder of page intentionally left blank]*

The Debtor may withdraw or revoke the Plan prior to the Confirmation Date. If such a withdrawal or revocation occurs, or if Confirmation does not occur, the Plan will be null and void. In such event, nothing contained in the Plan will constitute a waiver or release of any Claim by or against the Debtor or any other person or to prejudice in any manner the rights of the Debtor or any other person in any further proceedings involving the Debtor.

**XI**

**<u>CONCLUSION</u>**

The Debtor believes the Plan is in the best interest of creditors of this estate.

Dated: September 15, 2022
      Huntington, New York

                                    **Law Offices of Avrum J. Rosen, PLLC**

By:     */s/ Avrum J. Rosen*
           Avrum J. Rosen, Esq.
           Nico G. Pizzo, Esq.
           38 New Street
           Huntington, New York 11743
           Tel: (631) 423-8527
           arosen@ajrlawny.com
           npizzo@ajrlawny.com

           *Counsel to Fraleg Group Inc.,*
           *Debtor and Debtor-in-Possession*

Dated: September 15, 2022
      Brooklyn, New York

           */s/ Andy Alege*
           Andy Alege, President
           of Fraleg Group Inc., Debtor
           and Debtor-in-Possession