UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
_____

In re:

Fraleg Group, Inc.,                    Case No. 22-41410-jmm

        Debtor.                    Chapter 11

_____

## CAF BORROWER GS LLC'S SUPPLEMENTAL BRIEF ON:
### (I)  DEBTOR'S STAY VIOLATION MOTION
### (II) CAF BORROWER GS LLC'S MOTION FOR STAY RELIEF; AND (III) CAF BORROWER GS LLC'S MOTION TO VOID DISMISSAL ORDER

POLSINELLI PC

David D. Ferguson
Morgan C. Fiander
600 Third Avenue, 42nd Floor
New York, New York 10016
(212) 684-0199
*Attorneys for CAF Borrower GS, LLC*

# TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ................................................................................................ 4
RELEVANT FACTUAL HISTORY......................................................................................... 5
ARGUMENT ............................................................................................................................... 7
   A.   Lender is entitled to interest at the contract rate until judgment is entered on the Note. ... 7
   B.   Lender is entitled to its attorneys' fees and costs incurred after the date of the Foreclosure Judgment. ....................................................................................................................... 16
   C.   Fraleg is incorrect on its "fair market value credit" argument.......................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*79-83 Thirteenth Ave., Limited v. De Marco*,
   79 N.J. Super. 47 (Law Div. 1963) ......................................................................................... 16

*Borough of Merchantville v. Malik & Son, LLC*,
   218 N.J. 556 (2014) ................................................................................................................. 9

*Brunswick Bank & Trust v. Affiliated Bldg. Corp.*,
   440 N.J. Super. 118 (App. Div. 2015) ..................................................................... 13, 14, 15

*Brunswick Bank & Trust v. Heln Management LLC*,
   453 N.J. Super. 324, 181 A.3d 1030, 2018 WL 987809 (App. Div. 2018) ..... 12, 13, 14, 15, 17

*First Union Nat. Bank v. Penn Salem Marina, Inc.*,
   190 N.J. 342 (2007) ............................................................................................................... 16

*Greystone Bank v. Samsudeen*,
   2012 WL 13034135 (D.N.J. 2012) .......................................................................................... 8

*Hardyston Nat. Bank of Hamburg, N.J. v. Tartamella*,
   56 N.J. 508 (1970) ................................................................................................................... 9

*Hyun Kim v. Jung Brothers, LLC*,
   2020 WL 1190461 (App. Div. 2020) ....................................................................................... 9

*In re Karagiannis*,
   453 B.R. 458 (Bankr. D.N.J. 2011) ....................................................................................... 17

*Panasia Estate, Inc. v. Lee*,
   2016 WL 4490593 .................................................................................................................... 9

*Powerhouse First, LLC v. Waldo Jersey City, LLC*,
   2016 WL 3503150 (App. Div. 2016) ................................................................................ 10, 11

*Silvestri v. Wells Fargo Bank Minnesota, N.A.*,
   2005 WL 2810698 (Ch. Div. 2005) ....................................................................................... 11

*Summit Trust Co. v. Willow Business Park, L.P.*,
   269 N.J. Super. 439 (App. Div. 1994) .............................................................................. 14, 17

*Union County Sav. Bank v. Johnson*,
   210 N.J. Super. 589 (Ch. Div. 1986) ....................................................................................... 9

*Washington Mut., F.A. v. Wroblewski*,
    396 N.J. Super. 14 (Ch. Div. 2005) ...................................................................................8, 11

**Statutes**

Bankruptcy Code § 502(a) ...............................................................................................................7

N.J.S.A. 2A:50-2.3...........................................................................................................10, 11, 17

**Other Authorities**

New Jersey Court Rule Rules 4:65-5..............................................................................................9

New Jersey Court Rules Rule 4:42-9..............................................................................................9

New Jersey Rules of Court Rule 4:3-1(a)(1) ..................................................................................8

New Jersey Rules of Court Rule 4:3-1(a)(5) ..................................................................................7

Rule 4:42-9(a)(4) ..........................................................................................................................16

Rule 4:42-11(a) .............................................................................................................................13

CAF Borrower GS, LLC ("**Lender**") respectfully submits this Supplemental Brief in further support of Lender's Motion for Relief from the Automatic Stay in this matter; Lender's Motion for an Order to Void the Dismissal of Fraleg I (defined below); and in opposition to Debtor Fraleg Group, Inc.'s Motion for Damages for a Violation of the Stay. Lender respectfully submits as follows.

## PRELIMINARY STATEMENT

As detailed below, New Jersey law plainly entitles a lender to contract rate interest until a judgment is entered *on the lender's note*. This common-sense principle stems from the fact that a borrower's *in personam* obligation on a note simply is not fixed until a judgment is entered on the note. New Jersey law is clear on this point. There is no authority supporting the argument of Fraleg Group, Inc. ("**Fraleg**") that New Jersey law treats a foreclosure judgment (which fixes the *mortgagor's* redemption rights) as equivalent to a judgment on a note secured by the mortgage (which fixes a borrower's *in personam* liability on a note secured by the mortgage), and Fraleg has cited none. In this case, Lender has never obtained a judgment on its note, and interest will continue to accrue on the note at the contract rate until a judgment is entered on the note. In New Jersey, the legal process to obtain a judgment on a borrower's *in personam* liability on a note is entirely separate from the legal process to obtain judgment establishing the mortgagor's redemption rights. These two distinct judgments are for different purposes, and must be obtained from different courts, under different legal theories, and under rights set forth in separate legal instruments.

Fraleg's Supplemental Brief does not provide any further explanation for its novel theory that a foreclosure judgment entered on a mortgage is equivalent to a judgment entered on a note. Rather, Fraleg merely rehashes arguments it made in prior briefing. As explained below, the authorities cited by Fraleg *refute* rather than support Fraleg's position. Fraleg relies on cases where a lender chose to obtain judgment on its note *prior to* obtaining a foreclosure judgment. Not

4

surprisingly, the courts in such cases observe that a borrower's liability on a note begins to accrue at the judgment rate rather than the contract rate *as soon as judgment is entered on the note*. Fraleg extrapolates, without any authority, that if a foreclosure judgment is entered on a note secured by a mortgage is entered prior to judgment on the note then the foreclosure judgment must be treated as the equivalent of a judgment on the note. In other words, Fraleg suggests that the judgment rate applies to a borrower's *in personam* note liability *before judgment entered on the note*. Unsurprisingly, there is no New Jersey authority to support such an argument.

As detailed in all prior papers filed by Lender, and again herein, Lender is entitled to collect interest on its note until a judgment is entered on the note or until a payoff under the Loan Documents is made. Moreover, Lender is allowed to properly claim such interest as well as costs and fees, including attorneys' fees, in its Proof of Claim.

## RELEVANT FACTUAL HISTORY

For purposes of brevity, Lender respectfully refers the Court to its prior motions, oppositions, and response papers previously filed in this case and in Fraleg I (defined below) for a full recitation of all facts.

After Fraleg defaulted on Lender's loan to Fraleg (the "**Loan**") Lender filed an action to foreclose the mortgage securing the Loan. The Loan is evidenced by a promissory note (the "**Note**"). The court in the foreclosure action entered judgment in Lender's favor on April 26, 2021. See Final Judgment in Foreclosure, dated as of April 25, 2021 and entered on April 26, 2021 (the "**Foreclosure Judgment**"), attached as Exhibit 1 to the Declaration of Morgan Fiander (hereinafter, the "**Fiander Decl.**"). After using its two permitted statutory adjournments of the sheriff's sale of the Property, Fraleg filed its first bankruptcy case, Case No. 1-21-42322 ("**Fraleg I**") on September 14, 2021, immediately before the sheriff's sale, thereby preventing the sale from occurring. *See* Fiander Decl., ¶ 3.

Lender filed a proof of claim in Fraleg I, asserting a claim of $4,689,794.46. [Fraleg I, Claim No. 4-1]. Fraleg did not object to Lender's proof of claim. That proof of claim includes interest on the Note at the contract rate through the petition date of Fraleg I. *See* Payoff Letter attached as Exhibit 5 of Lender's proof of claim filed in Fraleg I. Lender obtained stay relief in in Fraleg I. Fraleg obtained an order dismissing its first bankruptcy case on June 3, 2022. [Fraleg I, Doc. No. 59.]

After Fraleg obtained dismissal of Fraleg I, it requested a payoff letter from Lender. Lender provided a payoff letter to Fraleg dated June 7, 2022 and good through June 15, 2022 (the "**June 7 Payoff**"). Declaration of David Ferguson, (hereinafter, the "**Ferguson Declaration**") ¶ 2. The June 7 Payoff includes interest on the Note at the contract rate through June 15, 2022. *See* June 7 Payoff, attached to the Ferguson Declaration as Exhibit 1. Lender's proof of claim in Fraleg I includes attorneys' fees and costs and other charges. See Claim 4-1 filed in Fraleg I. That proof of claim also specifically noted that certain amounts, including interest, costs, and fees, were continuing to accrue after the Fraleg I petition date. *Id.* The June 7 Payoff also includes attorneys' fees and costs and other charges. [Ferguson Declaration Ex. 1 thereto.]

Fraleg filed its second bankruptcy case on June 17, 2022, shortly before the *fourth* scheduled Sheriff's Sale of the Property. [Fraleg II, Doc. No. 1; Fiander Decl., ¶ 4.] After filing its second case, Fraleg claimed, *for the first time*, that Lender's proof of claim filed in Fraleg I and the June 7 Payoff were both overstated. [Ferguson Declaration, ¶ 5.]

Lender did not obtain a judgment on the Note or commence an action on the Note prior to Fraleg I. [Fiander Decl., ¶ 5]. Lender did not obtain a judgment on the Note or commence an action on the Note in the interlude between Fraleg I and Fraleg II, and there is not action pending on the Note. [Fiander Decl., ¶ 6.]

6

The Mortgage in this case is on real property located in New Jersey. *See* Mortgage. Pursuant to Article X of the Mortgage, "with respect to matters relating to the creation, perfection and the enforcement of liens and security interests created under this mortgage, this mortgage shall be governed by, and be construed in accordance with, the laws of the state in which the property is located . . . ." [Mortgage Section 10.01.] The Property is located in New Jersey, thus New Jersey law governs.

## ARGUMENT

Lender and Fraleg dispute the allowable amount of Lender's claim under Bankruptcy Code § 502(a). The dispute principally concerns two issues:

- Whether Lender is entitled to include interest on its claim at the contract rate following entry of the foreclosure judgment on April 26, 2021.
- Whether Lender is entitled to include attorneys' fees and costs in its claim beyond the attorneys' fees and costs allowed in the foreclosure judgment.

### A. Lender is entitled to interest at the contract rate until judgment is entered on the Note.

The disputes between Lender and Fraleg are easily resolved under undisputed principles of New Jersey law. Under New Jersey law the procedure for obtaining a judgment on a note is quite distinct from obtain a judgment of foreclosure under a mortgage securing that note. If a lender chooses to pursue its claim for a money judgment under a note, then the lender may only obtain judgment on the note in the Law Division of the New Jersey courts. New Jersey Rules of Court Rule 4:3-1(a)(5) provides that all actions in the Superior Court except those encompassed by subparagraphs (1), (2), (3), and (4) therein shall be filed in the Law Division. None of those subparagraphs cover a suit on a note, thus such an action must be filed in the Law Division. A lender may only obtain a judgment of foreclosure under a mortgage by filing an action in the

7

Chancery Division of the New Jersey Superior Court. The foreclosure process involves both the Superior Court General Equity: Chancery Division judges, and the staff of the Office of Foreclosure, a unit in the Superior County Clerk's Office.[1] Further, New Jersey Rules of Court Rule 4:3-1(a)(1) provides that "[a]ctions in which the plaintiff's primary right or the principal relief sought s equitable in nature . . . shall be filed and heard in the Chancery Division, General Equity . . . ."

A mortgage foreclosure action is based on a lender's rights under the mortgage securing its note, whereas the action on the note is based on the lender's right under the note. A mortgage foreclosure suit is a quasi *in rem* action against the real estate subject to the mortgage, whereas an action on a note is an *in personam* action against the borrower. *See, e.g.*, *Greystone Bank v. Samsudeen*, 2012 WL 13034135, *3 (D.N.J. 2012) ("While foreclosure is a quasi in rem action brought against a defendant's property, a claim for judgment on an underlying note is brought personally against a defendant") (citing *Montclair Savs. Bank v. Sylvester*, 194 A. 81, 813 (1937)). "Judgment on the note is made against a defendant individually based on its contractual obligations under the note and provides a basis for recovering any deficiencies beyond the value of the foreclosed property." *Id* (emphasis added).

A foreclosure judgment does not entitle a lender to collect money from the borrower. Rather, a foreclosure judgment only entitles the lender to foreclose and determines the lender's credit bid rights and the mortgagor's redemption rights. *See, e.g.*, *Washington Mut., F.A. v. Wroblewski*, 396 N.J. Super. 14, 149 (Ch. Div. 2005) ("Under New Jersey law, 'the final judgment in an action to foreclose real estate mortgage fixes the amount due <u>*under the mortgage*</u> and directs the sale of the real estate to raise funds to satisfy the amount due'") (emphasis added) (quoting *In*

---

[1] Office of Foreclosure (njcourts.gov)

*re Roach*, 824 F.2d 1370, 1377–78 (3d Cir. 1987)). Under New Jersey Court Rule Rules 4:65-5, a party has ten (10) days after a sheriff's sale to file objections to the sale. During this ten-day period, the mortgagor has an unqualified right to redeem the property. *Hardyston Nat. Bank of Hamburg, N.J. v. Tartamella*, 56 N.J. 508, 513 (1970). "[I] has been the settled law in this State that an owner-mortgagor has a right to redeem the mortgaged property following foreclosure and Sheriff's Sale, by the payment in full of the mortgage indebtedness, costs of foreclosure, and costs of sale." *Borough of Merchantville v. Malik & Son, LLC*, 218 N.J. 556, 567 (2014). It is the final judgment in foreclosure that sets the "mortgage indebtedness" for purposes of the sale and redemption. *Id.* at 574 (where the foreclosing party "held a final judgment of foreclosure and anticipating a Sheriff's Sale" based on same); *Union County Sav. Bank v. Johnson*, 210 N.J. Super. 589, 591 (Ch. Div. 1986) (after "default and final judgment were entered against [mortgagor] . . . [p]ursuant to the judgment, a sheriff's sale was scheduled and conducted . . . [and] the property was sold at the sale") (emphasis added); *Panasia Estate, Inc. v. Lee*, 2016 WL 4490593, *3, ("If a mortgagor is able to and wishes to exercise his or her right of redemption, within the timeframe set forth in the rule, he or she must 'tender[]' the full amount of the judgment due") (quoting *Brookshire Equities, LLC v. Montaquiza*, 346 N.J. Super. 310, 315 (App. Div. 2002)).

In a mortgage foreclosure action, the attorneys' fees awarded under the foreclosure judgment are limited to 3.5% on the first $5,000.00 of the amounts owed; 1.5% on amounts over $5,000.00 and up to $10,000.00 of the amounts owed; and 1.0% on amounts in excess of $10,000.00 of amounts owed, pursuant to New Jersey Court Rules Rule 4:42-9, provided that the allowance shall not exceed $7,500.00, but if it does, the court may award an additional fee not greater than the amount of such excess as supported by affidavit. By contrast, there is no such limit on the attorneys' fees which may be awarded in a judgment on a note. *See*, *Hyun Kim v. Jung*

*Brothers, LLC*, 2020 WL 1190461, *2 (App. Div. 2020) (the rule on limited attorneys' fees in foreclosures "by its terms is confined to foreclosure actions. Thus . . . the rule 'does not preclude the enforcement of a contractual provision in a promissory note for the payment of a reasonable attorney's fee for services actually rendered in collection'") (quoting *Alcoa Edgewater No. 1 Fed. Credit Union v. Carrol*, 44 N.J. 442, 448 (1965)).

The action to foreclose a mortgage and the action on a note secured by the mortgage need not be brought at the same time and may be brought in whatever order the lender sees fit. *See* N.J.S.A. 2A:50-2.3; *Powerhouse First, LLC v. Waldo Jersey City, LLC*, 2016 WL 3503150, *7 (App. Div. 2016) ("Because a commercial loan was involved, [lender] was not limited to foreclosure as its remedy for non-payment, and it was not required to foreclose on the mortgage before filing an action on the note in the Law Division").

In summary, a judgment on a note and a foreclosure judgment on a mortgage securing that note are very different legal creatures. A judgment on a note is not equivalent to a judgment of foreclosure entered in a mortgage foreclosure proceeding. A judgment on a note is obtained for different purposes against under a different instrument (the note rather than the mortgage) pursuant to a different cause of action which must be brought in a separate lawsuit required to be filed in a different court. The lawsuit on the note may be filed before, after, or at the same time as the lawsuit to foreclose the mortgage, and there is no requirement that the judgment on the note be entered at the same time as the foreclosure judgment.

In this case, Lender obtained the Foreclosure Judgment, but the foreclosure was halted due to Fraleg's two bankruptcy filings. Lender never commenced an action on its Note, and there has never been a judgment entered on the Note. If Lender in this case had filed suit on the Note and obtained a judgment on the Note, then Lender would have been entitled to inclusion in the

judgment of interest on the note at the contract rate through the date of judgment. Upon entry of a judgment on the Note, legal post-judgment interest would then be applied.

Fraleg argues that Lender is not entitled to accrue interest on the Note at the contract rate after the date that the Foreclosure Judgment was entered. Instead, Fraleg argues that entry of the Foreclosure Judgment should be treated as if it is also a judgment on the Note, with no contract interest accruing after the Foreclosure Judgment is entered because, according to Fraleg, "the note and the mortgage merge into the judgment upon entry of the judgment."[2] Fraleg offers no statute, rule, or case in support of its argument.

Fraleg is wrong. There is no precedent under New Jersey case law, statutes, or rules for the proposition that a note secured by a mortgage "merges" into a foreclosure judgment along with the mortgage, and Fraleg has cited none. Only the mortgage merges into the judgment. *See, e.g.*, *Wroblewski*, 396 N.J. Super. at 149 ("It is well settled that the mortgage merges into the final judgment of foreclosure") (emphasis added) (citing *Virginia Beach Fed. v. Bank of New York*, 299 N.J. Super 181, 188 (App. Div. 1998); *Silvestri v. Wells Fargo Bank Minnesota, N.A.*, 2005 WL 2810698 (Ch. Div. 2005) ("It is well settled law that upon entry of a final judgment of foreclosure, a mortgage merges into the final judgment").

New Jersey law clearly allows a lender to file suit on a note secured by a mortgage after a foreclosure judgment is entered. *See* N.J.S.A. 2A:50-2.3; *Powerhouse First, LLC v. Waldo Jersey City, LLC*, 2016 WL 3503150, *7 (App. Div. 2016) ("Because a commercial loan was involved,

---

[2] Page 1, Debtor's Supplemental Memorandum of Law in Reply and Opposition to the: (I) Debtor's Motion for an Order Enforcing the Automatic Stay and Granting the Debtor an Award for Damages from Violation of the Automatic Stay; (II) CAF Borrower GS LLC's Motion for Relief from the Automatic Stay and In Rem Relief; and (III) CAF Borrower GS LLC's Motion to Void the Order of Dismissal (hereinafter, "**Fraleg's Supplemental Memorandum**").

[lender] was not limited to foreclosure as its remedy for non-payment, and it was not required to foreclose on the mortgage before filing an action on the note in the Law Division"). [3]

Fraleg additionally argues that a judgment on a note and a foreclosure judgment on a mortgage securing the note are somehow linked such that entry of a foreclosure judgment results in a lender not being entitled to interest on the note at the contract rate between the date that a foreclosure judgment is entered and the date that a judgment is entered on the note. Fraleg posits that, with respect to a judgment on a note and a foreclosure judgment on a mortgage securing that note, "New Jersey law … holds that any further accrual of interest from the first judgment is at the New Jersey judgment rate and not the contract rate of interest in the note."[4] Fraleg cites no authority for this proposition. Fraleg is again wrong, and its argument is based on confusion regarding the nature and effect of a foreclosure judgment as compared to a judgment on a note.

Upon entry of a judgment *on a note*, a lender is entitled to interest at the judgment rate rather than its contract rate. *See Brunswick Bank & Trust v. Heln Management LLC*, 453 N.J. Super. 324, 181 A.3d 1030, 2018 WL 987809 (App. Div. 2018) ("***Brunswick II***"). Accordingly, if a lender obtains judgment on its note *before* obtaining a foreclosure judgment, the debt secured by the mortgage includes interest at the contract rate through the date of the judgment on the note plus interest at the judgment rate thereafter. *Id*. That is because the debt secured by a mortgage is created by the note—the mortgage only secures the amounts due under the note. Thus, as explained in *Brunswick II*, if a lender obtains judgment on a note before obtaining a foreclosure judgment on a mortgage securing the note, the lender's right to interest on the note is limited by virtue of the

---

[3] Notably, *Fraleg itself* cited a number of cases in its Supplemental Memorandum where a lender filed suit in the Law Division to collect on a note after the Chancery Division entered a foreclosure judgment. See Supplemental Brief, page 6, *citing Brunswick I, Brunswick II, Brunswick III*.

[4] Supplemental Memorandum, page 1.

judgment on the note. Once judgment on the note is entered, contract interest stops, and judgment interest starts. *Id*.

In *Brunswick II*, a bank filed suit in New Jersey Law Division seeking judgment on promissory notes. The notes were secured by mortgages, but the bank chose to first obtain money judgments in the Law Division before seeking foreclosure of the mortgages in the Chancery Division. *Brunswick Bank & Trust v. Affiliated Bldg. Corp.*, 440 N.J. Super. 118, 119–20 (App. Div. 2015) ("***Brunswick I***"). Shortly before obtaining judgment on the notes, the bank filed foreclosure actions in the Chancery Division, and obtained judgments of foreclosure *after* obtaining judgments on the notes. *Id*.

The appellate court in *Brunswick II* noted the consequences of the bank's obtaining judgments on the notes *before* obtaining foreclosure judgments:

> By taking that course, Brunswick Bank opted to allow the unpaid debt on the four defaulted loans alleged in the Law Division complaint to accrue interest at the rate provided by Rule 4:42-11(a) [that is, the judgment rate], rather than the interest rate to which the parties had been contractually bound.

*Id*. The court's observation above would, of course, be entirely unnecessary if a foreclosure judgment and a judgment on a note secured by the mortgage are treated under New Jersey law as equivalent for the purpose of establishing the date at which judgment rate interest begins to accrue on a note.

As to a lender's right to interest, the consequences to a lender of obtaining a foreclosure judgment first are different than those of obtaining a judgment on the note secured by the mortgage first. Where a lender obtains a judgment on the note first, a lender is entitled only to interest at the judgment rate after entry of the judgment on the note. A mortgage is just a form of security for a debt "and full payment of the underlying debt, by operation of law, will extinguish a mortgage." *Brunswick I, 440* N.J. Super. at 125. With respect to a note secured by a mortgage, the mortgage

13

secures nothing more than the debt. *Id*. *See also, e.g.*, *Summit Trust Co. v. Willow Business Park, L.P.*, 269 N.J. Super. 439 (App. Div. 1994) (a foreclosure proceeding is one "in which the creditor looks to the mortgage as the source of security").

Once judgment is entered on a note, the interest on the unpaid debt is calculated by reference to the judgment rate rather than the rate in the parties' contract. By contrast, a *foreclosure* judgment does not limit the lender's entitlement to interest on the note. Rather, a foreclosure judgment merely sets the lender's credit bid rights and the redemption amount payable by the borrower/mortgagor to redeem the property. *Brunswick II*, 181 A.3d. at 328 (court notes that the default judgments in the foreclosure actions were entered, "setting redemption amounts"). The *redemption amount* under the foreclosure judgment increases at the judgment rate. *But the foreclosure judgment does not affect the rate of interest accruing on the note*.

Fraleg, in its Supplemental Brief, confuses the impact of a *foreclosure judgment* entered on a mortgage on a lender's right to contract rate interest with the impact of a *judgment on a note* secured by that mortgage. Here, unlike in the *Brunswick* cases, Lender never filed a Law Division case on the Note and has not obtained a judgment on the Note secured by the Mortgage. Thus, Fraleg's *in personam* liability on the Note has never been reduced to judgment. Lender thus did not subject itself to the consequence suffered by the bank in the *Brunswick* matter as a result of the bank's decision to obtain judgments on the notes *prior to* obtain foreclosure judgments.

Fraleg points out in its Supplemental Brief—to no avail—that matters determined in a foreclosure judgment may not be relitigated by a lender in an action on a note secured by the mortgage under principles of *res judicata*.[5] This point, while true, is irrelevant here because Lender

---

[5] *See* Supplemental Brief, pages 4–5.

is not seeking to relitigate any of the determinations the Chancery Court made in the Foreclosure Judgment.

The Foreclosure Judgment does not, and does not purport to, determine the *in personam* liability of Fraleg under the Note with respect to interest accruing on the Note after entry of the Foreclosure Judgment. As explained above, interest on the Note continues to accrue at the contract rate until entry of a judgment on Fraleg's *in personam* liability under the Note. But for Fraleg's bankruptcy filings, Lender would have been entitled to file an action seeking a judgment to establish Fraleg's *in personam* liability on the Note. As noted above, Lender would have been entitled to claim interest at the contract rate in such an action, notwithstanding the previous entry of the Foreclosure Judgment setting the redemption amount. The unpaid debt to Lender under the Note would have accrued interest at the contract rate until entry of a judgment on the Note, after which interest would have accrued at the judgment rate. Because of Fraleg's bankruptcy filings, Lender has sought payment of the debt due under the Note pursuant to the Proofs of Claim filed by Lender in Fraleg's bankruptcy cases. Lender was and is entitled to include contract rate interest in its proofs of claim because there has never been a judgment entered on the Note and thus the unpaid debt continues to bear interest at the contract rate.

Fraleg's arguments are all based on cases where a lender obtained a judgment on a note *and then later* obtained a foreclosure judgment. Fraleg cites *Brunswick I* and *Brunswick II* in support of its position but as noted above, the bank in the *Brunswick* cases obtained judgments on the notes before obtaining foreclosure judgments. *Brunswick I*, 440 N.J. Super at 119–20. Those cases are inapplicable here because Lender in this case never obtained a judgment on the Note. Moreover, as detailed above, a foreclosure judgment does not impact a lender's right to accrue interest on the unpaid debt at the contract rate for purposes of establishing the borrower's *in*

*personam* liability on a note. Fraleg's core mistake is its assertion that a foreclosure judgment, which serves only to set a redemption amount and the amount which a lender can credit bid at a sheriff's sale, is equivalent to a judgment on a note. Fraleg has not cited any authority to support this assertion, and it is directly contrary to New Jersey law.

### B. Lender is entitled to its attorneys' fees and costs incurred after the date of the Foreclosure Judgment.

"Where the obligation is 'in the form of a note, he (mortgagee) was free to proceed to recover upon and collect the obligation free from the restrictions and inhibitions of the [foreclosure] statutes cited.'" *79-83 Thirteenth Ave., Limited v. De Marco*, 79 N.J. Super. 47, 52 (Law Div. 1963) (quoting *Silver v. Williams*, 72 N.J. Super. 564, 568 (App. Div. 1962)). New Jersey courts have been clear, as noted above, that the statute limited attorneys' fees in foreclosures is just that: a limitation *in foreclosure actions*. By its terms Rule 4:42-9(a)(4) clearly states that the limitations set forth therein are applicable "[i]n an action for the foreclosure of a mortgage," and not broadly among any other action, whether on a related debt instrument, guaranty, or otherwise.

Additionally, New Jersey courts have found that "the application of issue preclusion does not prohibit a lender from recovering advances, interest, costs, attorneys' fees, and the like that accrue after the date of the first judgment," contemplating a foreclosure judgment and a judgment on the note. *First Union Nat. Bank v. Penn Salem Marina, Inc.*, 190 N.J. 342, 355 (2007). Specifically, "because the note and the mortgage permitted the lender to claim different categories of damages, issue preclusion does not bar [lender]'s claim for a category of damages that was not sought in the [First] Action." *Id.* The *First Union* Court was clear that "amounts accruing after the first judgment and for different categories of damages" were properly recoverable in a second action. *Id.* at 345. Similarly, here, Lender did not claim certain damages in the Foreclosure Action, for reasons including that same would not be recoverable therein based on statutes, court standards,

16

or simply because they had not yet been accrued. Lender is entitled to recover (a) all categories or amounts of costs and fees not claimed in the foreclosure, including default interest, and (b) all categories and amounts of costs and fees that have accrued or been incurred since the Foreclosure Judgment.

### C. Fraleg is incorrect on its "fair market value credit" argument.

Finally, Fraleg asserts that "there is an absolute right to a 'fair value' defense by the defendants to have the judgment determined by the 'fair value' of the property in commercial foreclosures.'" [Supplemental Brief, p. 9.] Once again, Fraleg misunderstands and misapplies New Jersey law. The case cited by Fraleg, *Brunswick II*, does not even stand for this proposition as Fraleg suggests. That Court noted only that "a court of equity may, in appropriate circumstances, through application of fair market value credits, or by other recognized means, spare a party from an unwarranted forfeiture." *Brunswick II*, 453 N.J. Super at 330. Similarly, Fraleg cites to *In re Karagiannis* in support of this claim, but that Court also noted that the fair market value statutory provisions "were limited to *residential* mortgages per N.J.S.A. 2A:50-2.3 . . . ." *In re Karagiannis*, 453 B.R. 458, 555 (Bankr. D.N.J. 2011) (emphasis in original).

New Jersey courts have actually made it quite clear that "[T]he statutory mandate for a fair market credit is not applicable to commercial or business loans and [ ] all of the case law applying the concept of a fair market value credit as an equitable remedy, even as to commercial debtors, arise(s) in the context of a foreclosure proceeding and/or resulting deficiency proceeding in which the creditor looks to the mortgage as the source of security." *Summit Trust*, 269 N.J. Super. 439. Fraleg is thus not entitled to any fair market value defense or credit here, given that (a) it is a commercial debt that is owed, and (b) this is not a foreclosure or deficiency proceeding. In any event, a fair market credit finding does not address the issue here, which is the amount of Lender's

17

claim under the Note. Moreover, Lender was not permitted to foreclose and accordingly never received the property subject to the Mortgage.

## CONCLUSION

The Foreclosure Judgment does not prohibit Lender from collecting contract interest on the Note. The Note did not merge into the Foreclosure Judgment. Further, the Foreclosure Judgment does not prevent Lender from collecting additional amounts incurred, including attorneys' fees and costs. The June 7 Payoff and both of Lender's Proofs of Claim are correctly computed and seek amounts that are legitimately owed by Fraleg to Lender.

Dated: October 6, 2022

    Respectfully submitted,

    POLSINELLI PC

    By:    */s/ David D. Ferguson*
    MORGAN C. FIANDER
    600 Third Avenue, 42nd Floor
    New York, New York 10016
    (212) 684-0199
    mfiander@polsinelli.com

    DAVID D. FERGUSON
    900 West 48th Place, Suite 900
    Kansas City, Missouri 64112
    (816) 360-4311
    dferguson@polsinelli.com

    ATTORNEYS FOR CAF BORROWER GS LLC

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 6th day of October 2022, a true and correct copy of the foregoing *Supplemental Brief CAF Borrower GS LLC* was served by ECF notification from the court to the parties who have requested notice in this case, and served by electronic mail to:

Avrum J. Rosen, Esq.
Avrum J. Rosen, PLLC
38 New Street
Huntington, New York 11743
arosen@ajrlawny.com

                                                        */s/ David D. Ferguson*