UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
In re:                                                                  Chapter 11

FRALEG GROUP, INC.,                                      Case No.: 22-41410-jmm

                              Debtor.
----------------------------------------------------------X


### DEBTOR'S AMENDED PLAN OF REORGANIZATION


**LAW OFFICES OF AVRUM J. ROSEN, PLLC**
Counsel to Fraleg Group, Inc., Debtor and Debtor-in-Possession

Avrum J. Rosen, Esq.
Nico G. Pizzo, Esq.

38 New Street
Huntington, New York 11743
Telephone: (631) 423-8527

October 18, 2022

# TABLE OF CONTENTS

Page

INTRODUCTION……………………………………………………………………………...1

OVERVIEW OF THE PLAN……………………………………………………………...………………………1

ARTICLE I DEFINITIONS……………………………………………………………………………….2

ARTICLE II DESIGNATION OF CLASSES……………………………………………………….6

ARTICLE III TREATMENT OF CLAIMS AND EQUITY INTERESTS UNDER THE PLAN…………………………………………………..6

ARTICLE IV MEANS FOR FUNDING AND IMPLEMENTATION OF THE PLAN, AND BIDDING PROCEDURES…………………………………………………………………………...8

ARTICLE V EXECUTORY CONTRACTS AND UNEXPIRED LEASES……………………..................................................................................................16

ARTICLE VI LIQUIDATION ANALYSIS ……………………………………………………16

ARTICLE VII EFFECT OF CONFIRMATION; DISCHARGE OF CLAIMS; INJUNCTION………………………………………………………………………………16

ARTICLE VIII CLAIM AND DISTRIBUTION MATTER……………………………………19

ARTICLE IX RETENTION OF JURISDICTION………………………………………………………………………......21

ARTICLE X GENERAL PROVISIONS…………………………………………………...22

ARTICLE XI AMENDMENTS, MODIFICATIONS AND REVOCATION………………….................................................................................25

**Law Offices of Avrum J. Rosen, PLLC**
38 New Street
Huntington, New York 11743
(631) 423-8527
Avrum J. Rosen, Esq.
Nico G. Pizzo, Esq.

*Attorneys for the Debtor and Debtor-in-Possession*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
In re:                                                                    Chapter 11

FRALEG GROUP, INC.,                                      Case No.: 22-41410-jmm

                                    Debtor.
----------------------------------------------------------X

## DEBTOR'S AMENDED PLAN OF REORGANIZATION

## INTRODUCTION

Fraleg Group, Inc., the debtor and debtor-in-possession (the "<u>Debtor</u>"), proposes this amended plan of reorganization (the "<u>Plan</u>") pursuant to Chapter 11 of Title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>").

## OVERVIEW OF THE PLAN

The Debtor is committed to retaining ownership of its properties and is filing this Plan to refinance the underlying mortgage debt and to pay other creditors to the extent they exist. The Debtor's preferred treatment is to refinance CAF's agreed Secured Claim as determined by the settlement with CAF based on an agreed amount of $4,500.000.00 with interest to start on November 23, 2022 if not paid and recommence renovations on the Properties. The Plan also provides for a 100% distribution to general unsecured creditors with interest at the federal judgment rate in effect on the date the Plan is confirmed.

ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

# ARTICLE I

## DEFINITIONS

For purposes of this Plan and Disclosure Statement simultaneously filed by the Debtor, the following terms shall have the respective meanings set forth below (such meanings to be equally applicable to the singular and plural forms of the terms defined, unless the context otherwise requires):

**1.01**    "Administrative Expense" or "Administrative Claim" means any cost or expense of administration of the Case under section 503(b) of the Bankruptcy Code that is entitled to priority under section 507(a)(2) of the Bankruptcy Code including, without limitation, any actual and necessary costs and expenses of preserving the Estate.

**1.02**    "Additional Property" means the real property located at 1133-1135 Clay Avenue, Bronx, New York 10456, which is owned by an entity that is controlled by the Debtor's principals', and is additional collateral secured against the Fairbridge Loan.

**1.03**    "Agreed CAF Secured Claim" means the Allowed Claim of CAF for the agreed upon payoff of CAF's Secured Claim at $4,500,000.00 for the purposes of this Plan. If the Refinance and payoff of the Agreed CAF Secured Claim does not take place by November 22, 2022, then the Agreed CAF Secured Claim shall accrue interest at 3.5% per annum effective as of November 23, 2022. If the Refinance does not take place by December 15, 2022, the Agreed CAF Secured Claim shall thereafter accrue interest at the rate of 10% per annum effective as of December 16, 2022 until the Agreed CAF Secured Claim is satisfied.

**1.04**    "Allowed" means that portion of a Claim or an Equity Interest that: (a) has been timely filed by virtue of a proof of claim or interest with the Bankruptcy Court and is liquidated in an amount and has not been objected to; or (b) has been listed in the Schedules as being neither contingent, unliquidated nor disputed and has not been objected to; or (c) has been allowed by a Final Order of the Bankruptcy Court.

**1.05**    "Bankruptcy Code" means Title 11 of the United States Code.

**1.06**    "Bankruptcy Court" means the United States Bankruptcy Court for the Eastern District of New York.

**1.07**    "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, and any amendments or supplements thereto.

**1.08**    "CAF" means CAF Borrower GS, LLC, as mortgagee.

**1.09**    "Case" means the Chapter 11 case of the Debtor now pending in the Bankruptcy Court under case number 22-41410-jmm.

**1.10** "Causes of Action" means any and all litigations, actions, suits, claims for relief, accounts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment, and Claims, whether known or unknown, filed or unfiled, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured, and whether asserted or assertable directly or derivatively, in law, equity or otherwise, whether arising prior to or after the Filing Date.

**1.11** "Chapter 11" means Chapter 11 of the Bankruptcy Code.

**1.12** "Claim" means a claim as defined in section 101(5) of the Bankruptcy Code.

**1.13** "Claimant" means the holder of a Claim.

**1.14** "Class" means a group of Claims consisting of Claims which are substantially similar to each other as classified pursuant to the Plan.

**1.15** "Confirmation Date" means the date upon which the Confirmation Order is entered in the Bankruptcy Court.

**1.16** "Confirmation Hearing" means the hearing to be held by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider Confirmation of the Plan.

**1.17** "Confirmation Order" means an order of the Bankruptcy Court confirming the Plan in accordance with the provisions of the Bankruptcy Code (as may be amended, modified or supplemented).

**1.18** "Cure" means the amount required by the Debtor to cure its alleged pre-petition monetary default under the Mortgage.

**1.19** "Debtor" means Fraleg Group Inc.

**1.20** "Debtor Professionals" means the attorneys, accountants, auctioneers, brokers, managers, consultants, other professionals, agents, investigators, expert witnesses, consultants, and advisors as necessary to discharge the duties of the Debtor under the Plan (each in their capacity as such).

**1.21** "Disclosure Statement" means the Debtor's Disclosure Statement dated September 15, 2022 (as may be amended, modified for supplemented) to accompany the Plan, and all annexes, schedules or exhibits attached thereto or referenced therein.

**1.22** "Disputed Claim" means a Claim or a request for payment of an Administrative Expense, as the case may be, as to which as of the Effective Date: (a) a proof of claim or a request for payment of an Administrative Expense, as the case may be, has been filed with the Bankruptcy Court or deemed filed under applicable law or order of the Bankruptcy Court; and (b) an objection has been or will be timely filed; and (c) such objection has not been: (i) withdrawn, (ii) overruled or denied in whole or part by a Final Order, or (iii) granted in whole or in part by a Final Order.

**1.23** "Distributions" means the distributions made to Holders of Allowed Claims and Allowed Administrative Expenses pursuant to the Plan.

**1.24** "Effective Date" means the date when the Confirmation Order become a Final Order.

**1.25** "Entity" has the meaning set forth in section 101(15) of the Bankruptcy Code.

**1.26** "Equity Interests" means the holders of equity of the Debtor.

**1.27** "Estate" means the estate of the Debtor created under section 541 of the Bankruptcy Code.

**1.28** "Executory Contract" means each agreement, contract or unexpired lease to which the Debtor is a party and which is executory within the meaning of section 365 of the Bankruptcy Code, including any modifications, amendments, addenda or supplements thereto, and any ancillary agreements related thereto.

**1.29** "Fairbridge Loan" means the Refinance loan between Fairbridge Credit LLC and the Debtor.

**1.30** "Filing Date" means June 17, 2022, the date the Debtor's Chapter 11 Case was commenced.

**1.31** "Final Order" means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction, as entered on the docket of such court which, not having been reversed, modified, amended, or stayed, and the time for seeking review of which by way of appeal, petition for certiorari, motion for reargument and rehearing or other review having expired, and as to which no appeal, petition for certiorari, motion for reargument and rehearing or other review is pending, has become conclusive of all matters adjudicated thereby and is in full force and effect.

**1.32** "General Unsecured Claim" means a Claim that is not an Administrative Claim, Priority Tax Claim, Secured Claim or Priority Claim including, without limitation, any Claims based upon the rejection of an Executory Contract during the pendency of the Case, and any deficiency claim.

**1.33** "Guarantor" means Andy O. Alege, an individual guarantor of the Loan Documents and the president of the Debtor.

**1.34** "Holder" means the legal or beneficial holder of a Claim or Equity Interests (and, when used in conjunction with a Class or type of Claim or Equity Interests, means a holder of a Claim or Equity Interests in such Class or of such type).

**1.35** "Loan Documents" means the Mortgage, Promissory Note and Loan Agreement executed between Corevest American Finance Lender LLC and Fraleg Group Inc.

**1.36**    "<u>Mortgage</u>" means the first mortgage lien on the Property held by CAF Borrower GS, LLC.

**1.37**    "<u>Person</u>" has the meaning set forth in section 101(41) of the Bankruptcy Code.

**1.38**    "<u>Priority Claim</u>" means a Claim entitled to priority pursuant to section 507(a) of the Bankruptcy Code, other than: (a) an Administrative Claim; or (b) a Priority Tax Claim.

**1.39**    "<u>Priority Tax Claim</u>" means a Claim by a governmental unit that is entitled to priority in payment pursuant to section 507(a)(8) of the Bankruptcy Code.

**1.40**    "<u>Pro Rata</u>" means, with respect to the Holder of an Allowed Claim of a particular Class, the same proportion that the amount of such Allowed Claim bears to the aggregate amount of all Allowed Claims of such Class.

**1.41**    "<u>Properties</u>" means the Debtor's 2 real properties as disclosed on the Debtor's Schedules [Dkt. No. 1], including (i) 112 North Walnut Street, East Orange, New Jersey 07017; and (ii) 116 North Walnut Street, East Orange, New Jersey 07017.

**1.42**    "<u>Refinancing</u>" and/or "<u>Refinance</u>" means the replacement of the CAF Borrower GS, LLC's debt obligation with another debt obligation under similar or different terms.

**1.43**    "<u>Released Parties</u>" means the Debtor, the Guarantor, the Debtor's Professionals and all of their respective partners, officers, employees, representatives and agents of the Debtor, along with CAF and all of CAF's respective partners, officers, employees, representatives and agents including counsel for CAF.

**1.44**    "<u>Reorganized Debtor</u>" means the Debtor following the confirmation of the Plan.

**1.45**    "<u>Schedules</u>" means the Debtor's schedules of assets and liabilities filed on June 17, 2022 [Dkt. No. 1] pursuant to section 521 of the Bankruptcy Code and Bankruptcy Rule 1007 and all amendments thereto.

**1.46**    "<u>Secured Claim</u>" means a Claim secured by a valid, perfected and enforceable lien in assets of the Debtor, to the extent of the value of the interest of the holder of such Secured Claim in such assets as determined by the Bankruptcy Court pursuant to section 506(a) of the Bankruptcy Code or acknowledged by the Debtor in writing or provided for in the Plan.

**1.47**    "<u>United States Trustee Fees</u>" means all United States Trustee statutory fees and interest thereon arising under 28 U.S.C. § 1930 and 31 U.S.C. § 3717.

## ARTICLE II

## DESIGNATION OF CLASSES

All Holders of Claims and Equity Interests against or in the Debtor, of whatever kind or nature, whether or not scheduled or liquidated, absolute or contingent, whether Allowed or not, shall be bound by the provisions of the Plan and are hereby classified as follows:

**2.01**  **Class 1:**  Class 1 shall consist of the Agreed CAF Secured Claim.

**2.02**  **Class 2:**  Class 2 shall consist of all Allowed General Unsecured Claims.

**2.03**  **Class 3:**  Class 3 shall consist of all Allowed Equity Interests.

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Priority Tax Claims and United States Trustee Fees have not been classified and thus are excluded from the Classes.

## ARTICLE III

## TREATMENT OF CLAIMS AND EQUITY INTERESTS UNDER THE PLAN

**3.01**  **Class 1:**  Class 1 is impaired. Since the Filing Date, the Debtor and CAF have engaged in motion practice and litigation surrounding the accurate calculation of the sums secured by CAF's Mortgage and CAF's secured claim. The Debtor and CAF have agreed that the Agreed CAF Secured Claim shall be an allowed claim in the amount of $4,500,000.00. If the Refinance and payoff of the Agreed CAF Secured Claim does not take place by November 22, 2022, then the Agreed CAF Secured Claim shall accrue interest at 3.5% per annum effective as of November 23, 2022.  If the Refinance does not take place by December 15, 2022, the Agreed CAF Secured Claim shall thereafter accrue interest at the rate of 10% per annum effective as of December 16, 2022. This interest rate shall apply until payment of the Agreed CAF Secured Claim either in connection with the Refinance or by sale of the Property. The loan documents evidencing the Claim of CAF shall remain in full force and effect, subject to the terms of the Plan and the Bankruptcy Code, until the Agreed CAF Secured Claim is satisfied in accordance with the Plan.

CAF and the Debtor are in dispute with regard to the allowable amount of CAF's Secured Claim, and the parties have reached an agreement, solely for the purposes of the Plan, on the terms set forth in the Plan, for the amount and treatment of CAF's Claim. If the Plan is not confirmed then CAF's agreement to accept the Agreed CAF Secured Claim shall no longer be effective, and CAF and the Debtor shall be permitted to request that the Court resolve the amount of CAF's Secured Claim pursuant to the briefing previously filed with the Court. If the construction reserve held by CAF has not been offset pursuant to an Order of the Court prior to Confirmation, then the Confirmation Order shall provide for CAF to offset the construction reserve. The calculation of the Agreed CAF Secured Claim of $4,500,000.00 included a netting of the construction reserve against CAF's Secured Claim (such that, upon Court approval of the offset of the construction reserve, the Agreed CAF Secured Claim will remain $4,500,000.00).

As is set forth in Article IV section 4.02 of the Plan, if the Refinance has not closed by December 1, 2022, the Debtor's duly retained broker, MYC Associates shall commence marketing efforts and shall start expending funds for the marketing on December 16, 2022, if the Refinance has not closed.  The Auction sale of the Property, either with, or without, a stalking horse bidder shall take place before January 31, 2023 if the Refinance does not timely close. The terms and procedures for the Auction sale are set forth in the Plan.

CAF, pursuant to Bankruptcy Code Section 363(k), shall be entitled to credit bid up to the amount of the Agreed CAF Secured Claim at the auction sale of the Property as provided for under the Plan.

The Debtor has obtained a Conditional Mortgage Commitment, which is attached as Exhibit "B" to the Disclosure Statement. The proceeds of that Loan shall be used to pay the Agreed CAF Secured Claim, all other Allowed Claims and Allowed Administration Claims.

**Voting:**  The Class 1 Claimant is impaired and is eligible to vote on the Plan.

**3.02**    **Class 2:**  Class 2 Claimants shall receive a 100% distribution to be paid by the Debtor within 60 days after the Effective Date[1] with interest at the federal judgment rate in effect on the Confirmation Date. Class 2 Claimants are unimpaired, are not eligible to vote on the Plan and are deemed to have accepted the Plan.

**3.03**    **Class 3:**  Class 3 Claimants shall retain all existing pre-petition Equity Interest in the Debtor effective as of the Effective Date. Class 3 Claimants are unimpaired, are not eligible to vote on the Plan and are deemed to have accepted the Plan.

**3.04**    **Administrative Claims of the Debtor and the Debtor's Professionals:**  The Allowed Administrative Claims of the Debtor and the Debtor's Professionals are unimpaired and shall be paid in full by the Debtor within 30 days after the Effective Date or upon the approval of the professional fee application, even if estimates fall below actual awarded amounts or such later date after approval by the Court after notice and a hearing.

**3.05**    **Administrative Claims Other than the Debtor and the Debtor's Professionals:**  Allowed Administrative Claims (other than Claims of the Debtor and the Debtor's Professionals), to the extent that any such Claims exist, are unimpaired and shall be paid in full by the Debtor within 30 days after the Effective Date.

**3.06**    **Priority Tax Claims:**  Allowed Priority Tax Claims pursuant to section 507(a)(8) of the Bankruptcy Code, to the extent that any such Claims should exist, are unimpaired and shall be paid in full by the Debtor as required by section 1129(a)(9) with statutory interest.

---

[1] The Debtor received a loan from the Small Business Association in an amount of approximately $625,875.00 (the "SBA Loan"). The Debtor applied for forgiveness of the SBA Loan, which is currently pending. The SBA Loan will either be paid in full or forgiven, in accordance with its terms.

**3.07** **United States Trustee's Fees:**  The Claims of the United States Trustee are unimpaired. The Debtor shall pay all United States Trustee Fees and any interest and penalties in full from the Effective Date through the date the final decree is entered.

## ARTICLE IV

## MEANS FOR FUNDING AND
## IMPLEMENTATION OF THE PLAN, AND BIDDING PROCEDURES

### 4.01    Plan Funding

The Plan shall be funded through a combination of: (a) the Refinancing of the Properties; and/or (b) contributions from the Debtor's principal and insiders; or (c) sale of the Debtor's Property at auction as set forth herein.

### 4.02    Means for Implementation of the Plan

a)    The Court shall enter the Confirmation Order and that Order shall become a Final Order and the Plan shall go effective.

b)    The Refinance shall take place pursuant to the Final Commitment and all payments pursuant to the Plan of all Allowed Claims shall be made by December 15, 2022.

c)    If the Refinance has not closed by December 15, 2022, the Debtor's duly retained broker, MYC associates shall commence marketing efforts and shall start expending funds for the marketing on December 16, 2022, if the Refinance has not closed by that date.

d)    If the Refinance does not take place by November 22, 2022, then the Agreed CAF Secured Claim shall bear interest at 3.5% beginning on November 23, 2022.  If the Refinance does not close by December 15, 2022, the Agreed CAF Secured Claim shall bear interest at the rate of 10% per annum beginning on December 16, 2022 through the date that the Agreed CAF Secured Claim is paid.

e)    If the Refinance has not closed by December 15, 2022, the Debtor's duly retained broker, MYC & Associates, Inc. shall commence marketing efforts and shall start expending funds for the marketing on December 16, 2022, if the Refinance has not closed. The Auction sale of the Property, either with, or without, a stalking horse bidder shall take place before January 31, 2023 pursuant to the Bidding Procedures below:

(a)    These terms and conditions of sale ("Terms and Conditions of Sale") are being promulgated in connection with the United States Bankruptcy Court, Eastern District of New York ("Bankruptcy Court") authorized auction sale ("Sale") of Debtor's Properties commonly known as consisting of one (1) multi-family residential building located at 112 North Walnut

Street, East Orange, New Jersey 07017 (the "Property") and a vacant unimproved land commonly known as and located at 116 North Walnut Street, East Orange, New Jersey 07017 (the "Vacant Lot" and the Property are collectively the "Properties").). The seller of the Properties is Fraleg Group, Inc.,("Debtor"), a debtor in a Chapter 11 case currently pending in the Bankruptcy Court under the caption and case number set forth above; The Debtor's retained real estate broker and auctioneer ("Auctioneer") is MYC & Associates, Inc. ("MYC"), 1110 South Avenue, Suite 22, Staten Island, New York 10314; Telephone (347) 273-1258; Facsimile (347) 273-1358; email: sales@myccorp.com; and website: www.myccorp.com.

(b)      The auction sale ("Sale") will take place at a date and time to be determined by the Debtor in consultation with MYC and CAF. The auction shall be conducted by MYC. Under no circumstances shall the Sale take place earlier than thirty (30) days from the date of entry of the Confirmation Order authorizing the Debtor to conduct the auction, Sale.

(c)      Information regarding Debtor's sale of the Property can be obtained by contacting the Debtor's counsel at the telephone number and address set forth herein or by contacting MYC or on the MYC website set forth in paragraph "a" above.

(d)      Debtor, in its sole discretion and under its business judgment authority, retains the right to enter into a stalking horse contract with a potential buyer ("Stalking Horse Bidder") that offers a purchase price that Debtor deems to be a reasonable and valid purchase offer ("Stalking Horse Offer"). The Debtor shall use the Stalking Horse Offer as the reserve sale price at the Sale, such that the Sale will not tender less than the Stalking Horse Offer at the Sale.

(e)      In order to be considered by the Court and admissible on the date of the Sale Hearing, any competing offer ("Competing Offer") must satisfy the following terms and conditions: (i) a Competing Offer shall provide for a Purchase Price of at least $25,000.00 more than the CAF's credit bid; (ii) the Competing Offer shall be substantially similar to the Terms and Conditions of Sale; (iii) a higher or better Competing Offeror must sign these Terms and Conditions of Sale agreeing to be bound; (iv) the Competing Offer shall have demonstrated, to the satisfaction of the Debtor, and CAF, evidence of its ability to conclude the transaction upon the terms and conditions of sale, without delay; (v) the Competing Offer shall not be conditioned upon the outcome of unperformed due diligence by the Competing Offeror with respect to the Assets that are the subject of this Sale; (vi) the Competing Offeror shall provide, at least two (2) days before the Sale Hearing, a certified check made payable to Debtor, the sum of ten

percent (10%) of the proposed purchase price as a Down payment; and (vii) in the case of any subsequent competing offer ("Subsequent Competing Offer") received from any party, which may, include, without limitation, the Buyer (after a prior competing bid has been received) which satisfies the conditions set forth above, such Competing Offer shall provide for an aggregate consideration at least $25,000.00, but within the discretion of MYC at the Sale to set a lower Subsequent Competing Offer, in excess of that provided by the prior better offer and shall otherwise comply with all conditions of the Agreement.

(f)      In order to be permitted to bid on the Property, at least two (2) days prior to the commencement of the Sale, and as a condition to be able to bid at the Sale, each prospective bidder must: (i) register with MYC; (ii) deliver to MYC the original signed Terms and Conditions of Sale; and (iii) tender a bank check in the amount of $            ("Qualifying Deposit") made payable to "Fraleg Group, Inc., DIP", which amount shall serve as a good faith deposit against payment of the purchase price by such bidder in the event that such bidder is determined to have made the highest or best bid ("Successful Bidder").

(g)      Within forty-eight (48) hours after conclusion of the Sale, the Successful Bidder of the Properties shall deliver to the Debtor a bank check which amount must be equal to ten (10%) percent of the successful bid, minus the Qualifying Deposit (together with the Qualifying Deposit, the "Deposit").  The Successful Bidder for the Property must execute, and thereby agree to be bound by: (i) these Terms and Conditions of Sale; and (ii) a Memorandum of Sale.  At the conclusion of the Sale, the Debtor, or its representative, will return the Qualifying Deposits to all other bidders. The Debtor, however, shall retain the Qualifying Deposit of the second highest bidder ("Second Bidder") until the closing of the Sale with the first bidder or the sale to the Second Bidder.  If the First Bidder closes the check of the Second Bidder shall be returned within three (3) business days of the closing.

(h)      The Successful Bidder, or its assigns, must close title ("Closing") to the Property on a date ("Closing Date"), within twenty-one (21) business days following the date of entry of a Bankruptcy Court Order approving the Sale. The deadline for the Closing may be extended solely by the Debtor, with the written consent of CAF.  The Purchase Price shall be paid no later than the Closing Date, and proceeds of the sale sufficient to pay the Agreed CAF Secured Claim (in the amount provided for under this Plan) shall be delivered to CAF within two (2) business days after Debtor's receipt of the

funds from the purchaser at the sale. The Closing shall take place at a location that is to be determined by the Debtor.

(i)     The Bankruptcy Court, prior to the Closing, may enter an Order confirming the Sale.

(j)     In connection with the Closing and Closing Date, the Successful Bidder, or its assigns, is hereby given notice that **Time is of the Essence against the Successful Bidder, or its assigns, and the failure of the Successful Bidder, or its assigns, to close for any reason whatsoever (except as otherwise provided below) including his, her, or its, failure to pay the balance of the Purchase Price on the Closing Date, will result in the Seller retaining the Deposit as liquidated damages and the termination of the Successful Bidder, or its assigns, right to acquire the Property under these Terms and Conditions of Sale**.  The Successful Bidder, or its assigns, shall be obligated to close title to the Properties and there is no contingency of any kind or nature that will permit the Successful Bidder, or its assigns, to cancel or avoid his, her, or its, obligation under these Terms and Conditions of Sale other than the Debtor's inability to deliver insurable title to the Property.  Further, the Successful Bidder, or its assigns, must demonstrate, to the satisfaction of the Debtor or the Bankruptcy Court, as the case may be, evidence of his, her, or its, ability to conclude the transaction upon these Terms and Conditions of Sale, without delay. The Debtor reserves the right to reject any bidder/offeror, who the Debtor, in its sole discretion, believes is not financially capable of consummating the purchase of the Property.  **Expenses incurred by the Successful Bidder, or its assigns, or any competing bidder concerning the performance of any due diligence, such as obtaining title reports or environmental inspections, shall be the sole financial responsibility of such bidder and under no circumstances shall the Debtor, or the Debtor's estate, or the Debtor's professionals, be liable or responsible for, or pay, such expenses.**

(k)     In the event that the Successful Bidder for the Property, or its assigns, fails to tender the balance of the Purchase Price on the Closing Date, or otherwise perform his, her, or its, obligations under these Terms and Conditions of Sale, the Debtor, at its sole option, shall immediately negotiate the Qualifying Deposit of the Second Bidder and shall be further authorized to sell the Property to the Second Bidder, or its assigns, without any further notice or approval of the Bankruptcy Court, without giving credit to the Second Bidder for the Deposit forfeited by the Successful Bidder, and upon such other terms and conditions as the Debtor deems appropriate.  Should the Second Bidder, or its assigns, fail to close on the

Property within twenty one (21) business days of receiving from the Debtor, notice, **TIME BEING OF THE ESSENCE**, (at the address set forth on the bidder registration form) that said Second Bidder is now deemed the Successful Bidder, then the **Sellers shall be: (a) authorized to keep the Qualifying Deposit of the Second Bidder as liquidated damages**; and (b) authorized but not obligated to sell the Property to the next highest bidder, without any further notice or approval of the Court. If there are no bidders at the sale, or if a sale of the Property is not Closed within twenty-one (21) days after entry the Bankruptcy Court's Order approving a Sale to the Successful Bidder or the Second Bidder, the Debtor shall promptly deed the Property to CAF in satisfaction of the Agreed CAF Secured Claim. but in any event no later than five (5) business days after the later of (i) the conclusion of the auction (if there are no bidders other than CAF) or (ii) entry of an Order by the Bankruptcy Court denying approval of the sale of the Property. Notwithstanding any other provision of this Plan, if a Sale of the Property has not Closed by March 31, 2023, then the Debtor shall deed the Property to Lender no later than April 5, 2023.

(l)     The Property is being sold and delivered free and clear of all liens, claims and encumbrances of whatever kind or nature, to the extent the sale of the premises includes items of personal property, the transfer shall be "as is" and without warranty, express, statutory, or implied, as to discretion, title, condition, location, quality, fitness or any particular use or purpose or otherwise.

(m)     The Property is being sold and delivered **"AS IS", "WHERE IS", "WITH ALL FAULTS"**, without any representations, covenants, guarantees or warranties of any kind or nature whatsoever, and free and clear of all monetary liens, claims and encumbrances of whatever kind or nature, such liens, claims, interests and encumbrances, if any, to attach to the proceeds of Sale in such order and priority as they existed immediately prior to the Sale Date, and subject to, among other things: (a) any state of facts that an accurate survey may show; (b) any covenants, restrictions and easements of record; (c) any state of facts a physical inspection may show; (d) any building or zoning ordinances or other applicable municipal regulations and violations thereof; (e) environmental conditions; and (f) subject to all deed restrictions.  By delivering their respective Qualifying Deposits, all bidders acknowledge that they have had the opportunity to review and inspect the Property, the state of title thereof and laws, rules and regulations applicable thereto, and the form of the Debtor's Deed that the Debtor will execute to convey the Property, and will rely solely thereon and on their own independent investigations and inspections of the Property in making their bids.  All bidders acknowledge that they have conducted their

own due diligence in connection with the Property, and are not relying on any information provided by the Debtor, MYC or the Debtor's retained professionals.

(n)    The Property shall be delivered vacant of any and all existing tenancies and occupancies.

(o)    The Debtor, MYC and Debtor's retained professionals have not made and do not make any representations or warrantees with respect to the permissible uses of the Property, the physical condition, rents, leases, expenses, operations, value of the land or buildings thereon, number of building lots, use or any other matter or thing affecting or related to the Property or the Sale, that might be pertinent to the purchase of the Properties, including, without limitation: (a) the current or future real estate tax liability, assessment or valuation of the Property; (b) the potential qualification of the Properties for any and all benefits conferred by or available under federal, state or municipal laws, whether for subsidies, special real estate tax treatment, insurance, mortgages, or any other benefits, whether similar or dissimilar to those enumerated; (c) the compliance or non-compliance of the Property, in its current or any future state, with applicable current or future zoning ordinances or other land use law or regulation, or the ability of the owner of the Property to obtain a change in the zoning or use, or a variance in respect to the Property; (d) the availability of any financing for the purchase, alteration, rehabilitation or operation of the Property from any source, including, but not limited to, any state, city, local government or federal government or institutional lender; (e) the current or future use of the Property; (f) the present and future condition and operating state of any and all machinery or equipment in the Property and the present or future structural and physical condition of any building thereon or its suitability for rehabilitation or renovation; (g) the ownership or state of title of any personal property in the Property; (h) the presence or absence of any laws, ordinances, rules or regulations issued by any governmental authority, agency or board and any violations thereof; (i) any present or future issues concerning subdivision or non-subdivision of the Property; or (j) the compliance or non-compliance of the Property with environmental laws and the presence or absence of underground fuel storage tanks, any asbestos or other hazardous materials anywhere in the Property. Each bidder hereby expressly agrees and acknowledges that no such representations have been made, except for the representation as to open permits. The Debtor and her retained professionals shall not be liable or bound in any manner by expressed or implied warranties, guaranties, promises, statements, representations or information pertaining to the Property, made or furnished by the Debtor or any real estate broker, agent,

employee, servant or other person or professional representing or purporting to represent the Debtor unless such warranties, guaranties, promises, statements, representations or information are expressly and specifically set forth in a signed writing by the Debtor.

(p)     The Debtor shall convey the Property by delivery of a Debtor's quitclaim deed.  The quality of title shall be that which a reputable title insurance company doing business in the State of New Jersey is willing to approve and insure.  At the Debtor's option, the Debtor may arrange for the issuance of a title insurance policy by a reputable title company, if the Successful Bidder is unable to do so, at the sole cost and expense of the Successful Bidder.  The Debtor shall provide all documents required by the Successful Bidder's title company for them to 'omit' any exceptions from the Successful Bidder's title policy.

(q)     Nothing contained in these Terms and Conditions of Sale shall supersede or alter any provisions of Title 11, United States Code ("Bankruptcy Code") and/or of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") or otherwise interfere with the jurisdiction of the Bankruptcy Court.  To the extent of any conflict between the Bankruptcy Code and/or the Bankruptcy Rules and these Terms and Conditions of Sale, the Bankruptcy Code and/or the Bankruptcy Rules shall govern.  All of the terms and conditions set forth in these Terms and Conditions of Sale are subject to modification as may be directed by the Debtor, or by the Bankruptcy Court.  The Debtor reserves the right to modify these Terms and Conditions of Sale at the Sale, or thereafter, to maintain consistency with the provisions of the Bankruptcy Code, Bankruptcy Rules, and/or orders of the Bankruptcy Court.

(r)     Neither the Debtor, MYC, the Debtor's retained professionals, nor Debtor's estate, are liable or responsible for the payment of fees of any broker or agent that has not been retained by an order of the Bankruptcy Court. CAF has no obligation for any costs of marketing the Property, including, without limitation, any broker fee to MYC or any other broker, and no such marketing costs or any other amount shall be credited against the Agreed CAF Secured Claim. CAF shall have no obligations to MYC.

(s)     These Terms and Conditions of Sale will be read into the record, or specifically incorporated by reference at the Sale of the Property.  By making a bid for the Property, all bidders shall be deemed to have acknowledged having read, and understand, these Terms and Conditions of Sale and have agreed to be bound by them.

(t)     The Debtor shall be a party to the Sale of the Properties exclusively in its capacity as Debtor in bankruptcy and not as an individual. If the Debtor is unable to deliver title to the Property in accordance with these Terms and Conditions of Sale for any reason whatsoever, its only obligation will be to refund the Deposit to the Successful Bidder (or Second Bidder) and upon such refund the Successful Bidder (or Second Bidder) will have no recourse or claim against the Debtor, the Debtor's retained professionals, or Debtor's estate.

(u)     The Debtor reserves its right, subject to obtaining the written consent of CAF, to withdraw the Property from the Sale, either prior or subsequent to the auction, for any reason whatsoever, as she deems necessary or appropriate.

(v)     The Sale of the Property is subject to confirmation by the Bankruptcy Court. The Debtor or the Debtor's proposed attorney shall notify the Successful Bidder whether the Sale is confirmed.  Any disputes concerning the Sale shall be determined by the Bankruptcy Court.  By participating in the Sale, all bidders consent to the jurisdiction of the Bankruptcy Court to determine such disputes arising in the Debtor's pending case.

(w)     **By making a bid for the Property, all bidders shall be deemed to have acknowledged having read, and understand, these Terms and Conditions of Sale and have agreed to be bound by them.**

f)     Exemption from Certain Transfer Taxes and Fees. To the maximum extent provided by section 1146(a) of the Bankruptcy Code, any transfer of the Properties pursuant to this Plan  and any mortgage or instrument recorded in connection with such transfer shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents pursuant to such transfers of property without the payment of any such tax, recordation fee, or governmental assessment.

**4.03    Administrative Expense Bar Date**: A date establishing an Administrative Expense Bar Date shall be included as part of the Confirmation Order, which shall be served upon all creditors and other parties-in-interest. All requests for payment of Administrative Expenses that accrued on or before the Confirmation Date must be filed with the Bankruptcy Court by the

Administrative Expense Bar Date, except for Professional Fee Claims. Any holder of an Administrative Expense which fails to file a timely request for the payment of an Administrative Expense shall forever be barred, estopped and enjoined from asserting such Administrative Expense against the Debtor and Reorganized Debtor. The Debtor may object to the allowance of any Administrative Expense Claim.

**4.04     Vesting of Assets**: On the Effective Date, the Properties and any other assets of the Debtor shall revest in the Reorganized Debtor.

## ARTICLE V

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**5.01     Executory Contracts and Unexpired Leases:** No executory contracts or unexpired leases currently exists.

## ARTICLE VI

## LIQUIDATION ANALYSIS

**6.01     Liquidation Analysis:**  As part of the Chapter 11 process, section 1129(a)(7) of the Bankruptcy Code requires that a Bankruptcy Court determine that a Chapter 11 plan provides, with respect to each class, that each holder of a claim or an equity interest in such class either (i) has accepted the plan or (ii) will receive under the plan value that is not less than the amount that such holder would receive if the debtor had liquidated under Chapter 7 of the Bankruptcy Code. In this case, since CAF is the only impaired class and has agreed to accept the Plan, the Plan is a 100% plan to the remaining unimpaired classes, a liquidation analysis is not required.

## ARTICLE VII

## EFFECT OF CONFIRMATION; DISCHARGE OF CLAIMS; INJUNCTION

### 7.01     Binding Nature of Plan

On the Confirmation Date, the terms of the Plan bind all Holders of all Claims against, and Equity Interests in, the Estate, whether or not such Holders accepts the Plan.

### 7.02     Discharge of Claims

The rights afforded herein and the treatment of all Claims herein shall be in exchange for a complete satisfaction, discharge and release of Claims of any of any nature whatsoever, against the Estate or any of its assets or property. Except as otherwise provided herein, on the Confirmation Date, all such Claims against the Estate shall be satisfied, discharged and released in full, and all Persons or Entities are precluded and enjoined from asserting against the Estate, the Debtor and/or their successors or their assets, any other or further claims based upon any act, omission, transaction or other activity of any kind or nature that occurred before the Confirmation Date.

In addition, upon confirmation of the Plan, all claims and Causes of Action of the Debtor against CAF and/or any agent, servicer, employee, officer, director, or other person or entity which is in any way related to the claims set forth in the Debtor's adversary action filed against CAF and CAF's counsel are released, and such release shall remain effective without regard to whether the Effective Date of the Plan occurs.

### 7.03    Preservation of Causes of Action

Except as otherwise provided herein, the Estate, with the exception of the claims and Causes of Action released under the Plan (including, without limitation, the claims and Causes of Action against CAF and its counsel) shall retain any and all claims and Causes of Action belonging to the Debtor and its Estate, whether arising before or after the Filing Date, regardless of whether such claims and Causes of Action arise under the Bankruptcy Code.

The Debtor may but is not required to pursue any and all such Causes of Action. No Entity may rely on the absence of a specific reference in the Plan or in the Disclosure Statement to any Cause of Action against it as any indication that the Debtor will not pursue any and all available Causes of Action against it. Unless any claims and Causes of Action against an Entity are expressly and unambiguously waived, relinquished, exculpated, released, compromised, or settled in the Plan or in a Bankruptcy Court order, the Debtor expressly reserves all Causes of Action, for later prosecution, settlement, or adjudication and no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or a consequence of entry of the Confirmation Order, occurrence of the Effective Date, or consummation of the Plan.

### 7.04    Confirmation Injunction

Effective on the Effective Date, all Persons/Entities who have held, hold or may hold Claims or Equity Interests are enjoined from taking any of the following actions against or affecting the Released Parties, the Debtor, the Debtor's Professionals, the Estate, the Properties or any other assets of the Estate with respect to such Claims or Equity Interests, except as otherwise set forth in the Plan and other than actions brought to enforce any rights or obligations under the Plan or appeals, if any, from the Confirmation Order:

(a) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind against the Released Parties, the Debtor, the Estate, the Properties or any other assets of the Estate;

(b) enforcing, levying, attaching, collecting or otherwise recovering by any manner or means, directly or indirectly, any judgment, award, decree, or order against the Released Parties, the Debtor, the Estate, the Properties or any other assets of the Estate;

(c) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Released Parties, the Debtor, the Estate, the Properties or any other assets of the Estate;

(d) asserting any set-off, right of subrogation or recoupment of any kind, directly or indirectly, against any obligation against the Released Parties, the Debtor, the Estate, the Properties or any other assets of the Estate; and/or

(e) proceeding in any manner in any place whatsoever that does not conform to or comply with the provisions of the Plan.

**7.05**    **Release**

The Plan provides that, effective as of the Effective Date, the Released Parties are released from all Claims, Causes of Action, and demands of any nature whatsoever, in law and in equity, that any creditor of the Debtor had, has, or may hereafter have against the Released Parties arising prior to the Effective Date. Except as otherwise provided herein and in section 1141 of the Bankruptcy Code, all Persons shall be precluded and enjoined from asserting against the Released parties, their assets or properties, or against any property that is distributed, or is to be distributed under the Plan, any other or further Claim upon any acts or omissions, transactions, or other activity of any kind or nature that occurred prior to the Effective Date.

In order to secure enough funds in the Fairbridge Loan to refinance the CAF Mortgage, the Guarantor pledged the Additional Property as collateral to the Fairbridge Loan. This constitutes substantial contribution to justify a release of the Guarantor. Upon either the payment of the Agreed CAF Secured Claim in connection with the closing of the Refinance or the payment of the Agreed CAF Secured Claim in connection with the closing of the Auction Sale CAF will release the Debtor and the Guarantor from any and all liability under the Note and the Guarantee.

**7.06**    **Exculpation**

The Plan provides that the Released Parties (collectively, the "Exculpated Parties") will not have or incur any liability to any Person for any act taken or omission occurring on or after the Filing Date in connection with this Case, including but not limited to:

(a)    the commencement and administration of the Case;

(b)    the formulation, preparation, dissemination, implementation, confirmation, consummation, or administration of: (i) the Plan (including soliciting acceptances or rejections thereof); and/or (ii) the Disclosure Statement; and

(c)    any Distributions made pursuant to the Plan.

Nothing in this section shall: (a) affect the liability of any Exculpated Party that otherwise would result from any act or omission to the extent that the act or omission is determined in a Final Order to have resulted from fraud, willful misconduct, gross negligence, or criminal conduct; or (b) limit liability pursuant to Rule 1.8(h)(1) of the New York Rules of Professional Conduct; or (c) modify the terms of the Sale Stipulation.

## ARTICLE VIII

## CLAIM AND DISTRIBUTION MATTERS

**8.01    Allowance of Claims**

All Claims in this Case will be reviewed, and to the extent necessary and appropriate, the Debtor will file objections to certain Claims. The Bankruptcy Court will retain jurisdiction to adjudicate objections to Claims brought by the Debtor, including any settlements or compromises of such Claims. The Debtor reserves all of its rights to object to Claims.

Any creditor who failed to file a proof of claim on or before the General Bar Date and was not listed on the Schedules, or was listed on the Schedules as "disputed," "contingent" or "unliquidated," cannot be treated as a creditor with respect to such Claim for purposes of voting on and receiving a Distribution under the Plan.

**8.02    Time to File Objections to Claims**

Objections to Claims, to the extent not already filed by the Debtor, must be filed and served by the Debtor no later than the sixtieth (60th) day after the Effective Date (or the next business day if the 60th day is a holiday or weekend day), or within such other extended time period as may be requested (with such application or motion being made prior to the expiration of the period) by the Debtor and fixed by the Bankruptcy Court.

**8.03    Reserve for Disputed Claims**

The Debtor shall hold in reserve: (a) 100% of any Disputed Claim that is an Administrative Claim or a Priority Claim; and/or (b) the Pro Rata portion of the General Unsecured Claims Reserve of any Disputed Claim that is a General Unsecured Claim until such Claim is resolved by a Final Order or settled. Should the amount reserved by the Debtor on account of the Disputed Claim exceed the amount required to satisfy the Disputed Claim, any excess will be distributed in accordance with the Plan.

**8.04    Allowance of Disputed Claims**

If, on or after the Effective Date, any Disputed Claim becomes an Allowed Claim, the Debtor shall within fifteen (15) days after the later of: (x) the date on which the Claim becomes an Allowed Claim; and (y) when claims in the same Class are paid, or as soon thereafter as is practicable, pay to the Holder of such Allowed Claim the amount that such Holder would have been entitled to receive under the Plan if such Claim had been an Allowed Claim on the Effective Date.

**8.05    Distribution Cap**

Notwithstanding any language to the contrary herein, no Holder of an Allowed Claim shall receive in respect of that Claim any Distribution in excess of the Allowed amount of that Claim.

**8.06    Undeliverable or Unclaimed Distributions**

All Distributions under the Plan to any Holder of an Allowed Claim shall be made at the address of such Holder as set forth in the filed or scheduled Claim unless the Debtor has been notified in writing of a change of address. For a period of ninety (90) days subsequent to any Distributions made under the Plan, Unclaimed Property will be held by the Debtor for the Holders of Allowed Claims which have failed to claim such Distribution, and will be released by the Debtor and delivered to such Holder, without interest, upon presentation and proper proof by such Holder to the Debtor (in the sole and absolute discretion of the Debtor) of its entitlement thereto.

At the end of the ninety (90) days subsequent to any Distributions made under the Plan, all Unclaimed Property will be deposited by the Debtor (as applicable) with the Clerk of the Court, notwithstanding any provision to the contrary in the Plan, or any federal or state escheat laws to the contrary.

**8.07    Manner of and Minimum Distributions**

If a Distribution to be made to a given Holder of an Allowed Claim would be $5.00 or less, notwithstanding any contrary provision of the Plan, the Debtor shall not be required to make such Distribution to such Holder. Any unclaimed or retained Distributions shall be disbursed by the Debtor pursuant to the terms of the Plan. Distributions may be made by the Debtor by wire, electronic transfer, check or such other method as the Debtor deems appropriate under the circumstances.

**8.08    Rounding to the Nearest Dollar**

Any other provision of the Plan to the contrary notwithstanding, no payments of portions of a Dollar will be made. Whenever any payment of a portion of a Dollar would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole Dollar (up or down).

**8.09    Withholding of Taxes**

The Debtor may withhold from any Distribution under the Plan any amount which must be withheld for taxes payable by the Entity entitled to such Distribution to the extent required by applicable law. As a condition to making any Distribution under the Plan, the Debtor may request that the Holder of any Allowed Claim provide such Holder's taxpayer identification number and such other certification as may be deemed necessary to comply with applicable tax reporting and withholding laws.

Notwithstanding any other provision of the Plan, each Entity receiving a Distribution pursuant to the Plan will have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on it by any governmental unit on account of such Distribution, including income, withholding and other tax obligations.

## ARTICLE IX

## RETENTION OF JURISDICTION

### 9.01    Bankruptcy Court Jurisdiction

Notwithstanding entry of the Confirmation Order, occurrence of the Effective Date, substantial consummation of the Plan, the Case having been closed, or a final decree having been entered, the Bankruptcy Court (or the United States District Court for the Eastern District of New York, as the case may be) shall have and retain exclusive jurisdiction of matters arising out of, and related to the Case and the Plan under, and for the purposes of, sections 105(a), 1127, 1142 and 1144 of the Bankruptcy Code and for, among other things, the following purposes:

(a) to hear and determine all Claims (including Administrative Claims) concerning the classification, allowance or disallowance of any such Claim, if any;

(b) to hear and determine any and all adversary proceedings, Causes of Action, claims of the Estate, applications, and contested matters, whether filed or commenced before or after the Effective Date;

(c) to hear and determine all Claims arising out of any agreement entered into by the Debtor after the Filing Date, if any;

(d) to hear and determine applications for the assumption or rejection of Executory Contracts, if any, and allowance of Claims resulting therefrom;

(e) to hear and determine any settlement and/or compromise pursuant to Bankruptcy Rule 9019 concerning any of the foregoing;

(f) to alter, modify and amend the Plan pursuant to section 1127 of the Bankruptcy Code, or to remedy any defect, cure any omissions or reconcile any inconsistency in the Plan or Confirmation Order as may be necessary or advisable to carry out the purpose and intent of the Plan and to the extent authorized by the Bankruptcy Code or Bankruptcy Rules;

(g) to make such orders *ex parte* or upon application, and to hear and adjudicate any settlements or disputes concerning the provisions of the Plan, or to enforce and/or implement the terms of the Plan;

(h) to hear and determine such other matters as may be provided for in the Confirmation Order of the Bankruptcy Court, and for the purposes set forth in section 1127(b) and section 1142

of the Bankruptcy Code or as contained in Rules 1019 and 3020(d) of the Bankruptcy Rules;

(i)   to hear and determine all applications for compensation;

(j)   to hear and determine matters concerning local, state and federal taxes in accordance with sections 345, 505 and/or 1146 of the Bankruptcy Code;

(k)   to enter a Final Order or decree concluding the Case or an order of substantial consummation;

(l)   to hear and determine that distributions are accomplished as provided in the Plan; and/or

(m)  to determine other matters contained in the Confirmation Order or Plan or that is authorized under the provisions of the Bankruptcy Code including, without limitation, to hear and determine matters pertaining to the Refinance and the Auction of the Property.

## ARTICLE X

## GENERAL PROVISIONS

### 10.01   Headings

The headings used in the Plan are inserted for convenience or reference only and neither constitute a portion of the Plan nor in any manner affect the provisions or interpretations of the Plan.

### 10.02   Interpretation; Application of Definitions; Rules of Construction

Unless otherwise specified, all section or exhibit references in the Plan are to the respective section in, or exhibit to, the Plan, as the same may be amended, waived or modified from time to time. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection or clause contained therein. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (b) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) unless otherwise specified, all references herein to "Sections" are references to Sections hereof or hereto; (d) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and € any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

### 10.03   Controlling Documents

In the event and to the extent that any provision of the Plan is inconsistent with the provisions of the Disclosure Statement, the provisions of the Plan shall control and take precedence.

The provisions of the Plan and of the Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; provided that, if there is determined to be any inconsistency between any Plan provision and any provision of the Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall govern and any such provision of the Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence.

### 10.04   Section 1125(e) of the Bankruptcy Code

Confirmation of the Plan will constitute a finding that the Debtor (and the Debtor's Professionals, agents, employees and advisors) have proposed and solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code.

### 10.05   Successors and Assigns

The rights and obligations of any Entity named or referred to in the Plan will be binding upon, and shall inure to the benefit of, the successors and assigns of such Entity.

### 10.06   Notices

Notices will be deemed given when received. All notices, requests or demands described in or required to be made in accordance with the Plan must be in writing and must be delivered personally or by registered or certified mail, return receipt requested, to:

<u>If to the Debtor, then to:</u>

Fraleg Group, Inc.
931 Lincoln Place
Brooklyn, NY 11213
Attn: Andy Alege, President

-and-

Fraleg Group, Inc.
c/o Law Offices of Avrum J. Rosen, PLLC
38 New Street
Huntington, New York 11743
Attn: Avrum J. Rosen, Esq.
Telephone: (631) 423-8527

### 10.07    Change of Address

The Debtor may change the address at which it is to receive notices under the Plan by sending written notice pursuant to the provisions of this Article to the person to be charged with the knowledge of such change.

### 10.08    Post Confirmation Reporting

The Debtor shall file quarterly status reports until the Chapter 11 case is closed.

### 10.09    Notice of Entry of Confirmation Order

Notice of Entry of the Confirmation Order shall be sufficient if a copy of a notice indicating that said order has been entered by the Bankruptcy Court, without attaching said order, is mailed or emailed to those Persons who had filed a notice of appearance and request for service of process in the Case and to Persons who file a new notice of appearance and demand for service of process dated subsequent to the Confirmation Date.

### 10.10    Effectuating Documents and Further Transactions

The Debtor shall be authorized to execute, deliver, file, or record such documents, contracts, instruments, releases, and other agreements and take such actions as may be necessary or desirable to effectuate and further evidence the terms and conditions of the Plan. All Holders of Claims or Equity Interests, including those receiving Distributions under the Plan, shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

### 10.11    Governing Law

Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York.

### 10.12    Severability

In the event that the Bankruptcy Court determines, prior to the Confirmation Date, that any provision of the Plan is invalid, void or unenforceable, the Bankruptcy Court shall, with the consent of the Debtor, have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 10.13   **No Admissions**

Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed an admission by the Debtor with respect to any matter set forth herein, including, without limitation, liability on any Claim or the propriety of a Claim's classification.

### 10.14   **Entire Agreement**

Except as otherwise indicated, the Plan and the Confirmation Order supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings and representations on such subjects, all of which have become merged and integrated into the Plan.

### 10.15   **Binding Effect of Plan**

Upon the Effective Date, all of the provisions of the Plan shall be binding on the Debtor, on all Holders of Claims, and on all other Entities who are affected (or whose interests are affected) in any manner by the Plan.

### 10.16   **References**

Unless otherwise specified, all references in the Plan to sections and Articles are to sections and Articles of the Plan.

## ARTICLE XI

## **AMENDMENTS, MODIFICATIONS AND REVOCATION**

### 11.01   **Amendment and Modification of Plan**

The Debtor reserves the right, in accordance with section 1127 of the Bankruptcy Code, and with the written consent of CAF (as to any modifications materially affecting CAF's treatment under the Plan), to amend or modify the Plan provided the Bankruptcy Court approves such modification, if required.

*[Remainder of page intentionally left blank]*

### 11.02   Revocation and Withdrawal Prior to Confirmation

The Debtor may, with the written consent of CAF, withdraw or revoke the Plan prior to the Confirmation Date. If such a withdrawal or revocation occurs, or if Confirmation does not occur, the Plan will be null and void. In such event, nothing contained in the Plan will constitute a waiver or release of any Claim by or against the Debtor or any other person or to prejudice in any manner the rights of the Debtor or any other person in any further proceedings involving the Debtor.

Dated: October 18, 2022
      Huntington, New York

**Law Offices of Avrum J. Rosen, PLLC**

By:    */s/ Avrum J. Rosen*
       Avrum J. Rosen, Esq.
       Nico G. Pizzo, Esq.
       38 New Street
       Huntington, New York 11743
       Tel: (631) 423-8527
       arosen@ajrlawny.com
       npizzo@ajrlawny.com

       *Counsel to Fraleg Group, Inc.*
       *Debtor and Debtor-in-Possession*

Dated: October 18, 2022
      Brooklyn, New York

       */s/ Andy Alege*
       Andy Alege
       President of Fraleg Group, Inc.