# EXHIBIT "B"



September 12, 2022

Mr. Ronald Fraser & Andy Alege
Fraleg Group Inc.
45 Main Street, Suite 518
Brooklyn NY 11202

    RE:  112 N Walnut Street, East Orange, NJ 07017 – Loan Request
         116 N Walnut St., East Orange, NJ 07017
         1133-1135 Clay Ave, Bronx, NY, 10456

Dear Mr. Fraser and Mr. Alege:

  In this summary of indicative loan terms, we are pleased to summarize the basis upon which Fairbridge Credit LLC (the "Lender"), would be prepared (subject to satisfactory completion of our due diligence, internal approvals and satisfactory documentation) to provide a loan secured by, among other things, the fee interest in that certain piece of properties known as 112 N Walnut St., East Orange, NJ 07017, 116 N Walnut St., East Orange, NJ 07017, and 1133-1135 Clay Ave, Bronx, NY, 10456 (hereinafter referred to as the "Properties").  Set forth below are the principal terms that would apply to such a financing subject to the other terms and conditions of this Term Sheet and acceptance and review by lender's counsel.  The terms outlined herein may not be all-inclusive and may be amended or withdrawn upon further review by the Lender. The following loan terms are based on preliminary data and information provided to Lender by you. Final loan approval may be conditioned upon modification or adjustment of these terms. In the event the loan closes, the terms and conditions contained herein shall be superseded by the final definitive loan documents.

**Lender:**  Fairbridge Credit LLC or any of its affiliates, partners, successors and/or assigns.

**Borrower:**  Fraleg Group Inc., or another entity which shall be a special purpose entity acceptable to the Lender.

| | |
|---|---|
| **Guaranty:** | Ronald Fraser and Andy Alege (hereinafter referred to as the "Guarantors" or "Sponsors") shall each execute a personal guarantee at closing, as will any member or shareholder that possesses more than a 10% interest in any of the entities that own the Property. |
| **Loan Amount:** | The amount of the total loan will be equal to the lesser of: (i) Seven Million Five Hundred Thousand ($7,500,000) dollars, or (ii) fifty-five (55%) percent of the appraised "Sellout"/As-Stabilized value of the Properties, or (iii) seventy-five (75%) percent of the verified cost basis of the Property excluding financing and carry costs (the "Loan"). |
| **Proceeds:** | Lender shall fund certain proceeds at closing, such proceeds shall be used towards the refinancing of the Property and shall fund any necessary existing mortgage payoffs, closing costs and reserves, as well a construction reserve to be funded on a reimbursement draw schedule post-closing. |
| **Interest Rate:** | The rate of interest charged shall be twelve (12%) percent per annum, based upon a 360-day year for actual number of days outstanding. |
| **Term:** | Twelve (12) months; with one (1) six-month extension option. |
| **Collateral:** | The loan will be secured by, among other things, a first mortgage lien and first priority security interest, as applicable, on the Borrower's fee interest in the Property, all improvements, personal property, and all leases, security deposits, rents, issues, profits, revenues and other income, deposit and cash management accounts, and reserve funds, all as more particularly described in the loan documents, together with a pledge of 100% of the membership interests in Borrower. |
| **Origination Points:** | Two (2.00%) percent of the Loan Amount. |
| **Broker Fee:** | Two (2.00%) percent of the Loan Amount paid to Ameriwealth Inc. |
| **Extension Option:** | Borrower shall have the right, provided that there shall not have occurred an Event of Default, or have occurred and be continuing any default or an event which, with the giving of notice or the passage of time, or both, shall constitute a default, to one (1) extension (the "Extension") of the term of the Loan for a period of six (6) months. The Extension shall be at the rate of thirteen per |

|  |  |
|---|---|
|  | annum (13%).  There will be a payment of an Extension Fee equal to one (1%) percent of the original Loan Amount for the Extension, if elected by the Borrower. |
| **Prepayment:** | Borrower shall have the right to prepay the Loan at any time, in whole or in part.  A prepayment in whole or in part (or as otherwise required under the loan documents) shall be subject to the payment of a twelve (12) months' interest on the full Loan Amount, should the loan be satisfied prior to the twelfth (12th) full month following the closing of the Loan. |
| **Due Diligence:** | Due Diligence shall include but not be limited to Lender completing, to its sole and absolute satisfaction, a review of the financials and credit of the Borrower, the entitlements obtained for the Property, the Guarantor(s) and the Property and the surrounding market, title, and insurance.  Lender reserves the right to order and review, an MAI certified appraisal, Phase I Environmental report, Background Check of Sponsor(s)s of the Borrower, and any other reports deemed necessary by Lender in its sole and absolute discretion, which reports shall be paid for by Borrower. |
| **Event of Default:** | Upon a Default or Event of Default under the loan documents, Lender may require monthly escrow deposits for real estate taxes and insurance premiums. |
| **Interest Reserve:** | Twelve (12) months based upon the total loan amount. |
| **Insurance:** | Borrower will be required to maintain insurance coverages that are usual and customary for properties similar to the Property with insurer(s) satisfactory to the Lender and subject to Lender's review and approval. |
| **Brokers:** | Borrower represents that it has not dealt with any broker or finder with respect to the Loan except for Ameriwealth Inc. Borrower shall and hereby does agree to indemnify and hold Lender harmless from and against any claim, cost, liability or expense, including, but not limited to, reasonable attorneys' fees, arising out of any claim asserted by broker or any broker or finder who claims to have worked with or represented the Borrower in connection with the Loan. |
| **Break-Up Fee:** | The Borrower and Guarantor(s) hereby expressly agree and acknowledge that (a) Lender is devoting its personnel and financial resources to the consideration of this Loan; (b) in Lender's |

industry, business opportunities are limited, and extremely competitive; (c) compensation to the Lender, in the event Borrowers obtains financing from a source other than Lender, would be extremely difficult to calculate; (d) Lender cannot, as a result of this underwriting and analysis, commit its resources to other potential transactions and may be deprived of business opportunities thereby; and (e) Lender may suffer negative impact in the industry, in the event the Borrowers does not complete this proposed transaction or obtains financing from a competitor of the Lender.

Borrowers and Guarantor(s) will not, and will not cause or permit any of their respective affiliates to, obtain any other debt financing, or not proceed with the financing outlined herein for any reason whatsoever (the "**No Other Financing Covenant**").  In the event (a) the Loan does not close on or before  November 1, 2022 because of either (i) Borrowers' default in its obligation hereunder to close the Loan with Lender or (ii) Borrowers' fraud or material misrepresentation to Lender; (b) there shall occur a breach of the No Other Financing Covenant; or (c) the Borrowers shall sell, assign, or otherwise conveys any of the Properties or its interest therein, Lender shall be deemed to have earned a Break-Up Fee, and the Borrowers shall pay to Lender an amount equal to one percent (1%) of the Loan amount.

| | |
|---|---|
| **Reporting Requirements:** | The loan documents shall contain Lender's standard reporting requirements for the Borrower and the Sponsor(s), including, without limitation, property balance sheets/operating statements, draw submissions, rent rolls, financial statements, and tax returns. |
| **Legal Opinions:** | As a condition to the closing, Borrower's counsel shall render all customary legal opinions regarding Borrower, Sponsor(s) and the Loan. Such opinions shall include, without limitation, due formation, authorization and execution, non-contravention, choice of the State of New York law, perfection of Lender's lien, enforceability of the Loan transaction under the State of New York law, and usury and shall be focused upon only the "key opinions" needed by Lender (i.e., entity organization and authorizations and UCC's). |
| **No Other Debt:** | Borrower shall not be permitted to have any indebtedness (secured or unsecured) other than the Loan against this Property unless specifically approved by Lender in its sole and absolute discretion. |

| | |
|---|---|
| **Material Adverse Change:** | Lender shall not be obligated to fund the Loan if there exists any circumstance or condition with respect to the Loan, the Property, the Borrower, the Guarantor(s) or prevailing capital market and/or real estate market conditions which Lender determines in its sole discretion may materially and adversely affect the value or the marketability of the Property, the collateral for the Loan or the ability of Borrower to comply with its obligations under the Loan. If there is a Material Adverse Change and Lender elects not to proceed with the Loan, Lender shall refund Borrower's Deposit net of those costs and expenses incurred by Lender. |
| **Assignment Participation, Sale and Securitization:** | Lender will have the right, without consent of Borrower, to assign, bifurcate, syndicate, sell, securitize or participate all or any portion of the Loan. Borrower and Sponsor(s) agree to cooperate in such assignment, bifurcation, syndication, sale, securitization or participation process. |
| **Guarantee of All Expenses and Fees:** | Payment of all fees and expenses referred to in the above paragraphs (including, but not limited to the Break-Up Fee) and all other paragraphs are guaranteed by the Borrower, and the Borrower indicates his acceptance of the terms of this paragraph by executing this Term Sheet. The Borrower hereby consents, on behalf of himself, and all related or affiliated entities which have an interest in this transaction or which have a right or title in or to the Collateral, to the filing or recordation of any appropriate documentation to evidence a lien for the payment required, including all attorneys' fees and costs of collection pursuant to this Paragraph (Break-Up Fee) and all other paragraphs. |
| **Deposit:** | Borrowers shall acknowledge acceptance of these terms by wiring the sum of fifteen thousand ($15,000.00) dollars, of which two thousand five hundred ($2,500.00) dollars will be a non-refundable underwriting/processing fee. The funds from this deposit shall be applied towards lender's attorney fees and disbursements in connection with this loan. If the Loan does not close for any reason, the unused portion of this fee shall be refunded. The Borrowers and Guarantor(s) are responsible for paying all legal fees and disbursements associated with the preparation for and closing of the Loan, including those incurred in connection with obtaining co-lenders and/or participants, if any, together with legal fees and disbursements of Lender's participants and/or co-lenders. All such fees are payable regardless of whether a loan commitment is issued or the Loan closes. |

|  |  |
|---|---|
|  | At any time prior to closing, Lender reserves the right to demand an additional deposit to be paid to Lender's attorney to be applied to Lender's attorney's legal fee, if the original Deposit under this section has been expended or otherwise significantly depleted for Lender's third-party reports. |
| **Governing Law:** | Any conflicts will be governed by the laws of the State of New York. |

REMAINDER OF THIS PAGE LEFT INTENTIONALLY BLANK

For avoidance of doubt, this Term Sheet is intended only as a preliminary expression of interest and shall be non-binding, other than with respect to the provisions of Governing Law, Break-Up Fee, Guarantee of All Expenses and Fees, and the Deposit set forth above, which are intended by the parties to be legally binding. This proposal shall expire on September 19, 2022, 5:00 PM Eastern Standard Time. Please indicate your acceptance of this proposal by signing and returning same with the specified moneys outlined in Deposit Section above in the form of bank check or wire (wiring instructions attached). Lender will then commence due diligence and begin initial documentation of the Loan. This proposal outlines the general terms and conditions under which Lender shall proceed and does not constitute a loan commitment, either express or implied, on behalf of Lender, and does not impose any obligation on Lender to make the Loan.

Very Truly Yours,

**Fairbridge Credit LLC**

By: _____
Steven J. Wissak,
Managing Member

**Agreed and Accepted:**

**Fraleg Group Inc.**



By: _____
Ronald Fraser,
Managing Member



By: _____
Ronald Fraser,
Individually

By: _____
Andy Alege,
Individually