UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In re:                                              Chapter 11

FRALEG GROUP, INC.,                                 Case No.: 22-41410-jmm

                Debtor.
-----------------------------------------------------------X

**DECLARATION OF ANDY ALEGE
IN SUPPORT OF CONFIRMATION OF THE DEBTOR'S AMENDED
PLAN OF REORGANIZATION PURSUANT TO 11 U.S.C. § 1129**

Pursuant to 28 U.S.C. § 1746, I, Andy Alege, declare as follows under penalty of perjury:

1. I am the president of Fraleg Group LLC, the debtor and debtor-in-possession (the "Debtor") in this Chapter 11 case. As such, I have personal knowledge of the statements contained herein.

2. I am the party who signed the Debtor's Amended Plan of Reorganization [Dkt. No. 52] (the "Plan") and the Debtor's Amended Disclosure Statement [Dkt. No. 53] (the "Disclosure Statement").

3. This Declaration is submitted in support of an order confirming the Debtor's Plan.

4. If I were called upon to testify, I could and would testify competently to the facts set forth herein.

**BACKGROUND**

**A.**      **Procedural Background**

5. On June 17, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

6. The Debtor has continued to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

1

7. No trustee, examiner or committee has been appointed in this case.

**B.** **Confirmation, Solicitation, and Notification Process**

8. On October 19, 2022, The Court entered the Amended Order (I) Conditionally Approving the Amended disclosure Statement Filed by the Debtor; (II) Approving Solicitation Procedures; and (III) Fixing the Date for a Hearing on the Confirmation of Plan or Reorganization [Dkt. No. 56] (the "Confirmation Hearing Order").[1]

9. As specified in the Disclosure Statement Order, October 19, 2022 was established as the Record Date for determining the Holders of Claims in the Voting Classes who would be entitled to vote on the Plan.

10. On October 20, 2022, the Debtor served the Solicitation Packages on the Holders of Claims entitled to vote under the Plan. *See* Dkt. No. 59 (Affidavit of Service evidencing proof of service of the Solicitation Packages on October 20, 2022).

11. The Deadline for all Holders of Claims entitled to vote on the Plan to cast their Ballots was November 9, 2022 at 5:00 p.m.

12. The deadline to file objections to the Plan was November 9, 2022. To the best of my knowledge, no objections were filed with the Court or received by the Debtor.

13. On November 10, 2022, the Debtor filed the *Declaration of Avrum J. Rosen, Esq. on behalf of Fraleg Group, Inc. Regarding Solicitation of Votes and Tabulation of Ballots Accepting and Rejecting Debtor's Chapter 11 Plan of Reorganization* [Dkt. No. 61] (the "Voting Report").

---

[1] Capitalized terms not otherwise defined herein shall have the same meanings ascribed to them in the Plan and the Confirmation Hearing Order.

**C.      The Plan Process Generally**

14.     The Plan, which has received support from CAF, is the result of significant compromise by and among the estate's most significant creditor, CAF, to ensure that the Debtor's business will continue to operate as a going concern. If confirmed, the Plan: (i) will resolve a prepetition foreclosure action commenced by CAF regarding the Debtor's property; (ii) will resolve CAF's Allowed Secured Claim, which has been the subject intense litigation during the Debtor's bankruptcy case; and (iii) provide a 100% recovery to general unsecured creditors. Simply put, I believe that the Plan will allow the Debtor to achieve a fresh start and an opportunity to continue its business as a going concern.

15.     The Plan's principal features are that: (i) it treats the Agreed CAF Secured Claim (Class 1); and (ii) and pays general unsecured creditors (Class 2) a 100% distribution within sixty (60) days of the Effective Date with interest at the federal judgment rate in effect on the confirmation date.

16.     Under the Plan, only Class 1 is impaired and entitled to vote on the Plan.

17.     With respect to the Treatment of the Agreed CAF Secured Claim, the Debtor is to refinance the Properties pursuant to the Final Commitment, and all payments pursuant to the Plan of all Allowed Claims shall be made by December 15, 2022. Attached hereto as **Exhibit "A"** is a copy of the Tam Lending Center regarding the status of the final commitment and the substitution of additional collateral. If in the event the Refinance has not closed by December 15, 2022, the Debtor's duly retained broker, MYC associates shall commence marketing efforts and shall start expending funds for the marketing on December 16, 2022.

18.     As to the Agreed CAF Secured Claim, if the Refinance does not take place by November 22, 2022, then the Agreed CAF Secured Claim shall bear interest at 3.5% beginning on

November 23, 2022. If the Refinance does not close by December 15, 2022, the Agreed CAF Secured Claim shall bear interest at the rate of 10% per annum beginning on December 16, 2022 through the date that the Agreed CAF Secured Claim is paid. If the Refinance has not closed by December 15, 2022, the Debtor's duly retained broker, MYC & Associates, Inc. shall commence marketing efforts and shall start expending funds for the marketing on December 16, 2022, if the Refinance has not closed. The Auction sale of the Property, either with, or without, a stalking horse bidder shall take place before January 31, 2023.

## SATISFACTION OF PLAN CONFIRMATION REQUIREMENTS

19. For the reasons detailed below, and after discussions with counsel, I believe the Plan satisfies the applicable Bankruptcy Code requirements for confirmation of a plan of reorganization. I have set forth the reasons for such belief below, except where such compliance is apparent on the face of the Plan and the related documents.

### A. Compliance with §1129(a)(1)

20. I understand that section 1122 of the Bankruptcy Code permits a plan to classify various claims and equity interests into different classes so long as all Claims and Equity Interests in a particular class are substantially similar. The Plan provides for the separate classification of Claims and Equity Interests based on differences in legal nature and/or priority of such Claims and Equity Interests. The Plan designates the following Classes of Claims and Equity Interests:

| **CLASS** | **DESIGNATION** |
|---|---|
| 1 | Agreed CAF Secured Claim |
| 2 | General Unsecured Claims |
| 3 | Allowed Equity Interests |

21. I believe that valid business, factual, and legal reasons exist for classifying the Claims and Equity Interests into separate Classes as provided in the Plan and that the Claims and

Equity Interests within each particular Class are substantially similar. Furthermore, I believe the classification scheme created by the Plan is based on the similar nature of Claims or Equity Interests contained in each Class and not on an impermissible classification factor.

22. I understand that section 1123(a) of the Bankruptcy Code sets forth various requirements regarding the appropriate contents of a plan. I believe that the Plan satisfies each of these requirements.

23. The Plan: (a) designates the different Classes of Claims and Equity Interests; (b) specifies the Classes of Claims that are unimpaired under the Plan; and (c) specifies the treatment of each Class of Claims and Equity Interests that are impaired. In addition, the treatment of each Claim or Interest in each respective Class is the same as the treatment of each other Claim or Interest unless the holder of such Claim or Interest has agreed to a less favorable treatment for such Claim or Interest.

24. I believe the Plan provides adequate means for its implementation as required by section 1123(a)(5) because it includes a combination of: (i) refinancing a lien (the Agreed CAF Secured Claim) and (ii) contributions from the Debtor's principal and insiders. I believe the proposed implementation steps have been carefully developed and designed to properly effect the Plan.

25. The Plan provides for the treatment of the Agreed CAF Secured Claim and a 100% distribution to general unsecured creditors with the interest rate being the federal judgment rate in effect at the time of confirmation.

26. The Plan does not provide for the issuance of any securities and the issuance of nonvoting securities is impossible.

27. I am advised that section 1123(b)(6) of the Bankruptcy Code permits the Plan to include additional terms so long as they are not inconsistent with the other provisions of the Bankruptcy Code. Accordingly, Article III of the Plan includes a retention of jurisdiction provision. Article III of the Plan also includes injunction, release and exculpation provisions for the various parties as are available to them under applicable law. I have been advised that the injunction and exculpation provisions in the Plan are not inconsistent with the Bankruptcy Code and thus, the requirements of section 1123(b) of the Bankruptcy Code are satisfied.

### B. Compliance with Section 1129(a)(2) of the Bankruptcy Code

28. To the best of my knowledge and based on my discussions with counsel, I believe that I have complied with the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and other applicable law in transmitting (or causing to be transmitted) the Plan, the Disclosure Statement, the Ballots, and related documents and notices and in soliciting and tabulating the votes on the Plan.

### C. Compliance with Section 1129(a)(3) of the Bankruptcy Code

29. I believe the Plan allows Holders of Allowed Claims to realize the highest possible recovery under the circumstances of this Case. In a foreclosure sale conducted outside of bankruptcy, there would likely be no funds from which to pay general unsecured creditors of the Debtor. As such, I believe the Plan was proposed with the legitimate and honest purpose of effectuating the sale of some of the Properties, maximizing the value of the Debtor's assets, and maximizing distributions to creditors.

### D. Compliance with Section 1129(a)(4) of the Bankruptcy Code

30. Based on my discussions with counsel, I believe the Plan complies with section 1129(a)(4) of the Bankruptcy Code, as all payments made or to be made for services rendered and

expenses incurred in connection with this Chapter 11 Case including, without limitation, all Administrative Expense Claims of the Debtor's professionals, will be paid only after allowance of such Claims by the Bankruptcy Court.

### E.      Compliance with Section 1129(a)(5) of the Bankruptcy Code

31.     Based on my discussions with counsel, I believe the Plan complies with section 1129(a)(5) of the Bankruptcy Code as the Plan identifies me, Andy Alege, as the President of the Debtor.

### F.      Section 1129(a)(6) of the Bankruptcy Code Is Inapplicable

32.     The Plan does not provide for the change of any rate that is within the jurisdiction of any governmental regulatory commission after the occurrence of the Effective Date. Therefore, I believe that the provisions of section 1129(a)(6) are inapplicable.

### G.      Compliance with Section 1129(a)(7) of the Bankruptcy Code

33.     Based on my discussions with counsel, no member of an impaired class has voted to reject the Plan. Class 1 has accepted the Plan. Class 2 provides making a 100% distribution to general unsecured creditors together with interest at the federal judgment rate in effect at the time of confirmation. Thus, unsecured creditors are receiving at least what they would have obtained in a Chapter 7 liquidation. Accordingly, I believe that the Plan complies with section 1129(a)(7).

### H.      Compliance with Sections 1129(a)(8) and 1129(b) of the Bankruptcy Code

34.     I understand that: (a) the Holder of the Claim in Class 1 voted to accept the Plan; (b) the Holders of the Claims in Class 2 are not impaired and do not vote on the Plan; and (c) Holders of Equity Interests in Class 3 are deemed to accept the Plan. Accordingly, confirmation will not be considered under subsection (b) of this statute.

**I.      Compliance with Section 1129(a)(9) of the Bankruptcy Code**

35.     Pursuant to section 3.04 of the Plan, Allowed Administrative Claims of the Debtor and the Debtor's Professionals are unimpaired and shall be paid in full by the Debtor within thirty (30) days of the Effective Date.

36.     Pursuant to section 3.05 of the Plan, Allowed Administrative Claims (other than Claims of the Debtor and the Debtor's Professionals), to the extent that any such Claims exist, are unimpaired and shall be paid in full by the Debtor within thirty (30) days of the Effective Date or upon the approval of such fees by the Court.

37.     Pursuant to section 3.06 of the Plan, Allowed Priority Tax Claims pursuant to section 507(a)(8) of the Bankruptcy Code, to the extent that any such Claims should exist, are unimpaired and shall be paid in full by the Debtor within seven (7) business days after the Effective Date.

38.     Based on my discussions with counsel, it is my understanding that there are no claims under sections 507(a)(1), (3)-(7) and (9)-(10).

39.     Accordingly, I believe that the Plan satisfied each of the requirements set forth in section 1129(a)(9) of the Bankruptcy Code.

**J.      Compliance with Section 1129(a)(10) of the Bankruptcy Code**

40.     After my review of the Voting Report, I conclude that a sufficient number and amount of ballots received have accepted the Plan, including one Impaired Class of Claims (Class 1 Claimant voted in the affirmative).

**K.      Compliance with Section 1129(a)(11) of the Bankruptcy Code**

41.     A liquidation of the Debtor's assets is proposed in the Plan, in the event that the Debtor's Refinance has not closed by December 1, 2022. In that event, the Debtor's duly retained

broker, MYC Associates shall commence marketing efforts and shall start expending funds for the marketing on December 16, 2022, if the Refinance has not closed. The Auction sale of the Property, either with, or without, a stalking horse bidder shall take place before January 31, 2023. The terms and procedures for the Auction sale are set forth in the Plan. Consequently, I believe the Plan meets the feasibility requirement under the Plan. Therefore, I believe section 1129(a)(11) is satisfied.

**L.      Compliance with Section 1129(a)(12) of the Bankruptcy Code**

42.    The Claims of the United States Trustee are unimpaired. The Plan provides at section 3.07 that the Debtor shall pay all United States Trustee Fees and any statutory interest in full from the Effective Date through the date the final decree is entered.

**M.      Sections 1129(a)(13), 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code Are Inapplicable**

43.    With regards to these sections of the Bankruptcy Code, the Debtor: (a) has no pension or retiree benefits in place; (b) is not subject to any domestic support obligation; (c) is not an "individual;" and (d) was at all relevant times moneyed, business, or commercial corporations. Thus, I understand that sections 1129(a)(13), 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to the Plan.

**N.      The Plan Complies with Section 1129(b) of the Bankruptcy Code**

44.    Subsection (b) does not apply because all impaired classes have accepted the Plan.

**O.      The Plan Complies with Section 1129(c) of the Bankruptcy Code**

45.    The Plan is the only Chapter 11 plan that has been proposed in this Chapter 11 Case, and thus, I understand that the requirement of 1129(c) has been met.

**P.      The Plan Complies with Section 1129(d) of the Bankruptcy Code**

46.     The principal purpose of the Plan is not for the avoidance of taxes or the application of section 5 of the Securities Act of 1933. Thus, I understand that the requirements of section 1129(d)(2) have been met.

**Q.      The Plan Complies with Section 1129(e) of the Bankruptcy Code**

47.     This Chapter 11 Case is not a "small business case" as that term is defined in the Bankruptcy Code. Thus, I understand that the requirements of section 1129(e) do not apply.

48.     The Plan was proposed in good faith. I believe that the Plan offers the most viable exit for the Chapter 11 Case and that confirmation of the Plan in the best interests of the Chapter 11 estate.

49.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: November 14, 2022
      Brooklyn, New York

                                              */s/ Andy Alege*
                                              Andy Alege
                                              President
                                              Fraleg Group, Inc.

# EXHIBIT "A"



**TAM Lending Center**
21 S. White Horse Pike
Audubon, NJ  08106

**NMLS# 984914**

*Date: 11/07/2022*

*RE:  Fralege Group Inc*
*112 -116 N Walnut Street*
*East Orange,  NJ 07017*

*Subject: Loan Structure*

*Hi Andy & Ron*

*Please be advised that the previous pre approval status required 1133 &1135 Clay Ave., Bronx NY to be used as additional collateral.*

*1133 &1135 Clay Ave., Bronx NY  is being removed as one of the additional properties required to satisfy the loan requirements and as per our agreement we are adding 300 Herkimer Street, Brooklyn NY and 203 Strawtown Road, New City NY.*

*If you have any further questions please do not hesitate to contact me.*

*Thank You*



**Chris DiCristo**
Sr VP of Alternative Funding at TAM Lending Center, Inc.
**TAM NMLS #**  984914 **NMLS #**  71424

**Address** 251 S. White Horse Pike, Audubon NJ 08106
**Phone**  (856) 795-5900  **Mobile**  609-471-0171 **Fax**  856-203-6431 **Email**  cdicristo@tamlending.com
**Website**  cdicristo.tamlending.com