| | |
|---|---|
| **Law Offices of Avrum J. Rosen, PLLC**<br>38 New Street<br>Huntington, New York 11743<br>(631) 423-8527<br>Avrum J. Rosen, Esq.<br>Nico G. Pizzo, Esq. | **Hearing Date: February 15, 2023**<br>**Hearing Time: 12:30 pm** |

*Counsel for the Reorganized Debtor*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re:                                                                           Chapter 11

FRALEG GROUP, INC.,                                         Case No.: 22-41410-jmm

                                        Debtor.
------------------------------------------------------------X

## POST-CONFIRMATION DEBTOR'S STATUS REPORT

**TO:   THE HONORABLE JIL MAZER MARINO**
**        UNITED STATES BANKRUPTCY JUDGE**

Fraleg Group, Inc., the reorganized debtor (the "Debtor") in the above-captioned Chapter 11 case, by and through its counsel, the Law Offices of Avrum J. Rosen, PLLC, hereby submits this Post Confirmation Status Report, and respectfully represents as follows:

1.      Events have taken place over the past week in this case which require immediate disclosure to this Court. The Court may recall that the Debtor owns two adjacent lots in East Orange, New Jersey. One is a building under construction ("14 Walnut"), which is encumbered by the building loan and mortgage.  The other lot ("116 Walnut") which is vacant and unencumbered.

2.      On February 3, 2023, the undersigned received an email from David Ferguson, Esq., lender's counsel, advising that the lender had run updates on the titles on both properties owned by the Debtor.  The search on 116 Walnut disclosed that a mortgage in the name of

1

"Fralege" (not Fraleg) Group Inc. in the amount of $395,000.00 was placed upon that property on November 22, 2022. That mortgage is annexed hereto as Exhibit "A".

3. Mr. Ferguson and I had an extended discussion of this matter. The undersigned immediately attempted to reach the Debtor's principals and was not successful. Given the seriousness of the situation, and the fact that it was getting late in the day, the following email was sent at 3:52 p.m. to Nazar Khodorovsky, Esq. of the United States Trustee's Office:

> Dear Nazar: I am sorry to bother you with this on a Friday afternoon. However, Mr. Fergeson (lender' counsel) sent me the attached email and mortgage. I have been reaching out to the Debtor's principals all week with no response and I tried to reach them this afternoon by email and telephone. The attachment shows that the debtor's principals put a mortgage on the vacant lot, adjacent to the secured property on November 22, 2022 without court permission, and without my knowledge. The funds from that mortgage are not reflected in the bank statements we have been provided, and from which we prepared the MOR's. As a fiduciary to the Debtor, I believe I am obligated to report this immediately. I will await instructions from your office in this matter. I was in the process of negotiating a sale of the properties with Mr. Fergeson, when this came to light.

4. Mr. Khodorovsky subsequently called the undersigned and we discussed the matter.

5. The undersigned was then contacted by Mr. Ronald Fraser, one of the debtor's principals, shortly after that. Mr. Fraser advised that he had been in the hospital with a sick relative and was without cell service. At 5:39 p.m. the undersigned sent the following email to all parties:

> The clients are now telling me that the vacant land is owned by a different company with the spelling Fralege not Fraleg. I have asked for the underlying documents to verify this and will report on Monday, so everyone please just stand down until then.

6. Since then, the undersigned has engaged in an extensive investigation of what transpired here and what actions have been taken. It is being set forth so that an extended oral

presentation will not be needed at the status conference set for February 15, 2023, and to give the Court adequate time to consider the matter.

7.     On Monday, February 6, 2023, Mr. Ferguson advised the undersigned that he had discovered that a "Correction Deed" was filed on January 5, 2023. That Deed is annexed hereto as Exhibit "B". That deed was prepared by counsel for the new lender and purported to "correct" the 2019 deed to change the owner to "Fralege" (with an "e" at the end).

8.     At this point, it must be disclosed that it was clear to the undersigned that the lender had no idea that there was a pending bankruptcy, as the undersigned went to law school with the lender's attorney and has been answering his bankruptcy questions for almost 40 years.

9.     The Debtor's principals made it clear that they were of the belief that when the Debtor purchased the two properties, Corvest, the lender did not want to lend against vacant land. They assert that there were to be two deeds (there were) and that the Debtor was to be a single purpose entity owning only the encumbered property. While that would not be unusual, the undersigned has not yet seen any underlying commitment that set that forth. The contract amendments that werereceived from the attorney that represented the Debtor at that time clearly show an amendment (the unsigned document is annexed hereto as Exhibit "C") splitting the properties but both to still be in "Fraleg" (without an "e" at the end). They assert that they reserved the name Fralege Group, LLC (with an "e" at the end) at the closing table in 2019 and thought the Property had been transferred.

10.    "Fralege" was not actually formed until April 7, 2020, at the time when they assert they were submitting the plans to the local municipality for the vacant lot.

11.    When the first bankruptcy was filed by Mr. Hemmings (this will be discussed at length below) 116 Walnut was not listed in the schedules. However, after the section 341

meeting, there was apparently a discussion about it and amended schedules were filed listing that property (see Exhibit "D").

12. That property was also listed on the petition filed by this firm. Over the last few days, the undersigned spoke with the original attorney on the closing, the president of the abstract company on the recent mortgage and Glen Reiner, Esq., the attorney for the new mortgagee. The upshot of this is apparently that the Debtor's principals believed 116 Walnut was not part of the Debtor's estate and did the financing to pay for the fees to obtain a refinancing of the entire portfolio to get the funds to fund the Plan. The title company apparently only searched in New Jersey for a bankruptcy filing and did not find one. It then raised the issue of the extra "e" and apparently in New Jersey, could not insure the mortgage until there was a correction deed. Their search did not disclose the existence of the Debtor, so they advised Mr. Reiner to do the correction deed. Mr. Reiner, thinking the Debtor did not exist, created the correction deed and the Debtor's principals executed it at his request.

13. The investigation revealed that Mr. Hemmings represented Fralege at the mortgage closing. The undersigned did not discuss this situation with Mr. Hemmings, but did send him the email attached as Exhibit "E".

14. As the Court may imagine, it has not been a pleasant couple of days. As the Debtor continues to await a commitment from several lenders, negotiations were had with Mr. Ferguson on setting an adjourned date for a sale and the Debtor and MYC & Associates, Inc. ("MYC") came to a resolution of their retention. That revised application and order will be submitted shortly.

15. In conversations with Mr. Reiner and the Debtor's principals, the undersigned demanded that the mortgage be removed and cancelled. It is my understanding that the Debtor's principals are providing substitute collateral for that loan.

16. Mr. Yaverbaum of MYC has received an initial stalking horse offer of $4,875,000.00 for both parcels. This is very close to covering all the claims and expenses in this case. The Debtor's principals are cooperating in getting all of the due diligence materials to MYC and, upon information and belief, the properties are being photographed and shown on February 14, 2023.

17. Throughout all of this, Mr. Ferguson has been courteous, professional and collaborative. The undersigned understands and appreciates that his client will want the stay lifted and the sale to proceed as soon as possible.

18. However, since there is a stalking horse purchaser in prospect that will pay all claims, it will be the Debtor's position that the stay should be lifted to permit such a sale ten (10) days after the scheduled section 363 sale, only to take place if there is no successful bidder at the section 363 sale.

19. The benefit to all parties is enormous. The two properties sold together and/or separately at a section 363 sale will bring a much higher price than just the one encumbered parcel at a state foreclosure sale and a second sale in this Court.

20. The other option is a motion to convert this case (appointing a Chapter 11 trustee is not an option as the Debtor's plan has been confirmed). It is respectfully submitted that the Debtor's principals are now well aware of the enormity of the errors here, which were compounded by the acts of multiple third parties, to be very careful in everything they do. The costs and delay of converting the case and appointing a Chapter 7 trustee would not benefit any

of the parties. Moreover, it leaves them with the chance of still obtaining the financing and closing before any sale takes place.

Dated: February 9, 2023  
       Huntington, New York

Respectfully submitted,

**Law Offices of Avrum J. Rosen, PLLC**

By:    */s/ Avrum J. Rosen*  
      Avrum J. Rosen, Esq.  
      Nico G. Pizzo, Esq.  
      38 New Street  
      Huntington, NY 11743  
      (631) 423-8527  
      arosen@ajrlawny.com  
      npizzo@ajrlawny.com

*Attorneys for the Reorganized Debtor*