UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
───────────────────────────────────────────

In re:

Fraleg Group, Inc.,                                    Case No. 22-41410-jmm

           Debtor.                               Chapter 11

───────────────────────────────────────────

## NOTICE OF MOTION FOR RELIEF FROM THE AUTOMATIC STAY AND *IN REM* RELIEF

PLEASE TAKE NOTICE that CAF Borrower GS, LLC ("**Lender**"), has filed its *Motion for Relief from the Automatic Stay and* In Rem *Relief* (the "**Motion**").

PLEASE TAKE FURTHER NOTICE that a telephonic/virtual hearing will be held on March 8, 2023 at 10:00 a.m. E.T. before the Honorable Jil Mazer-Marino of the United States Bankruptcy Court for the Eastern District of New York (the "**Bankruptcy Court**"). All hearing participants must register with eCourt Appearances in advance of hearing, and a telephone number and video link will be e-mailed to the participant.

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Motion must be made in writing, be filed electronically by registered users of the Bankruptcy Court's electronic case filing system, and be served, so as to be received no later than March 1, 2023, upon counsel for Lender.

88166845.2

Dated: February 10, 2023

    Respectfully submitted,

    POLSINELLI PC

    By: */s/ David D. Ferguson*
        MORGAN C. FIANDER
        600 Third Avenue, 42nd Floor
        New York, New York 10016
        (212) 684-0199
        mfiander@polsinelli.com

        DAVID D. FERGUSON
        900 West 48th Place, Suite 900
        Kansas City, Missouri 64112
        (816) 360-4311
        dferguson@polsinelli.com

    *Attorneys for Lender CAF Borrower GS, LLC*

                                        **Hearing Date: March 8, 2023 at 10:00 a.m. ET**
                                        **Response Deadline: March 1, 2023**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

In re:

Fraleg Group, Inc.,                            Case No. 22-41410-jmm

        Debtor.                                Chapter 11

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY AND *IN REM* RELIEF OR, IN THE ALTERNATIVE, LEAVE TO EXERCISE REMEDIES

CAF Borrower GS LLC ("**Lender**"), for its Motion to for Relief Automatic Stay and *In Rem* Relief or, In the Alternative, Leave to Exercise Remedies, states:

### I. PRELIMINARY STATEMENT.

1. As detailed below, Fraleg Group, Inc. (the "**Debtor**") defaulted under the bankruptcy plan confirmed by the Court by failing to either pay Lender's claim or sell the Lender's collateral by the plan-imposed deadline of January 31, 2023. The bankruptcy plan incorporates a settlement between Lender and the Debtor, and the Debtor has failed to honor the terms of the agreement as incorporated into the bankruptcy plan. Lender seeks to foreclose its mortgage on the property of the Debtor securing Lender's claim.

2. There is substantial authority for the proposition that no relief from the automatic stay is required in that the property subject to Lender's mortgage is no longer property of the bankruptcy estate because the property was revested in the reorganized debtor pursuant to the Debtor's bankruptcy plan. *See*, *e.g.*, *In re Ernst*, 45 B.R. 700, 701–04 (Bankr. D. Minn. 1985) (stay relief motion denied as moot after court determined that automatic stay ceased upon confirmation of the debtor's plan); *In re Balogun*, 56 B.R. 117, 118–20 (Bankr. M.D. Ala. 1985) (same).

However, at least one court has ruled that a creditor must obtain the bankruptcy court's permission to exercise remedies where the bankruptcy plan provides for the bankruptcy court to retain exclusive jurisdiction (as the Debtor's bankruptcy plan does in this case). *See In re 12th & N Joint Venture*, 63 B.R. 36, 38–40 (Bankr. D.D.C. 1986) (court treats lender's stay relief motion as seeking leave to foreclose because bankruptcy plan retained exclusive jurisdiction). Out of an abundance of caution Lender seeks an Order of the Court (whether in the form of a stay relief Order or an Order granting Lender leave under the bankruptcy plan) so that Lender may proceed with its remedies in state court.

3.  The owes Lender more than $5 million under a loan (the "**Loan**") obtained by the Debtor on January 23, 2019. The Loan is secured by the Debtor's primary asset, an unoccupied apartment building located in East Orange, New Jersey (the "**Property**"). The Debtor also owned a parcel of vacant land adjoining the Property. The Debtor defaulted on the Loan payments in November of 2019, less than a year after the Loan was made.

4.  Lender filed a foreclosure action and obtained a judgment of foreclosure. The Debtor repeatedly stalled the sale. A sale of the Property was finally scheduled for September 14, 2021, but the Debtor filed a bankruptcy case that day, Case No. 21-42322-jmm (the "**First Bankruptcy Case**"), further delaying the foreclosure sale. Lender filed a Motion for Relief from Automatic Stay [First Bankruptcy Case, Docket #26] on November 29, 2021 based, among other things, on the Debtor's lack of equity in the Property. Lender filed an Amended Motion for Relief from Stay on February 22, 2022 [First Bankruptcy Case, Docket #39] after the Debtor failed to file a plan or make payments as required under Bankruptcy Code § 362(d)(3).

5.  The Debtor identified its First Bankruptcy Case as a single asset real estate case. Ninety days elapsed from the petition date in that case, and the Debtor still had not filed a plan or

started making payments to Lender as required under Section 362(d)(3). Lender thereafter sought relief from the automatic stay. The Debtor had no factual or legal defense to Lender's motion and, not surprisingly, the Debtor did not oppose the motion. Rather, at a hearing held on March 30, 2022, the Debtor *consented* to stay relief, representing to the Court that the Debtor was in the process of obtaining financing to satisfy Lender's claim.

6. Shortly thereafter, the Debtor filed a motion to dismiss the First Bankruptcy Case, representing that the Debtor had "secured financing from Fortress Holdings from which the Debtor will satisfy [Lender.]" [First Bankruptcy Case Docket No. 53, ¶ 11.] The Debtor further represented that it was "in the final stages of clearing title exceptions, one of which is the dismissal of this case and the Debtor expects to close as soon as the case is dismissed." [First Bankruptcy Case Docket No. 53, ¶ 12.] Based on this representation, the Court dismissed the Debtor's First Bankruptcy Case. [First Bankruptcy Case, Docket No. 59, ¶ 12.]

7. The Debtor, without any explanation to Lender, did not obtain financing from Fortress. Lender scheduled a sheriff's sale to foreclose its mortgage on the Property after the First Bankruptcy Case was dismissed and was prepared to proceed after Debtor failed to pay off the Loan. However, on June 17, 2022 (shortly before the scheduled foreclosure sale) the Debtor filed a *second* bankruptcy case—the case pending before the Court now—to stop the foreclosure sale (the "**Second Bankruptcy Case**"). [Second Bankruptcy Case, Docket No. 1].

8. Lender filed a Motion for Relief from the Automatic Stay and *In Rem* Relief in the Second Bankruptcy Case on July 14, 2022. [Second Bankruptcy Case, Docket 15]. Lender also filed a Motion to Void Order of Dismissal Pursuant to Rule 9024 on July 13, 2022. [First Bankruptcy Case, Docket 65]. Lender and the Debtor thereafter engaged in extensive briefing with respect to Lender's motions and the Debtor's assertion that Lender's claim had been overstated by

5

Lender. The Debtor also filed an adversary action with regard to its claim that Lender had overstated the amount of Lender's claim.

9. Lender and the Debtor eventually settled all of their disputes and the settlement was incorporated into the Debtor's Plan of Reorganization filed by the Debtor on October 18, 2022 (the "**Plan**"). [Second Bankruptcy Case, Docket No. 52]. Under the settlement Lender agreed to a discounted payoff ($4.5 million plus interest accruing after November 22, 2022) under Sections 1.03, 3.01 4.02(d) of the Plan. The Debtor, in turn, received a window of time within which to either pay off Lender's discounted claim or to sell the Property, with Lender to have the right to credit bid at the sale. Plan, Section 4.02.

10. The Debtor has not obtained financing to pay off Lender's claim. **Further, the deadline for the Debtor to hold a sale of the Property was January 31, 2023**. Plan, Section 4.02(e). The Debtor did not schedule or hold a sale of the Property by the January 31, 2023 deadline. Moreover, the Debtor has not scheduled a sale of the Property to occur *after* January 31, 2023. In short, the Debtor has not lived up to the deal it made with Lender and incorporated into the Plan.

11. Lender seeks relief from the automatic stay so that it can foreclose its mortgage on the Property. Reorganization is infeasible in the Debtor's Second Bankruptcy Case, as it was in the Debtor's First Bankruptcy Case because the Property, which has not been occupied for more than 30 years, requires extensive renovations before it can be occupied. Renovation work at the building stopped over a year ago. The renovations are only 60% complete according to the Debtor, and the additional required renovation work will cost, by the Debtor's estimate, $1.9 million. The Debtor has no funds to pay for the $1.9 million of additional renovation work.

12. The Debtor has never made a payment to Lender during either of the Debtor's two

bankruptcy cases—**a span of more than fifteen months**. The Debtor's last payment to Lender was in October of 2019. **Accordingly, the Debtor has not made any payments to Lender in over three years**.

13. The Debtor has no equity in the Property, no money to fund the required renovations to the Property or to make payments under a bankruptcy plan. Lender in good faith made an agreement with the Debtor to resolve the parties' differences, including Lender's Motion for Relief from the Automatic Stay and *In Rem* Relief filed in this case on July 14, 2022, over six months ago. [Second Bankruptcy Case, Docket No. 15]. The Debtor has failed to keep its end of the bargain, and there should be no further delays.

14. Cause exists for relief from the automatic stay because, among other things, the Debtor has repeatedly demonstrated that it is unable to successfully reorganize and because the Debtor failed to honor its obligations to Lender under the settlement embodied in the Debtor's Plan. Lender submits this motion relief so Lender may reschedule the Sheriff's sale of the Property.

## II. JURISDICTION; STATUTORY BASES FOR RELIEF.

15. This Court has jurisdiction to hear and determine this Motion pursuant to 28 U.S.C. Section 157(a), (b)(1) and (b)(2)(A), (G) and (O). This Motion is filed pursuant to Code § 362(d) and Rule 4001(a)(1) of the Federal Rules of Bankruptcy Procedure (the "**Rules**").

## III. ABBREVIATED FACTUAL BACKGROUND AND RELEVANT PROCEDURAL BACKGROUND.[1]

### *The Loan to the Debtor.*

16. Given the extensive development of the factual background of this matter through the First Bankruptcy Case, and in prior motion practice and hearings in the First Bankruptcy Case

---

[1] The facts set forth herein are supported by the Exhibits to Lender's prior stay relief motions and the attachments to those motions, as well as by the Debtor's statements in its Plan and the Disclosure Statement relating to the Plan [Second Bankruptcy Case, Docket Nos. 52 and 53.]

and Second Bankruptcy Case, Lender provides an abbreviated factual and procedural history in this Motion.

17. On January 23, 2019, Corevest American Finance Lender LLC ("**Original Lender**") and the Debtor entered into a $8,000,000.00 commercial mortgage loan transaction, evidenced by a Loan Agreement dated as of January 23, 2019 (the "**Loan Agreement**"). To evidence its repayment obligations under the Loan, Debtor executed and delivered to Original Lender a certain promissory note dated January 23, 2019, in the original principal amount of $8,000,000.00 (the "**Note**"). Under the terms of the Loan Agreement, on each Monthly Payment Date (as defined in the Loan Agreement), the Debtor was to pay a monthly payment of interest equal to the Monthly Debt Service Payment (as defined in the Loan Agreement). All principal, interest and other fees due under the Note and the Loan Documents (defined below) were to become due and payable on July 23, 2020 (the "**Maturity Date**").

18. The Debtor secured its obligations under the Loan by executing and delivering to Original Lender a certain Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated as of April 5, 2019 (the "**Mortgage**"), pursuant to which Debtor mortgaged to Original Lender certain real property known as 112 N. Walnut St., East Orange, NJ 07017, and also known as Lot 15 in Block 360 on the Tax Map of East Orange (the "**Property**"). The Mortgage was duly recorded with the Essex County Register's Office on April 12, 2019 as Instrument No. 2019034120.

19. The Note, the Loan Agreement, the Mortgage and all other documents executed in connection with or further securing the amounts owed under the Note (collectively, the "**Loan Documents**") were later assigned to Lender.

*The Debtor's defaults on the Loan.*

20. On November 11, 2019, the Debtor defaulted under the Loan Documents by failing to pay the amounts owed under the Note. The last payment the Debtor made to Lender was in October of 2019. As a result of the Debtor's default, Lender elected to accelerate the amounts due and owing under the Note. Debtor failed to cure the existing defaults and remains in default of the terms of the Note, the Mortgage and other Loan Documents.

### *Status of the Debtor's business.*

21. The Debtor has no other business than the renovation of the Property. First Bankruptcy Case, Transcript of testimony of Ronald Fraser, CFO of Debtor, at § 341 meeting held October 15, 2021 (the **"Fraser Transcript"**) 21:19-22, attached hereto as **Exhibit A**, 10:24-25; 11:1-6. The Debtor has no work and no employees. *Id.*, 27:10-12. The Debtor also has no independent contractors engaged. The Debtor has no current operations.

22. The Property is currently vacant and only 60% of the renovation work has been completed. *Id.*, 22:16-18; 45:9-14. Renovation work at the Property stopped more than a year prior to October 15, 2021. *Id.*, 49:11-18. There is no certificate of occupancy for the Property because the renovations to the Property have not been completed. *Id.*, 22:12-15. No part of the Property can be rented in its current condition. *Id.*, 47:12-14.

23. It would take the Debtor approximately 6-8 months to complete the construction on the Property once the Debtor acquired the remaining parts required for the construction. *Id.*, 28:12-17. The Debtor estimates it will cost approximately $1.9 million to finish renovating the Property. *Id.*, 47:15-22. The Debtor has no money to complete the renovation of the Property. *Id.*, 46:13-14.

### *The debt due under the Loan Documents.*

24. As of June 17, 2022, the outstanding balance due and owing on the Note was approximately $4.7 million. However, as set forth in the Plan, Lender agreed to accept a discounted

9

payoff of $4.5 million plus interest accruing after November 22, 2022.

25. The Property was scheduled for a foreclosure sale on September 14, 2021, and Lender was provided notice of the Debtor's bankruptcy filing just as the foreclosure sale was starting.

26. On September 14, 2021, Debtor filed its first Chapter 11 Petition for Relief under the commencing the First Bankruptcy. [First Bankruptcy Case, Docket No. 1.]

27. On November 29, 2021, Lender filed its first Stay Relief Motion. [First Bankruptcy Case, Docket No. 26.]

28. On January 12, 2022, Debtor filed an Affirmation in Opposition to the first Stay Relief Motion. [First Bankruptcy Case, Docket No. 25.]

29. The parties appeared on January 19, 2022 and the Court ordered a discovery period related to the first Stay Relief Motion. A proposed stipulation as to same was thereafter filed and so-ordered.

30. On February 22, 2022, Lender filed the amended Stay Relief Motion. [First Bankruptcy Case, Docket No. 39]. Debtor did not file any opposition.

31. On March 30, 2022, the Court held a hearing on the Stay Relief Motion. At the hearing, the Debtor did not make any objection or contest to the relief sought in the Stay Relief Motion. Debtor represented that it was securing financing to pay off Lender and it consented to stay relief being granted. Specifically, Debtor's counsel in the First Bankruptcy Case (Mr. Hemmings) stated that Debtor "has told [him] that [Debtor] has secured financing to repay the debt - - to repay the lender in full. And we should be able to close this very shortly." (Transcript of Hearing on Stay Relief Motion, 6:2 – 6:5.) Debtor's counsel further represented that "because of securing financing, we will be getting ready very - -  very shortly to file a motion to dismiss this

matter." (*Id.* 6:13 – 6:15.) Debtor's counsel further stated "I have no objection to lifting the stay." (*Id.* 8:22 – 8:23.)

32. The Court granted Lender's Stay Relief Motion in the First Bankruptcy Case. [First Bankruptcy Case, Docket No. 42.]

33. On May 16, 2022, Debtor filed its Motion to Dismiss the First Bankruptcy. [First Bankruptcy Case, Docket No. 53.] In the Motion to Dismiss, the Debtor acknowledged that it did not oppose the Stay Relief Motion. [First Bankruptcy Case, Docket No. 53, ¶ 10.] The Debtor also represented that it had "secured financing from Fortress Holdings from which the Debtor will satisfy [Lender]." [First Bankruptcy Case, Docket No. 53, ¶ 11.] The Debtor sought dismissal of the case to clear title and close the refinancing deal. [First Bankruptcy Case, Docket No. 53, ¶ 12.]

34. On June 3, 2022, the Court granted the Motion to Dismiss and dismissed the First Bankruptcy. [First Bankruptcy Case, Docket No. 59.]

35. On June 17, 2022, Debtor filed its Second Bankruptcy Case. [Second Bankruptcy Case, Docket No. 1.]

36. On July 14, 2022, Lender filed its Motion for Stay Relief in the Second Bankruptcy Case. [Second Bankruptcy Case, Docket No. 15.]

37. The Debtor and Lender settled their disputes and incorporated the terms of their agreement into Debtor's Amended Plan of Reorganization. [Second Bankruptcy Case, Docket No. 52].

38. Pursuant to Section 4.02(e) of the Debtor's Amended Plan of Reorganization the Debtor was to have either paid off Lender's claim or held a sale of the Property by January 31, 2023. [Second Bankruptcy Case, Docket No. 52]. The Debtor has not paid off Lender's claim and

did not schedule a sale of the Property prior to January 31, 2023. The Debtor has never scheduled a sale of the Property.

IV. **THE FACTS OF THE DEBTOR'S CASE OVERWHELMINGLY SUPPORT LENDER'S REQUEST FOR RELIEF FROM THE AUTOMATIC STAY.**

39. Section 362(d)(2) of the United States Bankruptcy Code (the "**Code**") provides that "[o]n request of a party in interest . . . the court shall grant relief from stay . . . with respect to a stay of an act against property under subsection (a) of this section, if – (A) the debtor does not have equity in such property; and (B) such property is not necessary to an effective reorganization." Once it is demonstrated that a debtor has no equity in the subject property, relief from the stay must be granted unless the debtor proves that such property is necessary for an effective reorganization. *United Sav. Ass'n of Tex v. Timbers of Inwood Forest Assoc.*, 484 U.S. 365, 37576 (1998). The Supreme Court in *Timbers* explained as follows:

> Once the movant under § 362(d)(2) establishes that he is an undersecured creditor, it is the burden of the debtor to establish that the collateral at issue is 'necessary to an effective reorganization.' See § 362(g). What this requires is not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization that is in prospect. This means, as many lower courts, including the en banc court in this case, have properly said, that there must be 'a reasonable possibility of a successful reorganization within a reasonable time.'"

*Id*.

40. The test [under *Timbers*] is one of feasibility. The debtor need not show that the plan is confirmable, but that the things which are to be done after confirmation can be done as a practical matter. A motion for relief from the stay should not be turned into a confirmation hearing; the debtor need only show that where there is lack of equity, the proposed plan has a realistic chance of being confirmed and is not patently unconfirmable." *In re Kolnberger*, 603 B.R. 253, 269 (Bankr. E.D.N.Y. 2019) (internal citations and quotations omitted) (emphasis in original). "The debtor need not show that the plan is confirmable, but that the things which are to be done after confirmation

can be done as a practical matter. A motion for relief from the stay should not be turned into a confirmation hearing; the debtor need only show that where there is lack of equity, the proposed plan has a realistic chance of being confirmed and is not patently unconfirmable." *In re 160 Bleecker St. Assocs.*, 156 B.R. 405, 410–11 (S.D.N.Y. 1993) (internal citations and quotations omitted). *See also In re Kent Terminal Corp.*, 166 B.R. 555, 562 (Bankr. S.D.N.Y. 1994) ("an effective reorganization cannot be based solely on speculation") (*citing In re Saypol*, 31 B.R. 796, 803 (Bankr. S.D.N.Y. 1983)); *In re New Era Co.*, 125 B.R. 725, 730 (S.D.N.Y. 1991) ("'mere dreams' of reorganization cannot sustain the automatic stay"); *In re Diplomat Elecs. Corp.*, 82 B.R. 688, 693 (Bankr. S.D.N.Y. 1988).

41.     Lender is entitled to relief from the automatic stay under Code § 362(d)(2) because the Debtor does not have equity in the Property and because the Property is not necessary to an effective reorganization. In the First Bankruptcy Case the Debtor took the position in its Schedules that the Property is worth $3.65 million. The Lender believes that the Property is worth less than $3.65 million, but even using the Debtor's estimated value of $3.65 million, the Debtor lacks any equity in the Property because the amount owed by the Debtor on the Loan exceeds $4.5 million pursuant to the terms of the Debtor's Plan.

42.     Further, the Property is not necessary for an effective reorganization because the Debtor has no reasonable prospect of a successful reorganization. The Debtor has no revenue, and no prospect for obtaining revenue unless it renovates the Property. The Debtor lacks any funding to complete the renovations. The Debtor failed to obtain funding to pay off Lender's discounted claim of $4.5 million and has failed to sell the Property as required by the Plan. It is overwhelmingly clear that the Debtor is in default under the Plan and that the Debtor cannot present a confirmable bankruptcy plan.

13

88166845.2

*Lender is entitled to relief from the automatic stay under Code § 362(d)(1) because the Debtor filed its case in bad faith and without any possibility of presenting a confirmable bankruptcy plan*

43. Lender is also entitled to relief from the automatic stay under Code § 362(d)(1), which provides that "[o]n request of a party in interest . . . the court shall grant relief from stay . . . for cause, including the lack of adequate protection of an interest in property of such party in interest." Further, Code § 362(d)(1) provides that, on request of a party in interest, the automatic stay may be annulled or terminated "for cause, including lack of adequate protection of an interest in property of such party in interest."

44. "Cause, for either dismissal [under 11 U.S.C. § 1112(b)] or relief from the stay [under 11 U.S.C. § 362(d)(1)], may be found based on unenumerated factors, including 'bad faith,' or failure to deal with creditors fairly even where 'bad faith' is not found.'" *In re AMC Realty Corp.,* 270 B.R. 132, 140 (Bankr. S.D.N.Y. 2001) (citations omitted). Under Code § 1112(b)(4), the term "cause" includes "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation" and "failure to maintain appropriate insurance that poses a risk to the estate or to the public." "Cause" is not defined, and the bankruptcy courts have flexibility to determine what constitutes cause for dismissal. *Clear Blue Water, LLC v. Oyster Bay Management Co.*, LLC, 476 B.R. 60, 67 (E.D.N.Y. 2012) (citation omitted). The list of factors in Code § 1112 is "illustrative, not exhaustive." *Id.* at 66. (citation omitted)

45. The same finding of bad faith to dismiss a Chapter 11 case may justify relief from the automatic stay. *In re AAGS Holdings* LLC, 608 B.R. 373, 382 (Bankr. S.D.N.Y. 2019); see also, *In re AMC Realty Corp*., 270 B.R. at 140 ("Cause, for either dismissal or relief from the stay, may be found based on unenumerated factors, including bad faith ..."). "A petition is filed in bad faith 'if it is clear that on the filing date there was no reasonable likelihood that the debtor intended

14

to reorganize and no reasonable probability that it would eventually emerge from bankruptcy proceedings.'" *In re AAGS Holdings LLC*, 608 B.R. 373, 382 (*quoting Baker v. Latham Sparrowbush Assocs. (In re Cohoes Indus. Terminal, Inc.*), 931 F.2d 222, 227 (2d Cir. 1991).

46. The Second Circuit has stated the following non-exclusive list of factors that indicate a Chapter 11 case was filed in bad faith: (1) debtor has only one asset; (2) debtor has few unsecured creditors whose claims are small in relation to secured claim; (3) debtor's one asset is the subject of a foreclosure action due to arrearages or default on the debt; (4) debtor's financial troubles are in essence a two-party dispute between debtor and a secured creditor which can be resolved in a pending state foreclosure action; (5) the timing of filing evidences intent to delay or frustrate legitimate efforts of secured creditors to enforce their rights; (6) debtor has little to no case flow; (7) debtor cannot meet current expenses including payment of personal property and real estate taxes; and (8) debtor has few or no employees. *See, e.g., C-TC 9th Avenue Partnership*, 113 F.3d 1304, 1311 (2d Cir. 1997).

47. "The filing of a bankruptcy petition merely to prevent foreclosure, without the ability or intention to reorganize, is an abuse of the Bankruptcy Code." *In re Casse*, 198 F.3d 327, 332 (2d Cir. 1999) (quoting *In re Felberman*, 196 B.R. 678, 681 (Bankr. S.D.N.Y. 1995)). "The filing of a petition on the 'eve of foreclosure or eviction' is not sufficient alone to constitute bad faith 'cause' to lift the automatic stay but is one of many circumstances which can be considered in a totality of the circumstances." In re Valid Value Properties, LLC, No. 16-13299, 2017 WL 123751, *6 (Bankr. S.D.N.Y. 2017). "The bad faith standard in the Second Circuit requires showing 'both objective futility of the reorganization process and subjective bad faith in filing the petition.'" *Id*. (quoting *In re Kingston Square Assocs*., 214 B.R. 713, 725 (Bankr. S.D.N.Y. 1997)).

88166845.2

48. In *In re Ridge View Farm, LLC*, the Court reviewed the C-TC factors and found that debtor had one asset, which was subject to two foreclosure judgments, and that debtor's financial issues involved in essence a two-party dispute "that has already been resolved in the state court foreclosure proceedings including fixing the amount of the outstanding secured debt." *In re Ridge View Farm, LLC*, Nos. 12-31700, 11-30463, 2012 WL 6137690, *8 (Bankr. N.D.N.Y. 2012). In *In re Casse*, the Court reviewed the filing on the eve of a foreclosure and in the context of whether debtor could possibly reorganize, in connection with prior filings, and found that "the Property was listed as the sole asset, general unsecured creditors were non-existent, and [the mortgage holder] was unreceptive to the Debtor's proposals. This precluded any legally available method to force through confirmation of a plan." *In re Casse*, 219 B.R. 657, 661 (Bankr. E.D.N.Y. 1998).

49. The Debtor's case involves many of the factors cited by the Second Circuit and New York Bankruptcy Courts in support of stay relief based on a debtor's bad faith under Code § 362(d)(1):

- The Debtor has only one primary asset—the Property.

- The Debtor has only two unsecured creditors, and those creditors hold very small claims in relation to Lender's $4.2 million claim.

- The Debtor's primary asset is subject to foreclosure because of arrearages on the mortgage debt.

- The dispute is a two-party dispute that can be resolved in the state court foreclosure action.

- The Debtor filed the First Bankruptcy Case on the eve of the foreclosure sale in order to frustrate enforcement of Lender's legitimate rights.

- The Debtor filed the Second Bankruptcy Case a mere four days before the post-dismissal foreclosure sale.

16

- The Debtor has no assets to pay insurance, real estate taxes, and other administrative claims.

- The Debtor has no employees.

- The Debtor has no ability to reorganize.

50. This bankruptcy proceeding is a textbook example of a bad faith filing by a Debtor, as this case exhibits nearly every factor deemed relevant by the courts in this circuit for dismissal of a case under Code § 362(d)(1) for bad faith.

### *Lender is also entitled to relief because Debtor is a repeat filer*

51. Further, the Second Bankruptcy Case was commenced immediately after the dismissal of the First Bankruptcy Case, making the Debtor a bad faith, repeat filer. Repeat filing is frequent factor considered for determining whether cause exist for dismissal or stay relief. *In re 234–6 West 22nd St. Corp.*, 214 B.R. 751, 757-758 (Bankr. S.D.N.Y. 1997). "Repeat filings do not *per se* require dismissal . . . but, particularly where they are not the consequence of changed circumstances, they warrant special scrutiny." *AMC Realty Corp.,* 270 B.R. at 141. In this case, there have been no changed circumstances. The Debtor still has no financing, operations, employees, or ability to reorganize. Furthermore, the Debtor still has made no payments to the Lender and the Debtor frustrated yet another foreclosure sale. The facts above clearly establish cause to lift the stay and allow the Lender to enforce its rights against the Property.

### *Cause exists to grant Lender relief from the automatic stay because the Debtor has failed to perform under the settlement between Lender and the Debtor as set forth in the Plan*

52. *Even if the Debtor filed the two bankruptcy cases in good faith*, cause exists for granting stay relief to Lender because the Debtor has had fifteen months to present a confirmable plan to the Court and has failed to do so. The Debtor has no prospect of a successful reorganization. Lender and the Debtor agreed to resolve their disputes and incorporated their agreement into the

17

Debtor's Plan. The Debtor has failed to honor its obligations under the Plan, most pointedly the obligation to either pay Lender's claim or hold a sale of the Property by the January 31, 2023 deadline. Accordingly, cause exists for relief from the automatic stay even if the Debtor had filed both of its bankruptcy cases in good faith.

### *Lender is entitled to in rem relief from stay to enforce its rights against the Property because the filing of this petition was part of a scheme to delay, hinder, or defraud perpetrated the Debtor*

53. Section 364(d)(2) gives the Court authority to grant *in rem* relief from stay as to a debtor's interest in property when " with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved either. . . or multiple bankruptcy filings affecting such real property." 11 U.S. C. § 364(d)(2)(B). The Debtor's Second Bankruptcy Case was filed a mere **14** days after the dismissal of the First Bankruptcy Case, which was itself filed to stop a scheduled foreclosure, and a mere four days before the rescheduled foreclosure sale. Multiple filing so close together shows an intent to delay hinder or defraud. *See In re Gel, LLC*, 495 B.R. 240, 249 (Bankr. E.D. N.Y. 2012) (stating a bankruptcy court can "infer an intent to hinder, delay, and defraud creditors from the fact of serial filings alone").

54. Here, in addition to the multiple filings, the Debtor filed the First Bankruptcy Case to stop a pending foreclosure, filed this current case to continue to frustrate the foreclosure. Under such circumstances, granting the Lender *in rem* relief as to the property is more than appropriate. *Id.* If *in rem* relief is not granted, the Debtor may again attempt dismiss and relief to further frustrate the Lender's efforts to enforce its rights.

55. For all these reasons, Lender requests that the Court lift the stay to allow it to enforce its rights against the Property and grant the Lender *in rem* relief as to the Debtor's rights in the Property. In the alternative, Lender requests that the Court grant Lender leave under the Plan to enforce Lender's remedies including, without limitation, foreclosure of Lender's Mortgage on the Property.

Dated: February 10, 2023

          Respectfully submitted,

          POLSINELLI PC

          By:   */s/ David D. Ferguson*
               MORGAN C. FIANDER
               600 Third Avenue, 42nd Floor
               New York, New York 10016
               (212) 684-0199
               mfiander@polsinelli.com

               DAVID D. FERGUSON
               900 West 48th Place, Suite 900
               Kansas City, Missouri 64112
               (816) 360-4311
               dferguson@polsinelli.com

          ATTORNEYS FOR CAF BORROWER GS LLC

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 10th day of February, 2023, a true and correct copy of the foregoing *Motion for Relief from the Automatic Stay and* In Rem *Relief* was served electronically to Debtor's counsel and the U.S. Trustee by ECF notification from the court, and served by First-Class United States Mail, postage prepaid, to the creditors and interested parties listed on the mailing matrix for this case.

/s/  David D. Ferguson