# EXCLUSIVE RIGHT-TO-SELL
# MARKETING AND SALES AGREEMENT

This agreement ("**Agreement**") made and entered into on this 12th day of February 2023 ("**Effective Date**"), by and between MYC & Associates, Inc., hereinafter ("**MYC**"), maintaining its corporate address at 1110 South Avenue, Suite 22, Staten Island, NY 10314; and Fraleg Group. Inc. ("**Debtor**") as Chapter 11 debtor-in-possession, contains the terms and conditions which will govern the marketing and sale of the Real Properties, as defined below as of the Effective Date.

The Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of New York ("**Bankruptcy Court**"), commencing Case No. 22-41410 (JMM).

Pursuant to the Plan, the Debtor seeks for MYC to market and sell certain real properties, including any improvements and fixtures thereon, commonly known as, and located at 112 & 116 N. Walnut Street, East Orange, New Jersey 07017 (the "**Real Properties**").

The Debtor and MYC hereby agree that:

1. EXCLUSIVITY. The Debtor wishes to sell the Real Properties and, accordingly, grants MYC the sole and exclusive right-to-sell the Real Properties as of the Effective Date. MYC shall be permitted to co-broker the Real Properties as they deem appropriate and necessary to maximize the sale price of the Real Properties. In no event, regardless of the number of the co-brokers, shall the commission exceed the rate or alter the terms described in paragraph 4 below.

2. TERM. The initial term of this Agreement is one hundred eighty (180) days from the Effective Date ("**Initial Term**"). This Agreement shall renew automatically for succeeding terms of sixty (60) days, under the same terms and conditions, unless either party provides written notice to the other party, no less than thirty (30) days in advance of any renewal date, stating that the party wishes to terminate this Agreement.

3. TERMS OF SALE. Any sale contract may be subject to the Debtor's and/or MYC's receipt of higher and/or better bids which shall be made at an auction ("**Auction**") to be conducted in accordance with the plan confirmation order entered by the Bankruptcy Court. Any sale of the Real Properties shall be free and clear of all liens, claims, and encumbrances, and security interests with such liens, claims, and encumbrances, and security interests to attach to the proceeds of sale.

4. COMPENSATION. MYC's compensation shall be as follows: (i) If the Real Properties successfully sell to any party other than the Debtor or the secured creditor, MYC will charge a broker's commission in the amount of six percent (6%) of the gross proceeds realized from the sale of the Real Properties ("**Third-Party Commission**") as a buyer's premium. The Commission earned by MYC will be paid at the closing by the proposed buyer; (ii) if the closing to refinance the mortgage on the Real Properties takes place before any scheduled auction takes place, MYC shall be entitled to seek a reduced commission of one percent (1%) calculated from the total refinance amount plus reimbursement of all expenses ("**Refinance Commission**"), with such amount of the Refinance Commission to be paid upon the submission of a proper application,

and approval thereof, made to the Bankruptcy Court; and (iii) in the event the secured creditor successfully credit bids at the Auction and is deemed by the Court to be the successful bidder, MYC shall be entitled to seek a reduced commission of one percent (1%) calculated from the full amount of the secured creditor's claim plus reimbursement of all expenses ("**Credit Bid Commission**"). Collectively, the Third-Party Commission, Refinance Commission and Credit Bid Commission shall herein be referred to as the "**Commission**". The engagement and compensation of MYC are subject to the Bankruptcy Court's Order confirming the bankruptcy plan of Debtor [Dkt. No. 65].

5. REPRESENTATIONS, WARRANTIES & OBLIGATIONS. (a) MYC agrees to promote and broker the Real Properties in its usual way as to obtain the highest possible selling price for the Real Properties, (b) MYC shall furnish at the time of the Auction such assistants and other help as may be required to handle the Auction and shall in every way endeavor to sell the Real Properties for as high, a price as may be obtained, and (c) shall conduct the Auction in accordance with the terms and conditions of sale and/or bidding procedures that are approved by the Bankruptcy Court.

6. MISCELLANEOUS. This Agreement shall be binding upon the parties hereto and their respective successors, heirs, and assignees. Nothing in this Agreement, express or implied, is intended to confer or does confer on any person or entity, other than the parties hereto and their respective successors, heirs, and assigns any rights or remedies under or by reason of this Agreement. The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provision of this Agreement, which shall remain in full force and effect pursuant to the terms hereof. This Agreement incorporates the entire understanding of the parties regarding the subject matter hereof and supersedes all previous agreements or understandings regarding the same, whether written or oral. This Agreement may not be amended, and no portion hereof may be waived, except in a writing duly executed by the parties. The parties hereto acknowledge and agree that this Agreement has been negotiated at arm's length and among parties equally sophisticated and knowledgeable in the matters dealt with in this Agreement. Accordingly, any rule of law or legal decision that would require interpretation of any ambiguities in this Agreement against the party that has drafted it is not applicable and is waived. The provisions of this Agreement shall be interpreted in a reasonable manner to affect the intent of the parties as set forth in this Agreement.

7. EXPENSES. If MYC is entitled to reimbursement of expenses under the Agreement, said reimbursement of expenses are to be paid upon the submission of a proper application, and approval thereof, made to the Bankruptcy Court. If MYC earns a Third-Party Commission in full, it shall not be permitted to seek reimbursement of expenses relating to the marketing and advertising of the Real Properties; however, MYC may submit a proper application for reimbursement of all other expenses relating to the administration of the estate which shall only be paid upon the approval said application by the Bankruptcy Court.

8. This Agreement shall be governed by the laws of the State of New York, without regard to such state's rules concerning conflicts of laws. Each party irrevocably waives any right to trial by jury in any action, proceeding, or counterclaim (whether based upon contract, tort, or otherwise) related to or arising out of this Agreement.

9. This Agreement is subject to Bankruptcy Court approval and the parties irrevocably consent to the Bankruptcy Court's jurisdiction with respect to any action to approve or enforce this Agreement and expressly waive any right to commence any action in any other forum or to contest the Bankruptcy Court's jurisdiction.

10. The Bankruptcy Court shall retain exclusive jurisdiction over the subject matter of this Agreement, including, but not limited to, the implementation and interpretation of the terms and conditions herein.

11. This Agreement may be executed in one or more counterparts, each of which is deemed an original, together constituting one and the same document. Facsimile signatures and signatures in portable document format (.pdf) are deemed originals for the purposes of this Agreement.

12. The persons executing this Agreement on the parties' behalf warrant and represent that they are authorized and empowered to execute and deliver this Agreement on behalf of such party.

AGREED TO AND ACCEPTED BY:

Fraleg Group, Inc.

BY: _____

PRINT: _____

ITS: _____

DATE: _____

MYC & Associates, Inc.

BY: */s/ Marc P. Yaverbaum*
Marc P. Yaverbaum

ITS: Vice President

DATE: February 12, 2023