# EXHIBIT "A"

**Law Offices of Avrum J. Rosen, PLLC**
38 New Street
Huntington, New York 11743
(631) 423-8527
Avrum J. Rosen, Esq.
Nico G. Pizzo, Esq.

*Attorneys for the Debtor and Debtor-in-Possession*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In re:                                                                          Chapter 11

FRALEG GROUP, INC.,                                              Case No.: 22-41410-jmm

                                            Debtor.
-----------------------------------------------------------X

### REVISED ORDER (1) AUTHORIZING DEBTOR TO SELL THE REAL PROPERTIES KNOWN AS: (a) 112 NORTH WALNUT STREET, EAST ORANGE, NEW JERSEY 07017; AND (b) 116 NORTH WALNUT STREET, EAST ORANGE, NEW JERSEY 07017 TO THE HIGHEST AND BEST BIDDER AT AN AUCTION SALE; (2) APPROVING THE MANNER AND EXTENT OF NOTICE OF SUCH AUCTION HEARING; (3) SCHEDULING A HEARING TO APPROVE SUCH SALE TO THE HIGHEST AND BEST BIDDER

**UPON** the Amended Plan of Reorganization [Dkt. No. 52] (the "Plan")[1] of Fraleg Group, Inc., the Debtor and Debtor-in-Possession ("Debtor") by and through its counsel, the Law Offices of Avrum J. Rosen, PLLC, which provided for the alternative relief, if in the event the Refinance does not close by December 15, 2022, to sell real property commonly known as consisting of one (1) multi-family residential building located at 112 North Walnut Street, East Orange, New Jersey 07017 (the "Property") and a vacant unimproved land commonly known as and located at 116 North Walnut Street, East Orange, New Jersey 07017 (the "Vacant Lot" and the Property are collectively the "Properties") and seeks the entry of an Order of this Court pursuant to Sections 363(a), 363(b), 363(f) and 363(m) of Title 11 of the United States Code,

---

[1] All capitalized terms not herein defined shall have the same meaning as defined in the Plan.

(the "Bankruptcy Code") and Rules 2002, 6004 and 9004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"): (i) authorizing the Debtor's sale of the Properties, either together or separately, pursuant to the terms as set forth in the Terms and Conditions of Sale and subject to higher and better offers at a public auction, free and clear of all liens, claims, encumbrances and other interests (collectively, the "Liens") with such Liens to attach to the proceeds of the sale for good and valuable consideration, substantially in accordance with the terms and conditions set forth herein; (ii) approving Terms and Conditions of Sale for submitting offers and approving the form and manner of notice with respect to the Auction as set forth in the Plan; (iii) scheduling a hearing to approve of the sale of the Properties to the successful bidder or bidders (the "Sale Hearing"); and due notice of the Plan having been provided and it appearing that no other or further notice need be provided; and no opposition having been submitted thereto; and the Plan having been confirmed on **December 1, 2022**; and no one having timely filed opposition thereto; it is therefore

**ORDERED** that the Debtor is authorized to sell the Properties to the highest and best bidder or bidders at an auction sale; and it is further

**ORDERED** that MYC & Associates, Inc. ("MYC") shall conduct an auction sale (the "Auction Sale") on or before **APRIL 18, 2023**; and it is further

**ORDERED** that the Debtor shall cause the Auction Sale to be advertised on: (i) the website of MYC; and (ii) a publication as chosen by the Debtor and CAF Borrower GS LLC ("CAF") in consultation with MYC; and it is further

**ORDERED** that the Auction Sale shall take place pursuant to the following bidding procedures (the "Bidding Procedures") as are the same that were set forth in the Plan and which Plan has been confirmed:

(a) These terms and conditions of sale ("Terms and Conditions of Sale") are being promulgated in connection with the United States Bankruptcy Court, Eastern District of New York ("Bankruptcy Court") authorized auction sale ("Sale") of Debtor's Properties commonly known as consisting of one (1) multi-family residential building located at 112 North Walnut Street, East Orange, New Jersey 07017 (the "Property") and a vacant unimproved land commonly known as and located at 116 North Walnut Street, East Orange, New Jersey 07017 (the "Vacant Lot" and the Property are collectively the "Properties").). The seller of the Properties is Fraleg Group, Inc., ("Debtor"), a debtor in a Chapter 11 case currently pending in the Bankruptcy Court under the caption and case number set forth above; The Debtor's retained real estate broker and auctioneer ("Auctioneer") is MYC & Associates, Inc. ("MYC"), 1110 South Avenue, Suite 22, Staten Island, New York 10314; Telephone (347) 273-1258; Facsimile (347) 273-1358; email: sales@myccorp.com; and website: www.myccorp.com.

(b) The auction sale ("Sale") will take place at a date and time to be determined by the Debtor in consultation with MYC and CAF. The auction shall be conducted by MYC. Under no circumstances shall the Sale take place earlier than thirty (30) days from the date of entry of the Confirmation Order authorizing the Debtor to conduct the auction, Sale.

(c) Information regarding Debtor's sale of the Property can be obtained by contacting the Debtor's counsel at the telephone number and address set forth herein or by contacting MYC or on the MYC website set forth in paragraph "a" above **or at** . https://myccorp.com/properties/stalled-redevelopment-site

(d) Debtor, in its sole discretion and under its business judgment authority, retains the right to enter into a stalking horse contract with a potential buyer ("Stalking Horse Bidder") that offers a purchase price that Debtor deems to be a reasonable and valid purchase offer ("Stalking Horse Offer") for either or both Properties. The Debtor shall use the Stalking Horse Offer as the reserve sale price at the Sale, such that the Sale will not tender less than the Stalking Horse Offer at the Sale.

(e) In order to be considered by the Court and admissible on the date of the Sale Hearing, any competing offer ("Competing Offer") must satisfy the following terms and conditions: (i) a Competing Offer shall provide for a Purchase Price of at least $25,000.00 more than the CAF's credit bid or Stalking Horse Contract; (ii) the Competing Offer shall be

substantially similar to the Terms and Conditions of Sale; (iii) a higher or better Competing Offeror must sign these Terms and Conditions of Sale agreeing to be bound; (iv) the Competing Offer shall have demonstrated, to the satisfaction of the Debtor, and CAF, evidence of its ability to conclude the transaction upon the terms and conditions of sale, without delay; (v) the Competing Offer shall not be conditioned upon the outcome of unperformed due diligence by the Competing Offeror with respect to the Assets that are the subject of this Sale; (vi) the Competing Offeror shall provide, at least one (1) day before the Sale Hearing, a certified check made payable to Debtor, the sum of ten percent (10%) of the proposed purchase price as a Down payment; and (vii) in the case of any subsequent competing offer ("Subsequent Competing Offer") received from any party, which may, include, without limitation, the Buyer (after a prior competing bid has been received) which satisfies the conditions set forth above, such Competing Offer shall provide for an aggregate consideration at least $25,000.00, but within the discretion of MYC at the Sale to set a lower Subsequent Competing Offer for either or both Properties, in excess of that provided by the prior better offer and shall otherwise comply with all conditions of the Agreement.

(f)    In order to be permitted to bid on the Properties, at least one (1) day prior to the commencement of the Sale, and as a condition to be able to bid at the Sale, each prospective bidder must: (i) register with MYC; (ii) deliver to MYC the original signed Terms and Conditions of Sale; and (iii) tender a bank check in the amount of $**450,000.00** ("Qualifying Deposit") made payable to "Fraleg Group, Inc., DIP", which amount shall serve as a good faith deposit against payment for the Property and a $30,000.00 for the Vacant Lot, of the purchase prices by such Bidder in the event that such bidder is determined to have made the highest or best bid ("Successful Bidder").

(g)    Within forty-eight (48) hours after conclusion of the Sale, the Successful Bidder or Bidders of the Properties shall deliver to the Debtor a bank check which amount must be equal to ten (10%) percent of the successful bid, minus the Qualifying Deposit (together with the Qualifying Deposit, the "Deposit").  The Successful Bidder or Bidders for the Property must execute, and thereby agree to be bound by: (i) these Terms and Conditions of Sale; and (ii) a Memorandum of Sale.  At the conclusion of the Sale, the Debtor, or its representative, will return the Qualifying Deposits to all other bidders.  The Debtor, however, shall retain the Qualifying Deposit of the second highest bidder ("Second Bidder") until the closing of the Sale with the first bidder or the sale to the

Second Bidder. If the First Bidder closes the check of the Second Bidder shall be returned within three (3) business days of the closing.

(h)     The Successful Bidder, or its assigns, must close title ("Closing") to the Property on a date ("Closing Date"), within twenty-one (21) business days following the date of entry of a Bankruptcy Court Order approving the Sale. The deadline for the Closing may be extended solely by the Debtor, with the written consent of CAF. The Purchase Price shall be paid no later than the Closing Date and proceeds of the sale sufficient to pay the Agreed CAF Secured Claim (in the amount provided for under this Plan) shall be delivered to CAF within two (2) business days after Debtor's receipt of the funds from the purchaser at the sale. The Closing shall take place at a location that is to be determined by the Debtor.

(i)     The Bankruptcy Court, prior to the Closing, may enter an Order confirming the Sale.

(j)     In connection with the Closing and Closing Date, the Successful Bidder, or its assigns, is hereby given notice that **Time is of the Essence against the Successful Bidder, or its assigns, and the failure of the Successful Bidder, or its assigns, to close for any reason whatsoever (except as otherwise provided below) including his, her, or its, failure to pay the balance of the Purchase Price on the Closing Date, will result in the Seller retaining the Deposit as liquidated damages and the termination of the Successful Bidder, or its assigns, right to acquire the Property under these Terms and Conditions of Sale**. The Successful Bidder, or its assigns, shall be obligated to close title to the Properties and there is no contingency of any kind or nature that will permit the Successful Bidder, or its assigns, to cancel or avoid his, her, or its, obligation under these Terms and Conditions of Sale other than the Debtor's inability to deliver insurable title to the Property. Further, the Successful Bidder, or its assigns, must demonstrate, to the satisfaction of the Debtor or the Bankruptcy Court, as the case may be, evidence of his, her, or its, ability to conclude the transaction upon these Terms and Conditions of Sale, without delay. The Debtor reserves the right to reject any bidder/offeror, who the Debtor, in its sole discretion, believes is not financially capable of consummating the purchase of the Property. **Expenses incurred by the Successful Bidder or Bidders, or its assigns, or any competing bidder concerning the performance of any due diligence, such as obtaining title reports or environmental inspections, shall be the sole financial responsibility of such bidder and under no**

**circumstances shall the Debtor, or the Debtor's estate, or the Debtor's professionals, be liable or responsible for, or pay, such expenses.**

(k)     In the event that the Successful Bidder for the Property, or its assigns, fails to tender the balance of the Purchase Price on the Closing Date, or otherwise perform his, her, or its, obligations under these Terms and Conditions of Sale, the Debtor, at its sole option, shall immediately negotiate the Qualifying Deposit of the Second Bidder and shall be further authorized to sell the Property to the Second Bidder, or its assigns, without any further notice or approval of the Bankruptcy Court, without giving credit to the Second Bidder for the Deposit forfeited by the Successful Bidder, and upon such other terms and conditions as the Debtor deems appropriate.  Should the Second Bidder, or its assigns, fail to close on the Property within nine (9) business days of receiving from the Debtor, notice, **TIME BEING OF THE ESSENCE**, (at the address set forth on the bidder registration form) that said Second Bidder is now deemed the Successful Bidder, then the **Sellers shall be: (a) authorized to keep the Qualifying Deposit of the Second Bidder as liquidated damages**; and (b) authorized but not obligated to sell the Property to the next highest bidder, without any further notice or approval of the Court. If there are no bidders at the sale, or if a sale of the Property is not Closed within twenty-one (21) days after entry the Bankruptcy Court's Order approving a Sale to the Successful Bidder or the Second Bidder, the Debtor shall promptly deed the Property to CAF in satisfaction of the Agreed CAF Secured Claim. but in any event no later than five (5) business days after the later of (i) the conclusion of the auction (if there are no bidders other than CAF) or (ii) entry of an Order by the Bankruptcy Court denying approval of the sale of the Property. Notwithstanding any other provision of this Plan, if a Sale of the Property has not Closed by May 18, 2023, then the Debtor shall deed the Property to Lender no later than May    , 2023 or proceed with the State Court foreclosure sale of the Property on r after May  ,2023.

(l)     The Properties are being sold and delivered free and clear of all liens, claims and encumbrances of whatever kind or nature, to the extent the sale of the premises includes items of personal property, the transfer shall be "as is" and without warranty, express, statutory, or implied, as to discretion, title, condition, location, quality, fitness or any particular use or purpose or otherwise.

(m)     The Properties are being sold and delivered **"AS IS", "WHERE IS", "WITH ALL FAULTS"**, without any representations, covenants, guarantees or warranties of any kind or nature whatsoever, and free and

clear of all monetary liens, claims and encumbrances of whatever kind or nature, such liens, claims, interests and encumbrances, if any, to attach to the proceeds of Sale in such order and priority as they existed immediately prior to the Sale Date, and subject to, among other things: (a) any state of facts that an accurate survey may show; (b) any covenants, restrictions and easements of record; (c) any state of facts a physical inspection may show; (d) any building or zoning ordinances or other applicable municipal regulations and violations thereof; (e) environmental conditions; and (f) subject to all deed restrictions. By delivering their respective Qualifying Deposits, all bidders acknowledge that they have had the opportunity to review and inspect the Properties, the state of title thereof and laws, rules and regulations applicable thereto, and the form of the Debtor's Deeds that the Debtor will execute to convey the Property, and will rely solely thereon and on their own independent investigations and inspections of the Properties in making their bids. All Bidders acknowledge that they have conducted their own due diligence in connection with the Properties, and are not relying on any information provided by the Debtor, MYC or the Debtor's retained professionals.

(n)     The Properties shall be delivered vacant of any and all existing tenancies and occupancies.

(o)     The Debtor, MYC and Debtor's retained professionals have not made and do not make any representations or warrantees with respect to the permissible uses of the Properties, the physical condition, rents, leases, expenses, operations, value of the land or buildings thereon, number of building lots, use or any other matter or thing affecting or related to the Properties or the Sale, that might be pertinent to the purchase of the Properties, including, without limitation: (a) the current or future real estate tax liability, assessment or valuation of the Properties; (b) the potential qualification of the Properties for any and all benefits conferred by or available under federal, state or municipal laws, whether for subsidies, special real estate tax treatment, insurance, mortgages, or any other benefits, whether similar or dissimilar to those enumerated; (c) the compliance or non-compliance of the Properties, in its current or any future state, with applicable current or future zoning ordinances or other land use law or regulation, or the ability of the owner of the Properties to obtain a change in the zoning or use, or a variance in respect to the Properties; (d) the availability of any financing for the purchase, alteration, rehabilitation or operation of the Properties from any source, including, but not limited to, any state, city, local government or federal government or institutional lender; (e) the current or future use of the Properties; (f) the

present and future condition and operating state of any and all machinery or equipment in the Property and the present or future structural and physical condition of any building thereon or its suitability for rehabilitation or renovation; (g) the ownership or state of title of any personal property in the Property; (h) the presence or absence of any laws, ordinances, rules or regulations issued by any governmental authority, agency or board and any violations thereof; (i) any present or future issues concerning subdivision or non-subdivision of the Properties; or (j) the compliance or non-compliance of the Properties with environmental laws and the presence or absence of underground fuel storage tanks, any asbestos or other hazardous materials anywhere in the Property.  Each bidder hereby expressly agrees and acknowledges that no such representations have been made, except for the representation as to open permits. The Debtor and her retained professionals shall not be liable or bound in any manner by expressed or implied warranties, guaranties, promises, statements, representations or information pertaining to the Properties, made or furnished by the Debtor or any real estate broker, agent, employee, servant or other person or professional representing or purporting to represent the Debtor unless such warranties, guaranties, promises, statements, representations or information are expressly and specifically set forth in a signed writing by the Debtor.

(p)    The Debtor shall convey the Properties by delivery of  Debtor's quitclaim deeds.  The quality of title shall be that which a reputable title insurance company doing business in the State of New Jersey is willing to approve and insure.  At the Debtor's option, the Debtor may arrange for the issuance of a title insurance policy by a reputable title company, if the Successful Bidders is unable to do so, at the sole cost and expense of the Successful Bidder or Bidders.  The Debtor shall provide all documents required by the Successful Bidder's title company for them to 'omit' any exceptions from the Successful Bidder's title policy.

(q)    Nothing contained in these Terms and Conditions of Sale shall supersede or alter any provisions of Title 11, United States Code ("<u>Bankruptcy Code</u>") and/or of the Federal Rules of Bankruptcy Procedure ("<u>Bankruptcy Rules</u>") or otherwise interfere with the jurisdiction of the Bankruptcy Court.  To the extent of any conflict between the Bankruptcy Code and/or the Bankruptcy Rules and these Terms and Conditions of Sale, the Bankruptcy Code and/or the Bankruptcy Rules shall govern.  All of the terms and conditions set forth in these Terms and Conditions of Sale are subject to modification as may be directed by the Debtor, or by the Bankruptcy Court.  The Debtor

reserves the right to modify these Terms and Conditions of Sale at the Sale, or thereafter, to maintain consistency with the provisions of the Bankruptcy Code, Bankruptcy Rules, and/or orders of the Bankruptcy Court.

(r)     Neither the Debtor, MYC, the Debtor's retained professionals, nor Debtor's estate, are liable or responsible for the payment of fees of any broker or agent that has not been retained by an order of the Bankruptcy Court. CAF has no obligation for any costs of marketing the Property, including, without limitation, any broker fee to MYC or any other broker, and no such marketing costs or any other amount shall be credited against the Agreed CAF Secured Claim. CAF shall have no obligations to MYC.

(s)     These Terms and Conditions of Sale will be read into the record, or specifically incorporated by reference at the Sale of the Properties. By making a bid for the Properties, all bidders shall be deemed to have acknowledged having read, and understand, these Terms and Conditions of Sale and have agreed to be bound by them.

(t)     The Debtor shall be a party to the Sale of the Properties exclusively in its capacity as Debtor in bankruptcy and not as an individual. If the Debtor is unable to deliver title to the Properties in accordance with these Terms and Conditions of Sale for any reason whatsoever, its only obligation will be to refund the Deposit to the Successful Bidder (or Second Bidder) and upon such refund the Successful Bidder (or Second Bidder) will have no recourse or claim against the Debtor, the Debtor's retained professionals, or Debtor's estate.

(u)     The Debtor reserves its right, subject to obtaining the written consent of CAF, to withdraw the Properties from the Sale, either prior or subsequent to the auction, for any reason whatsoever, as she deems necessary or appropriate.

(v)     The Sale of the Properties are subject to confirmation by the Bankruptcy Court. The Debtor or the Debtor's proposed attorney shall notify the Successful Bidder whether the Sale is confirmed. Any disputes concerning the Sale shall be determined by the Bankruptcy Court. By participating in the Sale, all bidders consent to the jurisdiction of the Bankruptcy Court to determine such disputes arising in the Debtor's pending case.

(w) **By making a bid for the Properties, all bidders shall be deemed to have acknowledged having read, and understand, these Terms and Conditions of Sale and have agreed to be bound by them.**

**ORDERED** that the Court shall conduct a hearing in connection with the auction sale on _____, **2023 at \_\_\_\_.m.** (the "Hearing Date") to determine whether to approve the sale of the Properties to the successful bidder; and it is further

**ORDERED** that CAF Borrower GS LLC ("CAF"), pursuant to Bankruptcy Code Section 363(k), shall be entitled to credit bid up to the amount of the Agreed CAF Secured Claim as provided under the Plan for the Property and shall bid cash for the Vacant Lot; and it is further

**ORDERED** that at the conclusion of said Auction Sale, the Debtor shall recommend to the Court the proposed successful bidder or bidders and ask that the Court approve the sale to such successful bidder; and it is further

**ORDERED** that if the Court does not approve a sale to the proposed successful third-party bidder then the Debtor shall deed the Property to CAF in satisfaction of CAF's Agreed CAF Secured Claim within five (5) business days after entry of the Court's order denying approval of the sale; and it is further

**ORDERED** that the Liens are to attach to proceeds in order of priority to the extent that the Liens existed prior to the filing of the petition; and it is further

**ORDERED** that the proceeds of sale are to be held by the Debtor in a segregated account; and it is further

**ORDERED** that no funds are to be disbursed pursuant to the terms of the Plan; and it is further

**ORDERED** that the Debtor shall serve a copy of this Order upon all creditors, any party having filed a notice of appearance and demand for service in this case, parties in interest and any party that has expressed an interest in the premises, by not later than three (3) days after the date of entry of this Order, and shall file an affidavit of service attesting to service of the Order; and it is further

**ORDERED** that any objection filed by parties with legal representation shall be filed (a) through the Bankruptcy Court's electronic filing system, and (ii) in portable document format (PDF) using Adobe Exchange software for conversion; or (b) if a party is unable to file electronically, such party shall submit the objection in PDF format on a diskette in an envelope, with the case name, case number, type and title of document, document number of the document to which the objection refers, and the file name on the outside of the envelope; or (c) if a party is unable to file electronically or use PDF format, such party shall submit the objection on a thumb drive or other USB drive in either Word, WordPerfect, or DOS text (ASCII) format; or (d) if a party is unable to file in any of the above three manners, such party shall submit an affidavit attesting to such inability and may then file documents conventionally on unstapled, unbound, and single sided paper. An objection filed by a party with no legal representation shall comply with section (b), (c), or (d) as set forth in this paragraph; and it is further

**ORDERED** that the Debtor shall serve and file an affidavit of service, attesting to service of this Order, with the Court, no later than five (5) days of entry of this Order