| | |
|---|---|
| **Law Offices of Avrum J. Rosen, PLLC** | **Hearing Date: July 26, 2023** |
| 38 New Street | **Hearing Time: 10:00 am** |
| Huntington, New York 11743 | **Objection Deadline: July 19, 2023** |
| (631) 423-8527 | |
| Avrum J. Rosen, Esq. | |
| Nico G. Pizzo, Esq. | |

*Counsel for Debtor and Debtor-in-Possession*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
In re:                                                                          Chapter 11

FRALEG GROUP, INC.,                                            Case No.: 22-41410-jmm

                              Debtor.
-------------------------------------------------------------X

**FIRST AND FINAL FEE APPLICATION OF THE LAW OFFICES OF AVRUM J. ROSEN, PLLC, COUNSEL TO DEBTOR, FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES PURSUANT TO SECTIONS 327, 328 AND 330 OF THE BANKRUPTCY CODE AND RULES 2002 AND 2016 OF <u>THE FEDERAL RULES OF BANKRUPTCY PROCEDURE</u>**

**TO:    THE HONORABLE JIL MAZER-MARINO,
          UNITED STATES BANKRUPTCY JUDGE**

Law Offices of Avrum J. Rosen, PLLC (the "<u>Firm</u>"), retained counsel for Fraleg Group, Inc., reorganized debtor (the "<u>Debtor</u>"), in this Chapter 11 case, respectfully submit this as and for the Firm's application (the "<u>Application</u>") seeking entry of an Order under Sections 327, 328 and 330 of Title 11, United States Code (the "<u>Bankruptcy Code</u>") and Rules 2002 and 2016 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") for a first and final allowance of compensation for legal services rendered by Firm to Debtor during the period between June 17, 2022 through June 28, 2023, and respectfully represents as follows:

**JURISDICTION**

1.    This Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

1

2. Venue is proper before this court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief sought herein are set forth in Bankruptcy Code Sections 327, 328 and 330.

## BACKGROUND

4. The Debtor filed a voluntary petition for relief from its creditors pursuant to Chapter 11 of the Bankruptcy Code on June 17, 2022 (the "Petition Date").

5. The Debtor continues to operate its business and manage its property as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner or committee has been appointed in this case.

6. Prior to the Petition Date, the Debtor retained the Firm as counsel to the Debtor. An application for authority to retain the Firm as counsel to the Debtor was submitted on or about July 19, 2022, which was granted by this Court, by Order dated August 18, 2022, with the consent of the Office of the United States Trustee [Docket No. 39].

## RELIEF REQUESTED

7. As set forth in **Exhibit "A"** annexed hereto, the amount of professional fees sought in this Application is $123,852.50 and reimbursement of out-of-pocket expenses incurred on behalf of Firm to the Debtor during this same period is $ 2,910.18. The aggregate sought is $126,762.68. The Debtor has already remitted payment of $16,738.00, which is what is left in this Firm's IOLA account, inclusive of the full amount of the pre-petition retainer and the Court imposed filing fee, of which there was $10,738 remaining as of the filing date, which brings the total remaining balance due and owing $116,024.68 after application of the remaining retainer. Exhibit "A" hereto includes all post-petition fees and expenses incurred by counsel to Debtor.

## **DISCUSSION**

8. In support of the application for the Order authorizing retention of the Firm as counsel to the Debtor, counsel submitted an affidavit of no adverse interest. The persons at the Firm that assisted the Debtor and provided services to the Debtor in this Chapter 11 case are as follows:

- Avrum J. Rosen (abbreviated as "AJR" in the statement) is a 1984 graduate of Hofstra Law School. Mr. Rosen was a member of the Hofstra Law Review and an Assistant Editor of said Review. Mr. Rosen was admitted to practice before the Courts of this State in 1984 and admitted to practice before this Court in 1985. In addition, Mr. Rosen is admitted to practice before the United States Court of Appeals for the Second Circuit;

- Nico G. Pizzo (abbreviated as "NP" in the statement) is a 2018 graduate of Touro Law Center. Mr. Pizzo was a member of the Touro Law Moot Court Honors Board and served as Associate Editor-in-Chief. He was admitted to practice to both the Courts of this State as well as this Court in 2018. Mr. Pizzo has been associated with this firm since September, 2018. Mr. Pizzo has primarily practiced in the area of bankruptcy since graduating from law school; and

- Alex E. Tsionis (abbreviated as "AT" in the statement) is a 2016 graduate, cum laude, of Touro Law Center. He was admitted to practice to both the Courts of this State as well as this Court in 2017. In addition, Mr. Tsionis is admitted to practice before the Northern District of New York, Western District of New York, Southern District of New York, the U.S. Court of Appeals for the Second Circuit, as well as the State of New Jersey and U.S. District Court for the District of New Jersey. Mr. Tsionis has been associated with this firm since May, 2019. Since graduating from law school, Mr. Tsionis has concentrated his practice in the area of bankruptcy law.

9. This Firm includes the following items in the calculation of its overhead and operating expenses which are included in the Firm's hourly rates:

    a. secretarial time;

    b. receipt and transmission of facsimiles;

      c.      telephone calls (excluding frequent long distance telephone calls);

      d.      postage for correspondence and litigation documents, other than those which require significant or exceptional mailings; and

      e.      photocopies for correspondence and litigation documents, other than those which require significant or exceptional photocopying;

10. Those items which are not included in the overhead of the Firm are as follows:

      a.      parking, train and subway fare for Court appearances;

      b.      extraordinary expenses for copying and postage (i.e. the printing of plans, disclosure statements and other lengthy motions which must be served on the entire creditor body); and

      c.      overnight mail expenses (i.e. Federal Express, UPS).

11. The professional services rendered by the Firm on behalf of the Debtor have been necessary and appropriate in furtherance of the interests of the Debtor, and have been of material benefit to the Debtor and its estate.

12. Section 330(a)(1) of the Bankruptcy Code provides that a bankruptcy court may award: "(A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, or attorney and by any paraprofessional person employed by any such person; and (B) reimbursement of actual, necessary expenses." *11 U.S.C. § 330(a)(1).*

13. Section 330(a)(3) of the Bankruptcy Code directs this Court to consider the nature, extent and value of the services by taking into account relevant factors, which include: (i) time spent on such services; (ii) rates charged for such services; (iii) whether the services were necessary in the administration of, or beneficial at the time at which services were rendered toward the completion or, a case under the Code; (iv) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the

problem, issue or task addressed; (v) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and (vi) whether the compensation is reasonable based upon the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.  *11 U.S.C. § 330(a)(3)*.

14. The Second Circuit set the standard whereby an award of fees to professional is a prospective one, not based on hindsight, but rather based upon what services a reasonable lawyer would render under the circumstances.  *See, e.g., In re Ames Dep't Stores, Inc.*, 76 F.3d 66, 77 (2d Cir. 1996).

15. As this Court is aware, section 330 of the Bankruptcy Code was enacted to increase the attorney fees awarded to attorneys in bankruptcy cases so that quality bankruptcy counsel would be attracted to practice in the bankruptcy field.  The legislative statement to section 330 of the Bankruptcy Code states as follows:

> Section 330(a) contains the standard of compensation adopted in H.R. 8200 as passed by the House rather than the contrary standard contained in the Senate amendment.  Attorneys' fees in bankruptcy cases can be quite large and should be closely examined by the Court.  However, bankruptcy legal services are entitled to command the same competency of counsel as other cases.  In that light, the policy of this Section is to compensate attorneys and other professionals serving in a case under Title 11 at the same rate as the attorney or other professional would be compensated for performing comparable services other than in a case under a Title 11.  Contrary language in the Senate report accompanying S. 2266 is rejected and *Massachusetts Mutual Life Insurance Company v. Brock* (citations omitted) is overruled.  Notions of economy of the estate and fixing fees are outdated and have no place in the Bankruptcy Code.

*11 U.S.C. § 330, Legislative Statement, 94 H.R. 31; 95 H.R. 8200.*

16. The bankruptcy rates charged by Firm are the same rates charged by this firm for non-bankruptcy matters. The fees charged in this case, to wit: $620.00 per hour for partners' time and $325.00 per hour for associates' time, are well within the range of fees charged both in and

out of the bankruptcy court in the New York metropolitan area. The Firm has previously been awarded fees at similar rates in cases in which the Firm represented parties before the bankruptcy Courts in the New York metropolitan area, to wit the cases of: Marcelle Bichotte, Case No.: 11-42652-ess; Raymond A. Catucci, Case No.: 11-42724-nhl; Louise Chin, Case No.: 11-46968-nhl; Noel A. Dean, Case No.: 11-42662-ess; Carolyn DeLeon, Case No.: 11-46025-nhl; Mursha A. Desouza, Case No.: 10-51095-ess; Fitzroy Fraser, Case No.: 11-43053-cec; Lois Grimaldi, Case No.: 11-46744-jf; Nadjhela Jean-Baptiste, Case No.: 11-41858-ess; Richard and Donna Klein, Case No.: 11-49523-cec; Michael Logan, Case No.: 09-47900-ess; Sohan Mahariya, Case No.: 10-40450-jf; Nadiera Mohammed, Case No.: 09-44776-nhl; Digna Olavarria, Case No.: 10-42764-ess; Peter Pappas, Case No.: 08-40096-nhl; David Peteroy, Case No.: 11-48763-cec; Oscar J. Quintero, Case No.: 11-44943-cec; Latchmepersad and Ramona R. Ramdath, Case No.: 11-43925-jbr; Jannifer Ricketts, Case No.: 09-44802-ess; Louis Stogianos, Case No.: 11-40832-jf; Armen Ratevossian and Narine Vardanyan, Case No.: 12-47014-nhl; Belinda E. Velasquez, Case No.: 10-44702-jf; Alfredo Vitale, Case No.: 09-44960-ess; Cecelia A. Wallace, Case No.: 05-25447-jf; Jeshua Weinstock, Case No.: 13-45601-ess; Burnadett D. Weir, Case No.: 11-41870-nhl; In re Gator Enterprises, Inc., 13-45564-nhl; and In re 907 Nostrand Ave., LLC, 13-47534-cec.

**SUMMARY OF PROFESSIONAL SERVICES**
**RENDERED BY THE FIRM DURING THE COMPENSATION PERIOD**

17. A recitation of the facts of this case are set forth to advise the Court of what transpired in this case since the Petition Date, and the services performed thereafter.

18. During the Chapter 11 Bankruptcy case, the Firm prepared and filed motions and responses necessary for the Debtor to successfully reorganize and continue its operations. This included, but not limited to, the motions: (i) to retain the Firm as counsel to the Debtor and MYC & Associates, Inc. ("<u>MYC</u>"), as real estate broker to the Debtor; (ii) opposition to the secured

creditors, CAF Borrowing GS LLC ("CAF"), motions for relief from the automatic stay and *in rem* relief; (iii) to establish the deadline for filing proofs of claims; and (iv) objection to the proofs of claim numbers 2 and 3 filed by New York City Department of Finance ("NYCDOF").

19. In addition to the motions necessary to reorganize the Debtor, the Firm commenced an adversary proceeding against CAF, and its counsel, alleging CAF, *inter alia*, misrepresented its proof of claim filed in the Debtor's initial Chapter 11 bankruptcy case, which was filed prior to the instant filing. The litigation led to the Debtor and CAF resolving the claim and filing a consensual plan.

20. The Firm appeared on behalf of the Debtor at multiple hearings at which hearings the Court considered the above motions and contested matters.

A. **Motions to Retain Professionals**

21. On July 19, 2022, the Firm prepared and filed the Debtor's application to retain the Firm, effective as of June 17, 2022, to perform services as general counsel to the Debtor, including but not limited to providing proper legal counsel to the Debtor and perform any other necessary duties in aid of the administration of the estate [Dkt. No. 19].

22. On August 18, 2022, this Court entered an Order authorizing the Debtor to retain the Firm as counsel to the Debtor effective as of June 17, 2022 [Dkt. No. 39].

23. On December 22, 2022, the Firm also prepared and filed the Debtor's application to retain MYC as real estate broker to the Debtor, effective as of December 1, 2022, to market and sell the Debtor's Property pursuant to the Plan (defined below) [Dkt. No. 71].

24. On February 17, 2023, this Court entered an Order authorizing the Debtor to retain MYC as the Debtor's real estate broker, effective as of December 1, 2022 [Dkt. No. 78].

B.  **Motion to Establish the Bar Date**

25. The Firm filed the Debtor's application for entry of an Order, under Rule 3003(c)(3) of the Bankruptcy Rules, establishing procedures and fixing a date as the deadline for filing proofs of claim and approving the form and manner of service on June 28, 2022 [Dkt. No. 8] (the "Bar Date Motion").

26. On July 5, 2022, this Court entered an Order establishing August 31, 2022, as the last date for creditors of the Debtor's estate to file proofs of claim against the Debtor, and December 14, 2022 as the last date for governmental units to file proofs of claim against the Debtor [Dkt. No. 9].

C.  **Resolving Claim Numbers 2 and 3 of the Debtor's Estate**

27. On July 8, 2022, NYCDOF filed two separate but identical proofs of claim, identified on the claims register as claims 2 and 3 for $45,644.86 each ($91,289.72 together). The amounts in connection with the claims were listed as "Business taxes".

28. The claims did not list what type of business taxes were owed or for which tax years. Neither of the NYCDOF claims attached supporting documents to the claims.

29. On December 15, 2022, the Firm filed an objection to both of NYCDOF's claims seeking to reduce both claims to zero dollars ($0.00) [Dkt. No. 67]. The Debtor alleged that claim numbers 2 and 3 should be reduced to zero dollars ($0.00) because, *inter alia*, the Debtor has not earned business income because it has not completed the construction necessary to sell the units.

30. Thereafter, the Firm and the NYCDOF engaged in informal discussions to resolve the Claims. Pursuant to the discussions, the NYCDOF required additional time to review tax forms that the Debtor filed with its taxes, to determine whether the NYCDOF Claims should be amended. As of this date, the Debtor has still not provided the required information to be able to resolve this Objection, despite numerous requests from the Firm.

**D.      Resolving the Contested Matters with CAF**

        **i.**    *CAF's Motion for Relief from the Automatic Stay and In Rem Relief*

        31.    On July 14, 2022, CAF filed a motion for relief from the automatic stay and *In Rem* relief (the "*In Rem* Motion") in connection with the real property known as 112 N. Walnut Street, East Orange, NJ 07017 (the "Property").

        32.    The Firm prepared and filed its objection to the CAF's *In Rem* Motion and sought its denial for the following reasons: (i) the CAF did not make a prima facie case because CAF failed to plead a single *Sonnax* factor is in its favor of granting an automatic stay; and (ii) CAF failed to establish cause for the relief sought because (a) equity exists in the Property, (b) the Property is necessary for the reorganization of the bankruptcy estate, (c) the Debtor's second filing was not a bad faith filing, and (d) the Debtor's second filing was not part of a scheme to delay, hinder, or defraud creditors.

        **ii.**    *CAF's Motion to Void Dismissal of the Debtor's Prior Chapter 11 Case*

        33.    Simultaneous to the *In Rem* Motion, CAF filed a motion to void an Order of dismissal pursuant to Bankruptcy Rule 9024, in the Debtor's prior closed Chapter 11 Bankruptcy case. CAF sought this relief at the same time as the *In Rem* Motion because, a relief from the automatic stay was granted in the prior case before it was closed.

        34.    The Firm prepared and filed an objection to CAF's motion to void dismissal of the prior case, on behalf of the Debtor.

        **iii.**    *The Debtor's commencement of the Adversary Proceeding*

        35.    In response to CAF's In Rem Motion and the motion to void dismissal, the Firm raised key issues to CAF's argument, which was the calculation of CAF's claim was not correct pursuant to the relevant New Jersey case law.

36. The Firm prepared and complaint alleging, inter alia, CAF intentionally filed a false proof of claim in the Debtor's initial Chapter 11 case, which ultimately caused the Debtor to file this instant case thereafter, and commenced the adversary proceeding styled *Fraleg Group Inc. against CAF Borrower GS, LLC et. al.*

37. The Firm and CAF agreed to adjourn all matters to the same hearing date since the *In Rem* Motion, the motion to void dismissal and the adversary proceeding were related contested matters. The Court heard all matters at one hearing on August 17, 2022.

38. Thereafter, the Firm and CAF entered into extensive negotiations over the contested matters in an effort to resolve the core issue of the contested matters, which was the value of CAF's secured claim.

39. As a result of successful negotiations, the Firm and CAF settled the amount and type of the claim that CAF would assert and that the Debtor would pay. Ultimately, the settlement was put forth in a consensual Plan, in accordance with the below.

40. By stipulation dated November 28, 2022, the Firm and CAF agreed to dismiss the adversary proceeding with prejudice [Adv. Pro. Dkt. No. 8].

**E.    Debtor's Plan of Reorganization**

41. As indicated herein, the Debtor commenced this case on June 17, 2022, thus, pursuant to statute, the date by which Debtor must have filed its Chapter 11 plan of reorganization was September 15, 2022.

42. On September 15, 2022, the Firm prepared and timely filed the Debtor's Chapter 11 plan of reorganization with exhibits [Dkt. No. 42] (as would be amended, supplemented, or modified, the "Plan").

43. Simultaneously, the Firm prepared and filed the Debtor's disclosure statement [Dkt. No. 43] (as would be amended, the "Disclosure Statement").

44. The Firm also prepared and filed a motion seeking to (i) schedule a hearing to consider approving the adequacy of the Debtor's Disclosure Statement with respect to the Debtor's Plan; and (ii) scheduling a hearing to consider: (a) confirmation of the Plan; (b) establishing voting and objection deadlines to the Plan; and (c) approving the Debtors proposed balloting, solicitation, noticing and voting procedures [Dkt. No. 44], and its amendments, (the "Plan Scheduling Order").

45. The Firm properly served the Disclosure Statement, the Plan with its exhibits, the ballots, and the Plan Scheduling Order. On October 18, 2022, pursuant to the Plan Scheduling Order, the Firm prepared and filed an amended Plan and amended Disclosure Statement [Dkt. Nos. 52 & 53].

46. On November 9, 2022, pursuant to the Plan Scheduling Order, the Firm prepared and filed a Plan supplement [Dkt. No 60].

47. On or before November 10, 2022, the Firm tabulated the votes for and against the Plan through the ballots that were submitted by the voting classes pursuant to the Plan and the Plan Scheduling Order. On November 10, 2022, the Firm prepared and filed the certification of ballots, confirming all votes submitted to the Firm voted to accept the Plan [Dkt. No. 61].

48. This Court held a hearing to confirm the Debtor's Plan on November 16, 2022. On December 1, 2022, this Court entered an Order confirming the Debtor's Plan and final approval of the Disclosure Statement [Dkt. No. 65].

49. On or about December 19, 2022, the Firm prepared and filed the Debtor's notice of effective date of the confirmed Plan [Dkt. No. 69].

50. Pursuant to the Plan, the Debtor intended to refinance CAF's secured claim by March 31, 2023. In the event CAF's secured claim was not satisfied by March 31, 2023, CAF was entitled to receive a deed to the Debtor's Property on or before April 5, 2023 in accordance with Section 4.02(k) of the Debtor's Plan.

51. CAF's secured claim was not satisfied by March 31, 2023. However, because the Debtor was still attempting to satisfy CAF's secured claim and that CAF preferred to obtain title to the Property by a properly conducted foreclosure sale, the Firm prepared and filed a stipulation modifying the Plan to, *inter alia*, extend the time for the Debtor to satisfy CAF's secured claim to April 18, 2023 [Dkt. No. 87] (the "<u>Plan Stipulation</u>")

52. The Debtor again failed to satisfy CAF's secured claim pursuant to the Plan as modified by the Plan Stipulation. As a result, CAF took possession of the Property.

**F.     The Firm's Motion to be Relieved as Counsel to the Debtor**

53. On February 9, 2023, the Firm prepared and filed a post-confirmation status report to notify the Court and interested parties of certain events that took place since the confirmation of the Plan and the issues that prevented the Debtor from performing pursuant to the Plan.

54. The communication between the Debtor and the Firm began breaking down after the confirmation of the Plan dispute the Firm's continued negotiations with CAF to secure the Debtor the maximum time to permit it to refinance the Property and emerge from bankruptcy.

55. The Firm was then able to negotiate a resolution of the transfer of the Vacant Lot back to the Debtor's estate and had the improper mortgage released from that property.

56. Over the last several months the Firm has tried to propose a plan amendment that would have the principals of the Debtor infuse about $200,000.00 into the Debtor to confirm a 100 percent payment to all remaining Administrative and Unsecured Creditors. However, before doing so, given the preceding events in this case, the Firm required the funds to be placed into escrow before preparing and filing the motion to amend the plan. An amended Plan to sell the Vacant Lot was also discussed but not adopted by the Debtor.

57. As is set forth in the Motion to be relieved as counsel filed contemporaneously with this application, the principals were to refinance another property that they own to fund this Plan.

They were advised that any motion to amend the Plan needed to be filed by June 29, 2023 to be heard on the date scheduled for the status conference in this case. When an apparent issue arose in closing that refinance, the Debtor's principals ceased communicating with the Firm leaving into option but to seek to be relieved as counsel as it has no client to give it instructions or direction.

### G.      **Administrative Duties provided by the Firm**

58.     The Firm filed monthly operating reports for the filing periods of June through the Plan effective date, December 16, 2022.

59.     The Firm prepared and filed the instant fee application for compensation for the Firm, as Debtor's counsel.

60.     The Firm reviewed all motions and other documents filed in connection with Debtor's case.

61.     The Firm also performed research on various issues that arose during this bankruptcy.

[*Remainder of Page Left Blank*]

62. Firm appeared at all of the hearings before the Court in connection with the administration of Debtor's case, along with participating at Debtor's Bankruptcy Code section 341(a) meeting of creditors.

WHEREFORE, it is respectfully requested that this final fee application be approved in its entirety in the sum of $126,762.68, and reimbursement of out-of-pocket expenses incurred on behalf of Firm to the Debtor during this same period is $2,910.19. The aggregate sought is $126,762.68 less $10,738 from the pre-petition retainer, which authorization is requested to apply to the balance due leaving a balance of $116,024.68 which the Debtor is directed to pay, together with such other and further relief seems just and proper to this Court.

Dated: Huntington, New York  
      June 28, 2023

Respectfully submitted,

**Law Offices of Avrum J. Rosen, PLLC**  
*Attorneys for the Debtor*

By: _s/Avrum J. Rosen_____  
Avrum J. Rosen, Esq.  
Nico G. Pizzo, Esq.  
38 New Street  
Huntington, New York 11743  
(631) 423-8527  
arosen@ajrlawny.com  
npizzo@ajrlawny.com