# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X

In re:

FRALEG GROUP, INC.,

      Debtor.

Chapter 7

Case No.: 22-41410 (JMM)

---------------------------------------------------------X

**AFFIDAVIT OF MARC P. YAVERBAUM IN SUPPORT FOR THE RETENTION OF MYC & ASSOCIATES, INC. AS A REAL ESTATE BROKER TO RICHARD J. MCCORD, AS THE CHAPTER 7 TRUSTEE, EFFECTIVE DECEMBER 20, 2023**

STATE OF NEW YORK )
         ) ss.:
COUNTY OF RICHMOND )

  **MARC P. YAVERBAUM**, a licensed real estate broker, being duly sworn, deposes and says:

  1. I am a principal shareholder and the Vice President of the firm MYC & Associates, Inc. ("**MYC**"), maintaining its corporate office at 1110 South Avenue, Suite 22, Staten Island, NY 10314.

  2. This affidavit is being submitted in accordance with the application of Richard J. McCord ("**Trustee**") as the Chapter 7 trustee for the bankruptcy estate of Fraleg Group, Inc. ("**Debtor**"), to retain MYC as his real estate broker.

  3. On June 17, 2022, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of New York, commencing Case No. 22-41410 (JMM).

1

4.      On February 16, 2023, an Order was entered approving the Debtor's application to retain MYC as its Real Estate Broker, effective December 1, 2022 [ECF Docket No. 78]. MYC's work in the Chapter 11 matter was limited as the Debtor's desire to restructure its debt on another real property, by way of refinancing.

5.      On July 31, 2023, this Court entered a final Order [ ECF Docket No. 99], awarding MYC $16,217.50 in compensation based upon an hourly rate for services rendered during the Chapter 11 matter. In that same Order, MYC was also awarded reimbursement of expenses in the amount of $1,577.12.

6.      On December 6, 2023, a hearing was held before the Hon. Jil Mazer-Marino where she considered a motion by the U.S. Trustee to dismiss or convert the Debtor's Chapter 11 case. On December 18, 2023, an Order was entered converting the Debtor's case to one under Chapter 7. The Trustee was appointed on December 19, 2023.

7.      MYC is a full-service, asset management firm whose principals have been engaged in this field for many years and have dealt with the types of real property involved herein.

8.      MYC is duly licensed to transact business as a real estate broker, and I am permitted to represent the firm as such.

9.      To the best of my knowledge and belief, MYC neither holds nor represents any interest adverse to the estate herein, and is not related to the Debtor, the attorney for the Debtor, the creditors of this estate, any party in interest or their respective attorneys and accountants, the United States trustee, or any person employed in the Office of the United States Trustee, except that in the past, the Trustee has retained the services of MYC on unrelated matters. The undersigned is a "disinterested person" as that term is defined in Section 101(14) and 327(a) of the Bankruptcy Code.

10. MYC proposes to broker the Debtor's real property commonly known as and located at 116 N. Walnut Street, East Orange, New Jersey 07017, designated in Essex County as legal block 360, legal lot 14 (the "**Real Property**").

11. The undersigned hereby requests that the Court allow MYC to be retained pursuant to the terms in the attached Brokerage Agreement.

12. No agreement or understanding exists between MYC and any other person for a division of compensation to be received for services rendered in, or in connection with this Chapter 7 case, nor shall MYC share or agree to share the compensation paid or allowed from the Debtor's estate for such services with any other person unless otherwise authorized by this Court.

13. No agreement or understanding prohibited by Section 155 of Title 18 of the United States Code, or Section 504 of Title 11 of the United States Code has been or will be made by MYC.

14. MYC understands and agrees that the payment of commissions, fees, and reimbursement of expenses in this matter will be paid upon the submission of a proper application made to this Court.

15. MYC desires to be retained as of December 20, 2023, as this is the date MYC began work on this matter in ordering a title search, survey, and scheduling professional photos for marketing purposes.

*(The remainder of this page has intentionally been left blank.)*

WHEREFORE, your deponent respectfully requests a proper Order for employment for MYC & Associates, Inc.

<u>/s/ Marc P. Yaverbaum</u><br>
Marc P. Yaverbaum

Sworn to me before this
28th day of December 2023

<u>/s/ Victor M. Moneypenny</u>
Victor M. Moneypenny
Notary Public, State of New York
No. 01MO0004655
Qualified in Richmond County
Commission Expires 03/31/2027

# EXHIBIT A

# EXCLUSIVE RIGHT-TO-SELL
# MARKETING AND SALES AGREEMENT

This agreement ("**Agreement**") made and entered into on this 20th day of December 2023 ("**Effective Date**"), by and between MYC & Associates, Inc., hereinafter ("**MYC**"), maintaining its corporate address at 1110 South Avenue, Suite 22, Staten Island, NY 10314; and Richard J. McCord ("**Trustee**") as the Chapter 7 bankruptcy trustee for the estate of Fraleg Group. Inc. ("**Debtor**"), contains the terms and conditions which will govern the marketing and sale of the Real Property, as defined below as of the Effective Date.

The Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of New York ("**Bankruptcy Court**"), commencing Case No. 22-41410 (JMM). On December 6, 2023, a hearing was held before the Hon. Jil Mazer-Marino where she considered converting the Debtor's bankruptcy matter to a Chapter 7 matter. On December 18, 2023, an Order was entered converting the Debtor's case to one under Chapter 7. The Trustee was appointed on December 19, 2023.

The Trustee seeks for MYC to market and sell certain real property, including any improvements and fixtures thereon, commonly known as, and located at 116 N. Walnut Street, East Orange, New Jersey 07017, designated in Essex County as legal block 360, legal lot 14 (the "**Real Property**").

The Trustee and MYC hereby agree that:

1. EXCLUSIVITY. The Trustee wishes to sell the Real Property and, accordingly, grants MYC the sole and exclusive right-to-sell the Real Property as of the Effective Date. MYC shall be permitted to co-broker the Real Property as they deem it appropriate and necessary to maximize the sale price of the Real Property. In no event, regardless of the number of the co-brokers, shall the commission exceed the rate or alter the terms described in paragraph 4 below.

2. TERM. The initial term of this Agreement is one hundred eighty (180) days from the Effective Date ("**Initial Term**"). This Agreement shall renew automatically for succeeding terms of sixty (60) days, under the same terms and conditions, unless either party provides written notice to the other party, no less than thirty (30) days in advance of any renewal date, stating that the party wishes to terminate this Agreement.

3. TERMS OF SALE. Any sale contract may be subject to the Trustee's and/or MYC's receipt of higher and/or better bids which shall be made at an auction ("**Auction**") to be conducted in accordance with the plan confirmation order entered by the Bankruptcy Court. Any sale of the Real Property shall be free and clear of all liens, claims, and encumbrances, and security interests with such liens, claims, and encumbrances, and security interests to attach to the proceeds of sale.

4. COMPENSATION. MYC will charge the Debtor's bankruptcy estate a broker's commission in the amount of six percent (6%) of the gross proceeds realized from the gross proceeds from the sale of the Real Property ("**Commission**"). The Commission earned by MYC

will only be paid upon the submission of a proper application, and approval thereof, made to the Bankruptcy Court. In the event the Trustee disposes for value the estate's interest in the Real Property, other than through a sale of the Real Property, MYC will not be entitled to the Commission but will be entitled to seek reasonable compensation for actual, necessary services rendered to the estate by MYC ("**Fees**") and reimbursement for actual, necessary expenses ("**Expenses**"). MYC's Fees and Expenses are only to be paid upon the submission of a proper application, and approval thereof, made to the Bankruptcy Court.

5.    REPRESENTATIONS, WARRANTIES & OBLIGATIONS. (a) MYC agrees to promote and broker the Real Property in its usual way as to obtain the highest possible selling price for the Real Property, (b) if necessary, MYC shall furnish at the time of the Auction, such assistants and other help as may be required to handle the Auction and shall in every way endeavor to sell the Real Property for as high, a price as may be obtained, and (c) shall conduct the Auction, if necessary, in accordance with the terms and conditions of sale and/or bidding procedures that are approved by the Bankruptcy Court.

6.    MISCELLANEOUS. This Agreement shall be binding upon the parties hereto and their respective successors, heirs, and assignees. Nothing in this Agreement, express or implied, is intended to confer or does confer on any person or entity, other than the parties hereto and their respective successors, heirs, and assigns any rights or remedies under or by reason of this Agreement. The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provision of this Agreement, which shall remain in full force and effect pursuant to the terms hereof. This Agreement incorporates the entire understanding of the parties regarding the subject matter hereof and supersedes all previous agreements or understandings regarding the same, whether written or oral. This Agreement may not be amended, and no portion hereof may be waived, except in a writing duly executed by the parties. The parties hereto acknowledge and agree that this Agreement has been negotiated at arm's length and among parties equally sophisticated and knowledgeable in the matters dealt with in this Agreement. Accordingly, any rule of law or legal decision that would require interpretation of any ambiguities in this Agreement against the party that has drafted it is not applicable and is waived. The provisions of this Agreement shall be interpreted in a reasonable manner to affect the intent of the parties as set forth in this Agreement.

7.    EXPENSES.  If MYC earns a Fee it will be permitted to seek reimbursement of out-of-pocket expenses incurred relating to the administration of the Debtor's estate, marketing, advertising and sale of the Real Property, with such amount of the out-of-pocket expenses to be paid upon the submission of a proper application, and approval thereof, made to the Bankruptcy Court.  If MYC earns a Commission in full, it shall not be permitted to seek reimbursement of expenses relating to the marketing and advertising of the Real Property; however, MYC may submit a proper application for reimbursement of all other expenses relating to the administration of the estate which shall only be paid upon the approval said application by the Bankruptcy Court.

8.    This Agreement shall be governed by the laws of the State of New York, without regard to such state's rules concerning conflicts of laws. Each party irrevocably waives any right to trial by jury in any action, proceeding, or counterclaim (whether based upon contract, tort, or otherwise) related to or arising out of this Agreement.

9. This Agreement is subject to Bankruptcy Court approval and the parties irrevocably consent to the Bankruptcy Court's jurisdiction with respect to any action to approve or enforce this Agreement and expressly waive any right to commence any action in any other forum or to contest the Bankruptcy Court's jurisdiction.

10. The Bankruptcy Court shall retain exclusive jurisdiction over the subject matter of this Agreement, including, but not limited to, the implementation and interpretation of the terms and conditions herein.

11. This Agreement may be executed in one or more counterparts, each of which is deemed an original, together constituting one and the same document. Facsimile signatures and signatures in portable document format (.pdf) are deemed originals for the purposes of this Agreement.

12. The persons executing this Agreement on the parties' behalf warrant and represent that they are authorized and empowered to execute and deliver this Agreement on behalf of such party.

AGREED TO AND ACCEPTED BY:

Richard J. McCord, Esq.
(solely in his capacity as the Chapter 7 Trustee of Fraleg Group, Inc.)

SIGN: _____

DATE: _____

MYC & Associates, Inc.

BY:     */s/ Marc P. Yaverbaum*
        Marc P. Yaverbaum

ITS:    Vice President

DATE:   December 28, 2023