

Albert K. Marmero, Esq.
Attorney ID #: 020462003
MARMERO LAW, LLC
44 Euclid Street
Woodbury, NJ 08096
Attorneys for the City of East Orange

| IN RE:<br><br>FRALEG GROUP, INC.,<br><br>Debtor. | UNITED STATES BANKRUPTCY COURT<br>EASTERN DISTRICT OF NEW YORK<br><br>CHAPTER 7<br><br>CASE NO.: 22-41410 |
| --- | --- |

**City of East Orange Reply to Creditor's Opposition to the Objection of the City of East Orange to the Chapter 7 Trustee's Amended Notice of Presentment of Order Pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure Authorizing Compromise and Settlement**

The City of East Orange (the "City") hereby submits its reply to The Offices of Avrum J. Rosen, PLLC's (the "Creditor") opposition to the objection to the Chapter 7 Trustee's Amended Notice of Presentment of Order Pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure Authorizing Compromise and Settlement. In support of this reply, the City respectfully submits:

1.  On February 25, 2014, the City adopted Resolution No. 68 designating Penchant as developer of Block 360, Lot 15, also known as 112 N. Walnut Street, a lot in which Penchant owned, as well as Block 360, Lot 14, also known as 116 N. Walnut Street, a City owned vacant lot which are certain parcels in the North Walnut Redevelopment Area. *See* Resolution No. 68 attached to the City's Objection, **Exhibit "A."**

2.  Resolution No. 68 additionally required that the City and Penchant negotiate and execute an escrow agreement, redevelopment agreement, and contract of sale. As well as stating that the "Development of the premises is subject to the regulations as stated in the North Walnut Redevelopment Plan ...."

1

3.   On July 7, 2014, the City passed Ordinance No. 17-2014 authorizing the sale of one City-owned lot, Block 360, Lot 14, also known as 116 N. Walnut Street, to Penchant. *See* Ordinance No. 17-2014 attached to the City's Objection, **Exhibit "B."**

4.   In relevant part, the Ordinance required that the development of this site must be in accordance with the provisions of the North Walnut Redevelopment Plan and that the redeveloper agrees that if it fails to close by a deadline agreed to by the Redeveloper and the City, that the Redeveloper shall forfeit their previously-mentioned payments.

5.   On December 31, 2014, a Contract of Sale was entered into between the City and Penchant. *See* December 31, 2014 Contract of Sale attached to the City's Objection, **Exhibit "C."**

6.   Under Section 12 entitled "Miscellaneous" it states that "In the event that either the Seller or Purchaser defaults in the terms of the Contract of Sale, the other party shall be entitled to such relief or damages as may be available to them pursuant to the laws of the State of New Jersey, except that should the Purchaser default, the Purchaser must immediately vacate the premises. Events of default are further discussed at Article XVIII of the Redevelopment Agreement, Part 1."

7.   Additionally, under Section 12 it states, "Purchaser shall not assign this Agreement. Any attempted assignment shall be null and void." "Notwithstanding the aforementioned, City of East Orange Ordinance No. 19-2002, Ordinance No. 12-2008 and Resolution No. I-88 (approved April 28, 2008) and any amendments thereto and the Redevelopment Agreement between Purchaser and Seller, are incorporated herein by reference and are made a material part hereof and shall survive the closing until expressly terminated by the City of East Orange or terminated by its own terms. Acceptance of the deed by Purchaser

shall be deemed full and complete performance and discharge of every agreement and obligation of Seller hereunder, except those, if any, which expressly are stated herein to survive the closing, and then such survival shall be only for a period of one year."

8.  And Section 12 further provides, "This Agreement may not be altered, amended, changed, waived, or modified in any respect or particular unless the same shall be in writing signed by Seller and Purchaser. No waiver by any party of any breach hereunder shall be deemed a waiver of any other or subsequent breach."

9.  And finally, Section 12 states, "This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, executors, administrators, successors and permitted assigns."

10.  On July 17, 2015, a Deed was recorded between the City and Penchant conveying Block 360, Lot 14, also known as 116 N. Walnut Street, to Penchant under Instrument Number 15055384, Book 12565, Page 4917. *See* July 17, 2015 Deed attached to the City's Objection, **Exhibit "D."**

11.  The Deed specifically provides, "This transfer or sale of the subject property is subject to the terms of the Contract of Sale executed on December 31, 2014 as incorporated by reference herein." And, **"This transfer or sale of the subject property is also subject to the stipulation that the Grantee may not convey the property except as set forth in the Redevelopment Plan including amendments thereto and Contract of Sale."** (Emphasis added.)

12.  And under Paragraph 5 of the Deed, "The above convents will survive delivery of the within deed."

13. On May 18, 2015, a Redevelopment Agreement between the City and Penchant was created. *See* May 18, 2015 Redevelopment Agreement attached to the City's Objection, **Exhibit "E."**

14. The Redevelopment Agreement states the following relevant portions:

"**WHEREAS**, Redeveloper acknowledges that all uses to which the Project Premises may be devoted are controlled by the Redevelopment Plan and this Agreement, and that under no circumstance can the Redeveloper undertake any construction on or development of the Project Premises unless strictly in accordance with the Redevelopment Plan and this Agreement, and that Redeveloper further understands and acknowledges that if the Project Premises are developed and used in a manner inconsistent with the Agreement, the Redevelopment Plan or the Local Redevelopment Law, the City shall have the right to terminate this Agreement and thereupon title to and possession of the Project Premises, and to all improvements thereon, shall revert to the City in accordance with the provisions hereof; ..."

**ARTICLE XVIII DEFAULT** ... b. If default shall be made in the due observance or performance of any other covenant or obligation of Redeveloper contained in this Agreement (including, but not limited to Deed restrictions and covenants contained in Articles XI, XII, XVI and XVII of Part I, and Articles III, IV, V, VI and VII of Part II) and such default shall have continued for a period of thirty (30) days after notice specifying such default and demanding that same be remedied shall have been given to Redeveloper by the City (unless such default cannot with due diligence be wholly cured within such period of thirty (30) days, in which case Redeveloper shall, upon request to the City, have such longer period as shall be reasonably necessary to cure the default, so long as Redeveloper proceeds promptly to cure the same within such thirty (30) day period, prosecutes the cure to completion with due diligence, and advises the City from time to time and/or upon the City's request, of the actions which Redeveloper is taking and the progress being made);...

e. If the Redeveloper be dissolved, or shall file a voluntary petition in bankruptcy or for reorganization or for an arrangement pursuant to the Bankruptcy Act or any similar law, federal or state, now or hereafter in effect, or shall make an assignment for the benefit of creditors, or shall admit in writing its inability to pay its debts as they become due, or shall suspend payment of its obligations, or shall take any action in furtherance of the foregoing; or if Redeveloper shall consent to the appointment of a receiver, or any answer pro[posing the adjudication of Redeveloper as a bankrupt or its reorganization pursuant to the Bankruptcy Act or any similar law, federal or state, now or hereafter in effect, shall be filed in and approved by a court of competent jurisdiction and the other approving the same shall not be vacated or set aside or stayed within sixty (60) days from entry

4

thereof, or if the Redeveloper shall consent to the filing of such petition or answer."

Further, it also states with respect to reversion:

"18.2 c. <u>Revesting Title in Agency Upon Happening of Event Subsequent to Conveyance to Redeveloper</u>. In the event that, subsequent to conveyance of the Property or any part thereof to the Redeveloper and prior to completion of the Improvements as certified by the Agency ... (ii) there is, in violation of the Agreement, any transfer of the Property or any part thereof, or any change in the ownership or distribution of the stock of the Redeveloper, or with respect to the identity of the parties in control of the Redeveloper or the degree thereof, and such violation shall not be cured within sixty (60) days after 'written demand by the Agency to the Redeveloper, then the Agency shall have the right to re-enter and take possession of the Property and to terminate (and revest in the Agency) the estate conveyed by the Deed to the Redeveloper..." *See* Exhibit E.

15. Notwithstanding the terms of the Contract of Sale, Deed, and Redevelopment Agreement above, on April 12, 2019, a Deed was recorded under Instrument Number 2019034127 conveying the Real Property from Penchant, the Redeveloper attached to the Redevelopment Agreement, to the Debtor, a non-party. *See* April 12, 2019 Deed attached to the City's Objection, **Exhibit "F."**

16. This particular Deed did not include the covenants that were required to run with the land as outlined in the July 17, 2015 Deed, which set forth various requirements in accordance with <u>N.J.S.A.</u> 40A:12A-1, et. seq., the City's Resolution I-68 of 2014, Ordinance 1 of 2004, Ordinance 32, of 2006, and Ordinance 17 of 2014 as well as the requirements under the North Walnut Redevelopment Plan.

17. On June 17, 2022, the Debtor filed a Chapter 11 Bankruptcy in the United States Bankruptcy Court, Eastern District of New York.

18. On January 12, 2023, a subsequent Quit Claim Deed was recorded under Instrument Number 2023002526 conveying the Real Property from Fralege Group, Inc. a New York Corporation, incorrectly spelled Fraleg Group Inc., a New York Corporation on original

filing to Fralege Group, Inc., a New York Corporation ("Fralege"). *See* January 12, 2023 Quit Claim Deed attached to the City's Objection, **Exhibit "G."**

19.     This particular Deed also had not included the covenants that were required to run with the land as outlined in the July 17, 2015 Deed, which set forth various requirements in accordance with <u>N.J.S.A.</u> 40A:12A-1, et. seq., the City's Resolution I-68 of 2014, Ordinance 1 of 2004, Ordinance 32, of 2006, and Ordinance 17 of 2014 as well as the requirements under the North Walnut Redevelopment Plan.

20.     On April 5, 2023, another Quit Claim Deed was recorded under Instrument Number 2023021421 conveying the Real Property from Fralege to "Fraleg Group, Inc., a New York Corporation." *See* April 5, 2023 Quit Claim Deed attached to the City's Objection, **Exhibit "H."**

21.     On December 18, 2023, the Bankruptcy Court entered an Order in this instant matter converting the case from a Chapter 11 to a Chapter 7.

22.     Lastly, and as noted above, on January 12, 2024, an Order Authorizing the Retention of MYC as Real Estate Broker to the Trustee was entered for purposes of brokering "the Debtor's real property commonly known as and located at 116 N. Walnut Street, East Orange, New Jersey, 07017, designated in Essex County as legal block 360, lot 14."

23.     Based on the historical timeline above, it is blatantly evident that Penchant breached the terms and conditions of the Contract of Sale and Deed as well as the Redevelopment Agreement by improperly conveying the Real Property to the Debtor; removing the covenants that were required to run with the land as outlined in the July 17, 2015 Deed, which set forth various requirements in accordance with <u>N.J.S.A.</u> 40A:12A-1, et. seq., the City's Resolution I-68 of 2014, Ordinance 1 of 2004, Ordinance 32, of 2006, and

Ordinance 17 of 2014 as well as the requirements under the North Walnut Redevelopment Plan.

24. The Deed between the City and Penchant was recorded and made a part of the public record. Therefore, the Debtor was well aware that Penchant could not legally sell the Property without being subject to the terms of the Redevelopment Plan, Redevelopment Agreement, and Contract of Sale.

25. Contrary to the Creditor's opposition, the Deed and Contract of Sale both incorporate the Redevelopment Agreement which contain the reversionary requirement. Section 3.6 of the Redevelopment Agreement additionally provides, "The Deed shall be by its terms expressly subject and subordinate to the provisions of this Agreement."

26. Following the chain of provisions of the Deed, Contract of Sale and Redevelopment Agreement it is clearly established that Penchant had no legal right to convey the Property to the Debtor and likewise the Trustee has no right to convey the Property herein.

27. Additionally, the Deed, which was recorded and made a part of the public record, specifically references and incorporates the Redevelopment Agreement. Thus, Fraleg, the Creditor and Trustee were all aware of the existence of the Redeveloper Agreement and failed to take any steps to investigate the terms contained therein further.

28. With respect to Fraleg/Fralege, and based upon Penchant's breach, the entry of an order authorizing compromise and settlement of the Trustee's interest in the Real Property is otherwise subject to injunctive relief, or in lieu of same, a reversion back to the City in accordance with the original Contract of Sale, Deed, and Redevelopment Agreement.

29.    A "reversion" is a future interest that an individual has in a piece of property even after he or she has conveyed that property, in a lesser estate, to another individual. Once the lesser estate has expired or ended, the property will return to the original individual. Based upon the authorities within the Contract of Sale and Redevelopment Agreement, the City retained its right to a future interest post conveyance and is therefore entitled to have the Real Property specific to Block 360, Lot 14, also known as 116 N. Walnut Street, returned back to their possession and ownership.

30.    The primary assertion within Creditor's opposition is that the City's claim of a reversionary interest is unfounded because it was not explicitly stated in the deed. However, this argument is misleading.

31.    The City's reversionary interest arises from the explicit terms of the Redevelopment Agreement and the Contract of Sale. Article XVIII of the Redevelopment Agreement outlines conditions subsequent, including unauthorized transfers or failures to comply with the Redevelopment Plan, which trigger the reversion of title to the City. The provision reads, "If there is, in violation of the Agreement, any transfer of the Property or any part thereof ... the Agency shall have the right to re-enter and take possession of the Property and to terminate (and revest in the Agency) the estate conveyed by the Deed to the Redeveloper."

32.    This language unequivocally establishes the City's right to reacquire the property upon breach of the Redevelopment Agreement.

33.    The Creditor further argues that the City failed to provide requisite notices of default, however, this argument fails for several reasons.

34.    First, the breaches by Penchant—including the unauthorized transfer to the Debtor—are clear and continuing. Under the Redevelopment Agreement, these breaches trigger the City's rights irrespective of redundant notices.

35.    Second, constructive and actual knowledge of the restrictions was available to all parties. The Redevelopment Agreement—referenced in prior deeds—placed subsequent purchasers on notice. Even if procedural notices were imperfect, the substance of the breaches is undisputed.

36.    The Creditor claims that New Jersey law requires reversionary interests to be explicitly stated in the deed. However, while clear language could of course strengthen such claims, it is not an absolute requirement as Creditor claims.

37.    "Under New Jersey law, "[a] grantor may, by covenant in a deed, restrict the use of land conveyed for the benefit of land retained and bind the grantee and his or her successors in title <u>who take with notice</u>." *Perelman v. Casiello*, 392 *N.J.Super.* 412, 418, 920 *A.*2d 782 (2007) (emphasis added). A subsequent purchaser/grantee will be charged with record notice (i.e. constructive notice) of a restriction if such a restriction is present in their chain of title; this is so even if that grantee's deed itself contains no mention of such a restriction. *See Olson, supra,* 44 *N.J.Super.* at 388, 130 *A.*2d 650; *Hammett v. Rosensohn,* 46 *N.J.Super.* 527, 535, 135 *A.*2d 6 (App. Div. 1957). In addition to constructive/record notice contained in a chain of title, a party may be charged with inquiry notice where there are facts or circumstances indicating some outside claim that would prompt a reasonable purchaser to investigate further. *See e.g., Friendship Manor, Inc. v. Greiman,* 244 *N.J.Super.* 104, 108, 581 *A.*2d 893 (App.

9

Div. 1990). <u>Pearson v. DMH 2 Ltd. Liab. Co.</u>, 449 N.J. Super. 30, 49–50, 155 A.3d 17, 29 (Ch. Div. 2016)

38. Here, the constructive notice was met as there was language within the July 15, 2015 Deed, as contained within the chain of title, referencing the redevelopment project, the redevelopment agreement and the contract of sale as well as language in the Deed itself that had set forth evidence of certain restrictions and covenants that run with the land otherwise subjecting it to reversion if not met.

39. It was evident simply based upon the July 15, 2015 Deed itself that further investigation was required by both Penchant and Fraleg at the time of evaluating title and existing restrictions prior to conveying the property to Fraleg.

40. Further, the Redevelopment Agreement, incorporated by reference into the deed, provides the necessary foundation for the City's claim of reversion, which was again either not investigated by Penchant or Fraleg as what should have occurred, or simply blatantly ignored.

41. Penchant's actions constitute significant breaches of the Redevelopment Agreement.

42. Penchant conveyed the property to the Debtor in 2019 without the City's consent, in direct violation of the Agreement.

43. The transfer stripped the property of covenants required to run with the land, undermining the Redevelopment Plan's objectives.

44. Penchant failed to fulfill its development obligations, further compounding its breach.

45. These breaches activate the reversionary provisions of the Redevelopment Agreement and the Contract of Sale, necessitating the property's return to the City.

46. The Creditor may argue that courts avoid enforcing forfeitures. However, this is not a forfeiture; it is the enforcement of a contractual and statutory right. New Jersey's Local Redevelopment and Housing Law, N.J.S.A. 40A:12A-1, prioritizes adherence to redevelopment agreements to protect public interests.

47. Penchant and its successors failed to uphold the terms that justified the property's original conveyance. The City's actions are not punitive but necessary to restore compliance and fulfill redevelopment objectives.

**Conclusion**

Wherefore, the City seeks to deny the Trustee's application for entry of an order authorizing the compromise and settlement of the Trustee's interest in the Real Property and for the purposes of entering into a Deed for reversion of the Real Property back to the City based upon the breaches by Penchant. The Redevelopment Agreement and Contract of Sale provide clear grounds for reversion. Penchant's breaches and the subsequent unauthorized transfers violated the terms and public policy underpinning the Redevelopment Plan.

Accordingly, we respectfully request that the Court deny the Trustee's application for settlement and recognize the City's rightful claim to reacquire 116 North Walnut Street to uphold the integrity of its redevelopment efforts.

By: /s/ Albert K. Marmero
Albert K. Marmero, Esq.
Attorney ID #: 020462003
MARMERO LAW, LLC
44 Euclid Street
Woodbury, NJ 08096
amarmero@marmerolaw.com
Attorneys for the City of East Orange

Dated: December 27, 2024

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re: FRALEG GROUP, LLC

                                  Case No. 22-41410

                                  Chapter  7

                Debtor.
-----------------------------------------------------------x

## CERTIFICATE OF SERVICE

The undersigned certifies that on <u>December 27, 2024</u>, a copy of
                                (Date of Service/Mailing)

<u>City of East Orange Reply to Creditor's Opposition</u>,
                          (Title of Document(s) served)
was deposited in an enclosed, properly addressed postage-paid envelope, and served by

<u>USPS Regular Mail and E-Mail</u>
   (Method of Delivery, e.g., Federal Express Overnight, U.S. Post Office Priority Mail.....)
upon the following *[below specify the name and mailing address of each party served]*:

Richard J. McCord, Esq.
Chapter 7 Trustee
90 Merrick Ave.
East Meadow, NY 11554

David Ferfuson, Esq.
900 West 48th Place, Suite 900
Kansas City, MO 64112

Hugh H. Schull, III, Esq.
100 Church Street
Room 5-233
New York, NY 10007

United States Trustee
Eastern District of New York (Brooklyn)
Alexander Hamilton Custom House
One Bowling Green, Room 510
New York, New York 10004-1408

Morgan C. Fiander, Esq.
600 Third Ave., 42nd Flood
New York, NY 10016

Jeffrey C. Chancas, Esq.
377 Broadway
New York, NY 10013

Avrum J. Rosen, Esq.
38 New Street
Huntington, NY 11743

Dated: <u>12/27/2024</u>

      Albert K. Marmero      <small>Digitally signed by Albert K. Marmero
Date: 2024.12.27 08:53:35 -05'00'</small>
      Signature
      Print name: Albert K. Marmero
      Address: 44 Euclid Street
                Woodbury, NJ 08096
      Phone: 856-848-6440
      Email: amarmero@marmerolaw.com



# Marmero Law, LLC

Albert K. Marmero Δ

Δ   Member NJ Bar

A New Jersey Limited Liability Company
ATTORNEYS AT LAW
44 Euclid Street
Woodbury, NJ 08096

Tel: (856) 848-6440
Fax: (856) 848-5002
www.marmerolaw.com

Monmouth Office:
97 Apple Street
Suite 1
Tinton Falls, NJ 07724
(732)268-8836

December 27, 2024

***Via USPS Regular Mail and E-Mail:***
Hon. Jil Mazer-Marino
U.S. Bankruptcy Court, EDNY
Conrad B. Duberstein Courthouse
271-C Cadman Plaza East, Suite 1595
Brooklyn, NY 11201-1800

**In Re:  Fraleg Group, Inc.; Chapter 7 Case No.: 1-22-41410-JMM**

Dear Judge Mazer-Marino,

As Your Honor is aware the undersigned represents the City of East Orange as an interested party in the above-captioned Chapter 7 Bankruptcy Proceeding.

Please accept this correspondence to submit the City's reply in further support of its objection to the Trustee's application and Creditor's opposition.

If Your Honor has any questions or concerns, please contact me at my office. Thank you.

Respectfully Submitted,
**MARMERO LAW, LLC**

*/s/ Albert K. Marmero*

Albert K. Marmero
Attorney for City of East Orange

AKM
Enclosures

cc: See attached certificate of service