**Law Offices of Avrum J. Rosen, PLLC**           **Hearing Date: January 23, 2024**
38 New Street                                      **Hearing Time: 2:00 pm**
Huntington, New York 11743
(631) 423-8527
Avrum J. Rosen, Esq.

*Former Counsel to the Chapter 11 Debtor*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
In re:                                           Chapter 7

        FRALEG GROUP, INC.,                Case No.: 22-41410-jmm

                      Debtor.
--------------------------------------------------------X

### CREDITOR'S SUR-REPLY TO THE REPLY BY THE CITY OF EAST ORANGE TO THE CHAPTER 7 TRUSTEE'S RULE 9019 MOTION

**TO:   THE HONORABLE JIL MAZER-MARINO
       UNITED STATES BANKRUPTCY JUDGE**

     The Law Offices of Avrum J. Rosen, PLLC (the "Firm"), the largest Chapter 11 administrative creditor in this case, and former counsel to Fraleg Group, Inc., the debtor (the "Debtor"), respectfully submits this as and for the Firm's Sur-Reply to the City of East Orange's (the "City") Reply (the "Reply") to the Chapter 7 trustee's (the "Trustee") Rule 9019 motion (the "Motion"), which would authorize the sale of the Debtor's real property commonly known as 116 North Walnut Street, East Orange, New Jersey 07017 (the "Property"), and respectfully states as follows:

### ARGUMENT

     1.    This Court gave the City the opportunity to address the multiple issues raised in this Firm's response to its Opposition to the Motion. The issues that were squarely before the Court were whether or not the documents that the City relied upon as having provided notice of its right of reverter were sufficient under New Jersey law to provide adequate notice to a good faith

purchaser for value. Central to that inquiry was whether or not they were part of the public record and, as will be discussed below, whether or not the Debtor had a duty to inquire as to those documents in the public record or elsewhere and if they were readily available.  The City simply ducked all of these issues, cut and pasted its original Objection, and miscited a few cases.  Cases that, if properly read and shepardized, lead one to the extensive body of case law in New Jersey state and federal courts, which unequivocally defeat the City's entire argument.

2.       The other issue raised by this Firm was whether or not the City had actual knowledge of the transfer of the Property back in 2019 and had taken no action.  This Court adjourned the matter to late January to provide time for discovery, if needed. The silence from the City on this issue is deafening and makes clear that it well knew of the transfer and the attempts to develop this Property, as well as the adjacent property (which was also covered by the Redevelopment Agreement). In researching whether or not the Contract and/or the Redevelopment Agreement were to be found anywhere in either the chain of title or in the readily available public record (they were not), the undersigned searched the official online records of the City.  Attached hereto as Exhibit "A" is a proposed Resolution No. 207 of the City Board from **October 13, 2020**, proposing to enter into designating the Debtor as the developer for the Property.  Whether or not that resolution was approved is not available online.  But there can be no doubt that the City knew the Debtor owned the Property (and the adjacent property), and the claim that the transfer automatically triggered a reversion over four years ago borders on being sanctionable. The laches of the City alone bars it from any equitable relief.

3.       The review of the relevant case law will demonstrate that any attempts to abrogate the New Jersey recording statute are disfavored and require a balancing of the equities. *Woodford v. Lynn-Martinolich,* No. A-1179-22, 2024 N.J. Super. Unpub. LEXIS 1473 (Super. Ct. App. Div.

July 5, 2024) (Because the doctrine of inquiry notice is an exception to a system of recorded notice, it is reserved for cases of "unusual equity." *See Friendship Manor*, 244 N.J. Super. at 113 ("We have been cautioned that 'absent any unusual equity' the stability of titles and conveyancing requires the judiciary to follow that course 'that will best support and maintain the integrity of the recording system.'") (*quoting Palamarg Realty Co. v. Rehac*, 80 N.J. 446, 453, 404 A.2d 21 (1979)).

       4.      The gist of the City's argument is that it has a right of reverter that can be enforced against the Trustee to obtain title to the Property. To support its argument, the City again selectively cites a plethora of documents to assert that this reversionary right existed in the Contract, which was annexed as Exhibit "C" to the Objection. But the Contract does not contain any such language, and the Deed only incorporates the Contract and the Redevelopment Plan by reference and the Redevelopment Plan is also silent as to any reversionary interest. These two documents are the only two documents that are available in the readily available public records. Thus, there is nothing that would lead any party that conducted a search of the public record to raise any issue as to any right of reverter.  Indeed, under applicable law, a party who orders a title search, which does not raise any issues is granted *bona fide* purchaser status unless it can be proven that it had actual knowledge of a defect in title. *Borough of Paramus v. Shamrock Creek, Ltd. Liab. Co.,* No. A-6267-08T2, 2010 N.J. Super. Unpub. LEXIS 675 (Super. Ct. App. Div. Mar. 30, 2010) (unrecorded settlement agreement not in the chain of title not enforceable against *bona fide* purchaser). A copy of the title policy that the Debtor obtained when it purchased the Property is annexed hereto as Exhibit "B".  No mention was made of any potential defect, and no reversionary interest was raised.

5.      The reversionary language that the City relies upon is incorporated by reference into the Contract through the Redevelopment Agreement, which is Exhibit "D" of the City's Opposition.  Neither of those documents are in the readily available public record.[1]  Moreover, the Redevelopment Agreement was not executed until May 18, 2015, almost five (5) months after the Contract was executed on December 31, 2014.  Moreover, the cited reversionary language does NOT create an automatic reversion upon a transfer of the Property.  It only gives the City the *right* to call a default to invoke the reversion of the Property.  Nowhere in the City's papers is there any allegation or evidence that such a default was called before (or after) the Debtor filed its Chapter 11 petitions, and no motion to lift the stay has even been made for that relief.

6.      Turning to the relevant case law that the City cited, paragraph 37 of the City's Reply cites the well-established law that:

> A subsequent purchaser/grantee will be charged with record notice (i.e. constructive notice) of a restriction if such a restriction is present in their chain of title; this is so even if that grantee's deed itself contains no mention of such a restriction. *See Olson, supra, 44 N.J.Super.* at 388, 130 A.2d 650; *Hammett v. Rosensohn, 46 N.J.Super.* 527, 535, 135 A.2d 6 (App. Div. 1957). In addition to constructive/record notice contained in a chain of title, a party may be charged with inquiry notice where there are facts or circumstances indicating some outside claim that would prompt a reasonable purchaser to investigate further. *See e.g., Friendship Manor, Inc. v. Greiman, 244 N.J.Super.* 104, 108, 581 A.2d 893 (App. 10 Div. 1990). <u>Pearson v. DMH 2 Ltd. Liab. Co.</u>, 449 N.J. Super. 30, 49–50, 155 A.3d 17, 29 (Ch. Div. 2016).

7.      The case law is quite explicit that the right of reverter must be in the chain of title to place a purchaser on constructive notice.  That is not this case, and the only issue is if the Debtor was placed on inquiry notice by the reference to the Contract and the Redevelopment Plan, neither of which mentioned a right of reverter. The case law is equally clear that the Debtor was not on inquiry notice, and even if it was, the City has not tendered any evidence that the Redevelopment

---

[1] The undersigned searched the City's website as well as general Google searched for the names of the parties and the document names and the attached exhibit is all that was revealed.

Agreement was anywhere in the public record, and if it was, that it was readily accessible. The balancing of the equities under the case law compels a determination in the Trustee's favor. The City relies upon the *Freindship* case to support its position, but the City never discusses the facts of *Freindship,* nor any of its progeny.  In *Freindship* the court stated:

> In the context of the race notice statute, constructive notice arises from the obligation of a claimant of a property interest to make reasonable and diligent inquiry as to existing claims or rights in and to real estate. *Scult, supra*, 76 N.J.Super. at 135, 183 A.2d 865. Accordingly, as Justice (then Judge) Pashman there held, the claimant will be charged with knowledge of whatever such an inquiry would uncover where facts are brought to his attention, "sufficient to apprise him of the existence of an outstanding title or claim, or the surrounding circumstances are suspicious and the party purposefully or knowingly avoids further inquiry." *Id.* at 108.

That court went on to hold that:

> [Plaintiff] claims that as a consequence of N.J.S.A. 46:21-1 and 46:22-1, read in *pari materia*, a prospective purchaser is not required to search the records for transactions by any owner in the chain of title either before the recorded deed into that owner or after the recorded deed out of that owner. That is a generally correct proposition. *See, e.g., Palamarg Realty Company v. Rehac, supra;Garden of Mem., Inc. v. Forest Lawn Mem. Pk. Assn., 109 N.J.Super. 523, 264 A.2d 82 (App.Div.) certif. den.56 N.J. 476, 267 A.2d 58 (1970); Sec. Pac. Fin. Corp. v. Taylor, 193 N.J.Super. 434, 474 A.2d 1096 (Ch.Div.1984).Id.* at 111.

8.      However, in that case, the court found that the plaintiff had actual knowledge of the defects and carved out the exception that the City relies upon and that party did not bother to search the available land records. *Id.*  A whole line of cases have addressed the due diligence standard, starting with the 2004 case from the New Jersey Supreme Court in *Island Venture Assocs. v. N.J. Dep't of Envtl. Prot.*, 179 N.J. 485, 846 A.2d 1228 (2004).  In *Island Venture*, the Court was presented with a purchaser who, like the Debtor, obtained title insurance and bought property that contained a governmental restriction on its use that was not properly part of the title record. While there was a restriction on the filed map of a sub-division, it was not carried over into the deeds of the individual lots. Indeed, that entity first approved the development of the property in dispiute and then rescinded it when it discovered its own error. *Id.* at 489.  In ruling for the purchaser, New

Jersey's highest court set forth the standards to be filed and distinguished *Freindship.*  The Court stated at pages 492-493:

> We have observed more recently that in certain contexts "the integrity of the recording scheme is paramount. "*Cox v. RKA Corp., 164 N.J. 487, 497, 753 A.2d 1112, 1117 (2000).* Thus, this Court has declared: "[A]bsent any unusual equity the stability of titles and conveyancing requires the judiciary to follow that course that will best support and maintain the integrity of the recording system." *Ibid.* (internal quotations marks and citations omitted) (alteration in original).

> The Recording Act accomplishes its objectives by providing that "[a]ny instrument affecting title to or interest in real estate … in this State shall be recorded on presentation to the recording officer of any county in which all or part of the real estate is located," provided the instrument satisfies certain requirements such as inclusion of a signature. N.J.S.A. 46:15-1.1. The recorded instrument "shall … be notice to all subsequent judgment creditors, purchasers, and mortgagees of the execution of the deed or instrument so recorded and of the contents thereof." N.J.S.A. 46:21-1.

> Importantly, any instrument identified and entitled to be recorded under N.J.S.A. 46:16-1, such as deeds or similar instruments affecting title,

> shall, until duly recorded or lodged for record in the office of the county recording officer in which the affected real estate or other property is situate, be void and of no effect against subsequent judgment creditors without notice, and against all subsequent bona fide purchasers and mortgagees for valuable consideration, not having notice thereof, whose deed shall have been first duly recorded or whose mortgage shall have been first duly recorded or registered; but any such deed or instrument shall be valid and operative, although not recorded, except as against such subsequent judgment creditors, purchasers and mortgagees.

[N.J.S.A. 46:22-1.]

9.    The Court held that:

> We conclude that, as applied to this case, the policies underlying the Recording Act outweigh those reflected in CAFRA. As a result, Island Venture is not bound to the 1989 water-dependent restriction. Our rationale is threefold. First, the equities clearly favor Island Venture, which did all that was required of it legally or reasonably to determine the existence of the now-disputed restriction. Second, any possible infringement on CAFRA that might result from our holding will be limited in view of the fact that the DEP has taken steps to assure that CAFRA deed restrictions properly are recorded in the future. Third, the recordation of such restrictions is a form of wide notice that should enhance, rather than encumber, CAFRA's salutary goals.

> In respect of the first factor, we need not repeat the ALJ's lengthy observation concerning Island Venture's status as a good faith, innocent purchaser. Suffice it to say that

we concur in that observation. We also note that Island Venture, because of its status, appears to be precisely the type of purchaser whom the Legislature sought to protect when enacting the Recording Act. Although this case does not involve competing mortgagees or competing titleholders, it does present a classic example of a *bona fide* land purchaser who seeks merely to take title free of an encumbrance about which it had no notice. From that vantage point, relieving Island Venture from the restriction comports with the established principle "that the integrity of the recording scheme is paramount." *Cox, supra, 164 N.J. at 497, 753 A.2d at 1117.*

Regarding any possible infringement on CAFRA apart from this case, we are satisfied that any such effect will be limited or eliminated entirely by the revised practices that the DEP apparently has put in place to assure that CAFRA deed restrictions properly are recorded from this juncture forward. The DEP acknowledges in its brief that it has taken steps presumably to prevent recurring problems of the kind experienced in this case. *Id. at 493-494.*

10.     Of course, in this case, the Redevelopment Agreement required the right of reverter to be included in the deed. So, the City cannot be heard to complain that a decision against it will have some greater policy repercussions. All it needs to do in the future is to follow its own documents.[2]

11.     After *Island Venture*, New Jersey courts further refined what sort of inquiry notice was to be attributed to purchasers.  The case that is almost directly on point to the case at bar is *Borough of Avalon v. Marina at Avalon Anchorage, LLC,* No. A-4817-15T2, 2017 N.J. Super. Unpub. LEXIS 1346 (Super. Ct. App. Div. June 5, 2017). In *Avalon*, the municipality sought to revoke title to a street that was deeded to a developer for failure to make certain public improvements that were required of the prior developer but not included in the deed. *Id. at *2-*5.*

---

A provision of that agreement found on page 43 (and not mentioned by the City) states as follows: Redeveloper, it being the intent of this provision, together with other provisions of the Agreement, that the conveyance of the Property to the Redeveloper shall be made upon, **and that the Deed shall contain**, a condition subsequent to the effect that in the event of any default, failure, violation, or other action or inaction by the redeveloper specified in subdivisions (a), (b), and (c) of this Section 704, failure on the part of the Redeveloper to remedy, end, or abrogate such default, failure, violation or other action or inaction, within the period and in the manner stated in such subdivisions, the Agency at its option may declare a termination in favor of the Agency of the title, and of all the rights and interests in and to the Property conveyed by the Deed to the Redeveloper, and that such title and all rights and interests of the Redeveloper, and any assigns or successors in interest to and in the Property, shall revert to the Agency: (Emphasis added).

This case addresses the critical issue of just how a purchaser is to determine facts that are not readily available in the public record. The City ignored this issue in its Reply. The *Avalon* court set forth the issues in that case, which are the exact issues in this case:

> The Borough argued, however, that Anchorage failed to make reasonable inquiry into the consideration given for vacating the street; that the expiration of the CAFRA permit without construction of the public benefit improvements, resulted in a breach of the agreement, including the implied covenant of good faith and fair dealing; that none of the sworn representations of representatives of Marina, noted in the recorded documents, had been carried out; and that the failure to construct the public benefits before expiration of the CAFRA permit resulted in both a failure of consideration and of the underlying purpose of the street vacation. The Borough maintained the absence of any public benefit rendered the street vacation *ultra vires* and thus null and void.

> Anchorage argued, among other things, that although the Planning/Zoning Board approved a plan which contained a fuel dock and a boat ramp, nothing in the approval or the ordinances required those elements to be included in the redevelopment; that it was entitled to rely on the recorded resolution that Marina had "complied with all of the conditions . . . concerning the vacation of portions of 20th Street"; and that its right to the vacation had vested, precluding the Borough from divesting it of its property right.

> Judge Sandson, relying on *Island Venture Assocs. v. N.J. Dep't of Envtl. Prot., 179 N.J. 485, 846 A.2d 1228 (2004)*, determined that Anchorage was not on notice of any unsatisfied condition of the street vacation and thus could not be bound to construct the improvements.

> The Court finds this matter is subject to the ordinance and resolution which provide that the street is to be vacated upon Anchorage's obtaining . . . all approvals from the State of New Jersey Department of Environmental Protection as may be required by the . . . Coastal Area Facilities Review [A]ct and from the Avalon Planning and Zoning Board. . . . Anchorage has in fact met these conditions.

> The ordinance does not specifically provide for any condition premised on public benefits. The portion of 20th Street South was vacated to [Marina]. Later Anchorage purchased it after completing a search, a proper search, certainly nothing that . . . has been presented to me shows that it was not a proper search of the Cape May County records. In their search such public interest elements were not and could not be recorded as condition of which if not met the Borough could at any time rescind the vacation of 20th Street[.]

> How could that have been done? How could the . . . Borough of Avalon . . . reflect that if this was . . . truly their position? They could have established a reverter that would have been right in the street vacation. Such a reverter never existed. . . . [T]his court has seen many cases in which a municipality retains a reversionary interest. In the event certain things, ***specifically conditioned things are not entered it would be in the deed of vacation, it would be clearly reviewable and searchable by a buyer***. (emphasis added).

This did not happen here. I think that the interests of the sanctity of the Recording Statute here overcomes a long and protracted argument made by [plaintiff's counsel]. And I understand his argument. . . . I don't think that [counsel's] argument, if I follow it to its fair and full conclusion, would have provided a buyer of real estate with any . . . reasonable notice whatsoever of what Avalon's conditions were. ***The fact that it was contained . . . in one of the chain of municipal approvals leading to the vacation I don't think is adequate. I don't think that it provides fair notice. I think that it would subvert . . . the high public interest that . . . this State has in the sanctity of its recording statutes[.]***(Emphasis added).

[I]f I were to now say to [defendant] . . . that you'd better read everything because you'd better satisfy the public interest. I don't think that's what's called for in our law in this area. Additionally, as I said, there's no reverter clause in the agreement between [Marina] and the Borough indicating that the vacated portion of land would revert back to the Borough should the public interest elements not be met.

The fact is that the alleged conditions which the Borough seeks to rescind were not recorded and as such when Anchorage purchased the property after it conducted a search it was not noticed of such alleged conditions. Therefore the property was purchased with notice of what was recorded and no conditions allowing the Borough of Avalon to rescind its vacation of 20th Street were included. And I don't think that a reasonable buyer in such a case should be deprived of his ownership of real property based upon his own analysis of whether or not the public interest was met.

12.    Lastly, the interplay with the Bankruptcy Code must be considered. In *Musolino v. Orr*, No. 14-514(FLW), 2014 U.S. Dist. LEXIS 101280 (D.N.J. July 16, 2014), the District Court affirmed a Bankruptcy Court decision that allowed a Chapter 7 trustee to use his strong-arm powers to set aside a deed that did not comport with the Recording Act requirements in New Jersey.  That court held that:

The plain language of § 544(a) establishes that the strong-arm powers arise when the bankruptcy "case" is commenced, i.e., upon the filing of the bankruptcy petition. 11 U.S.C. §§ 301(a), 302(a), 303(b); Fed. R. Bankr. P. 1002(a). Furthermore, absent from § 544 is any requirement that a trustee perform his own title search in order to secure bona fide purchaser status. Rather, § 544(a)(3) confers upon a trustee, whenever real property is at issue, the rights of a bona fide purchaser, "against whom applicable law permits," of the debtor's property, without any other requirement. Numerous courts have reached this same conclusion. *See, e.g., In re Bridge*, 18 F.3d 195, 199, 204 (3d Cir. 1994) (explaining that hypothetical bona fide purchaser is deemed, without taking any affirmative action, to have searched the title of the property as of that date of the bankruptcy petition); *see also In re Aulicino,* 400 B.R. 175, 180 (Bankr. E.D. Pa. 2008); *In re Mariano*, 339 B.R. 344, 347 (Bankr. D.N.J. 2006). Accordingly, I reject Appellant's argument that the Bankruptcy Court erred by not requiring the Trustee to perform a title search prior to assuming hypothetical bona fide purchaser status.

13.     That Court then went through an extensive analysis of all of the cases and more cited herein and concurred that any notice must be in the public record to be binding on a trustee. *Id*. at \*16-\*25. Having not included the right of reverter in the public record and having never exercised any right to call a default and attempt to exercise such right of reverter, the Trustee's strong arm powers make him a *bona fide* purchaser for value as well who defeats any rights of the City to the Property.

14.     For all of the foregoing reasons as well as the other reasons raised in this Firm's initial Response, the City's Objection must be overruled in its entirety.

**WHEREFORE**, the Firm seeks the entry of an order: (i) overruling the Objection; (ii) approving the Motion; together with (iii) such other, further and different relief that this Honorable Court deems just, proper and equitable under the facts and circumstances herein.

Dated: January 10, 2025                              Respectfully submitted,
      Huntington, New York

                                            **Law Offices of Avrum J. Rosen, PLLC**
                                            *Former counsel to the Debtor*

                         By:     */s/ Avrum J. Rosen*
                                 Avrum J. Rosen, Esq.
                                 38 New Street
                                 Huntington, New York 11743
                                 (631) 423-8527
                                 arosen@ajrlawny.com